Gary M. Kushner
Ronald D. Coleman
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

In re:

OTR MEDIA GROUP INC.

      Debtor.

Chapter 11

Case No. 1-11-47385 (ESS)

------------------------------------------------------------ X

OTR MEDIA GROUP, INC., 203 17TH
REALTY LLC, SAKELE BROTHERS, LLC
*and* ONE MAIDEN LANE REALTY, LLC, *all
New York limited liability companies*, 848
FULTON REALTY CORP. *and* MING SHENG
INC., *New York corporations*, GOTHAM
BROAD, LLC, *a Delaware limited liability
company*, FOTINI THEOHARIDU, and
PHILLIPE JOCELINE, *natural persons*,

      Plaintiffs,

- *vs.* -

The CITY OF NEW YORK,

      Defendant.

------------------------------------------------------------ X

Adv. Pro. No. 1-11-_____

**VERIFIED COMPLAINT**

OTR Media Group, Inc. ("OTR"), the debtor in possession (the "Debtor") by and through its attorneys, Goetz Fitzpatrick LLP,, and OTR's contractual indemnitees, 203 17th Realty LLC, Sakele Brothers, LLC, One Maiden Lane Realty, LLC, 848 Fulton Realty Corp., Ming Sheng Inc., Gotham Broad, LLC, Fotini Theoharidu, and Phillipe Joceline (collectively the "Indemnitees"), as

1

and for their Verified Complaint against the City of New York ("the City") allege and state as follows:

## PARTIES, JURISDICTION AND VENUE

1. On August 25, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2. The Debtor continues in control of its business and management of its assets as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

3. No trustee, examiner or official creditors' committee has been appointed in the Chapter 11 case.

4. All plaintiffs in this adversary proceeding besides Debtor are holders of undisputed contractual rights to indemnification from the Debtor for debts directly related to and arising out of the business of Debtor, as set forth more fully below.

5. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7. This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157 (b)(2)(A), (G) and (O).

8. OTR is a New York corporation whose only business is the business of outdoor advertising. It maintains an office for doing business in Brooklyn, New York.

9. Upon information and belief, plaintiff 203 17TH Realty LLC is a limited liability company formed under the laws of the State of New York with an address of 1303 53rd Street, Brooklyn, New York, and which owns the property located at 203 17th Street in Brooklyn in connection with which it has been fined, as of the date hereof, total civil penalties for alleged outdoor sign violations as set out herein in the amount of $155,000.

10. Upon information and belief, plaintiff Sakele Brothers, LLC is a limited liability company formed under the laws of the State of New York with an address of 7 Dey Street, New York, New York, and which owns the property located at 187 Broadway in Manhattan in connection with which it has been fined, as of the date hereof, total civil penalties for alleged outdoor sign violations as set out herein in the amount of $145,000.

11. Upon information and belief, plaintiff One Maiden Lane Realty, LLC is a limited liability company formed under the laws of the State of New York with an address of 176 Broadway, New York, New York and which owns the property located at 1 Maiden Lane in Manhattan which has been fined, as of January 4, 2011, total civil penalties, including interest, for alleged outdoor sign violations in the amount of $757,438.

12. Upon information and belief, plaintiff 848 Fulton Realty Corp. is a domestic business corporation formed under the laws of the State of New York with an address of 211 Avenue U, Brooklyn, New York, and which owns or controls the property located at 848 Fulton St. in the County of Kings, which has been cited for alleged outdoor sign violations as set out herein and against whom fines, penalties or assessments have as yet been only threatened but not yet made.

13. Upon information and belief, plaintiff Ming Sheng Inc. is a domestic business corporation formed under the laws of the state of New York with an address of 280 Kings Highway, Brooklyn, New York and which owns or controls the property at 280 Kings Highway, which has been cited for alleged outdoor sign violations as set out herein and against whom fines, penalties or assessments have as yet been only threatened but not yet made.

14. Upon information and belief, plaintiff Gotham Broad, LLC is a limited liability company formed under the laws of the State of Delaware and authorized to do business in the State

of New York with an address at 30 Broad Street, New York, New York and which owns the property located at 30 Broad Street in Manhattan in connection with which it has been fined, as of the date hereof, total civil penalties for alleged outdoor sign violations as set out herein in the amount of $295,000.

15. Upon information and belief, plaintiff Fotini Theoharidu is a natural person with a business address at 35-40 32nd Street, Long Island City, New York who owns or controls the property at 13 Carmine Street in Manhattan which has been cited for alleged outdoor sign violations as set out herein and against whom fines, penalties or assessments have as yet been only threatened but not yet made.

16. Upon information and belief, plaintiff Philippe Joceline is a natural person with a business address at address of 1070 East 103rd Street, Brooklyn New York who owns or controls the property at 841 / 843 Franklin Avenue in the County of Kings which has been cited for alleged outdoor sign violations as set out herein and against whom fines, penalties or assessments have as yet been only threatened but not yet made.

17. Debtor is contractually obligated to provide indemnification to the Indemnitees, as set forth more fully below, with respect to the above-referenced fines, penalties and assessments (the "OTR Sign Claims"), all of which arise from activities undertaken by the Indemnitees pursuant to contracts under which the Indemnitees have leased space on their respective buildings to OTR for the purpose of erecting outdoor advertising displays.

18. Defendant the City of New York is a municipal entity of the State of New York ("the City") which has imposed the OTR Sign Claims on the Indemnitees.

19. The City has, as set forth more fully below, explicitly stated its intention to maintain and initiate collection actions against the Indemnitees notwithstanding notice of Debtor's

filing of its Chapter 11 petition, the strictures of § 362(a) of the Bankruptcy Code and the direct effect such actions are certain to have upon Debtor as contractual indemnitor of the OTR Sign Claims and Debtor's business, which is dependent entirely on Debtor's relationships with the Indemnitees and others similarly situated.

## FACTUAL BACKGROUND

20. Debtor is an advertising company ("OAC") whose sole business is the solicitation, arrangement and placement of outdoor advertising displays in the New York metropolitan area.

21. Debtor's outdoor advertising is placed solely at locations owned by third parties pursuant to leases from the owners of the real estate on which the displays are located ("Outdoor Advertising Leases").

22. The Indemnitees own real estate in the City of New York and have entered into Outdoor Advertising Leases with Debtor to erect outdoor advertising displays including "billboards" and "wallscapes" on their properties in exchange for rental income.

23. At various times, the Indemnitees agreed, pursuant to the respective Outdoor Advertising Leases, to lease to Debtor the right to erect outdoor advertising displays in return for compensation ranging from $3000 - $5000 per year for signs under 300 square feet, up to a maximum of ten times that as rental income per property.

24. While the Indemnitees were aware at the time they granted Debtor rights in their properties of the possibility of generating revenue from their properties by means of outdoor advertising, they are all involved primarily in the management of real estate, not outdoor advertising.

25. For this reason, the Indemnitees did not and do not systematically market outdoor advertising opportunities or solicit outdoor advertising on their properties.

26.     Moreover, the Indemnitees generally lack sophistication regarding the legal, regulatory or technical aspects of outdoor advertising, and entered into the Outdoor Advertising Leases depending on the express, written and unambiguous contractual commitment by the Debtor to defend and indemnify them in connection with regulatory penalties, violations and other specified impairments, debts and judgments arising from the outdoor advertisement placed on their properties by Debtor.

27.     A typical contractual provision respecting the parties' rights and responsibilities for outdoor advertising compliance is this one, which is found in the lease between Debtor and Indemnitee One Maiden Lane Realty, LLC:

> Lessor shall provide to Lessee [the Debtor] any violation notices related to the Leased Premises, the Sign or the posting of advertising at the Leased Premises or sign with ten (10) days after the violation was received . . . If timely received, Lessee shall be solely responsible to defend against, cure or clear the violation and pay any related fines. . . .
>
> Lessee shall remain the owner of the Sign and all property, structures, improvements and modifications installed, erected or made by Lessee, whether or not deemed to constitute real estate fixtures ("Lessee Property"). Lessee shall have the right to remove the Lessee Property at any time during the Term or Renewal Term of this Lease or within a reasonable time, not to exceed thirty (30) days, after the termination or expiration of this Lease. . . .
>
> Lessee agrees to indemnify Lessor and its respective successors and assigns (individually and collectively, the "Lessor's Indemnified Parties") and hold the Lessors' Indemnified Parties harmless from and against any and all losses, expenses, and liabilities including reasonable attorney fees incurred by the Lessors' Indemnified Parties in connection with any claim, suit or action (collectively, "Claims") made against the Lessors' Indemnified Parties in connection with Lessee's performance of its obligations hereunder, except to the extent such Claims result from the negligence or willful misconduct of Lessors' Indemnified Parties.

28.     Aware of the nature of this relationship, the City has, as set forth below, engaged in a scheme whereby it has attempted to eviscerate Debtor's ability to indemnify clients such as the Indemnitees by deeming Indemnitees themselves as OAC's, despite the fact that, as set forth

above, the Indemnitees are merely real estate operating companies who have entered into Outdoor Advertising Leases with Debtor.

29. Therefore, under the City's draconian regulatory scheme concerning outdoor advertising, set forth in further detail below, the Indemnitees' potential financial exposure to violations of the regulations governing OAC activities outweighs the economic value of Outdoor Advertising Leases by an order of magnitude or more.

30. For this reason, absent Debtor's contractual commitment to defend and indemnify third-party real estate owners, neither the Indemnitees nor virtually any private property owner would enter into an Outdoor Advertising Lease with Debtor or any other OAC.

31. Concomitantly, if Debtor were to default upon or otherwise be unable to perform its contractual obligation to indemnify the Indemnitees, Debtor's business would grind to a complete and irreversible halt, and its primary assets would be rendered valueless to the detriment not only of Debtor and its employees but all of Debtor's creditors.

32. As set forth further below, the City has focused its OAC regulation enforcement efforts against the Debtor selectively, including, by its own admission, unlawfully exempting certain entities and – not admittedly, but demonstrably – favored OAC firms from enforcement in order to concentrate on the elimination of Debtor's ability to remain in business.

33. The purpose of this scheme is the elimination of Debtor's business at any cost and without regard for the law, notwithstanding the effect of such action on Debtor's creditors, including the Indemnitees, and Debtor's employees.

34. To this end, the City has cited Indemnitees as violators and assessed massive penalties, frequently in the six figures, for alleged violations of the OAC regulations by outdoor

displays under the practical and contractual management and control of Debtor alone with regards to compliance.

35. Indeed, the City has, contrary to law, deemed the Indemnitees to be OAC's and assessed OAC regulatory penalties against the Indemnitees, resulting in the OTR Sign Claims, while also citing Debtor with notices of violations and imposing penalties on Debtor for the identical alleged non-conforming conditions concerning the identical outdoor displays for which it has also cited the Indemnitees.

36. The purpose of the City's double-jeopardy policy is to destroy Debtor's ability to maintain the value of its single most important asset, namely its valued contractual relationship with its clients, such as the Indemnitees.

37. The City's immediate strategy is to make it impossible for Debtor to continue its operations by eviscerating the value of its contracts to indemnify its clients, including the Indemnitees.

38. These contracts, which are Debtor's primary assets, comprise the essence of the estate's economic value. They are the source of Debtor's cash flow, they are alienable, they are amenable to securitization – but they are ultimately no better than Debtor's assurance of indemnification, which lies at their economic heart.

39. For this reason, if the City were to succeed at eviscerating the practical effect of the indemnification provision of Debtor's contracts, it would result in the reduction of the value of these contracts, of Debtor itself, and of the assets available for creditors whether Debtor is reorganized or even liquidated, essentially to zero.

40. Additionally, if the City were to succeed in its effort to disconnect Debtor from its contractual indemnification obligations, not only would the Indemnitees – who are key clients of

Debtor – be unwilling and unable to continue to do business with Debtor, the result would be a domino effect across the advertising and media industries. Debtor, an otherwise viable enterprise, would immediately lose all its clients and all prospects for successful reorganization, to the detriment of its creditors and the estate.

41. The City demonstrated its determination to destroy Debtor and assure that its creditors are deprived of any prospect of recovery in August of 2011, when Debtor sought to engage the City in global negotiations concerning the OTR Sign Claims.

42. The global solution proposed by Debtor to the City included the dismissal of an action filed in this District against the City and a number of its departments and employees, filed by Debtor in the names of the respective Indemnitees in satisfaction of Debtor's indemnification obligation, seeking relief from the City's unlawful enforcement program aimed at Debtor and, because of their relationship with Debtor, at the Indemnitees, as detailed further below (the "Indemnitees Action"). A copy of the complaint filed in the Indemnitees Action, to which the City filed its answer on July 8, 2011, is attached hereto as Exhibit A.

43. During those negotiations, Debtor offered the City dismissal of the Indemnitees Action and a substantial structured cash settlement of the OTR Sign Claims so that Debtor could remain in business and ultimately satisfy the claims of all its creditors. Debtor urged the City to consider such an approach to a payout of any amount due to give it the opportunity to generate revenue and likely make a far greater portion of the amount sought by the City in the OTR Sign Claims available than could be marshaled by Debtor in the near term.

44. Debtor's offer to the City included payment of one-fourth of the value of the OTR Sign Claims currently reduced to enforceable judgments, including a six-figure initial cash payment plus a structured payout of significant additional amounts, in return for a standstill of

judgment enforcement against Debtor and the Indemnitees and consideration of compromise with respect to certain disputed issues currently *sub judice* between Debtor and the City.

45. The City refused Debtor's offer completely, stating that it would not consider a structured settlement nor the compromise of any issue in litigation between Debtor and the City, and signaling its intention that Debtor cease all operations even though by doing so it assured that the City and other creditors would recover little or nothing of any claims they have against Debtor.

46. Having dispensed with the façade of negotiations and having demonstrated no semblance at all of good faith, the City served rent levies on the tenants of the Indemnitees, demanding that they pay all rents to the Sheriff of the City of New York in satisfaction of the OTR Sign Claims.

47. The City issued these levies despite being placed on notice months earlier that in at least one case the rents in question had been irrevocably assigned to its mortgagees pursuant to a mortgage that both assigned rents to the lender of the Indemnitees and required payment of such rents to be secured *via* a lockbox provision.

48. For these reasons, on August 25, 2011, Debtor filed a voluntary petition for relief from its creditors under Chapter 11 of the Bankruptcy Code and immediately advised the City in writing that, a result of that filing, not only was Debtor itself afforded the protection of the automatic stay under § 362(a) of the Bankruptcy Code – requiring the cessation of all judicial, administrative or other proceedings against the debtor – but that such protection extends to all entities to whom OTR has provided a contractual indemnity under the rule of *Branham v. Loews Orpheum Theatre*, 239 A.D.2d 356, 739 N.Y.S.2d 27 (1st Dept. 2002). A copy of the correspondence from Debtor's counsel to the City is attached hereto as Exhibit B.

49. By correspondence to the Indemnitees dated August 26, 2011, attached hereto as Exhibit C, the City advised "To Whom it May Concern" that "enforcement of one of the judgments on which the City executed is currently stayed pending the outcome of litigation now before the New York Supreme Court." There was no reference to the automatic stay, and the City in fact explicitly stated that "The stay does not apply to 14 of the 15 judgments listed in Schedule A to the execution" and indicated the City's intention to proceed with collection of the same.

50. On August 30, 2011, the City responded directly to Debtor's counsel in a letter, attached hereto as Exhibit D, explicitly stating the City's intention not to abide by the automatic stay with respect to the Indemnitees (the "August 30 Letter").

51. The City's August 30 Letter, in addition to citing inapplicable legal decisions and incorrectly "distinguishing" the authority on which Debtor relied in asserting that the Indemnitees are entitled to the protection of the automatic stay with respect to the OTR Sign Claims, ultimately stated as follows:

> There has been no showing, and there is no reason otherwise to believe, that the City's collection efforts against the property owners will "impede the reorganization proceedings" in any way. . . . Thus, the rationale for extending the stay is altogether absent here. In sum, the City will seek to enforce its judgments against property owners that may have entered into leases with OTR. . . .

52. Contrary to this assertion, however, and as set forth above, the City's collection efforts against the Indemnitees will, if not enjoined, definitively, completely and fatally impede the reorganization of Debtor and the protection of its creditors.

# FIRST COUNT

## Declaratory Judgment as to Application of the Automatic Stay

53. Plaintiffs reallege and incorporate the allegations contained in all the foregoing paragraphs as if set forth fully herein.

54. The City has been notified in writing by the Debtor that the automatic stay imposed under §362(a) of the Bankruptcy Code applies to bar the City's activities to enforce the OTR Sign Claims against the Debtor and the Indemnitees, and their property.

55. The City has taken the position that neither the Indemnitees nor their property are protected by the automatic stay and that it intends to continue to enforce all of its rights or remedies in connection with the OTR Sign Claims.

56. As a result of the City's decision to continue its collection efforts relating to the OTR Sign Claims, Debtor's rights under §§1107 and 1108 of the Bankruptcy Code will be significantly impaired.

57. Among other things, by its actions the City prevents the Debtor from conducting business in the ordinary course.

58. The City's threatened prosecution and collection proceedings in connection with the OTR Sign Claims and the other acts hereinbefore described will be, unless enjoined, violations of the automatic stay imposed under § 362(a) of the Bankruptcy Code.

59. The City's refusal to cease prosecution and collection proceedings in connection with the OTR Sign Claims after the Petition Date constitutes a willful violation of the automatic stay imposed under § 362 of the Bankruptcy Code.

60. As a result of the City's conduct, Debtor's ability to operate its businesses, fulfill its duties to customers, including the Indemnitee plaintiffs and other creditors of the estate and to fulfill its indemnification obligations will be destroyed.

61. The Defendant's willful violation of the automatic stay threatens to irreparably injure Debtor and the Indemnitees.

62. The issue presented by the City's refusal to abide by the automatic stay is a justifiable controversy requiring immediate relief from this Court.

63. In accordance with 28 U.S.C. §2201 and 2202, Debtor is entitled to a declaratory judgment against the City that its threatened actions are in violation of the automatic stay, and providing such other relief as the Court may deem necessary to enforce the provisions thereof.

64. Plaintiffs lack an adequate remedy at law.

## SECOND COUNT

### Damages For Willful Violation of the Automatic Stay

65. Plaintiffs reallege and incorporate the allegations contained in all the foregoing paragraphs as if set forth fully herein.

66. As a result of the City's decision to continue its collection efforts relating to the OTR Sign Claims, the Debtor's rights under §§1107 and 1108 of the Bankruptcy Code have been significantly impaired.

67. While plaintiffs have no information at this time as to specific actions taken by the City in violation of the automatic stay, based on the City's August 30 Letter it appears that such actions have been taken, causing damage to plaintiffs in an amount to be determined at trial.

68. In accordance with § 105 of the Bankruptcy Code, the Debtor is entitled to a judgment awarding injunctive relief, damages, including punitive damages, costs and attorneys' fees against the City in an amount to be determined at trial.

## THIRD COUNT

### Equitable Subordination

69. Plaintiffs reallege and incorporate the allegations contained in all the foregoing paragraphs as if set forth fully herein.

70. The City has engaged in inequitable conduct.

71. The City's inequitable conduct has resulted and threatens to result in substantial, and irreparable injury to the Debtor as well as injury to the Debtor's creditors.

72. The City's inequitable conduct has conferred an unfair advantage upon the City compared to other creditors.

73. As a result of the City's inequitable conduct, the City's claims against the Debtor, including the claims which by operation of law and pursuant to the contracts of indemnification running from the Debtor to the Indemnitees are styled as claims against the Indemnitees, should be subordinated pursuant to 11 U.S.C. § 510(c)(1).

74. Additionally, the liens securing the City's subordinated claims, if any, should be transferred to the estate pursuant to 11 U.S.C. § 510(c)(2).

75. Alternatively, the proceeds realized by the City as a result of its unlawful actions should be transferred to the Debtor's estate for distribution to the Debtor's creditors.

76. Neither the subordination of the City's claims nor the transfer of the proceeds generated from the City's wrongful enforcement of judgments to the estate is inconsistent with bankruptcy law.

77. Plaintiffs lack an adequate remedy at law.

## COUNT FOUR

### Permanent Injunction

78. Plaintiffs reallege and incorporate the allegations contained in all the foregoing paragraphs as if set forth fully herein.

79. As a result of the City's decision to continue its collection efforts relating to the OTR Sign Claims, the Debtor's rights under §§1107 and 1108 of the Bankruptcy Code have been significantly impaired.

80. As a result of the City's conduct, the Debtor and its estate have been irreparably harmed and will continue to suffer harm if the City's activities are not enjoined.

81. The Plaintiffs are entitled to a judgment, preliminarily and permanently enjoining and restraining the City pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure from taking any further action to enforce the OTR Sign Claims against the Indemnitees or the Indemnitees' property.

82. Plaintiffs lack an adequate remedy at law.

WHEREFORE, the plaintiffs respectfully request that this Court enter a judgment for the plaintiffs:

   a. on the first count for relief, pursuant to 28 U.S.C. §§ 2201 and 2202 for a declaratory judgment that the automatic stay extends to enjoin the City from pursuing the OTR Sign Claims against the Indemnitees;

   b. on the second count for relief, entering a judgment against the defendant for damages in an amount to be determined at trial arising from the defendant's willful violation of the automatic stay;

c. on the third count for relief, entering a judgment pursuant to 11 U.S.C. § 510(c)(1) equitably subordinating the claims of the City to the claims of all other claims against the Debtor's estate;

d. on the fourth count for relief, a permanent injunction enjoining the City from pursuing the OTR Sign Claims against the Indemnitees or the Indemnitees' property; and

e. awarding such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
September 1, 2011

GOETZ FITZPATRICK LLP

By: _____
Gary M. Kushner

Ronald D. Coleman
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtor*

# VERIFICATION

STATE OF NEW YORK )
)
KINGS COUNTY )

Ari Noe, duly affirming, deposes and says:

Deponent is the principal of plaintiff Debtor in the within action.

Deponent has read the foregoing Verified Complaint and knows the contents thereof; and the same is true to Deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters Deponent believes it to be true based on Deponent's investigation.

_____
ARI NOE

Affirmed to before me this
31 th day of August, 2011

_____
Notary Public

BRENDA D. CARNEGIE
Notary Public, State of New York
No. 01CA6091657
Qualified in Bronx County
Commission Expires April 28, 2015