Gary M. Kushner
Ronald D. Coleman
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

In re:

OTR MEDIA GROUP INC.

                Debtor.

Chapter 11

Case No. 1-11-47385 (ESS)

------------------------------------------------------------ X

OTR MEDIA GROUP, INC., 203 17TH REALTY LLC, SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE REALTY, LLC, *all New York limited liability companies*, 848 FULTON REALTY CORP. *and* MING SHENG INC., *New York corporations*, GOTHAM BROAD, LLC, *a Delaware limited liability company*, FOTINI THEOHARIDU, and PHILLIPE JOCELINE, *natural persons*,

                Plaintiffs,

- *vs.* -

The CITY OF NEW YORK,

                Defendant.

Adv. Pro. No. 1-11-_____

------------------------------------------------------------ X

**MEMORANDUM OF LAW IN SUPPORT OF
DEBTORS' AND INDEMNITEE PLAINTIFFS' MOTION TO
<u>ENFORCE THE AUTOMATIC STAY AND FOR RELATED RELIEF</u>**

**PRELIMINARY STATEMENT**

OTR Media Group, Inc. ("OTR"), the debtor in possession (the "Debtor"), and OTR's contractual indemnitees 203 17th Realty LLC, Sakele Brothers, LLC, One Maiden Lane Realty, LLC, 848 Fulton Realty Corp., Ming Sheng Inc., Gotham Broad, LLC, Fotini Theoharidu, and Phillipe Joceline (collectively the "Indemnitees"), submit this memorandum of law in support of Debtor's application, by order to show cause pursuant to 11 U.S.C. §§105(a) and 362(a) (the "Bankruptcy Code") and Rule 7065 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for a temporary restraining order enjoining defendant the City of New York (the "City") from continuing, as it has threatened in writing to do, to violate the automatic stay by prosecution or collection of its claims against the Indemnitees, the defense and prosecution of which Debtor is contractually obligated to provide and which indemnifications themselves go to the heart of Debtor's business. Alternatively, plaintiffs seek an injunction under Section 105 of the Bankruptcy Code and Rule 7065 of the Federal Rules of Bankruptcy Procedure to effectuate the goals of the Bankruptcy Code by assuring a successful reorganization of Debtor and protecting the rights of other creditors.

Debtor is in the business of outdoor advertising. The Indemnitee plaintiffs are all owners of real property who have entered into contracts leasing space to Debtor to erect outdoor advertising displays and explicitly providing that Debtor will provide the Indemnitees a defense and indemnification with respect to all assessments, penalties or other costs arising from the placement of such displays. The Indemnitees' involvement with these displays is entirely passive, and Debtor's placement of these signs – along with its assurance of indemnification – are the core of Debtor's business, axiomatic to its ability to continue as a going concern in the long term and to satisfy the claims of creditors, including both the Indemnitees (with respect to their claims for indemnity and defense) and the City itself.

The City, however, bent not on maximizing the revenue available to itself or other creditors from the estate but on putting Debtor out of business completely and immediately, has despite written and verbal notice insisted that it will continue its aggressive collection, including by rent levies placed on Indemnitees' rent rolls (which themselves are both assigned to and secured by third parties), of all judgments and continue litigation and other proceedings in connection with alleged violations of the City's outdoor advertising regulations arising out of signs placed by Debtor that is merely located on property owned by the Indemnitees. These threatened actions, if not enjoined by this Court, are guaranteed to result in the immediate destruction of what is an otherwise healthy and dynamic Debtor as a going concern, assured failure of the reorganization and the elimination of any prospect of the satisfaction of the claims of other creditors on the estate.

## STATEMENT OF FACTS[1]

Debtor is an advertising company ("OAC") whose sole business is the solicitation, arrangement and placement of outdoor advertising displays in the New York metropolitan area. Debtor's outdoor advertising is placed solely at locations owned by third parties pursuant to leases from the owners of the real estate on which the displays are located ("Outdoor Advertising Leases"). The Indemnitees own real estate in the City of New York and have entered into Outdoor Advertising Leases with Debtor to erect outdoor advertising displays including "billboards" and "wallscapes" on their properties in exchange for rental income.

---

[1] The relevant facts supporting this memorandum of law are set forth in detail in the Verified Complaint, verified by Ari Noe, the principal of Debtor, except where otherwise noted. For the sake of brevity, the Verified Complaint is incorporated by reference and the full and complete set of facts is not repeated at length herein. All capitalized terms used herein shall have the same meaning ascribed to such terms as they appear in the Verified Complaint unless otherwise defined specifically.

3

The income generated for Indemnitees by the Outdoor Advertising Leases is relatively modest. At various times the Indemnitees agreed, pursuant to these contracts, to lease to Debtor the right to erect outdoor advertising displays in return for compensation ranging from $3000 to $5000 per year for signs under 300 square feet, up to a maximum of ten times that as rental income per property. While the Indemnitees were aware at the time they granted Debtor rights in their properties of the possibility of generating revenue from their properties by means of outdoor advertising, they are all involved primarily in the management of real estate, not outdoor advertising. For this reason, the Indemnitees did not and do not systematically market outdoor advertising opportunities or solicit outdoor advertising on their properties.

Moreover, the Indemnitees generally lack sophistication regarding the legal, regulatory or technical aspects of outdoor advertising. They entered into the Outdoor Advertising Leases depending on the express, written and unambiguous contractual language as follows (utilizing the indemnity provision in the lease with Indemnitee One Maiden Lane Realty, LLC as an example):

> Lessor shall provide to Lessee any violation notices related to the Leased Premises, the Sign or the posting of advertising at the Leased Premises or sign with ten (10) days after the violation was received . . . If timely received, Lessee shall be solely responsible to defend against, cure or clear the violation and pay any related fines. . . .
>
> Lessee [the Debtor] shall remain the owner of the Sign and all property, structures, improvements and modifications installed, erected or made by Lessee, whether or not deemed to constitute real estate fixtures ("Lessee Property"). Lessee shall have the right to remove the Lessee Property at any time during the Term or Renewal Term of this Lease or within a reasonable time, not to exceed thirty (30) days, after the termination or expiration of this Lease. . . .
>
> Lessee agrees to indemnify Lessor and its respective successors and assigns (individually and collectively, the "Lessor's Indemnified Parties") and hold the Lessors' Indemnified Parties harmless from and against any and all losses, expenses, and liabilities including reasonable attorney fees incurred by the Lessors' Indemnified Parties in connection with any claim, suit or action (collectively, "Claims") made against the Lessors' Indemnified Parties in connection with Lessee's performance of its obligations hereunder, except to the extent such Claims result from the negligence or willful misconduct of Lessors' Indemnified Parties.

In short, the Indemnitees' role with respect to the advertising displays was and is essentially passive, and Debtor's responsibility was broad. For this reason, the Outdoor Advertising Leases – which constitute the primary assets of Debtor and the foundation of its reorganization prospects – would be of no value whatsoever without Debtor's contractual commitment. In turn, the value of that commitment hinges on the actions Debtor takes to meet these obligations and made good its contractual commitment to indemnify its "landlords" for massive financial claims the City has imposed on them merely for allowing Debtor to conduct a lawful, productive activity on their premises.

Thus for the last few years, Debtor has been involved in extensive litigation with the City regarding the City's enactment and enforcement of what Debtor and other OAC's regard as a disproportionately severe and selectively enforced regime of regulations aimed primarily at eliminating smaller OAC's, such as Debtor, from the New York market, and for using Debtor's landlords, such as the Indemnitees, as pawns in its campaign against Debtor. Most recently, Debtor, as indemnitor, filed an action in this District under § 1983 in the names of the respective Indemnitees seeking relief from the City's unlawful enforcement program aimed at Debtor and, because of their relationship with Debtor, at the Indemnitees, as detailed further below (the "Indemnitees Action"). A copy of the complaint filed in the Indemnitees Action, to which the City filed its answer on July 8, 2011, is attached to the Verified Complaint as Exhibit A.

As set out in the Indemnitees Action, while Indemnitees agreed to accept the placement of outdoor advertising displays on their property in return for payment by Debtor, rather than a modest income stream from advertising, these leases have, due to defendants' unlawful actions under color of enforcement of outdoor advertising regulations, resulted in the imposition of gargantuan liens, abusive stop-work orders and financial assessments so high that they fundamentally threaten the Indemnitees' economic survival. The action alleges that the

5

violations and penalties imposed on Indemnitees are arbitrary and capricious punishment for the "crime" of granting leases to blacklisted OAC's targeted for discriminatory and lawless "special enforcement" by defendants. This "special enforcement" is, in turn, enforced by a captive, in-house private administrative "court" staffed by per diem administrative law judges who not only routinely rubber-stamp appeals involving cumulative penalties for half a million dollars or more, but whose ongoing employment depends on their continuing to affirm such penalties.

One purpose of the City's actions against Indemnitees, according to the Indemnitee Action, is retribution to targeted OAC's for mounting legal challenges to defendants' actions – a process magnified and repeated in this action. Indeed, the Indemnitee Action alleges that the Indemnitees have been victimized, shorn of their property rights and deprived of their civil rights by defendants' unlawful imposition of devastating and unlawful "collateral damage" on them as part of defendants' efforts to destroy Debtor, including by the wrongful, arbitrary and capricious designation of plaintiffs, mere landlords who have entered into contracts with the targeted OAC's, as OAC's themselves. As set forth in detail in that complaint, no other area of commerce or activity regulated by New York City imposes penalties on landlords for activities undertaken by lessees or tenants in the manner by which defendants have imposed penalties on Indemnitees arising out of activities conducted by their OAC lessees.

The particular significance of this determination is that while non-OAC's found to have violated sign provisions are fined in the range of $800 to $1,200 for violations, the Indemnitees have been subject to and been penalized by the City with arbitrarily "enhanced" OAC fines ranging from **$10,000 to $25,000 per day** for identical alleged violations. The City, the Indemitee Action alleges, has imposed this harm on the Indemnitees to strike at this Debtor despite the fact, and with the full knowledge, that the enhanced penalties and other enforcement measures

under whose color they are acting were enacted not to penalize typical landlords such as plaintiffs but rather to affect the behavior of OAC's.

By focusing "enforcement" efforts only on targeted OAC's, such as Debtor, and levying confiscatory fines on two parties for the same alleged violations – on both the OAC's and landlords who rent them space – the City seeks to ensure that no landlord in New York City will risk doing business with Debtor, ever, ensuring its financial destruction. Indeed, the City has admitted to imposing "twin" OAC penalties on landlords such as the Indemnitees as a way of indirectly fining such OAC's twice for the same alleged violations. Thus the burden of these punitive financial penalties, including the encumbrance of the Indemnitees' properties, would, unless Debtor is permitted to remain in business and provide continued contractual indemnification to them, fall squarely on Indemnitees themselves, who are essentially innocent of anything other than authorizing Debtor to erect signs on the condition that they do so in compliance with the law. If Debtor were to default upon or otherwise be unable to perform its contractual obligation to indemnify the Indemnitees, Debtor's business would grind to a complete and irreversible halt, to the detriment not only of Debtor and its employees but all of Debtor's creditors.

The City demonstrated its determination to destroy Debtor, regardless of any financial concerns – including Debtor's ability to satisfy the claims of creditors – in August of 2011, when Debtor sought to engage the City in global negotiations concerning the OTR Sign Claims. Debtor's proposed global solution included the dismissal of the Indemnitees Action, along with a substantial structured cash settlement of the OTR Sign Claims so that Debtor could remain in business and ultimately satisfy the claims of all its creditors, including a far greater portion of the amount sought by the City in the OTR Sign Claims than would otherwise be available if OTR were liquidated. Debtor's offer to the City included payment of one-fourth of the value of the OTR

Sign Claims currently reduced to enforceable judgments, including a six-figure initial cash payment plus a structured payout of significant additional amounts, in return for a standstill of judgment enforcement against Debtor and the Indemnitees and consideration of compromise with respect to certain disputed issues currently *sub judice* between Debtor and the City.

The City refused Debtor's offer completely, stating that it would not consider a structured settlement nor the compromise of any issue in litigation between Debtor and the City, and signaling its intention that Debtor cease all operations even though by doing so it assured that the City and other creditors would recover little or nothing of any claims they have against Debtor. Having dispensed with any façade of good faith and having torpedoed the negotiations, the City served rent levies on the tenants of the Indemnitees, demanding that they pay all rents to the Sheriff of the City of New York in satisfaction of the OTR Sign Claims. The City issued these levies despite being placed on notice months earlier that in at least one case the rents in question had been irrevocably assigned to mortgagors pursuant to mortgages that both assigned rents to mortgagees of the Indemnitees and required payment of such rents to be secured *via* a lockbox provision.

For these reasons, on August 25, 2011, Debtor filed a voluntary petition for relief from its creditors under Chapter 11 of the Bankruptcy Code and advised the City that, a result of that filing, not only was Debtor itself afforded the protection of the automatic stay under § 362(a) of the Bankruptcy Code – requiring the cessation of all judicial, administrative or other proceedings against the Debtor – but that such protection extends to all entities to whom OTR has provided a contractual indemnity under the rule of *Branham v. Loews Orpheum Theatre*, 239 A.D.2d 356, 739 N.Y.S.2d 27 (1st Dept. 2002). A copy of the correspondence from Debtor's counsel to the City is attached to the Verified Complaint as Exhibit B. By correspondence to the Indemnitees dated August 26, 2011, attached hereto as Exhibit C, the City advised "To Whom it May Concern" that "enforcement of one of the judgments on which the City executed is currently stayed pending the

outcome of litigation now before the New York Supreme Court." There was no reference to the automatic stay, and the City in fact explicitly stated that "The stay does not apply to 14 of the 15 judgments listed in Schedule A to the execution" and indicated the City's intention to proceed with collection of the same.

On August 30, 2011, the City responded directly to Debtor's counsel in a letter, attached to the Verified Complaint as Exhibit D, explicitly stating the City's intention not to abide by the automatic stay with respect to the Indemnitees (the "August 30 Letter"). The City's August 30 Letter, in addition to citing inapplicable legal decisions and incorrectly "distinguishing" the authority on which Debtor relied in asserting that the Indemnitees are entitled to the protection of the automatic stay with respect to the OTR Sign Claims – discussed at length in the legal argument section of this memorandum of law – ultimately stated as follows:

> There has been no showing, and there is no reason otherwise to believe, that the City's collection efforts against the property owners will "impede the reorganization proceedings" in any way. . . . Thus, the rationale for extending the stay is altogether absent here. In sum, the City will seek to enforce its judgments against property owners that may have entered into leases with OTR. . . .

As set forth above, however, this assertion is so preposterous as to raise a very serious question regarding the City's good faith in putting it forward. It is a certainty, and beyond any reasonable cavil, that collection efforts against the Indemnitees will, if not enjoined, definitively, completely and fatally impede the reorganization of Debtor and the protection of its assets and creditors. For this reason plaintiffs have filed this adversary proceeding and bring this motion for immediate relief.

**ARGUMENT**

**I.  THIS COURT HAS JURISDICTION OVER A MUNICIPAL DEFENDANT AND THE POWER TO ACT IN THIS MATTER.**

The general standard for personal jurisdiction, as stated in *Metropolitan Life Insurance Company v. Robertson-Ceco Corporation*, 84 F.3d 560 (2d Cir. 1996), examines both the "minimum contacts" between the defendant and the forum and the "reasonableness" of exerting personal jurisdiction over the defendant. "Like any other federal court, whether a bankruptcy court can exercise jurisdiction depends upon whether the foreign defendant has the requisite minimum contacts with the United States at large." *Cruisephone, Inc. v. Cruise Ships Catering and Servs. N.V. (In re Cruisephone, Inc.*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002). Here the Court's personal jurisdiction over the City of New York – in which the Court itself is located – cannot seriously be disputed. As to subject matter, a motion to enforce the automatic stay arises under Title 11, and a bankruptcy court always has jurisdiction to enforce the stay. *In re Nat. Century Fin. Enterprises, Inc.*, 423 F.3d 567, 574 (6th Cir. 2005).

Moreover, "[P]ursuant to 11 U.S.C. § 362(a)(4), the filing of a bankruptcy petition operates as a stay applicable to all entities of 'any act to create, perfect, or enforce any lien against property of the estate.' The term entity is defined in 11 U.S.C. § 101(14) to include a 'governmental unit.' *In re Haight*, 52 B.R. 104, 105 (Bankr. S.D.N.Y. 1985) (proposed tax lien sale by municipality would violate 11 U.S.C. § 362(a)(6) even though sale would not affect the debtor's title to the real property). The Court continued, "[T]his point is made clear under 11 U.S.C. § 106(c), where governmental sovereign immunity is expressly waived with respect to the operation of the automatic stay. Additionally, 11 U.S.C. § 362(a)(6) extends the stay to any act to collect a prepetition claim against the debtor." *Id*. at 105.

It is of no moment that the City's collection efforts are part and parcel of its claimed

regulatory enforcement program with respect to outdoor advertising. "The Bankruptcy Court has jurisdiction to consider a state or municipal government's activity which affects the estate of a debtor, 28 U.S.C. s 1471(b) and (e)." *In re Gencarelli*, 14 B.R. 751, 752 (Bankr. D.R.I. 1981) (municipality's attempted revocation of debtor's liquor license "clearly constitutes a property interest sufficient to invoke the jurisdiction of this Court.") Moreover, the fact that the City's actions are nominally being taken against third parties does not limit the Court's power to protect the Debtor from the effect of those actions where, as here, those third parties have contractual rights to indemnification – whether actually asserted through litigation or otherwise, as discussed more fully below. "Damages which are considered unmatured, unliquidated and contingent, clearly fall within the definition of a claim" whose prosecution is barred by § 362(a). *In re Johns-Manville Corp.*, 57 B.R. 680, 687-88 (Bankr. S.D.N.Y. 1986) (the legal obligations of a debtor "no matter how remote or contingent" are to be dealt with in the bankruptcy case). For these reasons, the Court has adequate power to apply and enforce the automatic stay in this case.

## II. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER BARRING THE CITY FROM ANY COLLECTION ACTIONS AGAINST THE INDEMNITEE PLAINTIFFS ON THE GROUNDS THAT SUCH ACTIONS VIOLATE THE AUTOMATIC STAY.

Plaintiffs urge the Court to issue a declaratory judgment that the automatic stay in bankruptcy provided by 11 U.S.C. § 362(a) applies to the Indemnitees, who are not the Debtor here but to whom the Debtor has a contractual obligation of indemnification. Upon such a ruling, plaintiffs will be entitled to a temporary restraining order directing the City not to proceed with its planned execution and prosecution of the OTR Sign Claims against the Indemnitees.

"The power of the Bankruptcy Court to issue an injunction in order to preserve the integrity of the reorganization process is well established." *In re Ionosphere Clubs, Inc.*, 111 B.R. 423, 434 (Bankr. S.D.N.Y. 1990) *aff'd in part sub nom. In re Ionosphere Clubs Inc.*, 124 B.R. 635 (S.D.N.Y. 1991). As in *In re Ionosphere Clubs*, such relief may include the extension of the automatic stay to non-debtors. In *Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282 (2d Cir. 2003), the Second Circuit enunciated the standard, met by plaintiffs here, for when actions taken against a non-debtor may be barred by the automatic stay:

> The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, *McCartney v. Integra National Bank North,* 106 *Johns-Manville Corp. v. Asbestos Litigation Group (In re Johns-Manville Corp.),* 26 B.R. 420, 435-36 (Bankr.S.D.N.Y.1983) (on rehearing), and actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant ...," *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

*Id*. at 287-88. Here, of course, the Debtor is both a guarantor of the Indemnitee's legal obligations arising from the OTR Sign Claims and, as set forth above, is in a situation where the City's continuation of those actions "will have an immediate adverse economic consequence for the debtor's estate" – as well as ones that are not so immediate, but which this Court has still found satisfy this standard. For example, in *Robert Plan Corp. v. Liberty Mut. Ins. Co.*, 09-CV-1930JS, 2010 WL 1193151 (E.D.N.Y. Mar. 23, 2010), this Court held that the mere existence of a claim may constitute an "immediate adverse economic consequence" to the estate that meet the *Queenie* standard. Certainly here, as set out in the Verified Complaint, such a formulation makes eminent sense: If Debtor does not find a way to meet its indemnification obligations and relieve the Indemnitees of the City's damaging collection efforts – demanding that tenants pay rent to satisfy violations arising from advertising erected and maintained by OTR – all will be lost. Ultimately, here the continuation of the City's prosecution of its claims

will have the following immediate consequences: there will be no business of Debtor, no reorganization and no recovery for creditors if the City's actions are not halted. For this reason, the automatic stay applies to these actions as a matter of law.

In its August 30 Letter, however, the City sets out a number of purported grounds by which it claims the right to ignore the automatic stay. None of them is sustainable on legal or factual grounds. They are addressed here *seriatim*. First, the City claims "the automatic stay does not extend to other judgment debtors," citing *Lightbody v. Girlie'sAmbulette Serv.*, 2010 U.S. Dist. LEXIS 88862, 2010 WL 3417844 at *5 (E.D.N.Y. Aug. 27, 2010), which stated "the case law is clear that an automatic bankruptcy stay pursuant to § 362(a) applies only to the debtor and not to non-debtor co-defendants." But the facts in *Lightbody* bear no similarity to those here whatsoever. There the "non-debtor co-defendant" in a pending litigation simply sought protection of the automatic stay by virtue of the fact that the debtor co-defendant had filed for bankruptcy protection. The court found, quite logically, that the non-debtor was not entitled to such protection merely for the asking. But the Court noted as follows, in language directly applicable to this application and which the City must have read when it decided to cite this case in its August 30 Letter:

> The Second Circuit has recognized a narrow exception to this rule where "a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate. Examples are a claim to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant ." *Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287-88 (2d Cir. 2003) (internal quotations and citations omitted). Defendants have not suggested that the exception applies in this case.

Plaintiffs, however, most certainly **have** suggested that this "exception" applies here, as set forth at length above. This includes Debtor's assertion of the existence of an obligation, already well known to the City, "of which the debtor is a guarantor" – i.e., the indemnification obligations of

13

the Debtor, running directly to the Indemnitees (and contrary to the blithe statement in the passage from *Collier on Bankruptcy* quoted by the City that an "action also may be brought against guarantors free of the automatic stay"). As also established *supra*, the OTR Sign Claims will "have an immediate adverse consequence for the debtor's estate," thus rendering the ruling of *Lightbody* irrelevant and, to the contrary, reinforcing the availability to plaintiffs of the relief sought here.

The City, in its August 30 Letter, seeks to distinguish the authority relied on by Debtor in its correspondence, *Branham v. Loews Orpheum Theatre, Inc.*, 291 A.D.2d 356 (1st Dept. 2002), which recited the rule, well established in federal bankruptcy law, that "While the bankruptcy filing by one defendant [in an action] does not prevent a plaintiff from proceeding on causes of action against the non-bankrupt defendants, an exception is recognized where, as here, the bankrupt is obligated to indemnify a non-bankrupt defendant." *Id*. at 356. "Branham," the City asserts, involved an "undisputed obligation to indemnify the owners for any liability they sustain" in the pending action. Here, there is no 'undisputed obligation to indemnify the owners.'"

The City, however, at no point identifies who or what actually "disputes" Debtor's indemnification obligation. This is not to say that the indemnification obligation is unconditional – which the cases do not and could not require. But the Indemnitees certainly do not dispute their right to indemnification, and the Debtor has not only not disputed it, but has acted on it affirmatively, and at considerable expense, by representing the Indemnitees in numerous proceedings involving the OTR Sign Claims as well as by filing and prosecuting the Indemnitees Action.

The City, having no basis for its "disputed" concept, suggests that the extension of the automatic stay to situations implicating a guarantee or indemnity applies only where there is a

"pending action or proceeding" as opposed to where "there are already judgments entered." But not only is there no basis for such a distinction, the Bankruptcy Code explicitly contradicts the City's assertion, for the automatic stay generally prohibits, among other actions, "any act to create, perfect, or enforce any lien against property of the estate" or "any act to collect, assess, or recover a claim." 11 U.S.C. § 362(a)(4) & (6). *See*, *In re Grede Foundries, Inc.*, 10-2509, 2011 WL 2709015 (7th Cir. July 13, 2011) (city's action to perfect and collect on lien was violation of automatic stay).

The City next shifts its attempt to distinguish the applicability of the general rule which would extend the automatic stay's protection to the Indemnitees by speculating about the contract between them, writing that "if the property owner is entitled to indemnification, that claim arose with the imposition of the penalty or fine. . . . Here, where it appears that OTR has agreed in its leases with the property owners to clear violations and pay related fines, the property owners' rights under the leases accrued long ago. Enforcement of the judgments will not impact the debtor's estate." Besides representing an incorrect guess about the nature of the indemnification here, the City's "accrual theory" is both legally unsustainable and ignores the fact that Debtor has been engaged, on an ongoing basis, with what the City describes as "clear[ing] violations and pay[ing] related fines" with respect to many or most of the OTR Sign Claims. Furthermore, neither the indemnity obligation nor the concomitant protection of the automatic stay expires over time, and none of the cases cited by the City in its letter says that they do. Nor do those cases have any bearing on the plain language of indemnification in the agreements here, which under the circumstances presently before the Court make indemnification of the OTR Sign Claims necessary, timely and binding on Debtor.

15

### III. THE COURT SHOULD GRANT A TEMPORARY RESTRAINING ORDER BARRING THE CITY FROM ANY COLLECTION ACTIONS AGAINST THE INDEMNITEE PLAINTIFFS UNDER SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7065.

This Court has an alternative ground on which it may base a temporary restraining order, and ultimately an injunction, prohibiting the City's collection actions against the Indemnitees with respect to the OTR Sign Claims. The Court may rule, as plaintiffs have urged that it should, that the automatic stay applies to these actions under established case law. Alternatively, § 105 of the Bankruptcy Code grants bankruptcy courts independent and separate authority to issue an injunction against the City's threat to eviscerate the reorganization of the Debtor and to continue its action against the Debtor's indemnitees:

> (a) The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). "The large majority of the courts which have considered the question have held that the bankruptcy courts have the power to restrain legal action by creditors of the debtor against non-debtor third parties, in certain circumstances, pursuant to 11 U.S.C. § 105." *In re Ionosphere Clubs, Inc.*, *supra*, 111 B.R. at 434 . Section 105 "empowers the court to enjoin preliminarily a creditor from continuing an action **or enforcing a state court judgment** against a nondebtor prior to confirmation of a plan." *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 624-25 (9th Cir. 1989) (emphasis added), *citing*, *In re A.H. Robins Co.,* 828 F.2d 1023, 1026 (4th Cir.1987), *cert. denied,* 485 U.S. 969 (1988); *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002-03 (4th Cir.) (*Piccinin* ), *cert. denied,* 479 U.S. 876 (1986). Compare, *In re All Seasons Resorts, Inc.*, 79 B.R. 901, 903 (Bankr. C.D. Cal. 1987) (in order to extend automatic stay under

§ 362 to non-debtors, in some instances "debtor must proceed through § 105(a)").

The standards for a temporary restraining order and preliminary injunction are well established, and are made applicable to the bankruptcy context by Bankruptcy Rule 7065. *In re Ionosphere Clubs,* 111 B.R. at 431. "Because injunctions under section 105(a) are authorized by statute they need not comply with traditional requirements of Rule 65. Rather, a bankruptcy court may utilize section 105 of the Code to 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.' *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 429 B.R. 423, 436 (Bankr. S.D.N.Y. 2010) (citations omitted). It is ground enough to extend the automatic stay to non-debtors where doing so "contributes to the debtor's efforts to achieve rehabilitation." *Teachers Ins. & Annuity Ass'n v. Butler*, 803 F.2d 61, 65 (2d Cir.1986). *See generally*, *In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006) *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) (collecting cases). Thus a party seeking a preliminary injunction must show: (1) a likelihood of irreparable harm in the absence of the injunction and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits with a balance of hardships tipping decidedly in the movant's favor. *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

Clearly, the Debtor will suffer irreparable harm in the absence of a temporary restraint against the City. If the various actions taken and threatened by the City subsequent to the Petition Date in violation of the automatic stay are not enjoined, Debtor will be unable to conduct its business or manage its property as debtor-in-possession as contemplated by §§ 1107 and 1108 of the Bankruptcy Code: It will have no more customers; its contracts and its client relationships will be worthless; it creditors will get nothing because Debtor will have nothing to give them.

In terms of balancing the hardships, therefore, Debtor has put forth sufficient facts demonstrating that the City's actions directly affect the estate, would be devastating to the reorganization here and would seriously undermine the prospects of any creditors' claims against the estate from being satisfied. In contrast, the risk to the City, in terms of its ability to collect, of being delayed in its enforcement and other actions concerning the OTR Sign Claims, is minimal. Indemnitees are all real estate management companies; the source of their income and of the City's intended execution is valuable real property in this District, all of which is already encumbered. In fact, a delay occasioned by the success of this reorganization would actually benefit the City's overall ability to collect[2] – as opposed to its ability to achieve its *de facto* goal of eliminating Debtor's business and bringing its legal challenges to the City's conduct to an end.

The other factor the Court must consider is a likelihood of success on the merits. Here, plaintiffs have a clear legal basis for the relief they seek:

> Courts have recognized three (3) circumstances in which the entry of a § 105 injunction restraining creditors from proceeding against non-debtors may be appropriate:
>
> 1. when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor's credit standing will play a significant role in the debtor's attempt to reorganize;
>
> 2. upon a showing that the non-debtor's time, energy and commitment to the debtor are necessary for the formulation of a reorganization plan;
>
> 3. where the relationship between the non-debtor and debtor is such that a finding of liability against the non-debtor would effectively be imputed to the debtor, to the detriment of the estate.

*In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009). Each of these factors has been discussed at length in the fact section here and in the Verified Complaint, and

---

[2] This would be the case only if the relief sought in the Verified Complaint of equitably subordination of the City's claims were not ultimately granted. Plaintiffs' present application for preliminary relief does not address this count of the Verified Complaint, but no waiver of that claim is intended.

18

not only do plaintiffs meet the requirement that one of these scenarios exists here, all three of them do. Therefore, plaintiffs are entitled to the injunction sought and temporary restraining order pending consideration of the injunction application.

## CONCLUSION

For the foregoing reasons, a temporary restraining order should be granted pursuant to §§ 105(a) and 362(a) of the Bankruptcy Code and Rule 7065 of the Bankruptcy Rules, enjoining defendant the City, its agents, servants and those acting in concert therewith, from (i) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other action or proceeding against the Debtor, OTR Media Group, Inc. ("OTR" or "Debtor") and/or each of the plaintiff Indemnitees, that was or could have been commenced before the commencement of the Debtor's chapter 11 case, or to recover a claim against the Debtor and/or the Indemnitees that arose before the commencement of the Debtor's bankruptcy case relating to or in connection with the OTR Sign Claims; (ii) the enforcement against the Debtor or against property of the estate and/or against the Indemnitees or property of the Indemnitees, of a judgment obtained before the commencement of the Debtor's chapter 11 case relating to or in connection with the OTR Sign Claims; (iii) taking any and all acts to obtain possession of property of the Debtor or the Debtor's estate and/or property of the Indemnitees relating to or in connection with the OTR Sign Claims; (iv) taking any and all acts to exercise control over property of the Debtor's estate or property of the Indemnitees relating to or in

connection with the OTR Sign Claims; (v) taking any and all acts which otherwise interfere with the Debtor's rights and obligations as a debtor-in-possession as provided under §§ 1107 and 1108 of the Bankruptcy Code; (vi) for related and further relief.

Dated: New York, New York
September 1, 2011

GOETZ FITZPATRICK LLP

By:/s/ Gary M. Kushner
Gary M. Kushner

Ronald D. Coleman
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtor*

\\goetz-file\rcoleman\clients\otr media\chapter 11\pleadings\mol - adversary complaint otr v. city rev.docx