# GF LLP  GOETZ FITZPATRICK LLP
Attorneys at Law    www.goetzfitz.com
One Penn Plaza, New York, NY 10119 | (T) 212-695-8100 | (F) 212-629-4013

Ronald D. Coleman
Partner
rcoleman@goetzfitz.com

September 8, 2011

**BY EMAIL**

Alan H. Kleinman, Esq.
Senior Counsel
Law Department
The City of New York
100 Church Street
New York, NY  10007-2601

Re:  **In re OTR Media Group, Inc.**

Dear Alan:

In response to yours of yesterday's date, there have been no misrepresentations. You acknowledge that, regarding one plaintiff, Sakele Brothers, there is no question of the existence of a written and broad indemnity obligation running from OTR Media Group, Inc. ("OTR" or the "Debtor") to Sakele Brothers. As to others, a contract of indemnification, no less than any other contract, may be inferred from conduct and its specific terms deduced as well from relevant documentation. That is the case here.

Specifically, here the Debtor is a party to, and has satisfied – for years running and at phenomenal expense – a contractual obligation of defense and indemnification to the landlord plaintiffs in the adversary proceeding, as well as to many other landlords. The proof of this contract is in part the indisputable fact of OTR's direct and sole provision of indemnification. Further proof of the terms of this indemnification contract is found in the documents we transmitted to you. While by their terms these leases and agreements are directly concerned with indemnification by the various OTR-affiliated entities, they also demonstrate the scope of OTR's obligation as the parties understand it, and as OTR has actually undertaken it.

In other words, the indemnification obligation of OTR towards the landlords that entered into leases with the various affiliated entities are ones that the parties have always expected OTR itself to satisfy, which OTR consistently has satisfied. There can be no



dispute that, if OTR did not indemnify the landlords, they would directly look to OTR, and if necessary bring legal claims against OTR, to require it to do so.

For this reason, the language quoted in our papers is entirely germane to the present application. On that note, in your letter you state that the indemnification provision we quoted and characterized as typical in our papers "appears in only two of the agreements." I will take responsibility for any inaccuracy; in light of the time pressure prior to the filing of the adversary proceeding and motion, it is not surprising that a better choice of words to describe this and other specifics of the situation may have been available. It may be appropriate to file amended papers to correct these details in due course. In **substance**, however, the City has not suggested any distinction between the indemnification quoted and the indemnification referred to in the other contracts. They are, in fact, materially identical. More importantly, again, the proof of the nature of this obligation and its terms is found in the fact that OTR has for years provided extensive defense and indemnification of these landlords based on the parties' mutual expectation.

The same would hold true even if OTR were viewed as a mere guarantor of the indemnification obligation of the affiliated OTR entity lessees, especially under these facts. For example, in *Trimec, Inc. v. Zale Corp.*, 150 B.R. 685 (N.D. Ill. 1993), the stay was extended to cover third parties where a municipality had filed a proof of claim in the debtor's bankruptcy proceeding based on claims that were identical to the city's claims against the third parties. The court extended the stay, not necessarily because of the guarantor relationship, but on the ground that "resolution of these identical claims in two different forums risks inconsistent judgments and would waste significant judicial resources. For these reasons, this court agrees with bankruptcy court that a stay is appropriate in this case until the claims resolution process in the bankruptcy proceeding has unfolded or until the stay lifts ..." *Id*. at 687 (internal quotations omitted).

That is all that OTR seeks here. Certainly, as in *Zale*, the City will surely file a proof of claim against OTR as debtor based on the OTR Sign Claims – for notwithstanding the City's present position that OTR is not the lessee with respect to these signs, the City has always cited OTR Media Group, Inc., and no other OAC (even where a sign has been registered to an affiliate entity) as the OAC responsible for the claimed violations. Consistent with this, the City has obtained and sought to enforce judgments for these violations against OTR, not against any of the affiliated entities. And as is well established by now, the City's claims against OTR, whether reduced to judgments or not – and as we have discussed, many are not, whereas others are still subject to various avenues of collateral attack – are in every respect identical to those being asserted against the landlord plaintiffs here. Thus the ruling of *Zale* is apposite to this situation.

If the City has any question whatsoever about the bona fides of OTR's factual assertion – that it is been the *de facto* indemnitor of the plaintiffs here and was well before any prospect of the Chapter 11 petition was filed – please let us know. We will


obtain affidavits of counsel engaged by OTR and attesting to the fact of indemnification provided by OTR, the range of dates on which it has been provided and the amounts spent by OTR in indemnifying the plaintiffs. Either way, discovery in these proceedings will only confirm and amplify these assertions.

Finally, the City should recall not only that it has disregarded form – issuing citations and enforcing judgments against OTR for signs registered to other entities – but that the bankruptcy court ultimately acts to protect the reorganization and the creditors, and that in general it "can and should enjoin suits by third parties against third parties if they threaten to thwart or frustrate the debtor's reorganization efforts." *In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996). In particular, a stay will be issued by a Bankruptcy Court where, as here, "the debtor's good will and its contracts with [the third parties] are so essential to the survival of the debtor that they constitute property of the estate as that term is defined in Bankruptcy Code section 541(a)(1)." *In re Family Health Services, Inc.*, 105 B.R. 937, 943 (Bankr. C.D. Cal. 1989).

This principle could not be more applicable in any case than it is with respect to both the plaintiffs in this action and other landlords. No building in New York would do business with OTR if suits against the landlords relying on OTR's indemnification obligations and arising out of OTR signs were permitted to proceed, and OTR would fail immediately, leaving creditors with nothing.

Having said that, OTR understands that the elimination of OTR is in fact the City's goal. This was certainly amplified in your statement last Friday, on the record before Judge Stong, that OTR is a "criminal enterprise" – a literally false and gravely unethical misrepresentation far exceeding any misleading expression of the facts the City may claim to find in OTR's papers. But OTR's liquidation is **not** the goal of Chapter 11 of the Bankruptcy Code, which governs here, nor would it benefit OTR's creditors. The Court will apply the stay based on those policies, not the irrational and vindictive preferences of the City.

Finally, we are in the process of locating documentation concerning the eighth indemnification agreement, and will get that to you as soon as it becomes available.

                                                Very truly yours,

                                                Ronald D. Coleman

cc:    Gary M. Kushner, Esq.
        Brian Horan, Esq.