MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendant The City of New York*
Attn: Hugh H. Shull III
100 Church Street Rm. 5-233
New York, NY 10007
212.788.0457
hshull@law.nyc.gov

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
In re:                                             :
                                                   :    Chapter 11
OTR MEDIA GROUP INC.,                              :
                                                   :    Case No. 1-11-47385 (ESS)
                        Debtor.                :
                                                   :
-------------------------------------------------------------------- x
OTR MEDIA GROUP, INC. et al.,                      :
                                                   :
                        Plaintiffs,            :    Adv. Pro. No. 1-11-01448
                                                   :
vs.                                                :
                                                   :
THE CITY OF NEW YORK,                              :
                                                   :
                        Defendant.             :
                                                   :
-------------------------------------------------------------------- x

**MEMORANDUM OF LAW IN OPPOSITION TO DEBTOR'S AND NON-DEBTOR
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION BARRING CITY
FROM ENFORCING JUDGMENTS AGAINST NON-DEBTOR PLAINTIFFS**

**PRELIMINARY STATEMENT**

        Contrary to affirmative representations in plaintiffs' moving papers, there is no contract whatsoever between Debtor OTR Media Group, Inc. and all but one of the other plaintiffs. Rather, Debtor apparently set up separate limited liability companies to shield it from the liabilities that would arise from its operations, including claims against it from property

owners that incurred penalties for illegal signs installed and operated by OTR. Debtor now seeks to use this Court as a sword to thwart the enforcement of judgments it sought to shield itself from through the creation of separate legal entities. This relief goes beyond the jurisdiction of the Court, which is limited to OTR Media Group, Inc., the only legal entity that has filed for bankruptcy protection. The relief sought, based on misrepresentations, should also be denied because it is contrary to law, because Debtor has plead no cognizable hardship, and because all of the equities weigh against the relief sought.

## FACTS

**A.     The ECB Penalties Incurred by OTR and the Property Owners**

OTR Media Group, Inc. ("OTR") is an outdoor advertising company that, itself and through a series of LLCs (together with OTR, the "OTR Companies"), installs advertising displays atop or on the sides of buildings in New York City. The OTR Companies lease space from property owners and receive payments from media brokers in exchange for installing advertising copy, as requested by the brokers, within the leased space. Declaration of Brian T. Horan (Sept. 9, 2011) ("Horan Decl."), ¶ 3. In January 2011, OTR was dissolved by proclamation pursuant to N.Y. Tax Law § 203-a, and today, eight months later, it remains dissolved. Horan Decl. ¶ 4.

Many if not all of the signs the OTR Companies have installed are unlawful under the City's Administrative Code, Zoning Resolution, and/or another local law. Since August 2007, citing violations of these laws, the City has issued at least 162 notices of violation ("NOVs") to OTR and at least 217 NOVs to other parties (the "Property Owners"), including all plaintiffs other than OTR (the "Non-Debtor Plaintiffs") – likewise subject to penalties for sign violations – that own buildings on which the OTR Companies installed signs. Horan Decl. ¶ 5.

The NOVs were returnable to the City's Environmental Control Board ("ECB"). Following a hearing before an administrative law judge at ECB – or, in a small handful of cases, upon the respondent's default – decision and orders were issued imposing penalties on OTR and on the Property Owners. The total amount of ECB penalties, unsatisfied to date, is approximately $1.9 million for OTR and $2.8 million for the Property Owners. Horan Decl. ¶ 6. In some cases, the orders imposing such penalties are currently on administrative appeal at ECB. In other cases, following exhaustion of such appeals, if taken, and the satisfaction of other procedural requirements, the orders were entered and docketed as judgments in each of the five counties in New York City. *See* N.Y.C. Charter § 1049-a. The principal amount of judgment debt, unsatisfied to date, against OTR is approximately $517,000. Judgment debt against the Property Owners (the "Third Party Judgments") is roughly $970,000. Horan Decl. ¶ 7.

**B.     OTR's Refusal to Withdraw the Motion Despite Its Misrepresentations to the Court**

It appears that, through their proposed counsel,[1] Plaintiffs have made at least two significant misrepresentations to the Court. First, as the foundation of their legal theory, they have represented that the Non-Debtor Plaintiffs have lease agreements with OTR itself, pursuant to which OTR agreed to indemnify them. *See* Compl. ¶ 4 (Non-Debtor Plaintiffs "are holders of undisputed contractual rights to indemnification from the Debtor for debts directly related to and arising out of the business of Debtor"), ¶ 17 ("Debtor is contractually obligated to provide indemnification to the [Non-Debtor Plaintiffs]"), ¶ 22 (Non-Debtor Plaintiffs "have entered into Outdoor Advertising Leases with Debtor"). In fact, six of the seven Agreements are between

---

[1] Goetz Fitzpatrick, LLP has applied to be counsel for Debtor. In light of the course of the litigation so far, as described more fully herein, and in light of the serious ethical questions raised by its simultaneous representation of Debtor and the Non-Debtor Plaintiffs, who we show are really adverse parties, the City reserves its right to object to the firm's appointment as counsel to Debtor.

3

one of the Non-Debtor Plaintiffs and an OTR-related LLC, not OTR itself. Those LLCs have not sought bankruptcy protection. Horan Decl. ¶ 8.

Second, in arguing that OTR has a robust indemnification obligation, Plaintiffs place considerable emphasis on a contingent indemnification provision (the "Violations Paragraph") dealing specifically with violations. Plaintiffs describe this provision both as "typical," Compl. ¶ 27, and as applicable to the OTR Companies' lease agreements with all of the Non-Debtor Plaintiffs, Pl. Br. at 4. In fact, the Violations Paragraph appears in only two of the seven agreements. Horan Decl. ¶ 13.

By letter dated September 7, 2011, the New York City Law Department (the "Law Department") advised Debtor's proposed counsel of the errors in the court papers and asked counsel to withdraw the adversary complaint and the preliminary injunction motion. Horan Decl. ¶ 9 & Ex. 2. Proposed counsel have answered that letter, Horan Decl. ¶ 10 & Ex. 3, but refused to withdraw or amend the papers. As discussed below, proposed counsel's reasoning in support of proceeding on false papers is fallacious.

Worsening the problem, proposed counsel have argued that the Debtor honors the indemnification agreements. Horan Decl. Ex. 3. Indeed, the Debtor has exhorted that honoring these indemnification agreements is the linchpin to the success of Debtor's business. We show below that this statement is false and in any case cannot support the Plaintiffs' position.

**C.     OTR's Network of LLCs and Their Lease Agreements with Non-Debtor Plaintiffs**

The OTR Companies include OTR itself and an untold number of LLCs, of which the Law Department has identified 30. Horan Decl. ¶ 11 & Ex. 4. Everything about the relationship between the Debtor and the LLCs – ownership, management, legal agreements, compliance with corporate formalities – is unknown. With only one exception, it is the LLCs,

not OTR itself, that leased space from the seven Non-Debtor Plaintiffs for the installation of outdoor advertising displays.[2] The parties to the seven lease agreements (the "Agreements") are as follows:

| Lessor | Lessee |
|---|---|
| 203 17th Realty LLC | OTR Media Group, Inc. |
| Sakele Brothers, LLC | OTR 187 LLC |
| One Maiden Lane Realty, LLC | OTR WSML, LLC[3] |
| 848 Fulton Realty Corp. | Splash Media Group, LLC |
| Ming Sheng Inc. | Splash Media Group, LLC |
| Fotini Theoharidu | OTR13 Carmine, LLC |
| Phillipe Joceline | Splash Media Group, LLC |

Horan Decl. ¶ 12.

Some, but not all, of the Agreements contain limited indemnification provisions. The Agreement between Splash Media Group, LLC and Ming Sheng Inc. contains no such provision. The six other Agreements contain a provision (the "Indemnification Paragraph") stating that the lessee shall indemnify the lessor for "any claim ... made … in connection with [OTR's] performance of its obligations hereunder." Two of the seven Agreements – those between OTR 187 LLC and Sakele Brothers, LLC and between OTR WSML, LLC and One Maiden Lane Realty, LLC – also contain the Violations Paragraph, which concerns violations in connection with the advertising displays. These provisions require that the lessor furnish any NOV to the lessees within 10 days of receipt thereof and provide that if, but only if, that contingency is met, the lessee "shall be solely responsible … to pay any related fines." Horan Decl. ¶ 13.

---

[2] Counsel for the OTR Movants have failed to produce, as promised as part of the standstill agreement among the parties, a lease agreement pertaining to the eighth Non-Debtor Plaintiff, Gotham Broad LLC. Therefore, this discussion is limited to the seven Non-Debtor Plaintiffs whose lease agreements have been produced.

[3] There appear to be at last two layers of unlawful business activity by the OTR Companies: OTR WSML, LLC is not registered with the Secretary of State, as required by New York Limited Liability Company Law § 209.

### D. OTR's Contrary Positions on Its Indemnification Obligations

OTR has taken the position, including in at least one court filing sworn to by its principal, Aharon Noe, that OTR itself is not bound by any indemnification obligation an OTR-related LLC may have under a lease with a Property Owner. In *Soho 54 LLC v. OTR Media Group, Inc.*, Index No. 650789/2011 (Sup. Ct. N.Y. County), OTR and Mr. Noe filed an answer on behalf of themselves but not of co-defendant OTR54 Watts LLC, the entity with whom plaintiff Soho 54 had a license agreement. In that answer, OTR denied that it had the responsibility under the agreement to pay fines imposed against Soho 54 for sign violations or to indemnify Soho 54 for losses incurred as a result of claims made in connection with their performance under the agreement. Horan Decl. Ex. 6, ¶ 5 (denying allegations in the complaint, Horan Decl. Ex. 5, ¶¶ 14-15). The answer proceeded to set forth an affirmative defense asserting that Soho 54

> entered in to the License Agreement with OTR54 Watts LLC with full knowledge that the Answering Defendants [OTR and Mr. Noe] intended to form such entity in order to limit any liability thereunder to such entity and to assure that any and all obligations under such licensing Agreement would be non-recourse to the Answering Defendants.

*Id.* ¶ 32. In *Soho 54 LLC*, OTR apparently let the liable LLC default. Horan Decl. ¶ 15.

OTR likewise disavowed any indemnification obligation in its dealings with Sakele Brothers, LLC, one of the Non-Debtor Plaintiffs, Horan Decl. ¶¶ 16-17, which has a lease agreement not with OTR but with OTR 187 LLC, *id.* ¶ 12. In a letter to Sakele's counsel, OTR stated that there was "no legal basis" for such indemnification, because OTR "did not enter into any agreement with Sakele Brothers." *Id.* ¶¶ 16-17 & Exs. 7-8.

Indeed, even where OTR itself is a party to a lease agreement, it repudiates the indemnification obligation imposed on it under the agreement. *See* Horan Decl. ¶¶ 18-19 & Exs.

9-10. In a federal action brought by Syms Corporation, a property owner that had a license agreement with OTR, OTR took the position that Syms was estopped from seeking indemnification under the agreement because it allegedly knew that the signs on its property were illegal. *Id.* Ex. 10, ¶¶ 30-32.

In its letter of September 8, 2011, Horan Decl. Ex. 3, through its counsel, OTR asserted that OTR itself, by virtue of implied contracts owes and has satisfied an indemnification obligation to the Property Owners. The opposite could not be more true, as the above three examples show.

**E.      The City's Enforcement Efforts and OTR's Bankruptcy Filing**

On August 5, 2011, the Law Department delivered to the Office of the New York City Sheriff executions on docketed judgments against OTR and the Property Owners. The Sheriff proceeded to levy on the executions, seeking to garnish rent payments owed to the Property Owners by their tenants and, in the case of OTR, payments owed to it by its media brokerage clients.[4] On August 10, the Law Department also issued a subpoena *duces tecum* to OTR and a subpoena to Mr. Noe. Pursuant to these subpoenas, documents were to be produced by OTR on or before August 30, and a deposition of Mr. Noe was to take place on September 7. Horan Decl. ¶ 20 & Ex. 11. As recently as August 24, 2011 – one day before OTR filed its bankruptcy petition – OTR's counsel assured the Law Department that the subpoenas were going to be complied with in a timely fashion. Horan Decl. ¶ 21 & Ex. 12.

---

[4] The Law Department learned that certain of the Third Party Judgments were subject to a preexisting stay pending the outcome of litigation before the New York Supreme Court, in which several property owners are challenging aspects of the City's regulation of advertising displays. Accordingly, the Law Department withdrew the executions against any Property Owner owing debt based in part or in whole on such stayed judgments. *See* Kushner Decl. Ex. C.

7

On August 25, OTR filed for bankruptcy protection. In a letter to the Law Department, Kushner Decl. Ex. B, counsel for OTR reversed course and stated that there would be no response by OTR to the City's document demand and that no deposition would go forward as noticed. Horan Decl. ¶ 22. Recognizing that the bankruptcy filing triggered an automatic stay on proceedings against OTR, the Law Department withdrew the execution on the judgments against OTR, instructing the Sheriff that it should cease levying on the execution. During the pendency of the levy, the Sheriff did not garnish any payments owing to OTR. *Id.* ¶ 23.

In their letter of August 25, counsel for OTR also demanded that the City cease efforts to enforce the Third Party Judgments. Kushner Decl. Ex. B. By letter dated August 30, the Law Department responded, showing that the automatic stay does not extend to the Property Owners. Kushner Decl. Ex. D. Plaintiffs proceeded to file the instant adversary proceeding, seeking to enjoin the City from enforcing the Third Party Judgments. Horan Decl. ¶ 24.

## **ARGUMENT**

**I.     THE AUTOMATIC STAY DOES NOT EXTEND TO PLAINTIFF INDEMNITEES**

Black letter law establishes that third parties do not automatically benefit from a stay under 11 U.S.C. § 362. *Queenie, Ltd. v. Nygard International*, 321 F.3d 282, 287 (2d Cir. 2003). It is true that in certain "unusual" circumstances, the automatic stay can be extended to afford protection to third parties who, for instance, have an "absolute" right to indemnification by the debtor. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986); *see Queenie*, 321 F.3d at 287. The Plaintiffs' argument for extension of the automatic stay fails here for multiple reasons.

### A. Debtor Has No Contractual Relationship With – Let Alone an Absolute Indemnification Obligation to – Six of the Seven Non-Debtor Plaintiffs

The limited protection the automatic stay affords indemnitees in some circumstances is not available to at least six of the Non-Debtor Plaintiffs, because they do not have *any* contractual relationship with the Debtor, let alone one sufficiently robust to warrant an extension of the stay. These Non-Debtor Plaintiffs entered into the Agreements with separate LLCs, not with OTR itself. Because the LLCs have not filed for bankruptcy, there is no automatic stay on proceedings against them. Accordingly, no automatic stay extends to proceedings against their indemnitees. Therefore, assuming *arguendo* that the LLCs have an absolute obligation to indemnify these Non-Debtor Plaintiffs – which, as explained below, they do not – these Non-Debtor Plaintiffs are not entitled to the protection of the § 362 stay.

OTR's newly asserted position that it has an indemnification obligation pursuant to a series of implied contracts with numerous property owners is wrong as a matter of both law and fact. The Debtor's theory that the indemnity obligation may be "inferred" runs up against the rule of construction in New York to the opposite. As the New York Court of Appeals has noted repeatedly, "When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed." *Hooper Associates, Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989). Furthermore, Debtor's position that an indemnification agreement can be inferred with each property owner based on a course of conduct with other property owners is nonsensical. However OTR might act as to one property owner cannot form the basis of contractual terms with a second or third property owner. Decisively here, even if some inferred indemnification could be established, it is far, far from the absolute indemnity required to meet the exception to the stay applying only to the Debtor.

Moreover, "a promise can be implied only where [the court] may rightfully assume that it would have been made if attention had been drawn to it." *Long Island Railroad Co. v. Northville Industries Corp.*, 41 N.Y.2d 455, 462 (1977). Of course, attention *was* drawn to the issue of indemnification in connection with claims arising out of the installation of the signs, hence the inclusion of the Indemnification Paragraph, and in some cases the Violations Paragraph, in the Agreements entered into by OTR's numerous LLCs. It is particularly disingenuous for OTR to take the position that it has an implied indemnification obligation where it has expressly denied allegations to that effect made in repeatedly by property owners seeking indemnification. Horan Decl. ¶¶ 14-19 & Exs. 5-10. Indeed, OTR's posture in those cases strongly suggests that the very purpose of leasing advertising space through separate LLCs, rather than through OTR itself, is for OTR to shield itself from liability for indemnification and other claims by the lessors. It would be incorrect to "assume," as the Court must to find an implied contract, that OTR intended to indemnify the property owners, where doing so would have undermined the OTR Companies' corporate structure.

**B.  Even Where OTR Has an Indemnification Obligation, It Is Not Absolute, and in Any Case, the City's Judgment Enforcement Will Not Affect Those Obligations**

**1.  Enforcement Will Have No Effect on Any Indemnification Obligations OTR Might Have**

Dispositively, regardless of the existence or scope of any indemnification obligation incurred by the Debtor, the property owners have no liability to sustain in any pending action or proceeding. Quite the contrary, the Third Party Judgments are already entered, and those judgments are entered solely in the name of the property owners. Enforcement of those judgments will not increase OTR's liabilities.

The Fourth Circuit's analysis in *A.H. Robins* is instructive. For a stay to extend to a non-bankrupt party,

> there must be unusual circumstances and certainly something more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties. This unusual situation, it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case.

788 F.2d at 999 (quotation marks omitted). The limited nature of these unusual exceptions in the Second Circuit is discussed at length in *Gucci, America, Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 441 (S.D.N.Y. 2004). As that case makes clear, there must be an unusual identity of interests between the debtor and the indemnitees before the stay will extend. The rarity of an extension of the stay to indemnitees is illustrated in *In re North Star Contracting Corp.*, 125 B.R. 368, 371 (S.D.N.Y. 1991). There, the stay was extended to the president of the debtor, who was a principal player in the corporation's reorganization process. Moreover, the bankruptcy court found that there was not a bona fide separate cause of action against the indemnitees and that the state court action was commenced solely to circumvent the automatic stay. To put it mildly, this case shares nothing in common with *North Star*.

The rationale of staying the liability landscape for the Debtor simply does not apply here. Judgments against the property owners are already in place. Enforcement of those judgments will not change whatever indemnification rights the property owner has against OTR. Indeed, if the property owner is entitled to indemnification, such a claim arose with the imposition of the penalty or fine. The ripeness of any property owner's indemnification claim

11

depends upon the "intentions of the parties, as manifested in the indemnification agreement viewed in its entirety." *American Motorists Insurance Co. v. United Furnace Co.*, 876 F.2d 293, 299 (2d Cir. 1989); *see also Maryland Casualty Co. v. Straubinger*, 19 A.D.2d 26, 29 (4th Dep't 1963); 23 *N.Y. Jur. 2d*, Contribution, Indemnity, and Subrogation § 131. Here, where the OTR Companies have agreed in their leases with the property owners to clear violations and pay related fines, the property owners' rights under the leases accrued long ago. Thus, enforcement of the Third Party Judgments will not impact the Debtor's estate.

Plaintiffs, Pl. Br. at 14-15, attempt to obscure the applicable statutes by arguing that the plain language of the Code's automatic stay provision applies to debtors and non-debtors alike. To the contrary, the Code prohibits "any act to … enforce a lien *against property of the estate*," 11 U.S.C. § 362(a)(4) (emphasis added), and "any act to collect … a claim *against the debtor*," *id.* § 362(a)(6) (emphasis added). Plaintiffs' proffer of *In re Grede Foundries, Inc.*, 2011 U.S. App. LEXIS 14284 (7th Cir. July 13, 2011), continues to mask the reality here. *In re Grede* held that the automatic stay barred a municipal utility from sending delinquency notices to the debtor and reporting the delinquencies to the city. This is a straightforward application of the Code's prohibition on proceedings against the debtor itself, not its indemnitees.

### 2. The Indemnification Agreements Are Not Absolute and Therefore Are Not Sufficiently Broad to Warrant Extension of the Stay

Even if enforcement of the Third Party Judgments, already docketed, is considered a threat sufficiently immediate and adverse to warrant extending the § 362 stay – and setting aside the distinction between the indemnification obligations of OTR itself and those of separate LLCs – an extension of the stay is inappropriate because the OTR Companies' Agreements with the Non-Debtor Plaintiffs do not provide an "absolute" right of indemnity. *See*

*A.H. Robins*, 788 F.2d at 999; *see also In re Chateaugay Corp.*, 76 B.R. 945, 950 (S.D.N.Y. 1987). The Agreement between Splash Media Group, LLC and Ming Sheng Inc. contains no indemnification provision at all. The other six Agreements contain the Indemnification Paragraph, providing for indemnification of the property owners for losses arising from "any claim ... made … in connection with [the relevant OTR-related company's] *performance of its obligations* hereunder." Horan Decl. ¶ 13; *see* Pl. Br. at 4 (emphasis added). Because the OTR Companies were not obligated to install signs under these lease agreements, and expressly reserved the right to remove any installed sign at any time, *see* Pl. Br. at 4 (quoting language from agreement), the ECB penalties are arguably not claims made in connection with the OTR Companies' performance of their "obligations."[5] Therefore, these provisions do not amount to the kind of comprehensive indemnification arrangement that constitutes "unusual circumstances" warranting an extension of the automatic stay to proceedings against the third party property owners. *Wolf Financial Group, Inc. v. Hughes Construction Co. (In re Wolf Financial Group, Inc.)*, 1994 Bankr. LEXIS 2350, at *17-18 (Bankr. S.D.N.Y. Dec. 15, 1994).

Nor is the Violations Paragraph, which appears in only two of the Agreements, sufficiently straightforward to support the "unusual" extension of the automatic stay. This provision states that "if" the NOV is provided within such time, the lessees "shall be solely responsible … to pay any related fines." Horan Decl. ¶ 13. That is, OTR's liability for any penalties arose only if the property owner forwarded the notice of violation to OTR within the prescribed time period. Because the provision is contingent, not "absolute," it cannot serve as the basis for an extension of the § 362 stay. *Wolf*, 1994 Bankr. LEXIS 2340, at *18.

---

[5] This construction does not render the indemnification provision a nullity. OTR had affirmative obligations under the lease agreements, including to cure any damage to the premises, that would come within the terms of the indemnification provision so construed.

13

OTR's proclamations that it scrupulously honors its indemnification obligations, and that to do so is essential to the viability of its business, is belied by papers and related correspondence – including a court filing sworn to by Mr. Noe – in the *Soho 54*, *Syms*, and *Sakele Brothers* cases. *See* Horan Decl. ¶¶ 14-19 & Exs. 5-10. The Court should not countenance OTR's attempt to wield the sword of affirmative relief herein after it has shielded itself using myriad LLCs in its business operations – and litigation posture – up to this point. Simply put, OTR "cannot have it both ways." *In re Beck Industries, Inc.*, 479 F.2d 410, 418 (2d Cir. 1973) (internal quotation marks omitted).

C. **Enforcement of the Judgments Against the Non-Debtor Plaintiffs Poses No Immediate Adverse Economic Consequences or Threat to Reorganization**

1. **OTR Lacks the Authority to Reorganize**

OTR is a dissolved corporation. Horan Decl. ¶ 4; *see* N.Y. Tax Law § 203-a. Therefore, it may not carry on any business "except for the purpose of winding up its affairs," N.Y. BCL § 1005(a)(1), and is affirmatively required to "proceed to wind up affairs" by conducting "all … acts appropriate to liquidate its business," *id.* § 1005(a)(2). Only upon payment of all state corporation taxes and fees, plus penalties and interest, can OTR annul the proclamation of its dissolution and recover the rights it previously had. N.Y. Tax Law § 203-a(7). Plaintiffs point to *In re Cedar Tide Corp.*, 859 F.2d 1127, 1132-33 (2d Cir. 1988), for the proposition that a dissolved corporation can seek reorganization under Chapter 11 notwithstanding its dissolution. *Cedar Tide* holds only that the Bankruptcy Court had personal jurisdiction over the debtor. Significantly, the court there noted that the debtor paid its back taxes after filing for Chapter 11 protection. *Id.* at 1128. Subsequent cases applying *Cedar Tide* have focused on the "easy reinstatement" available under New York law, *C-TC 9th Avenue*

14

*Partnership v. Norton Co. (In re C-TC 9th Avenue Partnership)*, 113 F.3d 1304, 1309 (2d Cir. 1997), and evidence that the debtor intended "promptly" to seek such reinstatement, *In re Lizeric Realty Corp.*, 188 B.R. 499, 503 (Bankr. S.D.N.Y. 1995). Here, Debtor has been dissolved for eight months, and its proposed counsel has advised the Court that because substantial State taxes are owing, there is no prospect for an "easy" or expeditious reinstatement.

In cases decided after *Cedar Tide*, New York courts have underscored the narrow scope of permissible activities in which a dissolved corporation may engage. A dissolved corporation can bring an action only if it is related to the winding down of its affairs, *Moran Enterprises, Inc. v. Hurst*, 66 A.D.3d 972 (2d Dep't 2009), not if its concern is to obtain new business. In particular, procuring new business leases, which the Debtor here puts at the core of its irreparable injury argument, was found to be *ultra vires* in *Pennsylvania Building Co. v. Schaub*, 14 A.D.3d 365 (1st Dep't 2005). *See also Brandes Meat Corp. v. Cromer*, 146 A.D.2d 666 (2d Dep't 1989). These post-Cedar-Tide cases undermine or limit the holding because the debtor's powers are defined by State law. As noted in the context of New York State law limitations on business entities, "the debtor cannot escape a state law restriction on continuing in business by filing bankruptcy." *In re Hagerstown Fiber Ltd. Partnership*, 226 B.R. 353, 357 (Bankr. S.D.N.Y. 1998), *citing Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Building Corp.*, 302 U.S. 120, 129 (1937).

### 2. There Will Be No Immediate Adverse Economic Consequence to the Debtor's Estate

As the Second Circuit observed, "The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." *Queenie, Ltd. v. Nygard International*, 321 F.3d

15

282, 287 (2d Cir. 2003). Here, enforcement of the Third Party Judgments against the property owners will not only lack "an immediate adverse economic consequence for the debtor's estate," it will have no impact whatsoever on Debtor's estate because if OTR is liable to the Non-Debtor Plaintiffs, it was liable upon the imposition of the fine.

Plaintiffs sensationally assert that in the absence of an injunction against enforcement of the Third Party Judgments, the Debtor will be unable to conduct its business because "[i]t will have no more customers; its contracts and its client relationships will be worthless; its creditors will get nothing because Debtor will have nothing to give them." Pl. Br. at 17. In fact, most or all of the signs that had been installed on the Non-Debtor Plaintiffs' properties are down. Thus, there is no current business relationship between OTR and such Non-Debtor Plaintiffs, and OTR can have no revenue in connection with the properties they own. Horan Decl. ¶ 12. Indeed, such signs were illegal, and therefore the revenue they generated would not be a proper subject of Court-ordered protection. Horan Decl. ¶ 5. Even more fundamental than the nonexistence of ongoing business relations are two additional facts. First, OTR itself does not have a contractual relationship to six of the seven Non-Debtor Plaintiffs. Horan Decl. ¶ 8. Second, OTR never receives income from the owners of the property where it leases space – rather, those property owners receive income from OTR. Horan Decl. ¶ 3. Accordingly, the City's enforcement of the Third Party Judgments will not affect OTR's income. Likewise, there is no threat of reputational injury, as OTR has already repudiated its indemnification obligations publicly in court papers.

Enforcement of the Third Party Judgments against the Non-Debtor Plaintiffs poses no threat to a reorganization, assuming one were possible. Unlike many of the cases relied upon by OTR, in which the stay was extended to officers of the debtor sued as an end run around

16

the stay, here, the City's enforcement is against wholly separate property owners. The City's effort to collect on the Third Party Judgments will impose no "distract[ion]" on "key personnel" in OTR's reorganization. *See In re Lomas Financial Corp.*, 117 B.R. 64, 66 (S.D.N.Y. 1990). Arguing that judgment enforcement against wholly distinct – and adverse – entities would distract OTR's principals relies on pure speculation, which cannot be grounds for an extension of the automatic stay.

Moreover, the purpose of this bankruptcy filing, and the availability of injunctive relief to this Debtor, should be examined in the context of the nondischargeability of the major debt of Debtor: penalties imposed by ECB for the sign violations. These penalties are nondischargeable under Section 523 of the Code, which provides that:

> § 523. Exceptions to discharge
>
> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt –
> …
>
> (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss ….

11 U.S.C. § 523. The ECB penalties fit squarely into the statutory exception:

> There are four inquiries that must be made in determining whether a debt is nondischargeable under section 523(a)(7). To be nondischargeable, the debt must (1) arise as a punishment or sanction for some type of wrongdoing by the debtor 18 and not merely be an enhanced monetary remedy for what is essentially a breach of contract; (2) not be compensation for actual pecuniary loss; (3) be payable to a governmental unit; 21 and (4) be for the benefit of a governmental unit.

4-523 Collier on Bankruptcy P 523.13. All four conditions are met here. *See* New York City Charter §1049-a. Because the penalties cannot be discharged, OTR's representation that it

17

intends to reorganize is dubious, as OTR will continue to owe millions to the City even if it emerges from this bankruptcy.

## II. THE COURT SHOULD NOT GRANT AN INJUNCTION UNDER § 105 BECAUSE THERE IS NO THREAT OF IRREPARABLE HARM TO OTR'S ESTATE OR ITS ABILITY TO REORGANIZE

A discretionary stay under § 105 may issue "to protect the debtor's assets from dissipation and its employees from distraction." *In re Lomas Financial Corp.*, 932 F.2d 147, 149 (2d Cir. 1991). An injunction may issue only upon a showing of (1) irreparable harm and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardship tipping decidedly toward the movant. *Grimes v. Green Point Savings Bank*, 147 B.R. 307, 313-14 (Bankr. E.D.N.Y. 1992). In particular, as the case Plaintiffs rely on states, Pl. Br. at 18, "there must be the danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize." *In re Saxby's Coffee Worldwide, LLC*, 440 B.R. 369, 379 (Bankr. E.D. Pa. 2009). The movant "bears the burden of demonstrating that such a stay is justified." *Lightbody v. Girlie's Ambulette Service Inc.*, 2010 U.S. Dist. LEXIS 88862, at *6-7 (E.D.N.Y. Aug. 27, 2010).

OTR has made no showing that the City's enforcement efforts against the Non-Debtor Plaintiffs "threaten to thwart or frustrate" OTR's reorganization efforts. *Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006). Indeed, as discussed above, OTR lacks the authority to reorganize. Moreover, in making the conclusory assertion that enforcement of the Third Party Judgments would threaten its customers, contracts, and client relationships, Pl. Br. at 17, OTR ignores the fundamental truths that it has no ongoing business relationship with most or all of the Non-Debtor Plaintiffs, and that it only ever had a legal relationship with one of them.

The basic fact remains that OTR is trying to have it both ways, frustrating the City's enforcement of the Third Party Judgments through bankruptcy while itself avoiding liability through the liberal use of LLCs. Because a § 105 stay is not necessary to facilitate any reorganization – if such a reorganization is authorized by law and feasible in fact – the Court should not exercise its equitable powers to protect the Non-Debtor Plaintiffs.

**III.　IF THE COURT WERE TO GRANT A PRELIMINARY INJUNCTION, IT SHOULD CONDITION IT UPON THE FURNISHING OF SECURITY**

As explained above, the harm to Debtor of enforcing the Third Party Judgments is speculative at best. On the other hand, any stay will interfere with – and may defeat – the City's ability to collect on judgments owed to it. The City's judgments likely have lower priority than existing mortgages and other encumbrances against the property. It is simply unknown whether these properties are solvent or under water. Even if the properties are solvent, if the City has to enforce its judgment directly against the real property, it must undergo the expenses of a Sheriff's sale or a foreclosure proceeding.

Under Bankruptcy Rule 7065, applicable to this adversary proceeding, F. R. Civ. P. Rule 65 applies, which requires the posting of security for a preliminary injunction to issue. Although Rule 7065 allows a court to excuse the requirement on the application of the debtor, the City urges that based on the facts here, the requirement not be waived. In any case, the bond is mandatory for the Non-Debtor Plaintiffs. Plaintiffs have not offered a bond, and their application for a preliminary injunction should be denied or conditioned upon furnishing a bond adequate to protect the City's interests here.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for a preliminary injunction should be denied.

Dated: New York, New York
September 9, 2011

                                        MICHAEL A. CARDOZO
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendant The City of New York*

By: _____
                                          Alan H. Kleinman
                                          Assistant Corporation Counsel
                                          New York City Law Department
                                          100 Church Street, Rm. 20-100
                                          New York, New York 10007
                                          212.788.1012

On the brief:
    Brian T. Horan (awaiting admission to the Eastern District of New York)