In re Cedar Tide Corp., 859 F.2d 1127 (1988)

18 Bankr.Ct.Dec. 843, Bankr. L. Rep. P 72,480

859 F.2d 1127
United States Court of Appeals,
Second Circuit.

In re CEDAR TIDE CORPORATION, Debtor.
CEDAR TIDE CORPORATION, Plaintiff-Appellee,
v.
CHANDLER'S COVE INN, LTD.,
Defendant-Appellant.

No. 675, Docket 87-5035.Argued Feb. 4,
1988.Decided Oct. 17, 1988.

Appeal was taken from an order of the United States District Court for the Eastern District of New York, Jack B. Weinstein, Chief Judge, dismissing on procedural grounds and on the merits an appeal from an order of the Bankruptcy Court, Cecelia H. Goetz, J. The bankruptcy order voided a postpetition transfer of property from a Chapter 11 debtor. The Court of Appeals, Winter, Circuit Judge, held that: (1) Court of Appeals would reach merits of appeal, even though attorney who filed and perfected original appeal from bankruptcy court was not authorized to do so by interim Chapter 7 trustee; (2) bankruptcy court had jurisdiction over Chapter 11 petition filed by corporation previously dissolved by New York State for nonpayment of corporate franchise taxes; and (3) bankruptcy court did not err in nullifying postpetition transfer of substantially all the assets of a Chapter 11 debtor-in-possession, where the transfer was made without notice and a hearing as required by statute.

Affirmed.

West Headnotes (3)

1    **Bankruptcy**
     ⟜Right of Review and Persons Entitled;
     Parties; Waiver or Estoppel

     Court of Appeals would reach merits of appeal from an order of the district court dismissing on procedural grounds and on the merits an appeal from an order of the bankruptcy court, even though attorney who filed and perfected original appeal from bankruptcy court was not authorized to do so by interim Chapter 7 trustee, where trustee never repudiated the appeal, and acquiesced in it prior to his automatic dismissal upon conversion of the case to Chapter 11;

moreover, debtor repeatedly moved for a nunc pro tunc order approving attorney's retention as special counsel so that he might argue appeal. Bankr.Code, 11 U.S.C.A. §§ 701 et seq., 1101 et seq.

8 Cases that cite this headnote

2    **Bankruptcy**
     ⟜Corporations

     Bankruptcy court had jurisdiction over Chapter 11 petition filed by corporation previously dissolved by New York State for nonpayment of corporate franchise taxes. Bankr.Code, 11 U.S.C.A. § 1101 et seq.; N.Y.McKinney's Tax Law § 203-a, subd. 3; N.Y.McKinney's Business Corporation Law § 1006(a).

     22 Cases that cite this headnote

3    **Bankruptcy**
     ⟜Setting Aside

     Bankruptcy court did not err in nullifying postpetition transfer of substantially all the assets of a Chapter 11 debtor-in-possession, where the transfer was made without notice and a hearing as required by statute. Bankr.Code, 11 U.S.C.A. § 363(b)(1).

     5 Cases that cite this headnote

**Attorneys and Law Firms**

*1127 Charles E. Morrison, New York City, for defendant-appellant.

Robert S. Arbeit, Hauppauge, N.Y. (Pinks, Brooks, Stern & Arbeit, Hauppauge, N.Y., of counsel), for plaintiff-appellee-debtor.

Before TIMBERS, WINTER and ALTIMARI, Circuit Judges.

**Opinion**

WINTER, Circuit Judge:

The burgeoning record in this bankruptcy case includes an

extraordinary number of unresolved contradictions, apparent obfuscations, and unanswered allegations of fraud amounting to criminal conduct by and against both parties. Difficult as it is to piece together a coherent tale from the record, traces of serious misconduct appear, although doubt surrounds who is responsible. Nevertheless, for purposes of this appeal, we need dispose of only two comparatively narrow questions: (i) whether the original appeal from the bankruptcy court was properly before the district court *1128 despite the fact that the attorney who filed and perfected it had not been authorized to do so; and (ii) whether the federal courts have jurisdiction over a Chapter 11 petition filed by a corporation previously dissolved by New York State for nonpayment of franchise taxes. Because we answer these questions in the affirmative, we conclude that the bankruptcy court did not err in granting summary judgment nullifying the post-petition transfer of substantially all the assets of Cedar Tide Corporation ("Cedar Tide"), a Chapter 11 debtor-in-possession, to Chandler's Cove Inn, Ltd. ("CCI") where the transfer was made without notice and a hearing as required by 11 U.S.C. § 363(b)(1) (1982 & Supp. IV 1986).

## BACKGROUND

We note at the outset that the record in this appeal contains serious lacunae, some of which may reflect grave improprieties. Nevertheless, the record is sufficient to allow us to resolve the merits of the appeal.

The underlying dispute concerns forty largely undeveloped waterfront acres in Suffolk County, New York ("the Land"). The Land, which is apparently worth at least one and perhaps as much as six million dollars, has been owned, directly or indirectly, for about fifty years by Elizabeth Chandler, now approximately ninety years old. From 1969 onward, the record owner of the Land was Cedar Tide, a corporation formed in that year with the Land as its main, if not sole, asset. Although Cedar Tide's stock may never have been issued, it apparently was intended that Elizabeth would be the majority stockholder and her son Frederick the minority stockholder. At least we know of nothing indicating that anyone else has an ownership interest. Cedar Tide was dissolved by New York State in December 1979 for nonpayment of franchise taxes.

At some point, Cedar Tide borrowed money from The Mint Factors, Inc. with the Land as security. The loan terms were disputed in a state court action in which a stipulation of settlement was entered in 1983. In 1984, The Mint Factors brought a state court action against Cedar Tide and Elizabeth Chandler to enforce the

settlement, and, in the alternative, to foreclose on the Land. In an opinion dated October 11, 1985, the state court ruled that The Mint Factors was entitled to specific performance of the stipulated settlement. However, the state court judgment appears never to have been carried out. In the wake of this attempt by The Mint Factors to foreclose on the Land, Cedar Tide filed for reorganization under Chapter 11 on December 10, 1985.

Frederick Chandler authorized the December 1985 Chapter 11 filing, alleging that he was a director and fifty percent shareholder of Cedar Tide Corporation, and that he had been authorized to file the petition. Frederick's claim of fifty percent ownership contradicted testimony given in the state court in August 1985 by Elizabeth, who testified that there were 200 shares in Cedar Tide outstanding and that she owned 125 and her son Frederick owned 75. The filing did not mention the dissolution of Cedar Tide. Harold Spivack, the attorney who filed the petition, attests that he did not know that the corporation had been dissolved at the time of filing, and that he discovered this fact only at the end of January 1986. After the Chapter 11 filing, Cedar Tide paid its back taxes under an amnesty program. The corporation received an official notice of reinstatement in February 1986 and appears to have been formally reinstated no later than May 1986.

CCI, the other claimant to the Land in the present proceeding, did not file its certificate of incorporation until January 3, 1986, some weeks after Cedar Tide's Chapter 11 filing. A series of transactions followed that incorporation. On January 18, 1986, Elizabeth transferred all of her interest in Cedar Tide and the Land to Frederick. On March 24, 1986, Stanley Kommisar, as vice-president of Cedar Tide, executed a deed transferring the Land to CCI. This may have been a cameo performance because Kommisar is otherwise unknown. Sidney Mintz, an attorney, witnessed the deed and apparently took possession of the corporate records of both Cedar Tide and *1129 CCI. A Charlotte Mintz is a principal of The Mint Factors, but whether she is related to Sidney is not reflected in the record. The deed was registered with the Suffolk County Clerk on March 27, 1986.

On April 16, 1986, Elizabeth Chandler and Cedar Tide filed an action in New York State court seeking to set aside the deed transferring the Land to CCI. In alleging that she was the sole shareholder in Cedar Tide, she failed to mention the transfer of all of her interest to Frederick in January or her earlier testimony that Frederick was either a minority or fifty percent shareholder. The complaint also neglected to mention the fact that Cedar Tide already had a Chapter 11 petition pending in the bankruptcy court. Mintz appeared for CCI. On May 22, 1986, while its state court action was still pending, Cedar Tide filed an adversary proceeding in bankruptcy court seeking to set

aside the March 24, 1986 deed transferring the property to CCI. Judge Goetz issued a temporary restraining order enjoining CCI from transferring the property on May 23, 1986. CCI, represented by attorney Douglas A. Durnin, moved to dismiss the adversary proceeding on the grounds that: (1) the bankruptcy court lacked jurisdiction because Cedar Tide was a dissolved corporation when it filed Chapter 11; (2) Cedar Tide lacked authority to bring the action because it was controlled by CCI, which possessed seventy-five percent of its stock; (3) Cedar Tide's filings were insufficient as a matter of law; and (4) the pending state action precluded any transfer of the property in any event, so no injunction would lie.

The bankruptcy court held a hearing on Cedar Tide's motion for a preliminary injunction and CCI's motion to dismiss on June 4, 1986. No one at the hearing had access to the corporate records of either Cedar Tide or CCI, which apparently were in the possession of Sidney Mintz. Robert S. Arbeit, Cedar Tide's counsel, admitted that he did not know exactly what was going on (a refreshing touch of candor in a record shrouded in deliberate or negligent obfuscation), including what Frederick's interest was, but he indicated that Frederick and Elizabeth were willing to swear that they had not transferred the Land to anyone or authorized its transfer (although the complaint alleged lack of authority only upon "information and belief"). Durnin appeared for CCI, and indicated that Shari Scott, a second-grade school teacher and part-time real estate broker, was a seventy-five percent owner of CCI. Frederick apparently was the owner of the remaining twenty-five percent interest in the company and its agent for service of process. Shari's husband Paul Scott and her adult daughter Susan Scott Fortuna were also somehow involved with the company.

Durnin indicated that he believed that Frederick was the sole owner of Cedar Tide and had authorized the transfer of the Land to CCI. He did not dispute that Cedar Tide was in Chapter 11 when the transfer took place or that Cedar Tide continued as debtor-in-possession at that time. He claimed that Frederick received consideration for the transfer but produced only an unsigned memorandum between Frederick and Shari Scott. Judge Goetz granted the injunction and denied CCI's motion to dismiss on the grounds that a dissolved New York corporation may seek Chapter 11 protection.1

Cedar Tide moved for summary judgment on September 9, 1986. On September 26, 1986, while that motion was pending before Judge Goetz, CCI, whose sole asset appears to have been its claim to the Land, filed a voluntary Chapter 7 petition in the United States Bankruptcy Court in the Southern District of New York. The case was assigned to Judge Buschman, who appointed Isaac Nutovic interim trustee for CCI. On September 30, 1986, Cedar Tide's motion for summary judgment was argued before Judge Goetz, and Durnin

appeared for CCI. After that hearing, Judge Goetz granted summary judgment for Cedar Tide. That judgment was entered on October 16, 1986. Durnin filed a notice of appeal *1130 on October 26, 1986. Durnin claims not to have known of CCI's filing of the Chapter 7 petition at the time he filed the notice of appeal and claims to have discovered this fact only after he received a creditor's notice. Nevertheless, he perfected the appeal in March 1987.

CCI's Chapter 7 case was transferred from the Southern District to Judge Goetz in the Eastern District in December 1986. On January 6, 1987 Robert L. Pryor was appointed to replace Nutovic as interim trustee. Neither he nor Nutovic ever filed or authorized the filing of an appeal from Judge Goetz's grant of summary judgment, although Pryor did request by letter an extension of the date scheduled for oral argument in the district court so that he could inform himself about the case. While later statements by Pryor indicate that he never believed that the appeal had merit, he did nothing to stop Durnin from perfecting it. Meanwhile, it appears that Pryor's efforts to learn the underlying facts were stymied by CCI's purported principals. Mintz refused to cooperate with him, and the Scotts were unforthcoming to say the least. CCI repeatedly petitioned the bankruptcy court for Pryor's removal. At one point Pryor spoke to Lisa Scott, Paul and Shari's 13-year old daughter, on the phone, in an effort to locate Susan Scott Fortuna, who had been designated to provide corporate information. After this ten-minute phone call, Lisa quickly got into the spirit of things and filed a $10,000,000 suit against Pryor in state court for intentional infliction of emotional distress. Pryor answered and counterclaimed and then removed the suit to the bankruptcy court.

On April 24, 1987, while Durnin's appeal was pending, CCI converted its case to a Chapter 11. Pryor was automatically discharged. Paul Scott, on behalf of CCI, then moved for a *nunc pro tunc* retention order for Durnin. In a Memorandum Decision and Order dated May 28, 1987, Judge Goetz denied the petition. In the meantime, on May 12, 1987, Mintz had been authorized to act as general counsel for CCI and moved in the bankruptcy court to reargue the denial of Durnin's appointment.2

According to Mintz and the docket sheet for CCI's case in the bankruptcy court (which is not a part of the record on appeal), the motion to reargue the denial of the *nunc pro tunc* retention of Durnin was granted by Judge Goetz, and on June 22, 1987, Judge Goetz reversed herself and authorized Durnin's retention. Judge Goetz ordered CCI to submit an order to that effect. According to Mintz, the order was submitted on June 29, 1987.

On that day, however, the docket sheet indicates that Judge Goetz withdrew from all matters relating to Cedar

Tide and CCI. The case was then transferred to Judge Holland, who already had been assigned to other matters relating to the two debtors. Durnin attests that on July 14, 1987, he was informed over the telephone by one "Shafferman" in the bankruptcy court that the retention order had been signed by Judge Holland the previous day. Judge Holland, however, never signed the retention order. Durnin argued the appeal before then Chief Judge Weinstein on July 15, 1987. Judge Weinstein dismissed the appeal without opinion "on procedural grounds and on the merits" on August 6, 1987. A transcript of the hearing before him is not part of the record on appeal.

## DISCUSSION

### A. *The District Court's Dismissal on Procedural Grounds*

**1** Because Judge Weinstein dismissed the appeal both "on procedural grounds and on the merits," the threshold question is whether the appeal was properly before the district court. As with everything else in this case, the resolution of this depends upon the unraveling of a web of procedural and substantive irregularities and omissions.

*\*1131* The notice of appeal to the district court in this case was filed and perfected by an attorney, Durnin, who had not been authorized to do so by the interim Chapter 7 trustee who has full authority to represent the estate and in whom all of the bankrupt's claims had vested. *See 4 Collier on Bankruptcy* § 541.02 at 541-15 (L. King ed. 15th ed. 1988); *cf. In re Teltronics Servs.,* 762 F.2d 185, 189 (2d Cir.1985) (vesting in trustee of all claims of a corporate bankrupt "elementary" under old Bankruptcy Act). Durnin claims not to have known that his pre-petition client was in bankruptcy. He also claims that he did not seek prior court approval to perfect the appeal after he learned of the existence of the Chapter 7 filing because he did not know that such permission was required. However, Pryor, the interim Chapter 7 trustee for CCI after the case was transferred to the Eastern District, was aware of the existence of the appeal and even requested a 45-day extension of the date of argument so that he might investigate its merit. It is clear, then, that Pryor never repudiated Durnin's appeal, and appears to have at least acquiesced in it prior to his automatic dismissal upon conversion of the case to Chapter 11. His acquiescence is significant. *Cf. In re Martin-Trigona,* 760 F.2d 1334, 1341 (2d Cir.1985) (even if person who filed voluntary Chapter 11 petition had no authority to do so, corporation and its principal who acquiesced and ratified act by their ongoing participation in proceedings bound by act). After CCI's petition was converted to Chapter 11, CCI as debtor-in-possession repeatedly moved for a *nunc*

*pro tunc* order approving Durnin's retention as special counsel so that he might argue the appeal. While Judge Goetz initially denied CCI's motion, she apparently changed her mind just prior to recusing herself from the case and ordered CCI to submit an order authorizing Durnin's *nunc pro tunc* retention. Unfortunately, the order Judge Goetz asked CCI to submit was never signed by Judge Holland. Nevertheless, Durnin did argue the appeal before Judge Weinstein, who reached the merits. In these highly unusual (and hopefully not to be repeated) circumstances, we think that Pryor's acquiescence in the pendency of the appeal, the eagerness of CCI to have Durnin argue the appeal, Judge Goetz's docketed decision to grant a *nunc pro tunc* special retention order, and Judge Weinstein's dismissal of it on the merits as well as upon procedural grounds all support the conclusion that we should reach the merits of the case. *Cf. Brown v. General Motors Corp.,* 722 F.2d 1009, 1011 (2d Cir.1983) (reluctantly reaching merits of discharged attorney's claim on his own behalf that he was entitled to fees under the Civil Rights Attorney's Fees Awards Act despite fact that attorney lacked standing because matter outside record indicated that party to the action had consented to claim and the district court had reached merits); *Oguachuba v. I.N.S.,* 706 F.2d 93, 97-98 (2d Cir.1983) (reaching merits where original application for attorney's fees under Equal Access to Justice Act was filed by attorney without standing but district court had reached merits and party to action had filed notice of appeal to the court of appeals).

### B. *Jurisdiction Over a Dissolved Corporation*

**2** In the hearing on Cedar Tide's motion for a preliminary injunction and in its papers before Judge Weinstein and before us, CCI has argued that Cedar Tide's bankruptcy petition and the adversary proceeding brought against CCI must be dismissed because the bankruptcy court lacked subject matter jurisdiction3 over a corporation dissolved by New York State for failure to pay taxes. According to CCI, a dissolved corporation is not an entity which may seek reorganization under Chapter 11. We disagree.4

*\*1132* Under New York Tax Law § 203-a(3) (McKinney 1986), the secretary of state may dissolve a corporation by proclamation for failure to pay corporate franchise taxes. Under New York Business Corporation Law § 1006(a) (McKinney 1986),

> [a] dissolved corporation ... may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place.... In particular ... [t]he corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial,

administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it.

Under New York Tax Law § 203-a(7) a dissolved corporation will be reinstated *nunc pro tunc* upon the filing with the department of state a certificate that all franchise taxes, penalties and interest charges have been paid and the payment of a fee to the secretary of state.

There is no case law that clearly disposes of the question whether a New York corporation dissolved for non-payment of taxes may file a petition for reorganization under Chapter 11. *Matter of Luftek, Inc.,* 6 B.R. 539 (B.Ct.E.D.N.Y.1980) held that a dissolved corporation may be a debtor under Chapter 7. However, the *Luftek* court based its conclusion upon its belief that "bankruptcy liquidation is not inconsistent with continued existence under section 1006 of the [Business Corporation Law] *for purposes of winding up the affairs of the corporation.*" 6 B.R. at 542 n. 3 (emphasis added). Neither *Luftek* nor the cases it relied on addressed the question of jurisdiction where the dissolved corporation seeks reorganization under Chapter 11 rather than liquidation under Chapter 7. Nor do the New York state cases cited by the parties provide a definite answer. It is true that language in *Independent Investor Protective League v. Time, Inc.,* 50 N.Y.2d 259, 263, 428 N.Y.S.2d 671, 673, 406 N.E.2d 486, 488 (1980), to the effect that "a corporation continues to exist as a legal entity after dissolution in New York, at least for the purposes of actions and proceedings," provides some support for a finding of federal jurisdiction, but this language does not inexorably lead to the conclusion that "actions and proceedings" include reorganization under Chapter 11.

However, in *In re Martin-Trigona,* 760 F.2d 1334, 1342-43, we addressed the question of whether a Connecticut corporation dissolved by the secretary of state by forfeiture could file for Chapter 11 protection. The Connecticut statutory scheme with regard to dissolved corporations in Connecticut General Statutes §§ 33-375 to 33-379, 33-387 and 33-388 (1987) is very similar to New York's. Under Connecticut law, once the secretary of state has dissolved a corporation "by forfeiture" by filing a certificate of dissolution by forfeiture pursuant to Connecticut General Statute § 33-387, the corporation may either seek reinstatement or proceed with winding up its affairs. *See* Conn.Gen.Stat. §§ 33-388, 33-379; *see also In re Martin-Trigona,* 760 F.2d at 1342. After dissolution, the corporation may still sue or be sued, Conn.Gen.Stat. § 33-379, and within three years after dissolution by forfeiture, reinstatement is automatically effective *nunc pro tunc* if the corporation files a certificate of reinstatement accompanied by certain payments and documents. Conn.Gen.Stat. § 33-388(a), (e).

In *In re Martin-Trigona,* we carefully reviewed the Connecticut statutory scheme \**1133* and found nothing that prevented a dissolved corporation from seeking "the added protections of the federal bankruptcy code" rather than winding up its corporate affairs under state law. *In re Martin-Trigona,* 760 F.2d at 1342. Indeed, we concluded that "deny[ing the dissolved corporation] the benefits of reorganization or liquidation under the federal bankruptcy law would be contrary to the central purpose of the federal code." *Id.* We then explicitly held that "the filing by the Secretary of State of a certificate of forfeiture which effected a dissolution of the debtor corporation ... did not deprive the bankruptcy court of jurisdiction over the voluntary Chapter 11 reorganization proceeding filed" four months after the dissolution. *Id.* at 1342-43. Given the fact that New York's statutory scheme is substantially similar to Connecticut's (and even arguably less restrictive in that it does not require a dissolved corporation to seek reinstatement within three years), CCI's claim that the bankruptcy court lacked jurisdiction was properly rejected by the bankruptcy court.

## C. The Merits

**3** Not surprisingly, neither Cedar Tide's nor CCI's filings on the motion for summary judgment fully complied with Fed.R.Civ.P. 56 or Rule 22 of the Local Rules of the Bankruptcy Court for the Eastern District of New York. Nevertheless, the bankruptcy court and the district court apparently were satisfied that the factual elements of Cedar Tide's claims were established solely through reference to the bankruptcy court's own docket sheet and by admissions of CCI's counsel. So are we, and we conclude that the bankruptcy court did not err in granting summary judgment for Cedar Tide.

Section 363(b)(1) prohibits the use, sale or leasing of property of the estate out of the ordinary course of business without notice and a hearing. 11 U.S.C. § 363(b)(1) (1982 & Supp. IV 1986). In practice, the factual issues that a bankruptcy court must consider in ruling on a summary judgment motion under section 363(b) are few: whether the property in question was "property of the estate" under section 541; and whether the transfer in question was "in the ordinary course of business." Here, it is undisputed that the deed was executed after the filing of the petition and without notice and a hearing. Although CCI argues that the property was not property of the estate subject to section 363(b)(1), it is undisputed that title to the property resided in Cedar Tide at the time of the filing (if it did not, CCI's deed would be meaningless in any event), and as such the property was estate property under 11 U.S.C. § 541(a)(1) (1982 & Supp. IV 1986). Indeed, CCI does not dispute that it did not even exist at the time Cedar Tide filed its Chapter 11 petition.

The Land could hardly, at the time of Cedar Tide's filing, have been property of a non-existent corporation.

Moreover, even if CCI had existed at the time of the filing, section 363 would not authorize the transfer in question. Clearly, the sale of all or substantially all of a debtor's assets implicates the full range of procedures provided for by the Code. The process of reorganization cannot be evaded by labeling a sale as being "in the ordinary course of business." *Cf. In re First Int'l Servs. Corp.*, 25 B.R. 66 (B.Ct.D.Conn.1982); *In re the White Motor Credit Corp.*, 14 B.R. 584 (B.Ct.N.D.Ohio 1981). We do not, of course, mean to imply that challenges to the propriety of a Chapter 11 filing can never be raised. We hold only that such challenges may not be raised as affirmative defenses to the avoidance of a transfer of estate property. As a practical matter, bankruptcy courts must be able to assemble the property of a given estate in comparatively summary fashion, disposing of a minimum of factual and legal disputes. Avoidance of transfers constitutes less an adjudication of rights than an assertion of jurisdiction over the property in question. Thus, CCI's various charges against Cedar Tide and claims of right (along with its demand for a jury trial) had no place on the motion for summary judgment before Judge Goetz.

The present matter appears to be only the tip of the iceberg, with numerous other *\*1134* appeals percolating up from the bankruptcy court. We have already noted the impression created by the record that serious misconduct by someone has occurred. We also note that we have on other occasions imposed sanctions on litigants who abuse the protection of the bankruptcy courts. *See e.g. In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 517 (2d Cir.), *cert. denied sub nom. Rothman v. N.Y. State Dep't of Transp.*, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 (1985). In view of the unresolved allegations of criminal conduct, we believe this entire matter ought to be reviewed by the appropriate authority to decide what, if any, action should be taken. With that in mind, the Clerk is directed to serve a copy of this decision on the Honorable Andrew J. Maloney, United States Attorney for the Eastern District of New York.

The judgment of the district court is affirmed on the merits.

Parallel Citations

18 Bankr.Ct.Dec. 843, Bankr. L. Rep. P 72,480

## CONCLUSION

Footnotes

1 Judge Goetz also noted that the motion to dismiss was not properly before her inasmuch as it was directed at the petition itself, but failed to indicate that there had been notice to creditors as required under the bankruptcy code. Bankr.R. 2002(a).

2 On June 19, 1987, Mintz also filed a motion before Judge Weinstein seeking, inter alia, to extend the time for perfecting the appeal six months. He failed to appear at the hearing held on his motion, which was ultimately denied by Judge Weinstein.

3 As we noted in *In re Martin-Trigona*, 760 F.2d at 1340, such an attack is more properly described as directed against the personal, rather than subject matter, jurisdiction of the bankruptcy court.

4 Cedar Tide claims CCI's jurisdictional argument is not properly before the court because CCI never appealed Judge Goetz's denial of their motion to dismiss. A denial of a motion to dismiss on jurisdictional grounds is not, however, normally appealable prior to the entry of final judgment, *see In re United States Catholic Conference*, 824 F.2d 156, 164 (2d Cir.1987), *rev'd on other grounds*, 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) (citing *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)), and under the circumstances of this case, we do not think that the bankruptcy court's inclusion of the denial of the motion to dismiss in the same order that granted the preliminary injunction imposed upon CCI the duty immediately to appeal the denial or waive the argument.

   In a separate motion, CCI has asked us to certify to the New York courts the question of whether a New York corporation dissolved for non-payment of taxes may file a petition for reorganization under Chapter 11. In light of our decision in *In re Martin Trigona*, 760 F.2d 1334, discussed *infra*, we see no need to certify the question.

End of Document © 2011 Thomson Reuters. No claim to original U.S. Government Works.