<pre>
 1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3

In re:                        .   Brooklyn, New York
 4                            .   September 2, 2011
OTR MEDIA GROUP,              .   11-01448
 5                            .   11-47385
 6        Debtor.             .   Calendar Time:
. . . . . . . . . . . . . . . .   8:00 A.M.
 7

 8     11-01448 OTR MEDIA GROUP V. THE CITY OF NEW YORK

 9        HEARING ON PROPOSED ORDER RE:  [2] MOTION
       FOR PRELIMINARY INJUNCTION FILED BY PLAINTIFF,
10               OTR MEDIA GROUP, INC.

11
            BEFORE HONORABLE ELIZABETH S. STONG
12

13
Attorney for Plaintiff:       GOETZ, FITZPATRICK
14                            BY:  GARY KUSHNER, ESQ.
                                  RONALD COLEMAN, ESQ.
15                                (Via Telephone)

16
Attorney for City of
New York:                     ALAN KLEINMAN, ESQ.
17                            (Via Telephone)
18

19
Court Recorder Operator:      JULIET LECKY
20

21
Court Transcriber:            CATHERINE ALDRICH
                              COMPU-SCRIBE, INC.
22                            2376 Cleveland Street
                              Bellmore, New York  11710
23

24
Proceedings recorded by electronic sound recording,
transcript produced by transcription service
25
</pre>

1    THE CLERK:  Court is in session.  Number 1 on the

2 calendar, OTR Media Group versus the City of New York, hearing

3 on proposed order re motion for preliminary injunction.

4    Parties on the telephone.

5    MR. KUSHNER:  Good morning, your Honor.  Gary

6 Kushner, Goetz, Fitzpatrick, for the plaintiffs.

7    MR. COLEMAN:  Ronald Coleman, Goetz, Fitzpatrick,

8 for the plaintiff.

9    MR. KLEINMAN:  Good morning, your Honor.  Alan

10 Kleinman, New York City corporation counsel for the City of

11 New York.

12    THE COURT:  Well, good morning, all.  A bright and

13 early good morning to you.  I thank you so much for making

14 yourselves available for this conference at this hour and on

15 such short notice.  It's not the easiest day or time of year

16 to schedule things, and I know this was an imposition and I

17 appreciate your effort.

18    I have the papers before me.  I have of course the

19 debtor's application, the plaintiff's application, and I don't

20 know how much progress we're going to be able to make today,

21 but it seemed to me useful to get everybody together on this

22 conference for me to understand a little better the situation,

23 the nature of the urgency that causes the debtor to move on

24 such an expedited basis, and any issues on which we can make

1 progress.

2          So we had a productive call with respect to some

3 background in the filing of the case a couple of days ago.  I

4 have a few questions I'd like to put to each of you, but I'd

5 like to begin by asking Mr. Kushner if there's anything

6 further from the perspective of the big picture that you think

7 it would be useful to have on the record or for me to know.

8          MR. KUSHNER:  Well, your Honor, we did submit rather

9 comprehensive papers which I think fully explain the

10 background, and knowing your Honor has read them thoroughly I

11 don't think there's anything else to say.  I'll defer that

12 question if I may to Mr. Coleman, who's been involved in the

13 litigation aspect of the case on behalf of the debtor.

14          THE COURT:  Mr. Coleman -- Mr. Kushner, you refer to

15 extensive papers.  What I have before me, and it may be that

16 my collection of papers is incomplete, but I have the

17 declaration which just attaches the various pleadings with

18 reference to paragraph 337, and I have a proposed order

19 granting the TRO.  I was looking for a memo of law or

20 something like that, and I don't see it.

21          MR. KUSHNER:  There is a memo of law that should

22 have been filed.

23          THE COURT:  When was it filed?  I have to apologize

24 for not having it, but I don't.  When was it filed?

1      MR. KUSHNER:  It should have been filed yesterday
2  along with the order to show cause.
3      THE COURT:  Well, we'll look for that.  Was it filed
4  in the adversary or in the main case?
5      MR. KUSHNER:  Likely in the adversary.  Do you want
6  me to pull up the docket?
7      THE COURT:  Mr. Coleman, can you help?
8      MR. COLEMAN:  Actually, your Honor, I'm actually --
9  because I'm not a bankruptcy lawyer, I'm not -- I don't
10  actually have ECF access to the bankruptcy system as of yet,
11  so I --
12      THE COURT:  But I suspect you know whether or not
13  you filed a brief.  Did you file a brief with the Court
14  yesterday or the day before?
15      MR. KUSHNER:  A brief has been prepared.  I know we
16  served the City with a brief.  I think Mr. Kleinman can
17  confirm that.  Why it's not on the docket I don't know, but
18  I'm going to look right now, Judge.
19      THE COURT:  Let me say again I could be wrong.  I
20  could be wrong, but I don't have it and so --
21      MR. COLEMAN:  Your Honor, does your Honor have the
22  verified complaint?
23      THE COURT:  I beg your pardon?
24      MR. COLEMAN:  This is Mr. Coleman.  Does the Court

1 have the verified complaint?

2      THE COURT:  Not before -- the Court well may.

3 Speaking personally as to what is before me, I have not

4 reviewed a verified complaint.

5      MR. KUSHNER:  That was also part of the submission.

6      THE COURT:  Right.  Well, I see a declaration

7 referencing attachments, but the attachments didn't come

8 through.  All right.  Well, we'll work on that on the filing

9 side.  If there is a brief it will be extremely helpful to me

10 I'm sure, and I'm also wondering if the kind of relief you're

11 seeking, Mr. Kushner, would require a factual showing going

12 through the need for expedition and the kind of factors that

13 are referenced in the cases, and I have had a chance to read

14 some of the cases and the City's response to them.  I can tell

15 between the lines what you must argue based on the City's

16 response.  At some point I assume it will become a kind of

17 evidentiary record in support of the conclusions that you're

18 asking me to reach beyond simply --

19      MR. KUSHNER:  Well, the -- we went through the -- in

20 lieu of filing the affirmation in support of the motion in

21 order -- because of the time constraints we submitted an

22 unusual form of pleading in that a verified complaint was

23 filed signed by Mr. Noe attesting to the truth of the

24 allegations which support the order to show cause.

1    I'm looking at the docket, your Honor, and I don't

2 see the filed memorandum of law in the adversary proceeding.

3 I'm going to check the main case, but I can tell you I can e-

4 mail it to the Court right now because I don't know how to ECF

5 it until my assistant comes in.

6    THE COURT:  Well, that will be helpful for it to be

7 filed.  It would not be a good use of the parties' time for me

8 to read your brief --

9    MR. KUSHNER:  All right.

10    THE COURT:  -- during the hearing.  I'm sure you

11 appreciate that.  It's your time as the well the Court's when

12 I say that.  In all events, it's -- there is a reference to a

13 letter to Mr. Horan (ph.) in the opening paragraph.  It seemed

14 to me that might be part of the point.

15    Let me move on to some questions that I will invite

16 either Mr. Kushner or Mr. Coleman to respond to depending on

17 who's appropriate.  I know that's a bit unorthodox, and I

18 guess that you may not be in the same place, so you'll work

19 with whatever process works best on that.  If it's appropriate

20 you'll just jump in, but to plaintiff's counsel I would say do

21 you represent all of the plaintiffs or do you represent just

22 the debtor, because I take the points raised by the City, and

23 I had some of the same questions myself as to whether you can

24 be representing both the debtor and these creditors consistent

1  with being debtor's counsel, or these potential creditors,

2  these indemnification creditors we'll call them, if you can

3  represent both of them consistent with your role in the case

4  as debtor's counsel.  Mr. Kushner.

5          MR. KUSHNER:  Yes.  I think --

6          THE COURT:  You are finely attuned to the questions

7  of conflict in bankruptcy because they are the daily fare of

8  debtor's counsel.

9          MR. KUSHNER:  That I didn't get.

10          THE COURT:  Who are your clients?  Who are your

11  clients?  Do you propose to represent all of the plaintiffs?

12  Doesn't that create quite a potential conflict in your role?

13          MR. KUSHNER:  Well, in the past what we have done is

14  we have brought in our duty as the indemnitor of these

15  entities litigation in another court that was disclosed in our

16  retention application.  In essence it's a de facto claim

17  against the debtor that's being prosecuted.  I think going

18  forward it probably would be in everybody's best interest to

19  have an independent lawyer represent the indemnity plaintiffs

20  in this action, but in light of the time constraints, that

21  could not be done for purposes of the filing of this

22  complaint.

23          THE COURT:  But it does seem like an issue that

24  you're going to be needing to deal with, if not down the road

1  maybe even quite promptly.

2        MR. KUSHNER:  On a generic level I don't see the

3  conflict now, but knowing the disclosure requirements and the

4  amplification of that issue as it relates to representation of

5  a debtor in a bankruptcy case, I think that the better path is

6  to have separate counsel represent the indemnity plaintiffs,

7  but for now the order to show cause aspect of it I don't think

8  is adverse to the estate.  It promotes a common interest

9  between the debtor and its efforts to reorganize and the

10 interests of the indemnitees.

11       THE COURT:  All right.  There is, but is not filed a

12 memo of law.  There is at the moment an intention to represent

13 both the debtor and -- I'll give you a brief second call for

14 just a moment.  Just one second.

15              (Pause in proceedings)

16       THE COURT:  I'm sorry.  I'm taking a number of

17 different matters this morning.

18       All right.  Mr. Kushner, I'm sorry.  I didn't mean

19 to interrupt you.  I'd like you to pick up where you left off.

20       MR. KUSHNER:  I think I answered your question who

21 my clients were, and obviously my client is the debtor, and

22 for purposes of this motion, you know, the plaintiffs are

23 being spoken for by our firm.  On a going-forward basis, your

24 Honor, I think it's the intention of the indemnity plaintiffs

1 to get their own counsel and for us to remain solely as

2 counsel for the debtors -- debtor.

3        THE COURT:  Okay.  And Mr. Kushner, is there a

4 complete petition yet?  I understand there were no schedules

5 filed.

6        MR. KUSHNER:  There are no --

7        THE COURT:  All of this is in furtherance of the

8 enterprise of the reorganization.  One of the things I have to

9 think about in terms of whether there -- how we're moving

10 forward a successful case is do we even have the basic pieces

11 of a petition filed?

12        MR. KUSHNER:  The --

13        THE COURT:  It's early in the case.

14        MR. KUSHNER:  I know.  The case was filed on the

15 evening of the 25th.  We had scheduled a meeting Monday, but

16 because of the storm that was put off.  I was stuck out of

17 town, as the Court may know.

18        THE COURT:  It's been a difficult week.

19        MR. KUSHNER:  Say that again.

20        THE COURT:  I know it's been an unusually difficult

21 week.

22        MR. KUSHNER:  Yes.  And we have a meeting next week

23 to finalize and file the remaining schedules.  They're not

24 actually due I don't think until September 9th, so I can give

1  a thumbnail sketch of the creditor makeup, which I think I

2  briefly went over in the initial conference on use of cash

3  collateral.

4         The debtor has what I believe to be three secured

5  creditors, Metropolitan Bank, who has appeared with counsel,

6  New York State Department of Taxation and Finance, who has

7  appeared by Mr. Mahon (ph.), and the Internal Revenue Service,

8  who has appeared through Sheila Olaksan (ph.), who is special

9  counsel to the IRS.

10        The debtor has a combination of trade debt, landlord

11 debt, tax debt, and secured debt on a working capital line,

12 and obviously the City of New York is a substantial creditor

13 of the debtor with judgments of approximately $554,000 and

14 claims which are disputed by the debtor in excess of that.

15        THE COURT:  Are those direct obligations of the

16 debtor to the City of New York or --

17        MR. KUSHNER:  Yes, yes.

18        THE COURT:  So judgments against the debtor as

19 opposed to anticipated obligations to pay the indemnity to the

20 landlord?

21        MR. KUSHNER:  Both.  There are -- the 554 number are

22 actual judgments that have been entered on ECB violations

23 unperfected.

24        THE COURT:  Directly against the debtor?

1           MR. KUSHNER:  Correct.

2           THE COURT:  Where the violator is the debtor?

3           MR. KUSHNER:  Correct.

4           THE COURT:  It seems to me that there may be a

5    difference between the nature and priority of the obligation

6    of the debtor to pay under the indemnity contracts which may

7    be in the nature of an unsecured claim, and that's something

8    I'm interested in your thoughts on, and perhaps not a priority

9    claim, and then separately the ECB direct claims by the City

10   to the extent there are any, it sounds like there are.  I

11   don't know where they're listed in the priority scheme, and I

12   will hear about that more from the parties, but I guess when I

13   remarked about the creditors and the schedules, I have in mind

14   in the big picture whether the indemnification claim will

15   later down the road be more in the nature of more unsecured

16   claims, which leads into the question, what is the unsecured

17   creditor picture here?

18           I know in cash collateral -- the cash collateral

19   proceeding we focused on the secured claims.  That made sense.

20    I'm trying to understand that piece of the picture a little

21   better.

22           MR. KUSHNER:  Well, the $554,000 that have matured

23   into a money judgment which are the subject of direct

24   enforcement efforts by the City are the nevertheless unsecured

1   claims.  The debtor does not own real estate, your Honor, so

2   that the entry of those judgments did not and could not effect

3   any real property.  There have been no levies on bank

4   accounts, restraining notices on bank accounts.  There's been

5   no complete enforcement procedure implemented by the City that

6   would under the CPLR result in a perfected security interest

7   by way of that judgment.

8           So I view them -- I don't know if the City views

9   them differently, but I view them as debtor's counsel as being

10  unsecured and in the same class and type of claim as all of

11  the other types of claims, including the indemnity claims that

12  the debtor has to its landlords.  If I had felt differently,

13  your Honor, I would have certainly made the inclusion of that

14  in the cash collateral applications.

15          THE COURT:  Well, there may be -- couldn't there be

16  a difference between the claim entitled as priority and your

17  claim, and Mr. Kushner, this is a more general question and it

18  goes both for general and more specific.  It goes to the

19  question that you're now asking me to consider about the stay,

20  and I again reinvite either yourself and Mr. Coleman to

21  respond, but this may well be in your bailiwick.  Is the

22  debtor's argument, I'm focusing on the debtor, that the stay

23  by operation of law, by operation of Bankruptcy Code already

24  applies here, or are you arguing that it should apply in the

1 sense that it comes up in the context of an action against a

2 debtor's principal?  For example, you're seeking protection

3 beyond that stay because it would be so disruptive to the

4 debtor's operation for the debtor's principal or CEO to have

5 to continue to defend litigation?

6          MR. KUSHNER:  The answer to your question is --

7          THE COURT:  This is important.

8          MR. KUSHNER:  I'm echoing, so that's why it's

9 overlapping, so I'm sorry, Judge, but the answer to your

10 question is this.  The debtor believes that under prevailing

11 case law that with respect to the indemnitees, the automatic

12 stay automatically applies.  However, as framed in the papers

13 before you, if your Honor disagrees with that contention, then

14 the debtors and the plaintiffs are arguing alternatively along

15 the lines that you just made an example of, that under Section

16 105 of the Bankruptcy Code and Bankruptcy Rule 7065, that the

17 -- a form of injunction independent of the automatic stay

18 should be imposed under the circumstances presented.

19          MR. COLEMAN:  Your Honor, this is Mr. Coleman.  Just

20 to follow up a little bit on what Mr. Kushner said, we in the

21 briefs that we hope the Court will have an opportunity to see

22 at some point soon, noted that a number of cases actually make

23 the point that it isn't always an either/or proposition, that

24 fundamentally bankruptcy courts typically look at the

situation and grant relief where appropriate to protect the
estate under either or both of those provisions, sometimes not
necessarily making a conclusion, you know, a definitive legal
conclusion that the automatic stay is the gravis, you know,
finds that as an appropriate form of relief and says, you
know, we can rule that it's the automatic stay.  Alternatively
we can grant this relief under Section 105.

THE COURT:  But it would still be a question of the
automatic stay.  It seems to me the question is binding under
Section 105 that the protection of the stay -- excuse me, that
the underlying tool is still no more nor less than the
automatic stay provided by the filing of the bankruptcy case
either as it exists upon the filing automatically or as it's
extended.  That's the difference.  One requires no finding
whatsoever by the Court.  If the stay is in effect right now,
then I don't know if I should grant relief from it, which no
one has asked me to do.  It just stays in effect.  The City --

MR. COLEMAN:  Exactly, your Honor.

THE COURT:  The City would make it's own conclusion
as to whether the stay is in effect, as parties do, and
proceed or not to enforce its judgments with relief if they
conclude the stay is in effect, without relief if they
conclude it's not in effect, again at the City's peril if it
turns out that it is action taken in violation of the

1   automatic stay.  That would be problematic and give rise to,

2   you know, claims for violation of the automatic stay.

3           MR. COLEMAN:  Your Honor, we --

4           THE COURT:  It was not clear to me from the papers

5   before me, and again, I haven't seen your brief.  You haven't

6   filed your brief.  There may have been some miscommunication

7   that led to that, but I take it you're taking the position

8   that this brief has been filed.  That would lead me to that

9   question.  I'm trying to understand better whether you're

10  saying -- what your argument is and as I tried to prepare for

11  this last night and this morning it seemed to me that one

12  thing is true, if the stay is in effect it doesn't matter what

13  we do today.

14          MR. COLEMAN:  Your Honor, it's Ronald Coleman.  Our

15  position has been from the very beginning that the automatic

16  stay does apply.  This is exactly the fact situation and the

17  debt situation and the indemnification situation and the

18  protection of the estate situation that is contemplated by the

19  cases that describes the automatic stay as including actions

20  against indemnitees.

21          That's the position that we have taken with the City

22  in our initial notice to the City, and in fact, your Honor,

23  will see when she has an opportunity to look at the verified

24  complaint that we seek a declaratory judgment not so much

apprising as such, but our prima facie position in this
application is in fact that the automatic stay does apply,
that the City in disputing that has raised a judicial
controversy which requires us and enables us to seek a
declaratory judgment on that point, and if the Court agrees
with us based on the cases and our submissions we don't think
it is necessary to go beyond that because we believe the
automatic stay completely addresses the need of the moment,
but we need a judicial determination.  I don't want to call it
a finding, so to speak, but --

THE COURT:  Well, you'll -- I don't see an issue
with respect to -- I don't think there's any controversy issue
here.  I do think there is a very thin record from the
standpoint of your brief and few facts for me to proceed.

I need to understand better also something else, and
this may be an opportunity for me to turn to Mr. Kleinman and
the City to ask the following question.  What is the City
doing now, if anything, to enforce these judgments?  I take it
you don't want to be stayed.  You don't believe you are stayed
and you don't believe you should be stayed.  I think your
arguments raise some very serious issues.  I'm looking at some
of the cases.

I look forward to seeing cases in the context of
indemnity because so far the case law I've seen has been in a

1   -- has been largely in different contexts, and I'm still

2   looking and I'm sure you are too, and I'm sure the parties'

3   papers are going to be helpful to me, but I'd like to

4   understand better, including because we are proceeding on such

5   an emergency and difficult basis, what is happening right now?

6    Are there safety issues?  Are there public -- the kinds of

7   public issues that, or issues where the public interest is

8   concerned that require special attention?  I don't know how to

9   say it more precisely than that.

10          MR. KLEINMAN:  Your Honor, Alan Kleinman here.  What

11  I would like to do is sort of just take a couple of steps back

12  and describe how we see the lay of the land here because we

13  see it enormously differently than the presentation that

14  plaintiff's, debtor's counsel has made.

15          This bankruptcy is rife with irregularities, and you

16  are even after you see the brief, you'll see that the showing

17  of irreparable is close to nothing.  So just some background

18  here, your Honor.  Number one, the debtor itself, OTR Media

19  Group, Inc., is a dissolved corporation under New York law.

20  It has been dissolved since January 26th, so --

21          THE COURT:  January 26th of what year?

22          MR. KLEINMAN:  This year.

23          THE COURT:  Okay.

24          MR. KLEINMAN:  And so just as an initial threshold

1  position, it would seem that the debtor is incapable of under

2  New York law having an ongoing enterprise.  The only thing

3  that a dissolved corporation can do is wind down its affairs.

4   I don't know whether the debtor --

5          THE COURT:  If I could just ask you, Mr. Kushner, is

6  there a resolution of the board of the company authorizing the

7  filing?

8          MR. KUSHNER:  Yes, and --

9          THE COURT:  Is the company in fact a dissolved

10  corporation?

11          MR. KUSHNER:  Yes.

12          THE COURT:  And is it nevertheless seeking to

13  reorganize under Chapter 11?

14          MR. KUSHNER:  Yes.

15          THE COURT:  Does that seem unusual to you?

16          MR. KUSHNER:  It does not, and I'll tell you why.

17  We became aware of the dissolution.  It was a technical

18  dissolution for taxes that were not paid or assessed in 2004.

19   They were paid in 2006 and nevertheless, the City for some --

20  the State for some reason in 2011 in January dissolved the

21  corporation.  We found out about it recently.

22          We attempted to reinstate the corporation with the

23  Secretary of State by filing the appropriate paperwork before

24  the bankruptcy case, and was told by the City of New York --

1  by the State of New York that we could not reinstate because

2  of the fact that all delinquent taxes had to be repaid.

3  There's an abundance of case law that says that

4  notwithstanding the dissolution of the corporation that, and

5  the lead case I believe is the <u>Cedar Creek</u> case, which I'll be

6  more than happy to provide to your Honor, that a dissolved

7  corporation can and may file a Chapter 11 case and seek the

8  reorganization process.  We just don't have the wherewithal

9  under the State's guidelines to cure all of the tax defects,

10 and we are going to work with the State of New York to attempt

11 to work that out with them in order to --

12        THE COURT:  It's certainly not -- I'll say it's

13 certainly not usual in my experience, but I take the point.

14        Back to Mr. Kleinman.

15        MR. KLEINMAN:  My second point, your Honor, which I

16 think is the most significant point I'm going to say this

17 morning is the way this debtor has set up business.  There is

18 the debtor and there are a series of related LLC's, and we

19 know that in many of the instances being talked about today,

20 including the very indemnification agreement cited in the

21 complaint, the agreement is not with the debtor, but is with a

22 separate legal entity, these LLC's.

23        The bankruptcy filing has only been for the

24 corporation.  There's been no filing with respect to the

1  LLC's, and so I think as a threshold matter there's simply no

2  jurisdiction of this Court to deal with entities that have not

3  seeked -- sought bankruptcy relief before the Court.

4       THE COURT:  Are the contracts -- are the LLC's

5  affiliates or subsidiaries of the debtor so that in some

6  respect their contracts are property of the estate which is

7  very broadly-defined concepts under the Bankruptcy Code?

8       MR. KUSHNER:  The entities that Mr. Kleinman is

9  referring to are affiliates of the debtor, but what we're

10  talking about in this lawsuit involving in the plaintiffs

11  identified in the complaint are contracts between the debtor

12  and a landlord.  These are direct contracts.  The formation of

13  the --

14       THE COURT:  OTR Media Group, Inc., the debtor is the

15  contracting party?

16       MR. KUSHNER:  That is correct, and certainly, your

17  Honor --

18       THE COURT:  Just one more clarifying question, Mr.

19  Kushner.  I apologize for the interruption, but the plaintiff,

20  20317 Realty, LLC, Backley (ph.) Brothers, LLC, I took these

21  to be the landlord's entities from the caption, but now I'm

22  not sure that I'm correct.  Are those LLC's that are

23  affiliates of OTR?

24       MR. KUSHNER:  No.  Those are the landlords.

1          THE COURT:  Okay.

2          MR. KUSHNER:  Those have no relationship to the

3  debtor other than as a vendor landlord to whom -- with whom

4  the debtor has a contract to place signage.  The City has to

5  my knowledge no claims against any of the LLC's.  The LLC's

6  conduct their own business, different purposes.  They have

7  different records I am told.  They have different contracts,

8  different types of advertising.

9          THE COURT:  You don't mean the LLC plaintiffs.  You

10  mean the LLC affiliates?

11          MR. KUSHNER:  That's correct, and the City's claims

12  -- the City I don't believe has any judgments against those

13  LLC's, and there was absolutely no reason at all to file any

14  of those LLC'S as part of this case.  They're completely

15  separate entities, your Honor, not an unusual --

16          THE COURT:  Mr. Kleinman, understanding that I'm

17  piecing this together as I hear it from you, can you explain

18  again the issue with respect to those LLC's in the context of

19  this case?

20          MR. KLEINMAN:  Well, number one, they're not part of

21  the bankruptcy and we understand, and I guess we don't have

22  all the facts here, but we understand with respect to, for

23  example, One Maiden Lane, which is one of the property owner

24  indemnity plaintiff, that in fact the agreement between One

1 Maiden Lane is not with the debtor, but is with an entity

2 called OTR WSML, LLC.  So there's -- so One Maiden Lane --

3          THE COURT:  That is a fact question there we need to

4 figure out.

5          MR. KLEINMAN:  That's right.

6          THE COURT:  Mr. Kushner seems to be saying the

7 opposite or saying something different I should say.

8          MR. KLEINMAN:  We have documents that say --

9          THE COURT:  Mr. Coleman.

10          MR. KLEINMAN:  And let me just -- as we have

11 approached the various property owner indemnitees, we have

12 heard the story over and over again where they are left

13 hanging because it turns out that their agreement is with

14 these LLC's, these empty shells, and they have essentially

15 been told by OTR to go to take a walk because there's no

16 assets in the LLC and there's no obligation by OTR.  So it's

17 an extraordinarily different picture that --

18          THE COURT:  I'm sorry.  Is this Mr. Kleinman?

19          MR. KLEINMAN:  I'm sorry.  What?

20          THE COURT:  Who's speaking?  Is this Mr. Kleinman?

21          MR. KLEINMAN:  This is Mr. Kleinman speaking.

22          THE COURT:  Okay.

23          MR. KLEINMAN:  And in fact what we have, your Honor,

24 so you're right, the facts are far from clear here, but we did

manage last night to pull up from the State electronic filing

a complaint by Soho 54, LLC against OTR Media Group, Inc., OTR

54 Watts, LLC, and Mr. Noe, the principal of the debtor, and

sort of contrary to the entire thrust of the debtor's position

here, in that complaint which seeks the indemnification, the

affirmative defense to that is, "I'm sorry, we don't owe you

anything," and maybe, you know, the agreement was only with

the LLC."

So the game that the debtor is playing is they have

set up these shells, and as a matter of legal positions and

papers filed in the Court have taken the position that there

is no indemnification, yet they rush into Court at the same

time saying, "Oh, no.  We're allied in interests and these are

indemnification agreements that are absolutely going to come

to fruition, and please stay everything."

So the fact presentation -- the facts that we know

of, which are far from complete, are exactly contrary to the

thrust of the whole filing.

MR. COLEMAN:  Your Honor, it's Ronald Coleman.

THE COURT:  I can say that a matter of business

organization one could see how either -- either might be how

these matters -- how this company is organized.  We don't have

complete schedules yet.  It may even be that the lawyers are

learning the facts as they move through the situation, but I

appreciate that at least there is a disagreement or ambiguity

with respect to who precisely the parties to these contracts

are.

At some point, Mr. Kleinman, I'd like to hear from

you on the -- what I view as the practical side of this on

Friday morning, which is what is the City doing now with

respect to the particular matters at issue in this adversary,

these particular judgments?  Is there -- are there -- I take

it this is a question of enforcement and collection of

judgments as opposed to injunctions about unsafe conditions or

something like that where --

MR. KLEINMAN:  That is correct, your Honor.

THE COURT:  I would not expect the debtor to be

seeking this kind of relief.  Could you give me a better of

sense of what's been happening since the case was filed,

understanding and appreciating as I do the importance to the

City that it not be enjoined in what perceives to be its

collection efforts.

I guess the question I would have for you also as a

practical matter is is there anything, presuming that there is

some kind of standstill between the parties with respect to

removing assets or something like that, anything that would

complicate enforcement if enforcement needs to proceed at some

point, and it well may, is there any reason why this could not

1  all be held in some kind of mutual forbearance where the

2  plaintiff parties would commit not to take any steps to

3  diminish the collectability of the judgment, you know,

4  removing assets from bank accounts, whatever it would be,

5  liening up buildings, and the City could hold in temporary

6  abeyance until we can get to the bottom of some of these facts

7  and have a hearing in person in the courtroom as opposed to

8  telephonically as we are?  Is there any reason that that isn't

9  a practical way to proceed?  I'm actually suggesting a burden

10 on each of you there because I am suggesting, and I -- in

11 order even to ask the City to forbear from enforcing from

12 judgments that may or may not be covered by the stay, the law

13 is what it is.

14         I don't know that I have a record before me to make

15 that determination on the law or the facts.  Do you see any

16 prospects of preserving the status quo between now and say

17 something like September -- maybe September 12th is a day when

18 we're coming back on cash collateral?

19         MR. KLEINMAN:  Your Honor, with --

20         THE COURT:  There's no safety issues, and I'm glad

21 to know that.  I'm relieved to know that.

22         MR. KLEINMAN:  Okay.  So I will answer your

23 question.  I have on my outline here sort of six other reasons

24 why this whole thing is improper and --

1          THE COURT:  Feel free to educate me and all of us.

2    I've got one and two.  I take it there are eight total.

3          MR. KLEINMAN:  Okay.  So --

4          THE COURT:  If you just leap frog a bit I

5    understand.

6          MR. KLEINMAN:  You want me to -- I can address --

7          THE COURT:  Yes, I do.

8          MR. KLEINMAN:  -- the relief issue first if you want

9    me to do that, whichever you want me to do, your Honor.

10          THE COURT:  Mr. Kleinman, I'd like you to proceed as

11    you see fit.  We have number and two in my notes so far.

12    What's your numbers three through eight I guess?

13          MR. KUSHNER:  Okay.  So the next issue is one which

14    you have already flagged, and so it is far from clear whose

15    interest is being asserted here.  It is completely clear from

16    the answer in that case I just referred to that the interests

17    of the indemnitees and the debtor are antagonistic, highly

18    antagonistic, and so I'm not sure, you know, the question of

19    the propriety of this plaintiff -- of this debtor's counsel

20    moving forward is very suspect.

21          I just want to note that Mr. Kushner in the initial

22    filing properly flagged the issue of his firm's representation

23    of the indemnitees against the City in a separate action, and

24    in his affirmation there noted that problem and promised as

part of the application to being counsel that they would note
-- they would not represent the indemnitees in any other
capacity, and so the promise in that affirmation lasted but a
few days, and they're now purporting again to represent
indemnitees, and I think, you know, the adversity in light of
the state court pleadings that we find is it's pure adversity,
and I really don't know whose interest is being advanced here.

THE COURT:  I think it's pretty clear that there's a
technical -- at a minimum a technical adverse interest.
There's also a technical unity of interest at certain points,
and so that's a pretty complicated question.  It arises in a
lot of contexts where companies have indemnitees with respect
to officers and directors, and it's not a simple question.

MR. KLEINMAN:  I understand that and I just --

THE COURT:  And Mr. Kushner has acknowledged it's a
question, so I think the point's well taken.

MR. KLEINMAN:  And just more on that sort of fine
legal point, there certainly are some cases we're well aware
where the -- as exceptions to the general rule there are --
there is case law support for very limited instances of
extending the stay to indemnitees.  Those cases I think are
all or almost situation where indemnitees really are alter
egos of the debtor.  You know, there are cases where there are
end-runs around the debtor, "Well, okay, we can't sue the

1  debtor.  We'll sue the president," and I suggest that that

2  kind of situation where, you know, the indemnitee really --

3  the identity between the indemnitee and the debtor is

4  incredibly close is the polar opposite of what we have here

5  where the relationship between the debtor and indemnitees is

6  highly antagonistic and highly adverse, and there's really no

7  commonalities whatsoever.

8           Going on, my fifth point is that what we have here

9  and what the debtor is trying to protect really is an illegal

10 enterprise where all of the signs that we're talking about are

11 illegal and all the penalties are valid.  This debtor has had

12 an extensive record of challenging the legality of the

13 findings of illegal signs and the penalties imposed, and they

14 have vigorously contested them before the administrative law

15 judge.  They have vigorously contested them before the

16 Environmental Control Board to which there's an appeal.  They

17 have taken their claim, lost in the Supreme Court.  They've

18 lost it in the Appellate Division.  There is other litigation

19 which went up to the Second Circuit upholding the penalty

20 challenge here.

21           What we are talking about here is --

22           THE COURT:  I'm sorry.  Upholding the penalty

23 challenge?

24           MR. KLEINMAN:  I'm sorry.  I mis-spoke.  Upholding

1  the penalty schedule from the challenge.  So --

2          THE COURT:  Okay.  A general sense as a practical

3  matter as to what the problems are?

4          MR. KLEINMAN:  Problems with --

5          THE COURT:  Is this the failure to file three copies

6  of a form?

7          MR. KLEINMAN:  No, no.  These are signs which under

8  the Building Code and the Zoning Resolution are illegal.

9  There are -- there is a complex schedule of where signs are

10  permitted and where they are not, and that whole regimen has

11  been repeatedly upheld by both the federal courts and the

12  state courts, and their signs are -- it's not a question of a

13  technicality or a filing or not a filing.  These are signs

14  which were erected illegally in places that they're not

15  entitled to be, and there are orders -- administrative orders

16  declaring them illegal.  There are judgments which have been

17  entered, and all of this has been sustained by multiple

18  courts, and --

19          THE COURT:  This would be in the nature of an

20  uncurable defect --

21          MR. KLEINMAN:  That's correct.

22          THE COURT:  -- in the hanging of -- in the posting

23  of the signs?

24          MR. KLEINMAN:  And your Honor, now it gets even more

1  emphatic than that because -- and this gets to the question of

2  what kind of irreparable injury are we talking about.  So my

3  prior point was that the debtor could not come to the

4  Bankruptcy Court and collaterally challenge all of these

5  administrative findings upheld by various courts, but in any

6  case, I'm not sure what we're talking about in terms of

7  irreparable harm because as far as we know some or all of

8  these signs were taken down.

9        So there's no ongoing business relationship between

10 the indemnitees and the debtor which is still intact, and

11 we're not doing anything --

12       THE COURT:  Apart from this indemnification

13 relationship?

14       MR. KLEINMAN:  There is an indemnification

15 relationship, but there's no -- I would think that the

16 irreparable injury would be in some ways that the debtor can

17 no longer do business as a result of --

18       THE COURT:  The prospects for reorganization are

19 damaged because the ongoing business relationship with these

20 landlords will be destroyed, and your point is there is no

21 ongoing business relationship with these landlords, nor could

22 there be because the signs were put where they could not be

23 put?

24       MR. KLEINMAN:  Exactly, your Honor.

1          THE COURT:  Is that it?

2          MR. KLEINMAN:  And not only that, I mean it gets

3    more emphatic than that because the relationship --

4          THE COURT:  That's a fairly persuasive argument as

5    far as it goes, but --

6          MR. KLEINMAN:  I'm --

7          THE COURT:  Mr. Kushner, rest assured you'll be able

8    to respond.

9          MR. KUSHNER:  I'm being quiet so Mr. Kleinman can

10   conclude.

11          MR. KLEINMAN:  And so the other thing to note about

12   the business relationship is that if there is still one sign

13   left, and I don't know whether all the signs are down.  I

14   believe they're all down or I'm sure that most of them are

15   down, but even if there was still a sign up, the flow of money

16   here is not from the property owner to the debtor.  It's the

17   opposite.  It's the debtor that has to make payments to the

18   property owner, you know, for leasing the space on the side of

19   the building for the sign.

20          So even if there were one or two or three signs

21   left, it's not as if anything that the City is doing in

22   collecting judgments which have been upheld repeatedly, is

23   going to effect whatsoever the income flow to the debtor, and

24   therefore, the debtor's business.  So it's hard for me to

1  fathom what this irreparable injury is.

2       The -- I do have a copy of their brief, and they do
3  make these broad statements about irreparable injury, and it's
4  very hard for me to follow what they're talking about, but I
5  think somehow they're saying that, "Oh, well, if the City
6  collects judgments against the property owners and the debtor
7  fails to indemnify then, then the debtor's relationship will
8  be smashed to smithereens because it's no longer following
9  through on its indemnification obligation."

10      That argument is rendered completely false also by
11 that -- by the state court action which I told you about where
12 this debtor in pleadings filed in state court has already
13 essentially repudiated its obligations to pay indemnity, and
14 you know, as --

15      THE COURT:  And that's a good example of a factual
16 issue that's very unclear on this record so far.

17      MR. KLEINMAN:  Right.

18      THE COURT:  So that's the case.  If that's the case
19 then I think Mr. Kushner needs to craft a different argument,
20  and I doubt Mr. Kushner would disagree.

21      MR. KUSHNER:  I don't disagree, but I haven't
22 responded yet, so --

23      MR. KLEINMAN:  Let me just -- I have one more legal
24 argument and then I'll -- your Honor, I'll talk about the lead

1  question and --

2          THE COURT:  Practicalities.  Okay.

3          MR. KLEINMAN:  The last legal argument to say is

4  that the -- these penalties are penalties imposed by a

5  governmental entity, and they are not dischargeable from

6  bankruptcy, so this bankruptcy is going to have no effect on

7  the claims for penalties either against the debtor or against

8  the indemnity property owners.  So if your Honor were to look

9  --

10          THE COURT:  But it seems to me that the

11 indemnification claim may raise different issues with respect

12 to dischargeability, but again that is utterly an issue for

13 another day and we are in Chapter 11 and --

14          MR. KLEINMAN:  Right, and I just wondered --

15          THE COURT:  -- the discharge is a different one.

16          MR. KLEINMAN:  -- what are we doing here other than

17 preserving an ongoing illegal enterprise?  It's not clear to

18 me at all, and I do think the fact that this debtor failed to

19 pay I guess substantial taxes to the State over time that's

20 one other example of this debtor unlawfully in all kinds of

21 situations.  I don't know whether there's any lawful business

22 that this debtor is undertaking, and if there were such lawful

23 business where there are signs and the debtor is getting

24 payments from somebody else, whatever that activity might be,

1  and maybe it's zero and maybe it's, you know, half the

2  business.  I have no idea.  All of that is completely aside

3  from anything that the City is doing with respect to penalties

4  issued arising out of their legal business.

5          So those are all the reasons why I think it would be

6  a mistake for this Court to exercise affirmative grants of

7  power under 105 and issue a stay here.  I just think every

8  single legal and equitable consideration goes against them.

9  Having said all that --

10          THE COURT:  I -- I'm sorry.  Go ahead.  I would just

11  observe that if the stay was in fact triggered by operation of

12  law --

13          MR. KLEINMAN:  Right.  That's right.  Correct.  That

14  I think --

15          THE COURT:  Having said all that, as you said, Mr.

16  Kleinman, far be it from me to get in the way of the next

17  sentence.  Having said all of that where are we as a practical

18  matter in the real world?

19          MR. KLEINMAN:  Okay.  So we have -- the process of

20  collecting and executing on judgments is a complicated

21  process.   Under the CPLR it involves the issuance of an

22  execution by this office, which we have done.  It then goes to

23  the sheriff's office.  There's a separate legal document, a

24  levy.  That levy then has to be served on various parties.

That is a long and complicated process, and what I don't want
to do is unwind that.

Having said that, what we are prepared to do on a
short-term temporary basis is to not -- not change the status
quo and not unwind what we have spent weeks putting in play,
but what we are prepared to do is we will -- we're prepared to
tell the sheriff to no longer take any affirmative actions of
visiting the buildings in question and talking to the tenants
and seeking to enforce the legal papers of executions and
levies that have been issued.  We are prepared to tell the
sheriff just to sort of hold off for a bit just, you know, to
give your Honor some time to look at this.

We are also prepared not to issue any new executions
with respect to any of the property owners.  So I guess what
we are prepared to do is sort of to leave things status quo
right now and not take any further steps, but we understood,
and the reason why we're opposing -- we didn't say yes
yesterday when Mr. Kushner said well, we agree to a few days,
we are not prepared whatsoever to undo the legal steps that we
have taken over weeks to put in the play the legal apparatus
necessary to collect money.

So I think that would be some way to, you know, show
some good faith by the City and give this Court some time to
look at I think the many, many issues that are here, but with

1 respect to a stay that would require changing the status quo

2 and withdrawing levies that have been served, they have to be

3 served personally, and withdrawing executions which get logged

4 in sheriff's books and there's all kinds of complications, we

5 are not at all prepared to agree to that.

6        THE COURT:  All right.  Well, I have to consider I

7 think that some interim step is the kind of thing I would --

8 without having anything like the knowledge you have, it's a

9 very detailed process, I was not considering nor -- well, I'm

10 not trying to ask you to consider unwinding anything.  When I

11 status quo I mean status quo on both sides to not make it more

12 difficult to collect nor take any steps to collect.

13        Mr. Kushner, I'd like to hear you in response to

14 points one through eight if you wish, but also -- and you can

15 do this first or last, if you think we have a basis to

16 proceed.  I am grateful that there was no consent because this

17 is extraordinarily helpful to me in terms of understanding

18 what facts I need to understand better, but the process has

19 been here or the opportunity to hear what the challenges are

20 going to be in this case and things like that, things that are

21 essential for me to get my arms around at the beginning of the

22 case.

23        Mr. Kushner, over to you and take it in whatever

24 order you'd like, but understand that I'm not ruling on any of

1  the arguments that have been made.  I have an open mind on all

2  of them and you are free to respond, but I will not take a

3  failure to respond to any points or sub-points as agreement or

4  concession.

5           MR. KUSHNER:  I appreciate that, your Honor.  I'm

6  going to defer to certain things to Mr. Coleman, but I would

7  like to respond to some of them.

8           First and foremost, the memorandum of law has been

9  docketed while we --

10          THE COURT:  I see that.  I see that.  I have studied

11 it with the care it deserves.

12          MR. KUSHNER:  And I can tell you -- and your Honor

13 knows me for quite some time.  I am embarrassed that it was

14 not filed.  We did serve it.  It certainly would have been

15 helpful, knowing your Honor's practice, for you to have had it

16 last night.  I apologize, and I've already spoken to some

17 degree through little notes with my paralegal, and I'm sorry

18 you did not get it last night.

19          THE COURT:  Mr. Kushner, I would offer only this

20 observation.  Things happen.

21          MR. KUSHNER:  Okay.

22          THE COURT:  All right.  I'm glad I have it now.  It

23 would have been helpful to have it before, but I know the

24 reputation of yourself and the corporation counsel for the

1 City of New York, and I have greatest respect for counsel.

2 MR. KUSHNER: Let me just -- the penalties aspect

3 and the -- I think what Mr. Kleinman was arguing was a carve-

4 out or an exception to the automatic stay. These are money

5 judgments, your Honor. These are not actions taken by the

6 City in pursuit of the preservation of the health and welfare

7 of the citizens of the City or the State of New York. Like

8 Mr. Kleinman said, many of these signs have long been removed

9 either voluntarily by the debtor or by the City itself as

10 explained in our papers.

11 Nevertheless, of course that's another issue to be

12 addressed by Mr. Coleman. These are still relationships

13 between the debtor and its landlords that continue to exist,

14 and they continue to do business.

15 THE COURT: And landlords can own more than one

16 building.

17 MR. KUSHNER: That's correct.

18 THE COURT: The potential for all of this is I think

19 the point the City may have been making may have been more

20 along the lines of not whether this is an exception to the

21 stay which applies, but whether the stay applies at all

22 because these are not the debtor, these entities. These are

23 debtor indemnitees at best, and may not even be debtor

24 indemnitees because the extent of the indemnification flows

from an LLC that is a related entity or an affiliate or a
business vehicle created by the debtor and referenced in the
state court papers.

MR. KUSHNER:  I think in support of that Mr.
Kleinman mentioned a case that he pulled last night, this Soho
case where it is his claim that this debtor has claimed any
responsibility under indemnity.  I note that I don't believe
that the Soho entity is a plaintiff in this action, so that's
a case that may very well have been a situation where the
debtor entity disclaimed indemnity because none exists.

THE COURT:  I appreciate there could be different
facts, but that seems to be an example of one of the places
where the parties and the lawyers and certainly the Court
needs to get a more complete sense of the facts.

MR. KUSHNER:  Right.  In terms of the blanket
statement that this debtor is operating an illegal enterprise,
it would -- you know, it sounds monumentally cruel to, you
know, to be discussing the aspects of the debtor's business
where they have been cited with violations.  It's not as if
violations aren't cited against dozens of other OAC's.  It's
just part of the business and part of the process where you
get quote, unquote "sanctioned" for these signs.

I assure the Court that the debtor has a significant
business where it doesn't have quote, unquote "illegal signs,"

1  hasn't been cited for violations, has a viable business, and

2  will continue in that business if in fact it can maintain its

3  relationships with its landlord entities.  I mean without

4  these buildings the debtor has no business.

5       THE COURT:  Well, maybe there are buildings that are

6  not -- where the debtor's not going be able to do business,

7  and there may be a whole portfolio of the debtor's business

8  that is lawfully put together and lawful buildings like a

9  landlord who has apartments in buildings with C of O's and a

10 landlord with apartments in buildings with no certificates of

11 occupancy, and I'm sure one of the things that you've

12 explained to your client and one of the things I explain from

13 the bench is that for any business life in Chapter 11 is

14 different than life before Chapter 11, and if there have been

15 irregularities they have to be set straight.

16      MR. KUSHNER:  Understood.

17      THE COURT:  It makes sense that the City would not

18 know about all the legal signs because they would not be

19 creating issues for Mr. Kleinman and his --

20      MR. KUSHNER:  The point is the signs may not exist,

21 but the relationships do, and the industry duty to indemnify

22 by OAC's is something that I never heard the City dispute.

23 It's a fact of doing business which cannot be disputed.

24      Another point though made was seemingly to me that

the City is suggesting that we're using the Bankruptcy Court
to collaterally attack these judgments.  We're not attacking
the judgments.  We're using the Bankruptcy Court legitimately
to -- for a breathing spell to stop the City from enforcing
those judgments.

There has never been -- you know, we have done
everything that we could do in state court to challenge the
violations.  They are what they are, but the enforcement
aspect is a totally different process.  It's a totally
different aspect of the relationship between the City and the
debtor, and I am not and I have not challenged the legitimacy
of the judgments by -- through this Court.

It is -- we have been pushed into bankruptcy because
the City did not sit down in our opinion in good faith to
discuss a resolution of these judgments in a way that would
have avoided the necessity of the bankruptcy filing in the
first place.  So this is a last resort in order to save our
assets and to serve our relationships, move forward with the
reorganization process.

We actually disclosed to Mr. Kleinman that one of
the more valuable buildings where the debtor advertises, which
is a building that has not and could not be cited for a
violation, there were discussions -- meaningful discussions
which are still ongoing for the sale of that location which

1 would have resulted in the ability to pay off many of these

2 debts.  That was --

3          MR. KUSHNER:  I -- Mr. Kushner, I can assure you

4 you're going to have opportunity to continue those

5 discussions.  It's going to be in everybody's interest to see

6 if this can be resolved.  When I was thinking about the

7 configuration of the parties and the contracts and the

8 relationships here last night and early this morning, it

9 occurred to me that in fact one place where the stay is

10 probably likely to be in effect is that many of your

11 indemnitees try to come after the debtor to collect.  I think

12 they would like to be unstayed and if there's an effort to pay

13 those kinds of claims in the different way than other

14 similarly classified claims, then there's some difficult

15 issues to work though.

16          So a lot's going on there, but I want you to

17 continue and I want you to continue with any other points you

18 --

19          MR. KUSHNER:  Yes, and I think the least --

20          THE COURT:  The practical side of this.

21          MR. KUSHNER:  The least important, and it's just a

22 matter of fact that I think that there were many mis-

23 statements by Mr. Kleinman as to the factual position of the

24 City, not the least of which was his contention in my

1 retention application regarding what I said and what I did not

2 say. My duties --

3 THE COURT: That will --

4 MR. KUSHNER: -- as a Chapter 11 lawyer --

5 THE COURT: This doesn't help, but I'm going to let

6 you put it on the record, Mr. Kushner.

7 MR. KUSHNER: Okay. Is to disclose whatever

8 relationships I have with creditors of the debtor in the past,

9 either indirectly or directly. I've done that in my retention

10 application. I did not say that I would not represent the

11 indemnitees in any further proceeding.

12 What I said in paragraph 6, and I will quote, "Upon

13 information and belief each of the plaintiffs in the Section

14 1983 litigation has retained or will retain separate counsel

15 to represent their respective interests and claims against the

16 debtor." This is not a claim against the debtor. This

17 involves a unity of interests required by contract in the form

18 of pursuing an indemnification provision of a lease, and --

19 THE COURT: You don't disagree that there could be -

20 - that an indemnification has at its heart a claim or a right

21 against the debtor?

22 MR. KUSHNER: I did not disagree with it at the

23 beginning of the conference. I told you what our intentions

24 were here with respect to this litigation.

1          THE COURT:  All right.

2          MR. KUSHNER:  And I stand by that.

3          THE COURT:  Okay.  All right.  My friend, it seems

4  to me that it would be helpful to have a way to go forward

5  where the City proceeds as it's indicated and the debtor and,

6  Mr. Kushner, any other entities that you are representing for

7  purposes of this very preliminary stage in this proceeding

8  will similarly commit that they will take no steps to I want

9  to say further encumber their assets or change the status quo

10  as it is at this point.  I think it would be a very difficult

11  thing indeed if the City agrees as they propose to agree and

12  simultaneously steps are taken in order to (inaudible).  I

13  don't want to see that.  It seems to me that would be quite

14  inconsistent with the spirit of the relief that you're

15  seeking.

16          Does that sound like a way you can proceed, Mr.

17  Kushner?

18          MR. KUSHNER:  I didn't hear the question, your

19  Honor.

20          THE COURT:  Does that sound like a way you can

21  proceed?

22          MR. KUSHNER:  Yes.  In fact, we didn't ask the City

23  in our papers nor before to anything but the status quo, and I

24  think that the order that was presented to you doesn't

1  contemplate that.  It's a bar on further enforcement or

2  commencement of actions which I don't see any difference in

3  what the City is saying.

4      THE COURT:  It seems to me there is a difference

5  between the City being ordered or stayed by operation of the

6  Bankruptcy Code, which as I've said, I'll repeat myself for

7  the record.  With respect to the stay if it is in effect, then

8  it's there regardless of whether we have this hearing or

9  whether you make this application.

10      What I'd like to do -- what I would like to do is

11  proceed and have each of you file with the Court or file some

12  kind of stipulation ideally that you think is fine.  The City

13  has indicated, and Mr. Kleinman can summarize again what it is

14  prepared not to do, any of the steps that he's prepared,

15  negative and positive, not to take, and Mr. Kushner can

16  similarly represent that plaintiff will not take any steps

17  further to encumber the collection of judgments for the same

18  interim period, whatever we come up with.

19      This may be the kind of a standstill that we can

20  stipulate to, I can so order, and you can continue as it seems

21  appropriate, and I can make a determination on this, make a

22  record to do that.  That's -- do you think you can come up

23  with a situation like that?

24      MR. KLEINMAN:  Well, your Honor, I wonder whether

these counsel have the ability to go to the indemnitees and
get each of them to make promises of not trying to transfer
assets.  I don't know whether they're lawyers for that
purpose, and that's part of the problem with the
representation here.  You know --

      THE COURT:  And I should note that that was my --
that my contribution as opposed to anything that you have --

      MR. KUSHNER:  But that may be a distinction without
a difference, your Honor.  These are judgments that the City
has.  They are liens against the landlord's property.  They
are perfected liens.  They have a priority scheme.  It
wouldn't really make a difference what the debtor -- what
those entities did or didn't do from here on out now because
the City's rights are now carved in stone.  They are --

      THE COURT:  With respect to these parties?

      MR. KUSHNER:  That's correct.

      THE COURT:  All right.  Well, that's --

      MR. KLEINMAN:  That's not at all correct.  Your
Honor, among the many things we don't know, and I guess we've
heard intimations otherwise, we don't know whether these
property owners are above water or not, and so we don't know
whether the City's judgment liens which go after preexisting
mortgages, we don't know whether they are collectible, and
certainly transfers of money by the property owners at this

1  point may very well impair the City's ability to ever collect
2  on these items.

3         So this is not a hypothetical issue.  This can be a
4  very real issue, and I think it important that, you know,
5  unless there's somebody on that side who can in fact represent
6  that these entities, that they represent these entities for
7  all purposes, and that these entities agree not to transfer
8  any monies that might be diminish the City's ability to
9  collect on its judgments, I think that is very much part of
10 the status quo here, and I don't understand how they can even
11 bring that to the table here.

12        THE COURT:  Certainly outside of the ordinary course
13 of business if they need to pay the utility bill or their
14 workers --

15        MR. KLEINMAN:  Of course.  I'm not talking about
16 that.  I'm talking about, you know, transfers of --

17        THE COURT:  Outside of the ordinary course of
18 business.

19        All right.  Mr. Kushner, do you -- well, let me ask
20 the parties.  At some point there's going to be a limit to
21 what we can do this morning under these circumstances.

22        Mr. Kleinman, I'm going to ask you to state again on
23 the record what the City is prepared to do and we can so order
24 the record.

1          MR. KLEINMAN:  Well, but I guess I want -- I want

2     some concomitant status quo protection on the other side.  If

3     we're going to do status quo I'm happy to do status quo, but

4     status quo needs to protect the City's rights as a judgment

5     creditor here.

6          THE COURT:  Okay.  Do you think have the basis to

7     get a stipulation to the Court by the end of the day?

8          MR. KLEINMAN:  That depends on whether the debtor's

9     lawyers have the ability to, you know, on behalf of the

10    indemnitees make any promises whatsoever with respect to

11    transferring monies that might in any way be in derogation of

12    the City's rights.  I don't know whether they have that

13    ability.  That's the conflict question.

14         MR. KUSHNER:  I don't know what the City's rights

15    are first.  I can't --

16         MR. KLEINMAN:  This is not a theoretical issue, so

17    the levies right now, to the extent that we would be

18    collecting right now from payments from tenants of these

19    buildings to the property owners, would satisfy in part the

20    existing judgments.  If we're not doing that, and as at the

21    same time the property owners are going to transfer money or

22    do any of another hundred things which will make it more

23    difficult for us to collect, then we're not talking about a

24    status quo situation.  We're talking about a situation where

1 the City's rights are going to be reduced.

2 So again, if there is some counsel out there who can

3 make that representation who in fact represents these

4 indemnitees, I'm happy to do a status quo. I don't want to do

5 a one-way status quo where the City's rights are endangered.

6 MR. COLEMAN: Ronald Coleman. I think the Court was

7 alluding to this suggestion that she could order -- she could

8 -- that an order could be entered by which the Court would

9 require that any transfers not done in the ordinary course of

10 business, and that would include rents, those are in the

11 ordinary course of business, not take place, and that in the

12 event that this conflict that the City keeps positing actually

13 exists, they would have ample opportunity to bring us into

14 Court and say we were not adequately represented.

15 In other words, assuming this order is served and

16 distributed among the indemnitees, to the extent that any of

17 them has an objection to it because of this conflict that the

18 City keeps harping on, which is more technical than real, they

19 would have the opportunity to bring that to -- you know, to

20 object and to have where separate counsel is required and

21 counsel will be in place.

22 MR. KLEINMAN: I think Mr. Coleman is underscoring -

23 - underscoring in a very effective way exactly what my

24 concerns are. So not only does Mr. Coleman and Mr. Kushner

1  not have the ability to sort of bring the indemnitees to the

2  table in a stipulated agreement, I mean it's quite the

3  opposite.  He's now quite aware of the fact that if this Court

4  were to make an order against the indemnitees that well, maybe

5  they won't like it, so --

6        MR. COLEMAN:  No, I'm not.  I'm just referring to

7  your completely fabricated idea that they won't like it.  We

8  actually have --

9        THE COURT:  My friends -- my friends, I interrupt

10 you for the following reason.  It is extremely important that

11 you direct your comments to me.

12       MR. COLEMAN:  Thank you, your Honor.

13       THE COURT:  And I'm going to remind you all that

14 characterizations of each other's arguments in the nature of

15 completely fabricated are probably unproductive.

16       MR. COLEMAN:  Thank you, your Honor.

17       THE COURT:  It will not help me.  I think it's

18 ultimately for me to decide whether a -- whether an argument

19 has been well fabricated or poorly fabricated noting that most

20 arguments are fabricated from something.

21       MR. KUSHNER:  Touche, your Honor.

22       MR. COLEMAN:  Your Honor, we put these issues in

23 front of the Court, and I think your Honor, you know, can

24 decide whether or not -- the suggestion I'm hearing from the

City now is that it considers that because of the City's view

of the conflict on the plaintiff's side here it has reached

the conclusion that it could not enter into a stipulation, but

I think to the extent that the plaintiffs are prepared to

represent that they are authorized to and able to enter into a

stipulation, would the City be able to do so as well?

MR. KLEINMAN:  If you can in fact make those

representations, then we will agree, yes.

THE COURT:  All right.  When do you think you can

get me that kind of a stipulation for review and so ordering?

What I would like to do is get that up on the docket and have

a continued hearing maybe on the same day that we're having

our continued cash collateral hearing, and in fact you can

remind me, but I think we have --

MR. KUSHNER:  The 12th.

THE COURT:  Is that September 12th, Mr. Kushner?

MR. KUSHNER:  Yes.  At 9:00 a.m.

THE COURT:  All right.  And Mr. Kleinman, I know

that -- are you going to be the lawyer on this issue for the

City?

MR. KLEINMAN:  Yes, your Honor.

THE COURT:  I know we have a notice of appearance.

Okay.  Good.  Then we'll have continuity which is going to be

very valuable.

1     What I'd like you to do is continue to exchange the

2 information that will help you work through some of these

3 factual issues between now and then.  I'd also like to ask you

4 to feel free to contact Ms. Jackson if another telephonic

5 conference is necessary to move that process forward or clear

6 the air between now and that next conference because I will do

7 that.  My schedule will not be as difficult as it was today,

8 but I think that's a sensible way to proceed, and --

9           MR. KLEINMAN:  Your Honor, can I just make one

10 request?  I think --

11           THE COURT:  Is this Mr. Kushner?

12           MR. KLEINMAN:  No.  Mr. Kleinman.  This is Alan

13 Kleinman.

14           THE COURT:  Mr. Kleinman.

15           MR. KLEINMAN:  I just want to request that way in

16 advance of the hearing on the 12th that the debtor produce the

17 actual indemnity agreements that we're talking about here so

18 we can see exactly what they are and see exactly who the

19 parties are, and so --

20           THE COURT:  Mr. Kushner, how fast can you get those

21 to Mr. Kleinman?

22           MR. KUSHNER:  I --

23           THE COURT:  They're obviously the predicate for the

24 relief that you're seeking.

1      MR. KUSHNER:  I do not know.  I know that one of

2  them was actually quoted from an agreement with One Maiden

3  Lane, but I will endeavor to --

4      MR. COLEMAN:  Actually, I could answer that.  This

5  is Mr. Coleman.  We can get them to the City by Tuesday.

6      THE COURT:  By when?  By Tuesday?  Excellent.

7      MR. COLEMAN:   Yes.

8      THE COURT:  Mr. Kleinman, what is the best way to

9  get something to you, an e-mail attachment, a --

10      MR. KLEINMAN:  E-mail is great.  They have my e-

11  mail.  We've been e-mailing back and forth.  E-mail is great.

12      THE COURT:  Excellent.  E-mail is great, works for

13  me.  Great works for me in a general way.  I think we have a

14  way to proceed.  We'll have a stipulation by the end of the

15  day, or if somehow you have a sense of how you're proceeding,

16  but you haven't crossed the last T or dotted the last I, just

17  let someone in my chambers know, and if you could submit that

18  or update them no later than say 4:00 this afternoon, I'm sure

19  they'd be grateful.  So would I, and we'll see you on the

20  12th.  We'll carry this conference to that date on the

21  calendar for calendar control purposes, and if you need a

22  conference between now and then you contact Ms. Jackson.

23  Okay?

24      MR. KLEINMAN:  Excellent.  Thank you very much, your

1 Honor.  This is Alan Kleinman speaking.

2      THE COURT:  Thank you.  This has been super helpful.

3 Thank you, Mr. Kleinman and Mr. Kushner and Mr. Coleman too.

4      MR. KUSHNER:  Thank you, your Honor.  Again, I

5 appreciate you getting up early and taking this.

6      THE COURT:  Not a problem.  I say the same to you.

7 Happy Labor Day, everybody.  Okay.

8      MR. KUSHNER:  Thank you.

9      THE COURT:  I hope this is a weekend without storms,

10 earthquakes, or other problems.  All right.  Well, you take

11 care and I will see you on the 12th and speak to you before

12 then if it will be productive to do so.

13      MR. KUSHNER:  Thank you.

14      MR. COLEMAN:  Thank you, Judge.

15      MR. KLEINMAN:  Thank you.

16      THE COURT:  Okay.

17      THE CLERK:  The Court session is ended.

18

19           *         *         *

20                  **CERTIFICATION**

21

22 I, Catherine Aldrich, certify that the foregoing is a correct

23 transcript from the electronic sound recordings of the

24 proceedings in the above-entitled matter.

25

1

_____     September 10, 2011

2

3        Catherine Aldrich