Gary M. Kushner
Ronald D. Coleman
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtors*


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

In re:

OTR MEDIA GROUP INC.

                     Debtor.

Chapter 11

Case No. 1-11-47385 (ESS)

---------------------------------------------------------------- X

OTR MEDIA GROUP, INC., 203 17TH
REALTY LLC, SAKELE BROTHERS, LLC
*and* ONE MAIDEN LANE REALTY, LLC, *all
New York limited liability companies*, 848
FULTON REALTY CORP. *and* MING SHENG
INC., *New York corporations*, GOTHAM
BROAD, LLC, *a Delaware limited liability
company*, FOTINI THEOHARIDU, and
PHILLIPE JOCELINE, *natural persons*,

Adv. Pro. No. 1-11-01448

**AFFIRMATION OF
ARIEL S. HOLZER, ESQ.**

                     Plaintiffs,

       - *vs.* -

The CITY OF NEW YORK,

                     Defendant.

---------------------------------------------------------------- X

    Ariel S. Holzer, being of full age, duly affirms and states as follows:

    1.     I am an attorney admitted to practice in the United States Court, Eastern District,

New York, and was employed by the Debtor as in-house counsel from October of 2009 through

September of 2010, after which I have worked as outside counsel for the Debtor.   I submit this

1

affirmation in support to the motion of Debtor OTR Media Group, Inc. (OTR) and other plaintiffs (the "Non-Debtor Plaintiffs") for a preliminary injunction barring The City of New York ("the City") from enforcing certain judgments against the Non-Debtor Plaintiff's

2.      The Debtor OTR is an outdoor advertising company that, installs advertising displays on free structures and atop or on the sides of buildings in New York City.  Pursuant to various licensing agreements, OTR, either itself or through affiliated entities, rents space from Landlord Indemnitees.  In turn, OTR sells the space to advertising agencies for use in various advertising campaigns.

3.      During my employment with OTR, and continuing thereafter as outside counsel, I had primary responsibility for regulatory compliance, including the supervision of outside counsel, and had daily involvement in all aspects of enforcement proceedings and litigation relating to them involving OTR and the City of New York (the "City").  Based on this I have personal knowledge of the facts stated herein.

4.      The statement by Mr. Horan in his Declaration that "Many if not all of the signs the OTR Companies have installed are unlawful" is a deliberate falsehood and exaggeration meant to cast the Court's perception of the debtor in a prejudicially negative light.

5.      More significantly, the City knows its "Many if not all of the signs the OTR Companies have installed are unlawful" claim is false, for as part of OTR's attempt to negotiate a global settlement with respect to all its claims against OTR and OTR's landlords, in August OTR voluntarily provided the City with a full list of its sign inventory, past and present.  The City knows, based on that list, that OTR has operated and does operate many lawful signs – signs where there is not even a claim of any violation – and that there is no good faith basis whatsoever for the suggestion by the City possibly "all" of OTR's signs are "unlawful."

6.      Furthermore, it should be stated that a sign regarding which there is either an actual violation of a claim of a violation is not an "unlawful sign," which is a term with no particular meaning.  Many of the violations involved here, if not most, involve technical and often hyper-technical violations involving registration or disputes over the interpretation of grandfathering or other entirely abstract provisions in the City's sign regulations involving interpretation differences as to configuration, placement or the like.  Not a single one involves a threat to public safety and there has certainly never been any issue of criminal liability, despite what I understand was a representation to the contrary made by the City.

7.      Indeed, many of the signs which the City claims to be in violation of its regulations are the subject of currently ongoing litigation between the Debtor and the City regarding the lawfulness of said signs.  Indeed, based on my personal familiarity with the regulatory and enforcement record, there is every reason to believe that part of the City's stance against Debtor and what can only be described as the brutality of the enforcement techniques it employed against Debtor's landlords is a desire to do an end-run around OTR's bona-fide rights to object to its regulatory treatment via litigation.  If OTR's positions in these cases were vindicated – which, contrary to the City's suggestions, many ultimately have been and many more may yet be – the City's stance regarding compliance with outdoor advertising sign regulations would be weakened.  Of course the stance of lawful businesses seeking to do business in the City via outdoor advertising would at the same time be strengthened.

8.      Enclosed as exhibit A to this affirmation please find a spreadsheet listing of each of OTR's current locations.  As is clearly apparent from the enclosed listing the majority of OTR locations have full advertising permits issued by the City.  Of the locations that do not have a permit on file, all have overwhelming evidence of prior non-conforming use as advertising signs

and are thus legally grandfathered. One location involves an open question of partial New York State ownership interest in the property, for which we are awaiting clarification from the State (said interest would make the property exempt from City enforcement of Local Laws).

9.  The City argues that the Non-Debtor Plaintiff's should not be included under the stay as OTR indemnities' because many of them signed leases with OTR-affiliated limited liability companies rather than OTR itself and therefore any claim they would have for indemnification would be against the limited liability company rather than OTR. For the City to even make this argument, in light of its own position regarding OTR's affiliated entities, is stunning to me in light of my experience with regulatory litigation involving these specific issues.

10. Notwithstanding its current posture, in case after case brought against OTR and the Non-Debtor Plaintiffs by the City before the ECB, which created the debt the City is now seeking to collect, OTR would present evidence of the lease or licensing agreement, as applicable, between the OTR-affiliated entity and the Landlord Indemnitee, in order to establish that the landlord in question was not an outdoor advertising company itself – and subject to greatly enhanced penalties – but rather was in a contractual relationship with one. Thus the fact that in these cases not OTR, but the affiliated company named on the lease, was always established without dispute.

11. Despite this evidence, not a single time in all of the numerous violation hearings did the City ever dismiss violations in which it named OTR – the Debtor in this action – in favor of an affiliated limited liability company, which as the named Lessee or Licensee should have been the party responsible for said violations.

12. Moreover, not a single time did the City ever attempt to issue a violation to an OTR-affiliated limited liability company, including the plaintiffs in this case – even when it had

full knowledge that the OTR-affiliated limited liability company was the lessee prior to the issuance of said violations.

13. Finally the City's characterizations regarding various litigation matters between OTR and its Landlords regarding the indemnification must be addressed.

14. I had personal knowledge of all three cases the City cites in the papers it filed in opposition to OTR's present application. In all three matters, prior to the complaints being filed, the Debtor had assured the landlord in question that ultimately it would directly indemnify the Landlord Indemnitees against the sign violations levied against them by the City. These cases by landlords were filed despite these assurances because the Landlord Indemnitees wished to have the violations paid immediately, so as not to affect sales or refinancing, while OTR as a policy did not pay violations until it had gone through the full appeals process, ECB fines were reduced or settled, or all of OTR's defenses were otherwise exhausted. This question was the real dispute between the parties.

15. At all times, including while involved in litigation with the Landlord Indemnitees, OTR's officers made clear to me and with the Landlords that it was their belief that OTR is responsible for the Landlord Indemnitee's violations and would settle and pay them, upon exhaustion of OTR's claims against the City. Failure to do so, aside from being contrary to OTR's policies, would effectively destroy OTR's reputation and ensure that it would not be able to compete for future Leases and Licensing Agreements.

16. In all cases, the full cost of defense for these violations – including hundreds of thousands of dollars in legal fees – was borne solely by OTR and no other entity. This was at all time the expectations of the Landlord Indemnitees and of all of us at OTR.

17.     Notwithstanding these arrangements, OTR rationally reserved all its rights in correspondence and litigation.   In particular, the Court should be aware of all the relevant facts concerning the Sakele Brothers litigation cited by the City.   In that case, too, while OTR reserved its rights as it was prudent and responsible to do, it ultimately accepted, acknowledged and performed its obligation of indemnification to its landlords.   It knew that if it failed to do, OTR would be out of business in no time at all.

_____
ARIEL S. HOLZER

Dated:   September 27, 2011

# OTR Sign List

| Address | Permit / Status | Notes |
|---|---|---|
| 424 West 33rd Street, NY, NY | Full Advertising Permit # 101807528-01-SG | |
| 174 Canal Street, NY, NY | Full Advertising Permit # 104849185-01-SG | |
| 450 West 31st Street, NY, NY | Full Advertising Permit # 102663949-01-SG | |
| 860 Atlantic Ave, Brooklyn, NY | Full Advertising Permit # 301598028-01-SG | |
| 261 Walton Ave, Bronx, NY | Full Advertising Permit # 200485297-01-SG | Registered Arterial Highway Sign (in process) |
| 84 Withers Street, Brooklyn, NY | Full Advertising Permit # 310105588-01-SG | Registered Arterial Highway Sign (in process) |
| 945 Zerega Avenue, Bronx, NY | Full Advertising Permit # 200034159-01-SG | Registered Arterial Highway Sign (in process) |
| 25 Skillman Street, Ny, NY | Grandfathered Permit | Registered Arterial Highway Sign (in process) |
| 330 Bruckner Blvd, Bronx, NY | Full Advertising Permit # 201143217-01-SG | Registered Arterial Highway Sign (in process) |
| 838 6th Avenue, NY, NY | Grandfathered Non-Conforming Use | Stay of enforcement issued by Justice Tolub NY State Supreme Court |
| 340 Flatbush Ave, Brooklyn, NY | Grandfathered Non-Conforming Use | |
| 13 Carmine Street, NY, NY | Grandfathered Non-Conforming Use | |
| 59 4th Avenue, NY, NY | Grandfathered Non-Conforming Use | Not currently in use, currently before BSA for determination |
| 101-111 East 161st Street, Bronx, NY | Grandfathered Non-Conforming Use | |
| 460 West 41st Street, NY, NY | Exempt due to NYS ownership interest in property | Awaiting clarification of status from NYS Office of General Services |
| 207 Dyckman Street, NY, NY | Grandfathered Non-Conforming Use | |
| 445 West 35th Street, NY, NY | Full Advertising Permit # 100159775-01-SG | |
| 2437 Grand Concourse, Bronx, NY | Full Advertising Permit # 201137386-01-SG | |