Gary M. Kushner, Esq.
Ronald D. Coleman, Esq.
GOETZ FITZPATRICK LLP
One Penn Plaza—Suite 4401
New York, NY 10119
Tel: (212) 695-8100
gkushner@goetzfitz.com
rcoleman@goetzfitz.com
*Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

In re:

OTR MEDIA GROUP INC.

                         Debtor.

Chapter 11

Case No. 1-11-47385 (ESS)

---------------------------------------------------------------- X

OTR MEDIA GROUP, INC., 203 17TH REALTY LLC, SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE REALTY, LLC, *all New York limited liability companies*, 848 FULTON REALTY CORP. *and* MING SHENG INC., *New York corporations*, GOTHAM BROAD, LLC, *a Delaware limited liability company*, FOTINI THEOHARIDU, and PHILLIPE JOCELINE, *natural persons*,

                         Plaintiffs,
                         - *vs*. -

The CITY OF NEW YORK,

                         Defendant.

Adv. Pro. No. 1-11-01448 (ESS)

---------------------------------------------------------------- X

# PLAINTIFFS' OPPOSITION TO CITY OF NEW YORK'S MOTION TO VACATE STIPULATION AND ORDER DATED SEPTEMBER 2, 2011

**GARY M. KUSHNER**, an attorney licensed to practice law in the State of New York and before this Court, pursuant to 28 U.S.C. §1746 and under the penalty of perjury, hereby declares as follows:

1. I am a partner of Goetz Fitzpatrick, LLP ("Goetz"), proposed counsel for OTR Media Group, Inc. ("OTR" or "Debtor") and for each of the plaintiff/landlords in the above captioned adversary proceeding (collectively, the "Plaintiffs"). In that capacity, I have personal knowledge of the facts set forth herein.[1]

2. I submit this declaration in opposition to the application (the "Application") of the City of New York (the "City" or "Defendant") which seeks to vacate the Stipulation and Order entered in this adversary proceeding on September 2, 2011.

3. The Application should be denied on both procedural and substantive grounds.

**A. Procedural Objections**

4. The Application is rife with procedural defects which mandate dismissal of the motion, or, at the very least, an adjournment of the return date.

5. First, the City's scheduling of the hearing on the Application did not provide Plaintiffs with adequate notice or with ample time to respond.

6. The Application was filed with the Court *via* ECF on October 11, 2011 at 8:39 p.m. and was served upon Goetz by e-mail on October 11, 2011 at 8:40 p.m. [*See* ECF No. 16].

7. Upon my receipt of the Application the following morning, October 12, 2011, I made written request to Brian Horan, Esq., counsel for the City, for an adjournment based upon the fact that, *inter alia*, the Application could not be made returnable until October 25, 2011 in

---

[1] Goetz originally filed an *ex-parte* application for an order authorizing the Debtor to retain Goetz as its chapter 11 counsel. At the request of the Office of the United States Trustee ("UST"), Goetz refiled its retention application on notice to all creditors and parties in interest. The hearing on the Goetz retention application is scheduled for October 25, 2011. Consequently, the Court has not yet approved Goetz as counsel for OTR.

accordance with the local rules of this Court. A true copy of my letter to Mr. Horan is annexed hereto as Exhibit "1".

8. By letter dated October 17, 2011, the City declined to voluntarily adjourn the hearing date in connection with the Application to a date which complies with the local rules - both as to scheduling of the hearing and as to the proper allotment of time to respond. A true copy of Mr. Horan's responsive letter is annexed hereto as Exhibit "2".

9. By refusing to adjourn the hearing date or otherwise meaningfully honor the request for additional time to respond, the City has, in effect, provided Goetz with five (5) days to oppose to the Application - two of which fell on a Saturday and Sunday, and all of which fell smack in the middle of a religious holiday diligently observed by my partner Ronald D. Coleman (who is lead counsel in this adversary proceeding) and by the Debtor and its management team of Ari Noe and Michael Eisenberg, as well as several representatives of the landlord/plaintiffs.[2]

10. To underscore the type of gamesmanship being played by the City's counsel *vis a vis* the scheduling chosen and refusal to honor my reasonable request for an adjournment, I respectfully point out that Alan Kleinman, Esq., a senior attorney at the Corporation Counsel, previously stood before this Court on September 28, 2011 and professed that at no time would he <u>ever</u> interfere with the religious practices of a colleague or adverse party through, *inter alia*, the manipulative scheduling of matters in this – or any other case.

11. Yet the City's response that Goetz could have one (1) additional day to respond to the insufficiently noticed Application does just that. (*See* Horan letter, Exhibit "2" herein).

12. In light of Mr. Coleman's and my clients' observance of the Jewish holiday, Plaintiffs could not fully respond to the Application with independent affidavit testimony within

---

[2] By local rule, Plaintiffs response to any application of this nature was due at least seven (7) days prior to the return date – or in this case by October 17, 2011.

the shortened time-period allotted by the City. For that reason alone, the hearing on the Application should be adjourned.

13. Second, the notice of the Application is likewise procedurally deficient in that it fails to give any notice of the statute or rule upon which relief is sought by the City.

14. Local Bankruptcy Rule 9013-1 provides, in relevant part, that a "motion . . . shall specify the rules and statutory provisions upon which it is based and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law, and the factual grounds for relief." *See* Local Bankruptcy Rule 9013-1(a).

15. The notice of motion and the underlying Application are bereft of any statutory provision upon which the City relies to vacate the Stipulation and Order.

16. In point of fact, there is no statutory authority for the relief sought by the City.

17. Giving the City every benefit of the doubt, perhaps its intention is to seek relief under Local Bankruptcy Rule 9023-1(b) which specifically authorizes a party to file a motion for reconsideration of an order pursuant to Bankruptcy Rule 9023. It is conceivable that because of his unfamiliarity with the Local Rules[3] the City's counsel of record Mr. Horan made no mention of any rule at all, including Bankruptcy Rule 9023, as the predicate rule for the relief sought by the City in its Application.

18. But Bankruptcy Rule 9023(e) is seemingly the only section which conceivably applies to the City's request for relief, and provides as follows:[4]

---

[3] Mr. Horan, who filed the Application and submitted a supporting declaration on behalf of the City, was recently admitted to practice before this Court in this adversary proceeding on a *pro hac vice* basis. Under the procedures which apply to *pro hac vice* admission, Mr. Horan was required to read the local rules and acknowledge in his application to the Court that he understood them.

[4] Bankruptcy Rule 9023(a)-(d) detail procedures relating to applications for a new trial and do not otherwise apply to the instant Application.

4

> "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

*See* Bankruptcy Rule 9023(e).

19. Applying the time parameters explicitly stated in Bankruptcy Rule 9023(e) to the facts here, however, the City would have been compelled to move for relief from the Stipulation and Order on or before October 3, 2011.[5]

20. The City's deadline to seek relief under Bankruptcy Rule 9023(e) expired because, as stated in the declaration of Brian Horan dated October 11, 2011 (the "Horan Declaration") in support of the Application, the City had ample time to file its motion before that deadline. A true copy of the Horan Declaration is annexed hereto as Exhibit "3".

21. The City has at no time sought an extension of that deadline.

22. According to the Horan Declaration, relief from the Stipulation and Order is warranted because the City supposedly learned from a conversation with lawyers at Morrison Cohen, counsel to Sakele Brothers LLC ("Sakele"), that these lawyers were unaware that Sakele was named as a plaintiff in this adversary proceeding.

23. Based upon that singular communication with a Morrison Cohen attorney – whose first-hand affirmation has not been provided – the City leaps to the conclusion that at least one of the plaintiff/landlords, Sakele, was itself unaware of its legal obligations under the Stipulation and Order. *See* Horan Declaration, ¶¶'s "13-14".

24. The Court may share in the confusion of the undersigned as to how Mr. Horan can conclude, as he has, that Sakele did not know about this litigation because other counsel, retained

---

[5] The 28 day deadline for the City to move for reconsideration of the Stipulation and Order pursuant to Bankruptcy Rule 9023 was October 1, 2011 which fell on a Saturday. In accordance with another local rule of this Court, October 3, 2011 was the next business day available to the City to timely file the Application. *See* Local Bankruptcy Rule 9006-1. The filing of the Application was tardy by over a week.

5

for an entirely different purpose and matter and not known to be omniscient, may not have known that Sakele was a plaintiff in this adversary proceeding.

25. In fact, Sakele's counsel, Morrison Cohen, appeared in this Chapter 11 case via ECF on October 19, 2011 [*See* ECF No.18] and has had direct notice of all proceedings, including information with respect to associated cases, since no later than that date. Moreover, Sakele made an appearance directly in this adversary proceeding as well on October 19, 2011 and has not been heard to join in the City's characterization of the facts.

26. Moroever, the City's conversation with the attorneys at Morrison Cohen occurred on September 19, 2011 – not only ten days after the firm appeared in the Chapter 11 action, but some two (2) full weeks before the October 3rd deadline imposed by Bankruptcy Rule 9023. *See* Horan Declaration, ¶ "10".

27. There is no explanation in the Horan Declaration as to why the City chose to wait almost 3 ½ weeks to file the Application after it spoke with Morrison Cohen and came to the nonsensical conclusion that the City's rights under the Stipulation and Order had been compromised.

28. Whether or not the City strategically chose to file the Application knowing that Plaintiffs, or their counsel, would be hard pressed to timely respond during the religious holiday, the simple fact is that the City ignored filing deadlines imposed under the applicable Bankruptcy Rule rendering fatal and untimely the Application – which as demonstrated below is in any even meritless – that the City claims is now before this Court.

29. To complicate matters even further, the City has now filed an objection to the retention of Goetz as Debtor's chapter 11 counsel on the ground that Goetz supposedly has a

conflict in representing both the Debtor and the landlord/plaintiffs in this Adversary Proceeding. [*See* ECF No. 43 filed in main chapter 11 case].[6]

30. On October 24, 2011, Goetz filed an omnibus reply to the objection raised by the City (and other parties in interest) in connection with Goetz's application for retention as Debtor's chapter 11 counsel. As noted in its reply, Goetz has agreed to withdraw as counsel for the plaintiff/landlords in both the instant adversary proceeding and the "§1983 action" (as defined herein) which is pending in the United States District Court.

31. In light of Goetz's withdrawal as the plaintiff/landlords' counsel in this adversary proceeding, Goetz should not be placed in the position of having to respond to the Application on behalf of persons or entities that it will no longer represent.

32. The Court should adjourn the hearing on the Application to enable new counsel for the plaintiff/landlords to fully respond.[7] The requested adjournment would serve the interests of justice for at least two (2) reasons.

33. First, the adjournment will enable the plaintiff/landlords to retain independent counsel which was seemingly an express concern raised by the City in its opposition to the Goetz retention application. Second, the adjournment will enable sufficient time for plaintiff/landlords to fully respond within the time frame afforded by the local rules – which was denied by the City in the first place.

---

[6]Ironically, the City has based its response to the Goetz retention application on the claim that there is a conflict of interest, yet at the same time, questions whether the landlord/plaintiffs are Goetz's clients in this adversary proceeding for purposes of the instant Application.

[7] In point of fact, Mr. Coleman has recently informed the District Court of the pending impasse insofar as it concerns the City's claim of "conflict of interest" and specifically advised Magistrate Judge Carter of our inability to participate in further proceedings on behalf of the plaintiff/landlords in connection with the §1983 Action. *See* letter to Hon. Andrew L. Carter, Jr. dated October 19, 2011, and the City's utterly unresponsive reply of the same date, both annexed hereto as Exhibit "4".

7

## B. The Application Should Be Denied On Substantive Grounds

34. In addition to the foregoing procedural deficiencies, the relief sought by the City in the Application should be denied on the merits.

35. Although not a model of clarity, the Application seemingly seeks to vacate the Stipulation and Order on the following grounds:

- (a) first, the City questions whether the plaintiff/landlords are truly clients of Goetz and whether Goetz had the authority to enter into the Stipulation and Order on behalf of the plaintiff/landlords (*see* Application ¶ "12");

- (b) second, the City contends that "there is reason to believe that Goetz Fitzpatrick failed to apprise some or all of the Non-Debtor Plaintiffs, its purported client of this obligation" (*see* Horan Declaration, ¶ "9");[8] and

- (c) third, Goetz failed to provide the City with a statement of assurance that the plaintiff/landlords had not violated the terms and conditions of the Stipulation and Order (*see* Horan Declaration, ¶ "13").

36. Each one of these baseless contentions are addressed *seriatim*.

### (a) Goetz Was Authorized to Represent the Plaintiff/Landlords and To Enter Into the Stipulation and Order

37. The contention by the City that Goetz "purports" to represent the plaintiff/landlords (*see* Horan Declaration, ¶ "6") or that Goetz wasn't authorized to sign the Stipulation and Order on their behalf is so dibbledible that it is difficult to muster a response other than to deny these preposterous statements *in toto*.

38. The farcical nature of the City's position is amplified by, *inter alia*, the City's longstanding awareness that Goetz was retained by these same identical landlords (again in furtherance of the Debtor's obligation to indemnify) to prosecute the action pending before

---

[8] "This obligation" refers to that part of the Stipulation and Order which provides that the plaintiff/landlord would not take any action" to alienate, encumbers, transfer, protect, pledge or otherwise affect any assets except in the normal course of business."

8

Judge William Kuntz and Magistrate Judge Andrew Carter in the United States District Court, Eastern District of New York under 2011 CV 1392 (the "1983 Action") in which the City is a defendant and sole defense counsel.

39. The members and associates at Goetz have been practicing before federal courts in many jurisdictions, for many many years, knowing full well that under Fed. R. Civ. P. 11, a signature on a pleading means something.[9] When Goetz signed both the complaint in this adversary proceeding and the Stipulation and Order which followed, it expressly acknowledged to this Court that it represented the plaintiff/landlords and was acting on their behalf.

40. If there is truly a legitimate concern whether Goetz was acting without the authority of the landlord/plaintiffs, it certainly could not have arisen by virtue of a single telephone conversation with one of perhaps many law firms used by Sakele for a smorgasbord of issues – who despite their firm's appearance in the Chapter 11 action and presumed awareness of all associated cases set forth on the ECF docket simply stated that they were unaware of the adversary proceeding – and nothing more!!

  **(b) <u>The Plaintiff/Landlords Are Informed</u>**

41. Perhaps even more preposterous is the City's assertion that Goetz failed to apprise the plaintiff/landlords of their obligation(s) under the Stipulation and Order.

42. Relying solely upon a singular conversation occurring on September 19, 2011 with two (2) lawyers at Morrison Cohen, retained by Sakele for a separate and different matter than the one being handled by Goetz, the City leaps to the conclusion that Sakele, as well as the other plaintiff/landlords, was unaware of their duties under the Stipulation and Order.

---

[9] Suffice it to say, Goetz is also equally aware of the Rule 9011 counterpart as it relates to pleadings filed in this Court.

43. The record made by Mr. Horan to support the Application makes it abundantly clear that the City made no further investigation or effort to ascertain whether Morrison Cohen's lack of knowledge about the adversary proceeding meant anything more than the obvious so as to give credence to the City's "chicken little" conclusions which are voiced in the Application.

44. Once the City had finished the September 19, 2011 conversation with Morrison Cohen, either Mr. Horan or Mr. Kleinman, in the exercise of reasonable diligence, could have, but did not, speak to either Mr. Coleman or myself concerning the possibility that Sakele may not have been aware of the adversary proceeding, the Stipulation and Order or its duty not to transfer assets outside of the ordinary course of business.[10] Of course, no effort was made by the City of <u>any</u> kind to investigate whether any misdeeds had occurred by any of the Plaintiffs, much less Sakele.

45. Similarly, it doesn't appear that the City made any effort to follow up its conversation with Morrison Cohen to ascertain whether any of the other unwarranted and fallacious presumptions which permeate the Application were true. There is no affirmation from any attorney in that office to support the City's assertions.

46. At best, the City's singular conversation with counsel at Morrison Cohen suggests nothing more than the possibility that Messrs. Dal Lago and Lupion said that they were unaware of Sakele's involvement in the adversary proceeding. Nowhere can it be reasonably adduced from Mr. Horan's conversation with Morrison Cohen that <u>Sakele</u> (or any of the other plaintiff/landlords) were unaware of the adversary proceeding or the recently entered Stipulation and Order.

---

[10] It speaks volumes that the City has presented no evidence in the Application that either Sakele, or any of the other Plaintiffs, have transferred assets in contravention of the Stipulation and Order.

47. As pronounced on numerous occasions by your declarant, Goetz was not retained by any of the plaintiff/landlords to pursue their claims directly against OTR. Goetz could not and has not represented any of the plaintiff/landlords in that regard. Consequently, it is far from extraordinary that Morrison Cohen would be hired by Sakele for other purposes that Goetz simply could not handle. As noted in the Horan Declaration, Morrison Cohen was retained by Sakele in the bankruptcy case, not the adversary proceeding, for the limited purpose of pursuing Sakele's indemnification claim against the Debtor. It should not be surprising, as it apparently is to the City, that Morrison Cohen was not aware of the adversary proceeding because its retention by Sakele was for a totally different purpose, in an entirely different proceeding than the instant proceeding before this Court. *See* Horan Declaration, ¶ "10".

48. And while the singular conversation with Morrison Cohen may have revealed to the City that Mr. Dal Lago and Mr. Lupion lacked knowledge about the adversary proceeding, the City cannot reasonably adduce, as it has for purposes of the Application, that the conversation truly demonstrates that:

  (a)  Sakele was unaware of its obligation(s) under the Stipulation and Order;

  (b)  Sakele violated the terms of the Stipulation and Order;

  (c)  any other of the plaintiff/landlords were unaware of the terms of the Stipulation and Order; or

  (d)  any other of the plaintiff/landlords had violated the terms of the Stipulation and Order.

49. Moreover, as set forth above, Mr. Dal Lago made his appearance in the Chapter 11 proceeding on September 9, 2011. It is eminently reasonable to assume – and is certainly no less so that the City's assumptions are – that, being aware that this office was responsible for the prosecution of the adversary proceeding, Mr. Dal Lago did not have it in mind during his discussions with the City. But the ECF docket in this case clearly indicate the existence of

11

associated cases at the very top of the ECF web page, which any attorney appearing in the Chapter 11 case on behalf of an interested creditor would presumably investigate, as he would the docket entry indicating the filing of the adversary case itself – here, Docket No. 15 in the Chapter 11 case clearly records the filing of the Adversary Case only two weeks prior to the entry of appearance by that firm.

### (c) Goetz Has Not Violated The City's Request To Provide Assurance of Compliance

50. In light of the above, it is not surprising that the first time anybody heard about the City's conversation with Morrison Cohen was on September 28, 2011 (some 10 days after it allegedly occurred) when Mr. Kleinman made his cryptic presentation of the event to this Court.

51. The Court should recall that during the hearing on September 28, 2011, Mr. Kleinman desperately attempted to persuade this Court, on oral application, to relieve the City from its agreement with the Plaintiffs (i.e., the Stipulation and Order) on the basis of second-hand "facts" whose presentation was incomprehensible.

52. The Court should recall too that Mr. Kleinman was admonished for his attempt to obtain relief in this way and was advised to seek relief in the form of a written motion. By all indications, this is that motion, which, as set forth above, inexplicably was not filed until two (2) weeks later, even though, according to the City, the sky was falling on the City's bargained-for rights.

53. Furthermore, with all due respect to Mr. Kleinman's memory, faulty as it may be, while I did promise a letter of assurance to him during the hearing on September 28, 2011, this was explicitly conditioned on his provision of a more detailed factual background than the obscure presentation of facts he attempted to make orally and without notice at the hearing.

54. Indeed, when I next heard from Mr. Kleinman by e-mail on October 6, 2011 (without having received any further written explanation of the events that needed reassurance from the plaintiff/landlords), I asked my partner, Ronald D. Coleman, to respond to Mr. Kleinman and specifically to remind Mr. Kleinman of our expectation that we awaited a letter outlining the specific acts or omissions which the City wanted us to address.

55. Mr. Coleman, in his <u>immediate</u> response to Mr. Kleinman, specifically asked Mr. Kleinman for a written description of the events which the City had concern so that we could respond. (*See* Application, Exhibit "1").

56. Of course, not surprisingly, Mr. Kleinman never provided such information or any explanation for his refusal to do so – neither orally in writing or otherwise -- electing instead to file the Application and acrimoniously pronounce Goetz to be the bad guys. This is not only the same approach the City has taken whenever any consideration of the rights of this Debtor have been before this Court, but it is once again utterly unenlightening in terms of the merits of the Application, due consideration of this Court's guidelines for doing business and, of course, norms of collegiality and courtesy expected of litigants in the federal courts.

57. Ultimately, the City has provided the Court with a procedurally flawed motion, based on second-hand and incomplete information which, even if true, would lead to no more than entirely speculative grounds for even a fraction of the relief it seeks. If, indeed, the City has specific information about events which it believes has interfered with the City's bargained for rights under the Stipulation and Order, it is invited to provide it to us and a prompt response will be forthcoming. As of today, that still has not occurred.

### (d) Some Final, Substantive Comments Concerning Legal Issues

58. Last, but no less important, in the Application, the City seeks relief from the Stipulation and Order on its renewed argument that injunctive relief under Rule 7065 was never warranted in the first place.[11] The City premises this argument on the claims that the landlord/plaintiffs have no indemnity agreements with the Debtor, but, rather with other non-debtor affiliates such as Splash, Inc. ("Splash").

59. The Debtor has repeatedly invited the City to enter into an expedited discovery schedule wherein it will learn, once and for all, the true facts regarding the Debtor's relationship with the affiliated LLC's, including Splash. Perhaps then the City will be deterred from making statements which have no basis in fact or law. The City still has not provided Goetz with a proposed discovery schedule.

60. The Debtor has never claimed that Splash is a wholly owned subsidiary of OTR or that it is otherwise entitled to the protection of the automatic stay or other form of injunctive protection. If the City ever gets around to taking discovery in this case, it would learn that the Debtor now owns several leased locations which were previously owned by Splash. The Debtor has identified on its petition and schedules all of its leases with landlords (including Splash's locations and all of those other leases where a related entity is the named tenant) as property of the estate within the meaning of §541 of the Bankruptcy Code. As to those particular signs formerly owned by Splash, the Debtor does not need injunctive relief because those leases are property of the chapter 11 estate to which the automatic stay applies.

---

[11] The Stipulation and Order settled the Plaintiffs order to show cause for omnibus relief, of which, a preliminary injunction was just one. In the Application, the City has no response, meaningful or otherwise, to the well recognized tenet of law that the automatic stay extends to the non-debtor plaintiffs. *See* for example *Branham v. Loews Orpheum Theatre*, 291 A.D.2d 356, 739 N.Y.S.2d 27 (1st Dept. 2002).

61. All leases with a landlord, be it where the tenant is OTR or an OTR affiliated LLC, are specifically identified by the Debtor on its petition as an asset of the estate, as if the Debtor was the tenant under that agreement. Each of the landlords to these leases claim indemnity from the Debtor and the Debtor does not deny the existence of an indemnity agreement with respect to those leases. The City's ignorance of this fact aside, it would be much easier for the Debtor to reorganize were it to deny the existence of the indemnity – a point apparently lost in the City to this very day.

62. The City makes far too much of the Debtor's schedules which, in some instances, dispute the claims of some of the plaintiff/landlords. The City's reference to the foregoing evidences, to an even greater degree, its ignorance of why the Debtor has done so.

63. Contrary to the City's claim that a "disputed" claim of a landlord/plaintiff evidences the Debtor's dispute to the existence of an indemnification agreement, nothing could be further from the truth. Rather, the Debtor's dispute of a landlord/plaintiff's claim does not dispute the existence of an indemnity, it disputes that the obligation to pay has matured.

64. To be more clear, an ECB violation rendered in the initial ECB court has many levels of appeal until it becomes final. Certain landlord/plaintiffs have taken the position that the duty to pay under the indemity arises at the outset, regardless of what happens to the assessment on appeal. The Debtor takes the position that the duty to pay under the indemnity agreement does not occur until the assessment results in a final judgment.

65. **In either case, there is no dispute by the Debtor or any of the plaintiff/landlords – those in the best position to know and having the most at stake in disputing – that an indemnity agreement exists**. Consequently, the landlord/plaintiffs are

**entitled to the protection afforded by the Stipulation and Order and the City has cited no reason to disturb that agreement.**

66. For all of these reasons, the relief sought in the Application should be denied.

Dated: New York, New York
October 24, 2011

/s/Gary M. Kushner
Gary M. Kushner

k:\kushner\otr - chapter 11\adversary proceeding\motion to vacate stipulation by city\opposition to city's motion to vacate stipulation and order.Final.rdc comments.10242011.docx