MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendant The City of New York*
Attn: Brian Horan
100 Church Street
New York, NY 10007
212.788.1267
bhoran@law.nyc.gov

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| OTR MEDIA GROUP INC., | : | Case No. 1-11-47385 (ESS) |
| | : | |
| Debtor. | : | |
| | : | |

------------------------------------------------------------------ x

| | | |
|---|---|---|
| OTR MEDIA GROUP, INC., *et al.*, | : | |
| | : | Adv. Pro. No. 1-11-01448 |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE CITY OF NEW YORK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

------------------------------------------------------------------ x

### MEMORANDUM OF LAW OF THE CITY OF NEW YORK IN SUPPORT OF ITS MOTION FOR A DECLARATION THAT SECTION 362(a) OF THE BANKRUPTCY CODE DOES NOT STAY THE CITY'S ADMINISTRATIVE ENFORCEMENT OF THE ZONING RESOLUTION AND THE BUILDING CODE

The City of New York (the "City"), the defendant in the above-entitled adversary proceeding (the "Adversary Proceeding"), by its counsel, MICHAEL A. CARDOZO, Corporation Counsel of the City of New York, hereby submits this Memorandum of Law in support of its motion seeking a declaration that Bankruptcy Code § 362(a) does not stay the City's efforts to enforce administratively its police powers with respect to advertising signs in the

City. Accompanying this memorandum is the Declaration of Brian T. Horan, setting forth facts relevant to this motion.

**PRELIMINARY STATEMENT**

In this Chapter 11 bankruptcy, the key question is whether the debtor can successfully restructure. That question hinges upon whether the debtor has any assets. The Debtor has produced a list of 18 signs, which are for all intents and purposes the sole assets of the estate. But if most of those signs are not lawful, the chance of a successful reorganization is near zero.

The Debtor has refused to consent to the moving forward of the administrative process for any of its signs, an action that is revealing of its confidence in the lawfulness of its own signs. Regardless of the Debtor's position, those adjudications should go forward, because it is the only process that can determine the lawfulness of the signs. The City's Law Department takes the position that the City has the authority to proceed with those administrative proceedings. Without waiving that right, and acting with an abundance of caution, the City requests that the Court declare what the City believes is obvious from the Bankruptcy Code: no stay prevents the City's exercise of its police powers, including making administrative determinations and adjudications. By this motion, the City is not at this time seeking to go beyond determinations and decisions to docket or enforce judgments

The City's regulation of the Debtor's signs is excepted from the automatic stay because it is a governmental unit's exercise of its police or regulatory powers under § 362(b)(4). A long line of cases, stretching back more than a century, establishes that the City's regulation of signs is an exercise of its police power, designed to protect substantial public interests in promoting traffic safety and preserving aesthetics. In addition, the Debtor is not entitled to a

preliminary injunction or a stay under § 105 barring the city from enforcing its sign regulations. Furthermore, this Court should abstain from entering an order restraining the city from enforcing its sign regulations.

**ENFORCEMENT, ADJUDICATIONS AND APPEALS OF**
**SIGN REGULATIONS IN THE CITY OF NEW YORK**

The City provisions regulating signs are designed to protect neighborhood character and to address aesthetic and traffic safety concerns. The New York City Zoning Resolution (hereinafter "Zoning Resolution" or "Z.R."), divides the City into three basic zoning districts: residential, commercial, and manufacturing. Within these broad categories there are numerous subgroups. The permitted uses of a particular zoning lot depends upon the zoning district in which the lot is situated. The City's signage regulations permit or prohibit particular categories of signs and regulate their size, height, projection, and illumination.

The thrust of the signage regulations is to ban advertising signs in residential and low-density commercial zoning districts in the City, and permit them, subject to certain size, placement and lighting restrictions, in high-density commercial and manufacturing zoning districts. Z.R. §§ 32-62, 32-63, 42-52, 42-55.

Pursuant to § 643 of the New York City Charter ("City Charter"), the lawfulness of advertising signs are determined by the City's Department of Buildings ("DOB"). Section 645(b) of Chapter 26 of the City Charter empowers the Commissioner of Buildings to approve certificates of occupancy and approve plans for the construction and alteration of buildings "subject to review only by the board of standards and appeals" ("BSA"). Adjudications of violations issued by DOB occurs at the New York City Environmental Control Board ("ECB"), a

specialized administrative body with the expertise to decide the lawfulness *vel non* of signs. *See* City Charter § 1049-a.

A litigant cannot obtain judicial review of an administrative determination without first exhausting all available administrative remedies and thereby making the agency's determination final and ripe for judicial review. *See Lehigh Portland Cement Co. v. N.Y. State Dep't of Envtl. Conservation*, 87 N.Y.2d 136, 140 (1995).

**ARGUMENT**

I. **THE CITY'S REGULATION OF DEBTOR'S SIGNS THROUGH THE ISSUANCE AND ADJUDICATION OF NOVs IS EXCEPTED FROM THE AUTOMATIC STAY UNDER § 362(b)(4)**

A. **The Exception To the Automatic Stay Under § 362(b)(4) Broadly Permits a Governmental Unit's Enforcement of Its Police and Regulatory Powers**

Enforcement proceedings fall squarely within the exception from the automatic stay under § 362(b)(4) for the enforcement of a governmental unit's police or regulatory powers. That section provides, in relevant part: "The filing of a petition under section 301, 302, or 303 of this title … does not operate as a stay – (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power."

The scope of the police power or regulatory exception is very broad. Quoting with approval from the legislative history of § 362(b)(4), the United States Supreme Court has announced that "where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay." *Midlantic National Bank v. New Jersey Department of*

4

*Environmental Protection*, 474 U.S. 494, at 503-04 (1986), *quoting* H. R. Rep. No. 95-595, and S. Rep. No. 95-989 (emphasis deleted).

The bankruptcy court's role in determining whether a challenged non-final administrative agency enforcement action is covered by the § 362(b)(4) exception is limited to the determination of whether that action is, in fact, an exercise of the government's police and regulatory power. *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991). In that case, the debtor was subject to ongoing administrative enforcement proceedings by the Federal Reserve's Board of Governors. When the debtor filed bankruptcy, it sought an injunction against the continuation of the enforcement proceedings. The Supreme Court held that the enforcement proceedings were included in the exception under § 362(b)(4), and that the lower courts lacked authority to enjoin the regulation. Moreover, the Supreme Court held that the Bankruptcy Court should not first examine the legitimacy of the exercise of the agency's police power:

> The filing of a bankruptcy petition operates as an automatic stay of several categories of judicial and administrative proceedings. The Board's planned actions against MCorp constitute the "continuation … [of] administrative … proceeding[s]" and would appear to be stayed by 11 U.S.C. § 362(a)(1). However, the Board's actions also fall squarely within § 362(b)(4), which expressly provides that the automatic stay will not reach proceedings to enforce a "governmental unit's police or regulatory power."
>
> MCorp contends that in order for § 362(b)(4) to obtain, a court must first determine whether the proposed exercise of police or regulatory power is legitimate and that, therefore, in this litigation the lower courts did have the authority to examine the legitimacy of the Board's actions and to enjoin those actions. We disagree. MCorp's broad reading of the stay provisions would require bankruptcy courts to scrutinize the validity of every administrative or enforcement action brought against a bankrupt entity. *Such a reading is problematic, both because it conflicts with the broad discretion Congress has expressly granted many administrative entities and because it is inconsistent with the limited authority Congress*

5

> *has vested in bankruptcy courts*. We therefore reject MCorp's reading of § 362(b)(4).

502 U.S. at 40 (emphasis added).

*MCorp*'s holding that the bankruptcy court is limited to determining whether the action is part of the local government's police powers applies here. In a recent case, the bankruptcy court was asked to authorize the sale by a debtor hospital of its expired ambulance operation authority ("AOA"), which was regulated by the state Health Department. *In re Cabrini Medical Center*, 440 B.R. 54, 55 (Bankr. S.D.N.Y. 2010). Chief Bankruptcy Judge Gonzalez noted that "[t]here is a long line of precedent delineating the boundary between the jurisdiction of a bankruptcy court and that of a state seeking to enforce its regulatory powers." 440 B.R. at 56. He further stated:

> *MCorp* supports the proposition that bankruptcy courts cannot look at whether an exercise of police power is legitimate. Since MCorp, however, bankruptcy courts have analyzed whether the police or regulatory power is actually being invoked. In order to do so, they distinguish between situations in which the state acts pursuant to its police and regulatory power and situations in which the state acts merely to protect its status as a creditor. *If the purpose of the law is to effectuate public policy or promote public safety and welfare, then the exception applies.* But, if the purpose of the law relates to the protection of the government's pecuniary interest in the debtor's property, or to adjudicate private rights, then the exception is inapplicable (the "pecuniary test").

440 B.R. at 58 (emphasis added; citations and internal quotation marks omitted), *citing Safety-Kleen, Inc. v. Wyche, et al., (In re Pinewood)*, 274 F. 3d 846 (4th Cir. 2001); *Enron Corp. v. California ex rel. Lockyer (In re Enron Corp.)*, 314 B.R. 524 (Bankr. S.D.N.Y. 2004). Judge Gonzalez concluded that he could not enter the requested order, because of the vital public interest relating to the state's exercise of its police power in the case. 440 B.R. at 60.

The emphatic carve out of police power activities is of a piece with the primary purposes of the § 362(b)(4) exception to the automatic stay: to prevent a debtor from attempting

to use the Bankruptcy Court as a "sanctuary for environmental wrongdoers" and to prevent "frustrat[ing] necessary governmental functions." *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988). Thus, holding that the § 362(b)(4) exception applies to governmental enforcement actions seeking either damages or injunctive relief, because both are legitimate deterrents to unlawful conduct, the Second Circuit explained that "[t]he need to continue such deterrent actions, despite the pendency of a bankruptcy action, furthers the purpose of the regulatory exemption to the automatic stay squarely: to avoid frustrating necessary governmental functions by seeking refuge in bankruptcy court." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. N.Y. 1991) (citation and internal quotation marks omitted); *see also In re Ngan Gung Restaurant, Inc.*, 183 B.R. 689, 693 (Bankr. S.D.N.Y. 1995); *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988) ("Congress clearly intended for the police power exception to allow governmental agencies to remain unfettered by the bankruptcy code in the exercise of their regulatory powers.").

    **B.**     **The City's Enforcement of Its Sign Regulations Is a Well Recognized Exercise of Its Police Power, Bringing the City's Regulation of Debtor's Signs Squarely Within the § 362(b)(4) Exception to the Stay**

The City's regulation of outdoor advertising signs has long been recognized as falling squarely within the exercise of the City's police powers, qualifying the City's regulation of Debtor's signs for the § 362(b)(4) exception to the automatic stay. For example, the Supreme Court has definitively stated that

> [w]hile signs are a form of expression protected by the Free Speech Clause, they pose *distinctive problems that are subject to municipalities' police powers*. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation. *It is common ground that governments may regulate the physical characteristics of signs* – just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise.

7

*City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) (emphasis added). Likewise, the New York Court of Appeals long ago established that governmental units in the state have authority to regulate signs pursuant to their police powers:

> The authority of the State and its political subdivisions to regulate outdoor advertising pursuant to the police power is well settled. Certainly, where the primary purpose for which outdoor advertising is regulated is the public health or safety, there is no doubt that the objective of the regulation lies within the permissible bounds of the police power. Although once open to question, it is now equally clear that the regulation of outdoor advertising for aesthetic purposes alone constitutes a valid exercise of the police power.

*Suffolk Outdoor Advertising Co. v. Hulse*, 43 N.Y.2d 483, 489-90 (1977) (citations omitted).

Indeed, the United States Supreme Court has explicitly found the City's sign regulations to be an exercise of its police power. More than a century ago, New York City determined that advertising signs plastered on wagons transporting passengers and packages up and down Fifth Avenue presented problems. The City undertook to regulate the display of such signs, and the operator of the wagons challenged the regulations. Affirming a New York Courts of Appeals decision upholding the regulations, the United States Supreme Court expressly recognized that the City's regulation of the signs was "within the exercise of the police power." *Fifth Avenue Coach Co. v. City of New York*, 221 U.S. 467, 482-83 (1911), *affirming Fifth Avenue Coach Co. v. City of New York*, 194 N.Y. 19, 30 (1909). Several decades later, Justice Douglas, writing for the Court – again upholding a City sign restriction – made the same express recognition that the sign regulation at issue in *Fifth Avenue Coach* "rest[ed] on the broad base of the police power." *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 108-09 (1949).

The Second Circuit, in recently rejecting a challenge to the City's system of regulation of signs under the City's Zoning Resolution, found that the City's sign regulations advance two goals: protecting the aesthetic appearance of the City and maintaining traffic safety.

8

*Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010), *citing Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).  After a thorough analysis, the court held that "there is clearly a relationship between the City's Zoning Resolution, which regulates the placement of outdoor commercial advertising, and its interest in aesthetics and traffic safety." *Id.* at 108.  Therefore, the Court concluded that, evaluating the zoning scheme as a whole, the City's regulations were part of a substantial effort to advance a valid state interest.  594 F.3d at 108.  This law is well known to the Debtor, a frequent litigator with repeated failed challenges to the City's signage regulations.  For example, in *OTR Media Group, Inc. v. City of New York*, 920 N.Y.S.2d 337, 339 (1st Dep't 2011), the First Department rejected a challenge to the City's regulation of signs pursuant to the Zoning Resolution, finding that "the City has substantial interests in promoting traffic safety and preserving aesthetics, and the subject regulations are finely tailored to serve those interests … ."

Treatise authors have repeatedly summarized the well established proposition that sign regulation is a component of the police powers.  For instance:

> Municipalities have authority to regulate signs and billboards pursuant to their police power; the power to pass laws for the health, safety and welfare of the public.  Legitimate police power interests to regulate signs may include traffic safety, protection of property values, protection of public parks and property, and aesthetics.

2-14 Warren's Weed New York Real Property § 14.01; *see also*, 81 A.L.R.3d 486, 3a ("No case dealing with the validity of a provision prohibiting off-premises advertising structures disputes the principle that a reasonable provision, whether contained in a zoning ordinance or otherwise, which is related to the public safety, health, morals, or general welfare is valid as a proper exercise of the police power."); 3-17 Zoning and Land Use Controls § 17.01 ("Although some local governments adopt separate ordinances expressly regulating signs, the basic police power

9

authority for the regulation of signs is rooted in zoning. Early sign regulations addressed (or at least focused on) traffic safety issues, but today the regulation of signs based on aesthetic concerns is widely accepted.")

There can be no doubt, then, that the DOB's enforcement efforts and ECB's non-final administrative proceedings involving the Debtor's violations of the City's regulatory scheme for advertising signs, under the Zoning Resolution as well as the Administrative Code, are a valid exercise of the City's police power, designed to protect substantial public interests in promoting traffic safety and preserving aesthetics. Accordingly, this Court should determine that the § 362(b)(4) exception to the automatic stay applies to the City's enforcement efforts, and grant the City's motion.[1]

## II. THE DEBTOR WOULD NOT BE ENTITLED TO A STAY UNDER § 105 BARRING THE CITY FROM ENFORCING ITS SIGN REGULATIONS

Nor is Debtor entitled to a stay under § 105 barring the City's issuance and adjudication of NOVs pursuant to the police power, for three reasons. First, this Court does not have the power to enjoin the City from exercising its police powers. Second, several abstention doctrines counsel strongly against the grant of a stay as a matter of the Court's discretion. Third, the Debtor does not meet the standard for injunctive relief to prevent the City's exercise of its police power.

### A. The Court Does Not Have the Power to Enjoin the City's Exercise of Its Police Power

Because DOB issues and ECB adjudicates NOVs pursuant to the City's police powers, this Court lacks the power to enjoin these enforcement activities. As Chief Judge

---

[1] The Debtor's refusal to agree to allow the issuance of any violations and the adjudication of any of those violations, *see* the accompanying Horan Declaration, could be considered frivolous. *See FTC v. Consumer Health Benefits Ass'n*, 2011 U.S. Dist. LEXIS 61305 (E.D.N.Y. June 8, 2011).

Gonzalez noted, the line of cases including *MCorp.* "clearly limits the scope of permissible inquiries by a bankruptcy court into matters related to an exercise of police power." *In re Cabrini Medical Center*, 440 B.R. 54, 60 (Bankr. S.D.N.Y. 2010). Further, because any proceeding addressing whether the debtor's ambulance operating authority could be reinstated would involve "a matter of vital concern affecting the public health, safety and welfare" under the statutory regulatory scheme, he found that he lacked jurisdiction to adjudicate this issue. *Id.*

The Seventh Circuit reached a similar conclusion when it held that a bankruptcy court had no power to enjoin a state regulatory agency, the Illinois Gaming Board, from exercising its powers under a state statute to regulate the gambling industry. *Village of Rosemont v. Jaffee*, 482 F.3d 926 (7th Cir. 2007). The court noted that the Debtor had filed an adversary proceeding seeking declaratory and injunctive relief against the Board, arguing that the automatic stay would be violated if the administrative proceedings went forward. *Id.* at 930. The bankruptcy court denied the motion, and determined that the Board's actions fell within the exception to the automatic stay for a governmental entity's enforcement of its police and regulatory power under Section 362(b)(4). The district court affirmed, *id.* at 930, and the Seventh Circuit agreed, stating:

> Emerald wants the bankruptcy court to enjoin a state regulatory agency, the IGB, from exercising its powers under a state statute to regulate the gambling industry. *The Bankruptcy Code does not presume to confer any such power on the district court or its bankruptcy unit.* To the contrary, this language [of § 362(b)(4)] establishes that even though Emerald's license is for some purposes "property of the estate," see 11 U.S.C. § 541, *the Code forbids the bankruptcy court from interfering with the government's police and regulatory powers.*

*Id.* at 938 (emphasis added). In this case, as in *Rosemont*, the Code does not empower the Court to interfere with the City's police powers.

## B. Multiple Abstention Doctrines Counsel That This Court Should Not Restrain the City from Enforcing Its Sign Regulations

*Younger* abstention applies here because of the ongoing State administrative proceedings. As Judge Gropper noted, *Younger* abstention

> instructs that "Federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). "This principle of abstention is grounded in interrelated principles of comity and federalism." *Id.* The same comity principles apply with respect to State administrative proceedings "in which important state interests are vindicated." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627 (1986). *Younger* abstention has been deemed applicable in bankruptcy cases. *See In re Franceschi*, 268 B.R. 219 (B.A.P. 9th Cir. 2001) … .

*Go West Entertainment, Inc. v. New York State Liquor Authority (In re Go West Entertainment, Inc.)*, 387 B.R. 435, 442-43 (Bankr. S.D.N.Y. 2008) (parallel citations omitted).

In addition, permissive abstention, as set forth in 28 U.S.C. §1334(c)(1), applies. As the Supreme Court observed:

> the framework Congress adopted in the 1984 Act already contemplates that certain state law matters in bankruptcy cases will be resolved by judges other than those of the bankruptcy courts. Section 1334(c)(2), for example, requires that bankruptcy courts abstain from hearing specified non-core, state law claims that "can be timely adjudicated[] in a State forum of appropriate jurisdiction." Section 1334(c)(1) similarly provides that bankruptcy courts may abstain from hearing any proceeding, including core matters, "in the interest of comity with State courts or respect for State law."

*Stern v. Marshall*, 131 S. Ct. 2594, 2619-2620 (2011).

Recently, Bankruptcy Judge Lifland discussed the policy underlying permissive abstention, as set forth in 28 U.S.C. § 1334(c)(1):

> A court may, "in the interest of justice, or in the interest of comity," abstain from hearing a particular proceeding "arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). This section "codifies the permissive abstention doctrine and demonstrates the intent of Congress

> that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *Cody, Inc. v. County of Orange (In re Cody, Inc.)*, 281 B.R. 182, 190 (S.D.N.Y. 2002); *see also Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*, 304 F.3d 223, 232 (2d Cir. 2002) ("Permissive abstention from core proceedings under 28 U.S.C. § 1334(c)(1) is left to the bankruptcy court's discretion."). While a federal court possesses a "virtually unflagging obligation . . . to exercise the jurisdiction given to it by Congress," the statute of permissive abstention understands that resolution of some matters is more appropriate in a state court. *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 149 (Bankr. S.D.N.Y. 2010) (citations omitted).

*Bally Total Fitness of Greater New York, Inc. v. Contra Costa Retail Ctr., LLC (In re Bally Total Fitness of Greater New York, Inc.)*, 2011 Bankr. LEXIS 1960 (Bankr. S.D.N.Y. May 24, 2011). Judge Lifland went on to list the factors that courts have traditionally considered in permissive abstention cases:

> When deciding whether to exercise discretion to permissively abstain from hearing a matter, bankruptcy courts generally consider one or more, though not necessarily all, of the following twelve factors: (1) the effect of abstention on the efficient administration of the estate; (2) the extent to which state law issues predominate; (3) the difficult nature of the applicable state law; (4) the presence of a related proceeding commenced in state court; (5) whether there is a basis for federal jurisdiction apart from the debtor's bankruptcy filing; (6) the degree of relatedness of a proceeding to the main bankruptcy case; (7) the substance, rather than form, of the asserted "core" proceeding; (8) the feasibility of severing state law claims; (9) the burden on the court's docket; (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping; (11) the existence of a right to jury trial; and (12) the presence in the proceeding of non-debtor parties.

*Id.* (citations omitted). In this case, most of these factors militate in favor of abstention. Here, state law issues predominate regarding the appropriate reach of the City's sign regulations. There are related proceedings pending in a state forum, namely, ECB. There would be no basis for federal jurisdiction apart from the Debtor's bankruptcy filing. The applicable state and municipal law here presents difficult issues requiring local insight. The Adversary Proceeding is

not related to any substantive issue of bankruptcy law, other than the automatic stay.  It is likely that the commencement of the Adversary Proceeding involved forum shopping.  One of the primary purposes of the Adversary Proceeding was to attempt to obtain protection for the non-debtor parties that would not be available to them in a state forum because, with respect to ECB penalties, docketed as state judgments, totaling hundreds of thousands of dollars, the administrative and judicial appeals process, if timely invoked, has been exhausted.  All of these factors favor abstention.

*Burford* abstention applies, too.  A federal court may dismiss an action over which it has jurisdiction in order to avoid needless disruption of state and local efforts to establish coherent policy in an area of comprehensive regulation.  *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); *see also New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989).  In *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1387, 1397 (E.D.N.Y. 1989), the Court explained:

> The concerns reflected in the *Burford* abstention are those of federalism and comity – the notion that the federal government should accord a "proper respect for state functions." *Younger v. Harris*, 401 U.S. 37, 44 (1971); *see Society for Good Will to Retarded Children v. Cuomo*, 652 F. Supp. 515, 523 (E.D.N.Y. 1987).  The *Burford* doctrine embodies these concerns by enabling a federal court to "abstain from interfering with ongoing state regulatory schemes." *Levy v. Lewis*, 635 F.2d 960, 963 (2d Cir. 1980).

*Id.* (parallel citations omitted).  A determination as to whether *Burford* abstention is appropriate is based upon several factors: 1) whether the subject of the litigation is traditionally one of local concern, 2) the complexity and comprehensiveness of the regulatory scheme at issue, 3) whether the regulatory legislation contains broad terms that are to be interpreted and applied through the expertise and judgment of an enforcement agency, thereby creating a consistent enforcement policy, and 4) the availability of state judicial review sufficient to protect the rights and interests

14

of those subject to the regulatory scheme. *Bethphage Lutheran Service, Inc. v. Weicker*, 965 F.2d 1239, 1243-44 (2d Cir. 1992); *Hanlin Group, Inc. v. Power Auth. of State of New York*, 703 F. Supp. 305, 308-10 (S.D.N.Y. 1989). Where these factors weigh in favor of abstention, the Court may decline jurisdiction notwithstanding that issues of federal law have been raised. *Alabama Public Service Commission v. Southern Railway Co.*, 341 U.S. 341, 349 (1951); *Levy v. Lewis*, 635 F.2d 960, 964 (2d Cir. 1980).

The Second Circuit has frequently abstained from hearing challenges to state and local regulatory actions. *Friedman v. Revenue Management of New York, Inc.*, 38 F.3d 668 (2d Cir. 1994) (regulation of corporate governance); *Berman Enterprises, Inc. v. Jorling*, 3 F.3d 602 (2d Cir. 1993) (regulations for oil and sewage discharges into waterways); *Bethphage Lutheran Service*, 965 F.2d at 1243-44 (Medicaid reimbursement rates); *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31 (2d Cir. 1988) (regulation of domestic insurance companies).

Abstention is appropriate in this case. All of the above-mentioned factors militate in its favor. As discussed above, the City's regulation of signs pursuant its police power advances the twin goals of protecting the aesthetic appearance of a city and maintaining traffic safety, which are substantial government goals. *See Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010). The regulations require consideration of many issues, and are technical in some instances and broad in others, clearly requiring both consistent application and technical expertise. Finally, state judicial review of all actions taken by the City is available pursuant to Article 78 of the C.P.L.R, and in fact has been sought by the Debtor in the past. Such review has been held adequate to protect the rights and interests of those subject to New York state and local regulatory action. *Canaday v. Koch*, 608 F. Supp. 1460, 1470 (S.D.N.Y.); *Hanlin Group*, 703 F. Supp. at 310. For all these reasons, *Burford* abstention is appropriate.

Thus, numerous abstention principles provide an adequate, independent basis for the court to decline from staying ongoing administrative enforcement proceedings.

C. **Because the Debtor Is Unlikely to Succeed on the Merits, It Is Not Entitled to Injunctive Relief to Prevent the City's Exercise of Its Police Power**

Debtor cannot make the requisite showing of its entitlement to a stay pursuant to § 105. As a threshold matter, § 105 is not unlimited in its reach. The Seventh Circuit has recognized that § 105(a) is *not* "an independent source of rights." *Village of Rosemont v. Jaffee*, 482 F.3d 926, 935-36 (7th Cir. 2007). Quoting the First Circuit, *Rosemont* found that § 105(a)

> empowers the bankruptcy court to exercise its equitable powers – where 'necessary' or 'appropriate' – to facilitate the implementation of other Bankruptcy Code provisions. Although expansively phrased, section 105(a) *affords bankruptcy courts considerably less discretion than first meets the eye*, and in no sense constitutes a roving commission to do equity. Instead, the equitable discretion conferred upon the bankruptcy court by section 105(a) is limited and cannot be used in a manner inconsistent with the commands of the Bankruptcy Code.

*Id.* at 935-36 (emphasis added), *quoting In re Ludlow Hospital Society, Inc.*, 124 F.3d 22, 27 (1st Cir. 1997) (citations and internal quotations omitted). Thus, *Rosemont* rejected the argument that, because the gambling license at issue was purportedly the debtor's only real asset, the requested discretionary stay, which sought to bar a state gaming board proceeding against the debtor that could result in revocation of the license, was authorized by the Bankruptcy Code.

The movant seeking a stay under § 105 "bears the burden of demonstrating that such a stay is justified." *Lightbody v. Girlie's Ambulette Service Inc.*, 2010 U.S. Dist. LEXIS 88862, at *6-7 (E.D.N.Y. Aug. 27, 2010). Moreover, it must meet the same standards as those for a preliminary injunction. *See, e.g.*, *Grimes v. Green Point Savings Bank*, 147 B.R. 307, 315 (Bankr. E.D.N.Y. 1992). Ordinarily, "the test for granting a preliminary injunction is whether the party requesting the injunction has shown (i) irreparable harm will ensue absent the

injunction and (ii) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make, them fairly litigable and the balance of hardship tipping decidedly in favor of the movant)." *Jamaica Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers)*, 354 B.R. 674, 680-81 (Bankr. S.D.N.Y. 2006) (Peck, B.J.). However, in this case, the Debtor must meet the higher burden: "We have held, however, that *where the moving party seeks to stay governmental action taken in the public interest* pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous fair-ground-for-litigation standard and *should not grant the injunction unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim.*" *Plaza Health Laboratories, Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. N.Y. 1989) (emphasis added); *see also New York City Environmental Justice Alliance v. Giuliani*, 214 F.3d 65, 68 (2d Cir. 2000); *Go West Entertainment, Inc. v. New York State Liquor Authority (In re Go West Entertainment, Inc.)*, 387 B.R. 435, 440 (Bankr. S.D.N.Y. 2008). The City has, in its opposition to the Debtor's preliminary injunction motion, argued that he cannot establish irreparable injury. Here, it suffices that the Debtor cannot show a likelihood that it will succeed on the merits.

### III. ASSUMING THE STAY APPLIES, THIS COURT SHOULD LIFT IT TO ALLOW THE ADJUDICATION OF THE LAWFULNESS OF THE SIGNS

The decision of whether to lift the stay, like the decision to dismiss a Chapter 11 case, is committed to the discretion of the bankruptcy judge. *See In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285-86 (2d Cir. 1990); *see also In re Woodbrook Associates*, 19 F.3d 312, 316 (7th Cir. 1994). The burden of proof on a motion to lift the automatic stay is a shifting one. Once the movant makes a *prima facie* case under Section 362(d)(1), the burden of going forward and of proof shifts to the debtor pursuant to 11 U.S.C. § 362(g) to establish that cause does not exist and

that it is entitled to the continued protections of the automatic stay. *See In re 234-6 West 22nd Street Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997); *see also In re Syndicom Corp.*, 268 B.R. 26, 41 (Bankr. S.D.N.Y. 2001). One of the factors discussed in *Sonnax* as to whether to lift the stay is dispositive here: "(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action." 907 F.2d at 1286. Because ECB is charged under City Charter § 1049-a with determining, among other things, the lawfulness of outdoor advertising signs, it should not be stayed from doing so.

## CONCLUSION

This Court should declare that nothing in the Bankruptcy Code overrides the City's administrative enforcement of its signage regulations. Accordingly, the City respectfully requests that the Court enter an order declaring that the City may proceed to issue Notices of Violation and adjudicate those violations before the ECB, and granting to the City such other and further relief as the Court determines to be just.

Dated: New York, New York
November 10, 2011

        MICHAEL A. CARDOZO
        Corporation Counsel of the City of New York
        *Attorney for Defendant the City of New York*

        By:   /s/ Brian Horan
              Brian T. Horan, Esq.
              Assistant Corporation Counsel
              100 Church Street
              New York, New York 10007
              212.788.1267
              bhoran@law.nyc.gov

**CERTIFICATE OF SERVICE**

Brian T. Horan, Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for Defendant the City of New York, certifies as follows:

I am over 18 years of age and am not a party to this action. On November 10, I served (i) the City's Notice of Motion for an Order Declaring that the City May Enforce Its Sign Regulations Against Debtor, (ii) the Declaration of Brian T. Horan, together with exhibits, (iii) a Memorandum of Law, and (iv) a proposed order, by email as follows:

| Ronald Coleman, Esq. | Gary M. Kushner, Esq. | William E. Curtin, Esq. |
| --- | --- | --- |
| rcoleman@goetzfitz.com | gkushner@goetzfitz.com | william.e.curtin@usdoj.gov |
| Wayne H. Davis, Esq. | Michael Dal Lago, Esq. | |
| Davis@thsh.com | mdallago@morrisoncohen.com | |

Dated: November 10, 2011
       New York, New York

                                                  /s/ Brian T. Horan
                                                  Brian T. Horan