MICHAEL A. CARDOZO

Corporation Counsel of the City of New York

*Attorney for Defendant The City of New York*

Brian T. Horan

Alan H. Kleinman

100 Church Street Rm. 20-104

New York, NY 10007

212.788.1267

bhoran@law.nyc.gov

Hearing date: **November 29, 2011**
Hearing time: **3:00 p.m.**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| OTR MEDIA GROUP INC., | : | Case No. 1-11-47385 (ESS) |
| | : | |
| Debtor. | : | |

------------------------------------------------------------------ x

| | | |
|---|---|---|
| OTR MEDIA GROUP, INC. et al., | : | Adv. Pro. No. 1-11-01448 |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | **REPLY DECLARATION OF** |
| | : | **ALAN H. KLEINMAN** |
| THE CITY OF NEW YORK, | : | |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------ x

**ALAN H. KLEINMAN** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalty of perjury, that the following statements are true and correct:

1.    I am an Assistant Corporation Counsel at the New York City Law Department (the "Law Department"), the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for Defendant the City of New York (the "City"). I am fully aware of the facts set forth herein based upon my personal knowledge and review of the files maintained by my office.

2.    I submit this declaration in further support of the City's motion (i) for a declaration that the automatic stay does not apply to either (a) the issuance by the City's

Department of Buildings of notices of violation ("NOVs") citing violations by the Debtor, or its affiliates or indemnitees (if any), of the City's Administrative Code, Zoning Resolution, or another law or rule regulating outdoor advertising in the City or (b) the adjudication of those NOVs by the City's Environmental Control Board; and (ii) in the alternative, granting the City relief from the automatic stay with respect to the issuance and adjudication of NOVs against the Debtor.

3.      From the beginning of this Chapter 11 proceeding, this Court has recognized that the key inquiry is to determine if the Debtor has sign leases that are lawful and thus of value.  But rather than agree to let the City process proceed to allow the adjudication of the legality of the signs, the Debtor has hidden information and constantly changed its legal position to delay the hour of reckoning.  This Court should grant the City's motion and declare that its perfectly lawful for the City to proceed with adjudications of the Debtor's signs.

**Information About Signs Owned By The Debtor Continues To Change Constantly**

4.      Many of the signs that the Debtor said it owned turned out not to be owned by it.  Debtor early on promised a list of signs owned by it but failed to provide such a list. Then, it provided representations by Ariel Holzer that the Debtor had more than 20 signs, the majority of which were lawful.  Next came a list, which is Exhibit 2 to the Horan November 22, 10, 2011 Declaration in the City's moving papers on this motion, of 18 signs.

5.      But there are not 18 signs.  As the Special Report from the City's Department of Buildings reveals, there are no signs at three of the four locations provided by Debtor and recently inspected.  Declaration of Edward Fortier, Jr., dated November 23, 2011 ("Fortier Dec"), at ¶ 12 and Exh. 2.  For these locations, whether the site is a lawful sign location

cannot be determined without a permit application by the Debtor or a sign that actually exists that could be the subject of a Notice of Violation.

6.  What lawful signs the Debtor owns and is receiving income from remains a mystery, as the Debtor has failed to file any operating reports whatsoever.

7.  As discussed more fully below, it is still unknown if the Debtor has any lawful signs.

**The City's Sign Regulations Are Undoubtedly a Proper Exercise of the City's Police Powers**

8.  The Debtor no longer asserts that sign regulation is not within the City's police powers.  As discussed at length in the City's November 10, 2011 Memorandum of Law, the case law of the United States Supreme Court and the New York Court of Appeals, and voluminous other authority, reaffirms that municipal regulation of signs falls well within the scope of the police powers.

9.  The Debtor's position keeps changing.  In the letter from Debtor's counsel, dated November 7, 2011, and attached as Exh. 6 to the November 10, 2011 Horan Declaration, the Debtor maintains that the City cannot bring enforcement actions against sites where there no longer are signs and at the same time, suggested that it would agree to proceeding with administrative proceedings for some of the existing sign locations.  An email that the undersigned sent to OTR's counsel confirming our conversation of that same day emphasized that the City was most interesting in proceeding administratively with respect to "existing signs."

10. The City's motion seeks a declaration that the City can proceed to issue Notices of Violation, an act that can occur only with respect to existing signs, and the adjudication of those signs.

11. Avoiding the issue yet again of determining the lawfulness of the Debtor's signs, the Debtor's opposition to the City's motion argues primarily that the City cannot proceed with enforcement against signs that no longer exist. This is incorrect. More importantly, this bypasses the foremost issue of whether this motion should be granted, declaring the City's right to conduct administrative enforcement with respect to existing signs.

**The City's Comprehensive Enforcement Laws**

12. The Debtor's discussion of the City's enforcement of sign violations is incorrect and incomplete in almost every paragraph.

13. Governing City law contains a comprehensive enforcement mechanism to ensure compliance with the City's Building Code and Zoning Resolution, including administrative, judicial and criminal. The selection of which method to use is at the sole discretion of the Buildings Commissioner. NYC Administrative Code 28-201.3.

14. The Debtor claims that a Notice of Violation ("NOV") issued by the Department of Buildings ("DOB") is like a parking ticket. This completely misapprehends the governing law. A NOV is a determination by DOB that a violation of the Building Code or Zoning Resolution exists. "Each such notice of violation shall contain an order of the commissioner directing the respondent to correct the condition constituting the violation…." NYC Administrative Code 28-204.2 In fact, each NOV states: "The Commissioner of the Department of Buildings orders that you correct these conditions and file a certificate of such correction." A copy of a Notice of Violation, from the Record on Appeal in the Yung Brothers case, is attached as Exh. A.

15. The NOV, therefore, is an administrative order representing a determination by DOB and ordering correction.

16.     Debtors completely mischaracterize the Environmental Control Board

("ECB") as well.  According to NYC Charter 1049-a(c)(1), "The environmental control board

shall enforce the provisions of the charter and the administrative code, and any rules and

regulations made thereunder …."

17.     The ECB has broad authority to enforce City laws:

> The environmental control board shall conduct proceedings for the
> adjudication of violations of the laws, rules and regulations
> enforced by it pursuant to the provisions of subdivision c of this
> section or of any other law providing for enforcement by the
> environmental control board in accordance with this paragraph (1)
> and with rules and regulations promulgated by the board, and shall
> have the power to render decisions and orders and to impose the
> civil penalties provided under law for such violations.

NYC Charter 1049-a(1) (a).  Thus, the key role of the ECB is to adjudicate violations.  It is

empowered to issue decisions and orders.  It has the power to impose penalties only after it has

found a violation.

18.     Thus, contrary to the incomplete and misleading presentation by the Debtor,

the primary role of DOB and the ECB regarding sign regulation is enforcement.  As another

example of this, respondents who correct sign violations as directed by the NOV are entitled to

have there penalties mitigated, and the penalties otherwise applicable are cut in half.  *See*

http://www.nyc.gov/html/dob/downloads/pdf/ecb_penalty_update.pdf (infraction codes for signs

include B159-78).

19.     The Debtor complains that the penalty has to be paid or bonded to appeal an

ECB decision to the full Board.  Holzer Aff. ¶ 24.  But the Debtor provides no reason why that

requirement is unlawful.  The ECB hearing, before an administrative law judge, fully satisfies

due process requirements.

20. Moreover, as the Debtor itself points out, the ECB rules provide for a hardship waiver. Section 3-73(b) of the ECB rules provides that:

> Any application for a waiver of such prior payment of the civil penalty must be made within 20 days of the mailing of the hearing officer's recommended decision and order and must be supported by evidence of financial hardship. Waivers of such prepayment may be granted in the discretion of the executive director.

21. Waivers are frequently and liberally granted. The Debtor complains, Holzer Aff. ¶ 26, of denials of waiver requests "*en masse*" but conspicuously fails to provide the Court with a single example. Some OTR waiver applications were denied in September for lack of the required supporting evidence of financial hardship. This hardly makes the process unfair, let alone reveals a legal defect.

22. The Debtor favors the OATH removal process. As explained in the accompanying Fortier Dec, this is a more time consuming, slower process. The Debtor's characterization of this process, Holzer Aff. ¶ 22, as speedy unfortunately could not be further from the truth. The 838 Sixth Avenue decision, much ballyhooed by the Debtor, decided nothing but the granting of a stay. But the time frame in that case shows the lengthy delays inherent in the OATH process. The original NOVs in that case go back to March 2007. The Petition and Notice of Hearing before OATH was dated February 2009. The hearing was held two months later. The decision followed three months later. The Order of Removal was issued August 2009 and the Article 78 commenced later that month. Justice Tolub's decision was issued December 31, 2009. The case is now scheduled to be argued in the Appellate Division First Department in January 2012. Of course, it is impossible to predict when the Appellate Division will decide. Meanwhile, the sign still stands.

23.     Thus, debtor's complaints about the method of enforcement and its presentation of the various avenues for enforcement is simply wrong.  Moreover, Debtor fails to explain how it may challenge specific enforcement actions taken or to be taken by the City before this Court.  As explained in pages 4-7 of the City's Memorandum of Law accompanying the motion, the Bankruptcy Court is not permitted to probe or review aspects of a valid enforcement scheme.

**The Debtor's Arguments Opposing The City's Motion Are Completely Unsupported**

24.     The Debtor argues that. there is no threat to the public health and safety because some of the signs no longer exist.  However, under the Supreme Court's *MCorp.* case, these assertions do not remove the ECB's actions from the protection of the police and regulatory exception:

> Further, even if there were no evidence of the potential for ongoing harm, the bankruptcy proceeding is not the right forum for making that determination. The Supreme Court has explained that, in considering whether governmental actions fall within the regulatory and police powers exception to the automatic stay, courts should not attempt to evaluate the actions' likelihood of success on the merits. *Board of Governors v. MCorp Fin., Inc.,* 502 U.S. 32, 40, 112 S. Ct. 459, 464, 116 L. Ed. 2d 358 (1991) (holding that, when deciding whether a governmental action falls within the exception, courts should not "determine whether the proposed [action] is legitimate" or "scrutinize the validity" of the proposed action). More specifically, other courts have held that it is inappropriate for it to be determined in the bankruptcy proceeding that governmental actions will serve no purpose because the offending behavior has allegedly stopped. E.g., *[EEOC v.] McLean Trucking,* 834 F.2d [398,] 402 n.8 [4th Cir. 1987)] (stating that "the bankruptcy court thought non-monetary relief moot because McLean is almost effectively liquidated. The Texas and Tennessee federal district court are now the proper fora in which to determine the propriety of EEOC's non-monetary claims for relief."); *In re Charter First Mortgage, Inc.,* 42 B.R. 380, 384 (Bankr. D. Or. 1984) ("The bankruptcy court is not the appropriate forum" in which to decide whether claims for injunctive relief brought by a governmental unit are moot).
>
> Finally, the regulatory and police powers exception is not limited to situations in which future harm must be stopped. It includes actions to fix the amount of damages for past conduct, whether or not that conduct is continuing. *In re Compton,* 90 B.R. [798], at 804 [N.D.Tex. 1988] (holding that a Department of Energy action fell within the exception to

the automatic stay even though "Compton is now long out of the business of reselling crude oil, i.e., there is no longer any activity to police or regulate").

First Alliance Mortg. Co. v. First Alliance Mortg. Co., 264 B.R. 634, 648-649 (D. Cal. 2001). (footnote omitted) (emphasis supplied).

25.    No case supports the Debtors position here. Incredibly, the Debtor cites

FTC v. Consumer Health Benefits Ass'n, 2011 U.S. Dist. LEXIS 61305 (E.D.N.Y. June 8, 2011) in support of its position. In that Chapter 7 case, the Debtor challenged enforcement activities by the Federal Trade Commission, arguing that "all of our businesses are closed and our assets are either frozen or seized." *Id.*, at *10. The court nonetheless found that the actions were enforcement actions falling squarely within the police power exception and reluctantly decided not to sanction the Debtor for its position. Here, the Debtor is seeking to continue operating a sign business and repeatedly asserts that is signs are legal. Administrative actions here are very much about enforcing the City's sign laws.

26.    Because the holding in Consumer Health Benefits is of no assistance to the Debtor, the Debtor reaches out to a decision cited therein, In re Enron Corp., 314 B.R. 524 (Bankr. S.D.N.Y. 2004). But Consumer Health Benefits emphatically distinguished that case in a manner that applies fully here:

> The court in Enron found, however, that the injunctive relief sought by the state was duplicative and meaningless: Enron was involved in parallel federal litigation and criminal prosecutions over the same conduct, the company was in the liquidation process, and it had recently sold its trading operations, leading the court to conclude that it was "practically impossible" for Enron to resume the challenged activity. Id. at 537. In contrast, absent injunctive relief, the individual defendants could resume the sale of medical discount plans, just as their business apparently changed names and addresses and regrouped after the commencement of law enforcement actions in four states.

*Id.*, at *12-13.

27.     The Enron case is has nothing in common with this case.  In Enron, the Debtor was liquidating and was not conducting any further business.  There were parallel criminal proceedings.  The California Attorney General announced that the purpose of the litigation was primarily to provide restitution.  Even with all of these distinctions, Chief Judge Gonzalez "acknowledge[d] the Attorney General's argument that the relief sought need not be prospective in order to satisfy the interests of public safety, however, the relief must have a deterrent impact."  314 B.R. at 538.  Here the City's goal is to deter the Debtor from operating illegal signs.  This is the core of the police powers.  No case supports the Debtor's position that the police power exception does not apply.

28.     Lastly, the City wishes to call to the Court's attention the recent decision of Judge Peck in Contest Promotions-NY LLC v. City of New York, No. 11-14652(JMP); Adv. Pro. No. 11-02782.  A copy of that portion of the transcript containing the decision is attached as Exh. B.  There, too, the debtor asked the Bankruptcy Court to stay the City's sign enforcement proceedings.  Judge Peck denied that relief for multiple reasons.  One observation of Judge Peck is especially enlightening, that "there is a robust administrative law process which is available and has always been available to this debtor to deal with issues of enforcement." Tr. 115-116. That robust administrative law process should be allowed to proceed here, as well.

29.     This Court's assistance is requested in clearing the path for determining through the appropriate procedures the lawfulness of the Debtor's signs.  The City requests that this Court declare that the issuance of NOVs and their adjudication before the appropriate administrative bodies is not stayed by the Bankruptcy Code or rules.

Dated:  New York, New York
        November 23, 2011

/s/ Alan H. Kleinman
Alan H. Kleinman

**CERTIFICATE OF SERVICE**

        Alan H. Kleinman, Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for Defendant the City of New York, certifies as follows:

        I am over 18 years of age and am not a party to this action. On November 23, I served the Declaration of Alan H. Kleinman, together with exhibits, by email as follows:

| | | |
|---|---|---|
| Ronald Coleman, Esq.<br>rcoleman@goetzfitz.com | Gary M. Kushner, Esq.<br>gkushner@goetzfitz.com | William E. Curtin, Esq.<br>william.e.curtin@usdoj.gov |
| Wayne H. Davis, Esq.<br>Davis@thsh.com | Michael Dal Lago, Esq.<br>mdallago@morrisoncohen.com | |

Dated:  November 23, 2011
        New York, New York

                                  /s/ Alan H. Kleinman_____
                                  Alan H. Kleinman