UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
In re:                                               : Chapter 11
                                                     :
OTR MEDIA GROUP INC.,                                : Case No. 1-11-47385 (ESS)
                                                     :
                          Debtor.                    :
------------------------------------------------------------------- x
OTR MEDIA GROUP, INC. et al.,                        : Adv. Pro. No. 1-11-01448
                                                     :
                          Plaintiffs,                :
                                                     :
vs.                                                  : **DECLARATION OF**
                                                     : **EDWARD J. FORTIER, JR.**
THE CITY OF NEW YORK,                                :
                                                     :
                          Defendant.                 :
------------------------------------------------------------------- x

       **EDWARD J. FORTIER, JR.** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalty of perjury, that the following statements are true and correct:

       1.    I am the Executive Director of Special Enforcement for the New York City Department of Buildings (the "Department"). One of my duties is the supervision of the Sign Enforcement Unit. I am fully aware of the facts set forth herein based upon my personal knowledge and review of the files maintained by my office.

       2.    I submit this declaration in support of the City's motion (i) for a declaration that the automatic stay does not apply to either (a) the issuance by the City's Department of Buildings of Notices of Violation ("NOVs") citing violations by the Debtor, or its affiliates or indemnittees (if any), of the City's Administrative Code, Zoning Resolution, or another law or rule regulating outdoor advertising in the City or (b) the adjudication of those NOVs by the City's Environmental Control Board; and (ii) in the alternative, granting the City relief from the automatic stay with respect to the issuance and adjudication of NOVs against the Debtor.

3. Mr. Holzer description of the nuisance abatement process afforded under Section 28-503 for the removal of illegal signs ("OATH Process") is incorrect. This process is not "speedy" as he claims, but in fact a very time consuming use of the limited resources available for enforcement action against illegal signs.

4. In contrast, the issuance of NOVs has proven exceedingly successful, compelling voluntary sign removal in nearly every one of the 900 enforcement actions undertaken by the Sign Enforcement Unit since 2007. In only 37 cases, 6 of which involved OTR, was it necessary to engage the OATH Process. Of those 37 cases, at only one location, again controlled by OTR, was it necessary for the Department to forcibly remove two signs. So successful has the primary use of NOVs been against illegal signage that illegally installed signs are now regularly removed voluntarily and we have not had the need to utilize the OATH Process.

5. Mr. Holzer's characterizes certain of OTR's violations as "correctable" or "technical" but "not illegal," This semantic distinction is wrong as a matter of law. The failure to register a sign as required by Department Rule 49 renders the location illegal as the Department has no opportunity to review the legal status of the sign. Failure to register a sign is also generally indicative of a lack of appropriate permits and illegal status. Both the failure to register signs and the installation of a sign much larger that permitted result in illegal signs.

6. Mr. Holzer uses lay terminology when discussing in paragraph 38 of his affirmation that certain of OTR sign locations are "grandfathered." "Grandfathered" does not appear in the definition section of the Zoning Resolution. The correct term, "non-conforming" is defined by zoning and carries the requirement that a sign was legally erected and experienced no loss in use of two or more years, to be entitled to such status. Mr. Holzer ignores the

requirement of proving non-conforming use, instead relying upon the simple existence of a sign at one point in time to allow for its existence in perpetuity.

7. Mr. Holzer further errs in paragraph 38, when stating that grandfathered signs do not require permits. While zoning may allow for the continued use of a sign as non-conforming, the threshold element of non-conformance is the proof of legal establishment of a sign. An essential element of legal establishment is a permit for its construction. The only exception to this is for painted signs, of which none are at issue here. To my knowledge, permits, which ensure the safe and legal construction of signs, have been required in the city of New York for over 100 years.

8. In the case of 838 Sixth Avenue, Justice Tolub made no finding of likelihood of success on the merits, rather he said that evidence to support such had been entered and that it was appropriate for the Appellate Division to make such determinations. Further, there was no finding there of an "abuse of discretion."

9. In any case, 838 Sixth Avenue has no bearing on any other sign, because non-conforming use is decided on a case-by-case basis from the specific history of the sign location. There is conspicuously little evidence to support non-conforming use at 59 Fourth and 13 Carmine locations. With these two locations, as with many others, it appears that OTR's strategy was to install signs with little or no regard to legal status, then later, vaguely argue some entitlement to non-conforming status. Notably, Mr. Holzer speaks to a desire for a proper hearing and appeal on various sign locations, in fact, the mechanisms for such have always been available to OTR by applying for a permit from the Department and appealing any adverse Department decisions to the Board of Standards and Appeals. OTR has simply failed to utilize

available avenues for administrative adjudications, instead turning at every opportunity to the courts for relief.

10. 460 West 41st St is a location characterized as having an "open question" of whether the State of New York holds an interest in the property. But the suggested exemption to advertising signs regulations because of ownership by the State of New York, is demonstrable false. Department of Finance land records system reveals that Covenant House is the owner of the parcel and that the Metropolitan Transit Authority holds only an easement, related to a subway project, on the property. Attached to this Declaration as Exh. 1 are true copies of excerpts of the filed Declaration of Restrictive Covenants.

11. The Holzer Affirmation includes various documents purported to support the non-conforming use of various sign locations. They are irrelevant here, because this Court is not the proper forum to adjudicate non-conforming use or any other issue regarding the lawfulness of signs. Moreover, the various documents submitted scarcely support OTR's claims. The "permits" attached as Exhibit B are, by the very language imprinted them, only receipts for application fees, with no proof that a permit was ever approved or signed-off after installation. As to the photographs provided, if the copy is even visible, in many cases it is impossible to tell whether the sign copy may have promoted a use at the same location, rendering the signs accessory, not advertising. The photograph included in Exhibit C and labeled as "year: 1978" illustrates this very situation, where clearly the sign Mr. Holzer now considered grandfathered for advertising use, was, as shown in the photograph, accessory to the Dime Savings Bank in the building. Even the image title is "Dime Savings Bank." The exhibits provided are insufficient to meet the diligent effort required to fulfill the requirements of the non-conforming use regulations.

12. The following locations were inspected by the Department's Special Operations Unit this month. The Department's Special Report is attached as Exhibit 2. The inspecting officer's name is noted along with the conditions observed:

a) 101-111 East 161 Street, Bronx  I/O Craig Hughes
Two story commercial building with an advertising sign on the roof for a movie called "Jack and Jill."   We have no record of advertising sign permits for this location, advertising signage is not allowed in this district and there been no attempt to legalize this sign as non-conforming.  The building is also landmarked and located in a special preservation district.  The sign is subject to enforcement action.
b) 25 Skillman Street, Brooklyn I/O Kingsley Kitson
Two story manufacturing building with no advertising sign
c) 340 Flatbush Avenue, Brooklyn I/O Kingsley Kitson
One-story church with no advertising sign.
d) 207 Dyckman Street, Manhattan I/O Clarence Smith
Six story building residential/commercial with no advertising sign, however there was a blank area where it appears there was a sign on the façade previous to inspection.

13. This Court's assistance is requested in clearing the path for determining through the appropriate procedures the lawfulness of the Debtor's signs.  The City requests that this Court declare that the issuance of NOVs and their adjudication before the appropriate administrative bodies is not stayed by the Bankruptcy Code or rules.

Dated:  New York, New York
        November 23, 2011

                                        /s/ Edward Fortier, Jr.
                                        Edward J. Fortier, Jr.