<pre>
 1                 UNITED STATES BANKRUPTCY COURT
                   EASTERN DISTRICT OF NEW YORK
 2

 3

 4  In re:                    .  Brooklyn, New York
                              .  November 29, 2011
 5  OTR MEDIA GROUP,          .  11-01448
                              .  11-47385
 6         Debtor.            .  Calendar Time:
   . . . . . . . . . . . . . .   3:00 P.M.
 7
         11-01448 OTR MEDIA GROUP V. THE CITY OF NEW YORK
 8
        [1] ADJOURNED PRE-TRIAL CONFERENCE RE:  COMPLAINT
 9             ADJOURNED FROM:  9/28/11, 10/25/11

10     ADJOURNED HEARING ON PROPOSED ORDER RE: [2] MOTION
        FOR PRELIMINARY INJUNCTION FILED BY PLAINTIFF,
11                  OTR MEDIA GROUP, INC.
             ADJOURNED FROM:  9/2/11, 9/12/11, 9/28/11,
12                  10/25/11, 11/22/11

13      [23] MOTION TO DECLARE THAT THE AUTOMATIC STAY
        DOES NOT APPLY OR IN THE ALTERNATIVE GRANTING
14         THE CITY RELIEF FROM THE AUTOMATIC STAY

15      [16] ADJOURNED MOTION TO VACATE STIPULATION AND
                  ORDER ENTERED 9/2/2011
16            ADJOURNED FROM:  10/25/11/, 11/22/11

17            22-47385 OTR MEDIA GROUP, INC.

18        ADJOURNED [4] MOTION TO USE CASH COLLATERAL
     ADJOURNED FROM:  9/1/11, 9/28/11, 10/25/11, 11/22/11
19
                 ADJOURNED [6] MOTION TO PAY
20       ADJOURNED FROM:  9/1/11, 9/19/11, 9/28/11,
                  10/25/11, 11/22/11
21
              [9] ADJOURNED STATUS CONFERENCE
22          ADJOURNED FROM:  10/25/11, 11/22/11

23    HEARING (RE: RELATED DOCUMENT(S) [36] APPLICATION
      TO EMPLOY FILED BY DEBTOR, OTR MEDIA GROUP, INC.,
24    [50] NOTICE OF SUBMISSION OF PROPOSED ORDER FILED
      BY DEBTOR, OTR MEDIA GROUP, INC., [55] OBJECTION
25           FILED BY CREDITOR, CITY OF NEW YORK)
</pre>

[51] APPLICATION TO EMPLOY VARIOUS PROFESSIONALS
AS ATTORNEYS AND ACCOUNTANTS

BEFORE HONORABLE ELIZABETH S. STONG

| | |
|---|---|
| Attorney for Debtor: | GOETZ, FITZPATRICK |
| | One Penn Plaza |
| | New York, New York 10119 |
| | BY: GARY M. KUSHNER, ESQ. |
| | SCOTT D. SIMON, ESQ. |
| | |
| Attorney for City of New York: | NEW YORK CITY LAW DEPARTMENT |
| | OFFICE OF THE CORPORATION COUNSEL |
| | 100 Centre Street |
| | New York, New York 10007 |
| | BY: ALAN KLEINMAN, ESQ. |
| | |
| Attorney for Metropolitan National Bank: | TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, LLP |
| | 900 Third Avenue |
| | New York, New York 10022 |
| | BY: WAYNE H. DAVIS, ESQ. |
| | |
| Attorney for United States Trustee: | U.S. DEPARTMENT OF JUSTICE |
| | OFFICE OF UNITED STATES TRUSTEE |
| | 271 Cadman Plaza Suite 4529 |
| | Brooklyn, New York 11201 |
| | BY: WILLIAM CURTIN, ESQ. |
| | |
| Attorney for Sakale Brothers: | MORRISON COHEN, LLP |
| | 909 Third Avenue |
| | New York, New York |
| | BY: MICHAEL R. DAL LAGO, ESQ. |

```
 1                                                      3

 2

 3

 4  Attorney for Debtor:      ARIEL S. HOLZER, ESQ.
                              220 East 42nd Street
 5                            Suite 407
                              New York, New York  10017
 6
    Court Recorder Operator:  BERNADETTE TAYLOR
 7

 8  Court Transcriber:        CATHERINE ALDRICH
                              COMPU-SCRIBE, INC.
 9                            2376 Cleveland Street
                              Bellmore, New York  11710

10

11

12

13

14

15

16

17

18

19

20

21

22

23
    Proceedings recorded by electronic sound recording,
24  transcript produced by transcription service

25
```

1          THE CLERK:  Numbers 49 through 57 on the calendar,

2  all matters regarding OTR Media Group.

3          THE COURT:  Good afternoon.

4          MR. KUSHNER:  Good afternoon, your Honor.  Gary

5  Kushner, Goetz Fitzpatrick, counsel for the debtor.

6          THE COURT:  Thank you.  Other appearances, please.

7          MR. KLEINMAN:  Alan Kleinman, New York City

8  Corporation Counsel's Office, for the City of New York.

9          THE COURT:  Thank you.

10          MR. DAVIS:  Wayne Davis of Tannenbaum, Helpern

11  Syracuse & Hirschtritt, on behalf of Metropolitan National

12  Bank.

13          THE COURT:  Good to have you here, Mr. Davis.

14          MR. CURTIN:  Good afternoon, your Honor.  William

15  Curtin for the United States Trustee.

16          THE COURT:  And the same for Mr. Curtin.

17          MR. DAL LAGO:  Good afternoon, Mike Dal Lago for

18  Morrison Cohen on behalf of Sakale Brothers.

19          THE COURT:  Yes.  Thank you, Mr. Dal Lago.

20          MR. SIMON:  Scott Simon, Goetz Fitzpatrick, for OTR.

21          THE COURT:  Thank you, Mr. Simon.

22          MR. HOLZER:  Ariel Holzer on behalf of OTR.

23          THE COURT:  Okay.  Thank you very much.

24          Mr. Kushner.

1          MR. KUSHNER:  Yes, your Honor.  I was handed a

2    calendar, but if I may suggest to start with status first if

3    that pleases the Court.

4          THE COURT:  That makes sense to me.  Please proceed.

5          MR. KUSHNER:  It's number 55 on the calendar.

6          THE COURT:  Yes.

7          MR. KUSHNER:  I am not sure from the record the last

8    time I was here on October 25th, but we did attend the Section

9    341 hearing before the United States Trustee, and I'll let Mr.

10   Curtin report to that.  I think that we provided Mr. Curtin

11   with substantially everything that was asked for at the IDI

12   and that matter has now been carried for calendaring purposes

13   only.

14         The debtor has this morning filed operating reports,

15   and I have an extra copy for the Court.  If you need one I can

16   approach if I may?

17         THE COURT:  Yes.  You can pass that to my courtroom

18   deputy, although I'm seeing -- is this number 59 on the docket

19   filed this morning at 10:00 o'clock?

20         MR. KUSHNER:  I don't know the number.

21         THE COURT:  I have it.  I have it.

22         MR. KUSHNER:  Do you want an extra copy?

23         THE COURT:  No.  I think we're fine.  I think we're

24   fine, but thank you very much.  Thank you for getting it on

1  time.

2         MR. KUSHNER:  Just for the record, there was an

3  operating report that was prepared and provided to the United

4  States Trustee, but Michael Eisenberg, the controller of the

5  debtor, prepared it on the forms applicable to small business

6  Chapter 11's.  It was really for discussion purposes only.

7  Out of neglect it wasn't refiled in the proper form, but it's

8  not as if we were silent with the information, so I wanted to

9  clear that up.

10        THE COURT:  Well, I'm glad that information flow is

11 good.

12        MR. KUSHNER:  The debtor has recently filed two

13 motions which are returnable before your Honor on December

14 15th.  One is seeking an extension of exclusivity under

15 1121(d), and then the second motion is a motion to extend the

16 time for the debtor to assume or reject its leases for non-

17 residential real property.  That's also on for the 15th.  You

18 know, it's not before the Court today, but the general reasons

19 for those motions is because the exit strategy still remains

20 for the debtor to sell its signs.  It is in the process of

21 negotiating with several suitors who are very much interested

22 in some of the more valuable locations, but we have not

23 consummated a deal.  This case is only approximately three

24 months old, but those negotiations are going on daily.  So but

1  we're just not in a process -- in a position to give the Court

2  any concrete information as to a deal, and the debtor's

3  operating profitably.

4       The debtor is paying its expenses on time.  Its

5  taxing debts are being paid directly.  The debtor is current,

6  to the best of my knowledge, in the payment of the operating

7  leases.  It is able to, since the Chapter, continue its

8  relationships with advertisers, and is generating substantial

9  income ranging in the approximate nature of about $400,000 per

10 month.

11      So for the moment I think that the Chapter 11 has

12 been a good resource for the debtor.  It's not been required

13 until now perhaps to engage in litigations outside of

14 Bankruptcy Court, and for the most part it's been

15 concentrating on its business.

16      THE COURT:  There was some question about whether

17 the debtor as entity was in good standing.  Have you made any

18 progress on that issue?

19      MR. KUSHNER:  The debtor is filing an application.

20 Originally we were told before the bankruptcy filing that the

21 debtor could not reinstate because of outstanding taxes that

22 were due to New York State.  I have since personally checked

23 with Leo Mahon (ph.), the Attorney General -- the attorney at

24 the New York Attorney General's Office who represents the

1 state. He has told me that the state has absolutely no tax

2 claims against the debtor, and that the process of

3 reinstatement has been -- I think it has been applied to.

4 It's Albany. We have not received any confirmation that the

5 reinstatement has been made, but it is no longer an obstacle

6 that we have to pay those taxes as a condition for

7 reinstatement.

8 THE COURT: Okay. All right. I'm sure we'll be

9 hearing from the city, and there are motions, matters on the

10 Court's calendar that concern this issue as well, but with

11 respect to the enforcement process, the prior and the ongoing

12 efforts of the city with respect to compliance issues, could

13 you tell me what the status of both those matters and any

14 discussions may be?

15 MR. KUSHNER: Addressing your Honor's last question,

16 there has been little discussion with the city regarding a

17 resolution, which has now taken the form of the motion that's

18 before you today by the city to seek declaratory relief about

19 the 362(d)(4) exception and/or alternatively relief from the

20 automatic stay.

21 We have not had any productive discussions about

22 settling monetary claims since before the bankruptcy petition

23 was filed, and regrettably so, but we have not had those

24 discussions.

1    In terms of the actual proceedings that the debtor

2  claims are stayed, the city has proceeded to continue

3  notwithstanding what we believe to be the automatic stay, and

4  we've staffed those hearings with counsel, in many instances

5  getting adjournments and many instances having to go forward.

6   There haven't been many, but we have attended to those.  They

7  have not been resolved with the city.  I think ultimately the

8  Court has to make a decision on the pending motion.  Perhaps

9  that will bring us closer to the negotiating table.  We want

10  to resolve the -- both the administrative and the economic

11  issues with the city, and I assure you that we did make those

12  attempts before the petition was filed, and I did try to reach

13  out during the bankruptcy case, but so far those efforts have

14  not been successful, your Honor, and I say that regrettably.

15    THE COURT:  All right.  Anything further on status?

16    MR. KUSHNER:  On status, no.

17    THE COURT:  Who else would like to be heard on

18  status?  Mr. Curtin, may I hear from you?

19    MR. CURTIN:  Thank you, your Honor.  William Curtin

20  for the United States Trustee.

21    Your Honor, as your Honor is aware, we filed a

22  letter on the docket last week in the context of one of the

23  pending motions addressing the operating reports and the fact

24  that they hadn't been filed, and we can address that motion,

1  so I'm happy to see that they were filed today, but

2  unfortunately I was in Court all morning with Judge Feller so

3  I haven't had an opportunity to review them in anywhere near

4  the detail that I'd like to.  So I really don't have much to

5  report about the substance of those reports, but I'm glad that

6  they actually were filed, and now that they have been we'll

7  take another look at the ordinary course professional motion,

8  and with regard to that motion, your Honor, we wouldn't object

9  to as short an adjournment as the Court wants to give.  Even

10 two weeks or so would probably be sufficient.

11          THE COURT:  All right.  Anything else from your

12 standpoint?

13          MR. CURTIN:  No, your Honor.  The meeting of

14 creditors was held and the debtor provided the information

15 that we requested.  I would suspect we'll have additional

16 questions based upon the operating reports, but I don't want

17 to put the cart before the horse, so I'll take a look at them

18 first.

19          THE COURT:  All right.  From City of New York on

20 status, anything?

21          MR. KLEINMAN:  No, your Honor.

22          THE COURT:  Okay.  Anyone else like to be heard on

23 the status of this case?

24          All right.  Let's move to what may be the most

significant matter we have to address today, which is the
city's motion to declare that the automatic stay does not
apply or in the alternative that the motion for relief from
the automatic stay, and I do have an administrative question
to ask in that context.  The motion was filed in an adversary
proceeding, and I understand as a purely administrative matter
that there was a question of the need to make some kind of
filing fee, something like that in connection with making a
motion for relief from the automatic stay.  Is it taken care
of?  I understand it's been -- has that been taken care of?

          MR. KLEINMAN:  Yes.  Without resolving whether that
was required or not we have paid the fee, and so that issue
has been resolved.

          THE COURT:  I regret taking the parties' time with
it, but I also understand it may be a component of having a
motion before the Court in good order.

          Well, this is the city's motion.  It is made in the
context of the adversary proceeding brought by the debtor
against the City of New York, so Mr. Kleinman, let me hear
from you.

          MR. KLEINMAN:  Thank you, your Honor.  If I may
approach, I have a table of what I understand to be the
existing signs claim by the debtor.  May I approach?

          THE COURT:  All right.  Have you shown a copy to Mr.

1  Kushner?

2       MR. KLEINMAN:  Yes.  Everybody has a copy.

3       THE COURT:  All right.  And could you provide two

4  copies to my deputy?  She can hand them up.  All right.

5       MR. KLEINMAN:  So I just want to back up and correct

6  Mr. Kushner's position or attitude with respect to the primary

7  reason why I stand here.  So as a lawyer for the City of New

8  York my primary function here is to make sure that enforcement

9  proceeds as specified by state and city law, and so what I

10  have been trying to do is work on that.

11       My -- while I  initially was involved in this matter

12  in an effort to collect judgments against the debtor and the

13  landlord indemnitees, my primary purpose at this point is to

14  insure that the laws and statutes and procedures with respect

15  to enforcement proceed, and that's why I'm here, and that's

16  not a question of negotiating or bargaining, nor is it a

17  question of negotiating or bargaining with respect to the

18  status.  There is -- it is not I, but it is the Department of

19  Buildings which in the first instance has the power and

20  authority to decide what signs are lawful and what signs are

21  not, and then after that it is the Environmental Control Board

22  which has the authority at hearings requested by the

23  respondents of those violations to contest that, and then the

24  Environmental Control Board makes decisions.

1    So there's nothing to be done at this point with

2 respect to what I consider the key question here, and that is

3 does the debtor have lawful signs, and I guess I think I join

4 the Court's concern that the question of whether these signs

5 are lawful is in fact sort of the foundational question for

6 this bankruptcy as to whether or not this debtor is run -- is

7 operating a lawful business and whether they have assets.

8    Just as a side note to that, the fact that the

9 debtor may in fact be selling signs is a -- I think in some

10 ways makes my position here seeking to enforce the city's laws

11 is more problematic because what I certainly don't want to see

12 happen is signs which are unlawful to be sold and then it

13 becomes the function of the city government to start all over

14 again with respect to procedures with a new sign owner.  So --

15    THE COURT:  Well, it seems to me that the question

16 that your motion poses is both bigger and smaller than whether

17 particular signs are illegal or should be sold, and the

18 question is really a Bankruptcy Code question and a process

19 question.  Does the automatic stay apply or is this kind of

20 activity outside the boundaries of the automatic stay?  To the

21 extent and if it does apply should there be stay relief so

22 that the parties may pursue their rights, whatever they are,

23 in the appropriate fora, and setting aside those two questions

24 how ever they come out, is this the kind of issue that for all

the reasons you argue in your brief the Court should simply on

a permissive basis abstain from inserting itself because of

all the reasons articulated in the cases, and they're well

laid out in your briefs, and I'll say all the briefs on the

issue have been excellent and very helpful to the Court and

also very interesting to read.  Should the Bankruptcy Court

abstain, and I begin with the primary focus on those first two

questions.  Does the stay apply?  To the extent it does,

should there be stay relief so that the parties may go pursue

their rights under the applicable law in the appropriate forum

and understanding the importance of the reorganization effort

here, should there be some outer boundary defined where either

the stay does apply or the stay does apply and should not be

lifted?  That would be the second part of the question I

think.

          MR. KLEINMAN:  Okay.

          THE COURT:  So separate from what would be

determined in proceedings that I do not intend to conduct here

with respect to legality, the question it seems to me, and

it's well briefed by both sides, is is this -- is the

enterprise -- is your primary focus representing City of New

York as you do, is that regulatory and enforcement purposes

you describe in your papers something that is outside the

boundaries of the scope of the stay or that should be the

1 subject of stay relief?

2      MR. KLEINMAN:  Well, I --

3      THE COURT:  That's where I'd really like -- that's

4 what I need to hear you on first and foremost.

5      MR. KLEINMAN:  I guess I would like to hear from

6 your Honor what more you would like?  With respect to what we

7 did on the motion and on the reply papers it seems to me

8 overwhelmingly obvious that the city's enforcement of its sign

9 -- of signs, sign regulation in the city is a police power.

10 It is directly falls under the exception under the Bankruptcy

11 Code, and it is completely permissible for it to go forward.

12      The debtor in its opposition papers cites two cases,

13 one of which resoundingly the Consumer Benefits case,

14 resoundingly tracks what the city said with respect to Supreme

15 Court and Court of Appeals cases in the initial brief, and the

16 only case which the debtor came up with is the Enron case

17 where there was a, you know, many times defunct entity that

18 was never going to do business again, which is quite the

19 opposite here where this is an entity in a -- and are

20 restructuring a Chapter 11, who intends to go on with the

21 business and either, regardless of whether the intention is to

22 go on with the business or sell the signs, the question of

23 enforcement with respect to police powers its seems to me,

24 your Honor, is completely obvious and non-controversial here.

1    So I don't know what else to add with respect to the
2  briefs here.  I think on the legal question I fail to see much
3  of a legal issue with respect to that, and if your Honor has
4  any questions I'm happy to answer them or if you'd like to
5  hear from the debtor I'll reply to him.
6        THE COURT:  You know, I was going to suggest exactly
7  that.  I think it may make sense because it is a -- there is a
8  rather impressive amount of law that is marshalled in support
9  of your position from courts including the Supreme Court of
10  the United States.  While it might not seem just looking at
11  the phrase, "police power" that this is a question where the
12  police are being sent in, there is nevertheless a -- seems to
13  be a significant weight of authority that supports the city's
14  position.
15        I do -- I have posed to myself the question, and
16  I'll pose it to you in due course whether there is some
17  appropriate step at the margin that needs to be taken to
18  preserve the prospect of reorganization here in the context of
19  bonding and things like that, but that's a question perhaps
20  for a few minutes from now, not a question for now.
21        So I think it is appropriate to hear from Mr.
22  Kushner.
23        Mr. Kushner, sometimes the law is very strongly in
24  your favor and sometimes the law gives you a narrow and

winding path up a steep hill and I think that may be a bit

what you face here, but I look forward to hearing from you as

always.

MR. KUSHNER:  I'll try, your Honor.  First, just for

the record, you should have as part of the record our

affirmation of Ariel Holzer and an omnibus opposition written

under -- on behalf of the debtor, and then yesterday after we

received the reply from the City of New York I hand delivered

to chambers a copy of the contest motion.

THE COURT:  The briefs that were --

MR. KUSHNER:  The actual motion itself.  The city

had made reference in its reply to a decision that was made by

Judge Peck --

THE COURT:  Yes.

MR. KUSHNER:  -- in the Southern District.

THE COURT:  I have the briefs.

MR. KUSHNER:  So I know your Honor has in the past

been two steps ahead of most of the lawyers and has looked at

various pleadings, so I provided them to you with the purpose

of not arguing a sur reply, but just so that you could have

them and then make a record as to why that case really doesn't

apply here.

THE COURT:  I saw the briefs.  I can't say I studied

the -- studied them from yesterday with the care they deserve,

but I did see them, had a chance to spend time with them.  I
also that you provided a copy based on the cc in your cover
letter to Mr. Kleinman, so but let me hear from you.  I think
you can focus your argument wherever you'd like, but be sure
to address what seems to be pretty strong authority in this
Circuit and elsewhere that this kind of an activity, the
city's regulation of outdoor advertising signs is in the
nature of a police power exercise, and therefore, within the
exception to the automatic stay set forth in Section
362(b)(4).

MR. KUSHNER:  Well, there are cases dating back to
the turn of the century that clearly state that the regulation
of signs in New York City is an exercise of the city's police
power, but those cases were not decided in the context of a
bankruptcy case or in the context specifically of the Section
362(d)(4) exception.

More recently, your Honor, there were two or three
cases that we believe does lend some credible support under
the law that there is an exception to the general rule that
those types of activities fall within the police power.
Obviously the Enron case is one and then secondarily there was
some dicta that was contained in Judge Gonzalez's decision in
the Cabrini Medical Center case where he believed that the
court's function is to ask the question is whether the police

1    or regulatory power is actually being invoked here, and we
2    submit to your Honor that in a large number of cases that they
3    are not and that they do not for that reason, amplified by the
4    dicta in the <u>Enron</u> case, fall outside of the general rule that
5    there is a 362(b)(4) exception.
6         I'm going to ask the Court for some assistance for a
7    moment because in reading the reply, your Honor, I'd like to
8    have you look at paragraph 10 of Mr. Kleinman's declaration,
9    which is submitted as a reply.
10        THE COURT:  Yes.
11        MR. KUSHNER:  And it seems to me that the statements
12   made in that paragraph 10 and in the next paragraph 11 are
13   narrowing what was originally filed in the motion to obtaining
14   relief as to existing signs as opposed to anything else, and
15   if that is the case the only one who could ask Mr. Kleinman
16   that is that the city's position, it would save a lot of time
17   for me to address whether or not the city has now narrowed its
18   scope of the motion because it is only pursuing existing
19   signs, and I can't ask that Court -- that question directly,
20   so I would ask your Honor to ask that question of the city.
21        THE COURT:  I appreciate the point.  Did you have an
22   opportunity to conference on any of these issues with Mr.
23   Kleinman?  I know we started pretty promptly, but the question
24   is, Mr. Kleinman, you state in paragraph 10, "The city's

1 motion seeks a declaration that the city can proceed to issue

2 notices of violation or NOV's, an act that can occur only with

3 respect to existing signs and the adjudication of those

4 signs."

5          So the issuance and the adjudication with respect to

6 existing signs I take it Mr. Kushner's inquiry or Mr.

7 Kushner's suggestion is that the city's focus as for now is

8 existing signs as opposed to signs that were up at some point

9 in the past subject to some kind of procedure or proceeding

10 and have been since taken down.  That's the question.

11          MR. KLEINMAN:  Okay.  So with respect to the

12 conferencing question, there is e-mails and numerous

13 conversations where I tried my best with Mr. Kushner --

14          THE COURT:  Understood.

15          MR. KLEINMAN:  -- to reach agreement with respect to

16 anything going forward.

17          THE COURT:  You're both trying so hard that I'm

18 actually quite prepared to give you a few minutes now to

19 continue that once we finish this -- the laying out the

20 framework of the issues as I see them in your papers and as I

21 hear them from you, but what does the city want to do next

22 week?

23          MR. KLEINMAN:  Okay.

24          THE COURT:  Or tomorrow?

1    MR. KLEINMAN:  So I chose my words carefully and the
2 foremost issue, and it remains the foremost issue today, is to
3 determine the legality of the existing signs.  I think the
4 motion can extend far beyond that and probably does so.  I
5 would happy today to leave this courtroom with that issue held
6 in abeyance and simply to be able to move forward with respect
7 to the existing signs.

8    THE COURT:  Mr. Kushner --

9    MR. KLEINMAN:  So that's the city's position.

10    THE COURT:  Mr. Kushner, this is a business that's
11 trying to reorganize and you've indicated from the outset, and
12 I have no reason to doubt that it is the business's desire to
13 conduct a regular business and where necessary regularize its
14 business in order to conduct a regular business.  Why not have
15 a procedure in place where the city can proceed to issue
16 notices of violation in the event, hopefully unlikely, that
17 there are any illegal signs still out there?

18    MR. KUSHNER:  Your Honor, I know that you've read
19 our papers, and our papers do not in any way suggest that we
20 wouldn't go forward with the remedial provisions that are set
21 forth in state court, but we provided to you a comprehensive,
22 at least from Mr. Holzer who's the expert on the regulatory
23 matters --

24    THE COURT:  Yes.

1      MR. KUSHNER:  -- who's in Court today to answer your

2 questions that there are two paths that can be taken by the

3 city in order to quote "enforce their police powers as to

4 these signs."

5      THE COURT:  Existing signs?

6      MR. KUSHNER:  Existing signs.  So you know, just

7 digressing just for a moment, if you took a look at Mr.

8 Horan's affirmation or declaration in support of the motion --

9      THE COURT:  Yes.

10      MR. KUSHNER:  -- at paragraph 5 there's a statement

11 that refers to 119 notices of violations on 18 identified

12 signs.  I'll let you -- let me know when you're ready.

13      THE COURT:  I have a marked-up copy as opposed to a

14 clean copy of the papers.  Let me get the right copy.  So --

15      MR. KUSHNER:  Paragraph --

16      THE COURT:  -- in the moving papers?

17      MR. KUSHNER:  Paragraph 5.  Horan declaration,

18 paragraph 5.

19      THE COURT:  Yes.

20      MR. KUSHNER:  Okay.  And our point was that was to

21 13 of those signs there are NOV's, but there are no signs in

22 existence.  There is no lease between the debtor or any

23 landlord.  Those leases either were terminated or expired, and

24 there is no prospect whatsoever for this debtor to continue

business.  So the only purpose served by going forward with ECB proceedings is to get the amount of the fine that's associated with those NOV's.

That is pecuniary in nature.  It will undermine the entire effort to reorganize because we're going to have to spend thousands and thousands of dollars defending those, and if we're talking about the fixing of a claim, this debtor should be given a chance in this Court to reorganize, and at that point in time it may be appropriate to have the ECB courts decide the amount of the violations, but not now.  It only serves to require the debtor to spend more money unnecessarily to the detriment of every other creditor in this case.

The debtor can't afford to defend those proceedings because the bank is not going to allow unfettered use of cash collateral for those legal fees, and there's no purpose served except to fix the city's claims, and there is no position stated in the reply or anywhere else in the papers that disputes the fact, the contention that there are no signs to remediate, there are no signs to abate.  There is no further risk to the public health or welfare and --

THE COURT:  As to those?

MR. KUSHNER:  As to those.

THE COURT:  But it does seem --

1       MR. KUSHNER:  And as to those five that of the 18,

2  your Honor, in our papers we have provided what the status of

3  those hearings are, and let me just refer to --

4       THE COURT:  I think there is a distinction to be

5  drawn between the practical appeal of your position, which is

6  in substance that the debtor might not object and would

7  appreciate the reasons that the city would wish to proceed

8  unfettered by the stay in the context of existing signs where

9  the debtor has a common interest in a lawful enterprise and

10 maybe setting aside for the moment the question of how to

11 proceed -- when and how to proceed with respect to the signs

12 that have been taken down.

13      Now, the city argues, and this is in paragraph 24

14 and other places in Mr. Kleinman's reply declaration, that

15 there's authority that supports the police and regulatory

16 exception to the automatic stay applying to former signs,

17 applying to the activities that you put in one category and

18 they suggest maybe belong in another, and citing the M Corp.

19 case, which I'm sure you studied, there is language to the

20 effect from the Supreme Court that "Even if there were no

21 evidence for the potential for ongoing harm, the bankruptcy

22 proceeding is not the right forum for making that

23 determination," and it goes on.

24      MR. KUSHNER:  Can I address that, your Honor?

1    THE COURT:  What I'd like to -- what I'd like to

2 understand better is the debtor's position as for today with

3 respect to existing signs because I don't hear you disagreeing

4 strenuously with the suggestion that -- whether it's because

5 the stay doesn't apply or stay relief is appropriate based on

6 cause, the city should be able to continue to protect the

7 public health and safety through the police and regulatory

8 power with respect to existing signs.

9    MR. KUSHNER:  Here's the debtor's position, your

10 Honor.  On existing signs I think that the case law that you

11 just cited in paragraph 24 and others, including Consumer

12 Health and the Cabrini case say that there is a 362(d)(4)

13 exception, and the stay does not apply.

14    As to signs that have already been removed without

15 chance of having the ability to recreate them, have leases at

16 those locations, I think that the decisions in Enron, and to

17 the extent the Cabrini Medical Hospital case have carved out a

18 narrow exception, and that is that where the police powers are

19 not designed to stop and prevent existing violations then the

20 police power exception to the automatic stay applies.

21    If there is no chance to stop and prevent, then the

22 Enron exception applies, and it's our position that it would

23 apply to the non-existing signs.

24    THE COURT:  So when the Supreme Court says, "The

regulatory and police powers exception is not limited to
situations in which future harm must be stopped.  It includes
actions to fix the amount of damages for past conduct, whether
or not the conduct is continuing," citing a bankruptcy case or
at least a case reported in the bankruptcy decision.  If I'm
reading and correctly recalling this, this is the Supreme
Court M Corp. decision.  That seems to be inconsistent with
the exception to the exception that you described.

That being said, I pay close attention to Mr.
Kleinman's statement that his priority representing his
client, the City of New York, is to be able to proceed as
promptly as possible, as the city may already be proceeding,
with the unfettered ability to conduct the city's business,
including its regulatory and police power business with
respect to existing signs, and now I'll come back to our
status conference, and I see separately the debtor's highest
priority being to work toward a plan.  You're asking me to
extend exclusivity very soon, which means you're going to need
to come show that you're making progress.

I wonder if the primary issue for the city and
logically the primary concern is something that the parties
can resolve or they can be adjudicated from the bench and in
the absence of objection, with the other issues to be
recognized by the parties as issues that must be dealt with

soon, consensually, or in adjudicative way, perhaps in the

context of moving toward a plan, but I see this as you say, as

two separate kinds of issues and also perhaps an opportunity

for the city to get to work doing what it needs to do without

concern of motion for a stay violation with an understanding

that could be a predicate and a productive way to move forward

with the debtor to work out all these other issues or frame

them appropriately for this Court to decide or to send to

another Court to decide if stay relief is appropriate.

Those struck me as the most important practical

points, the needs and the management of the case that come top

of the list and also I'll say with respect to the law and the

questions I've been asked to decide as to existing signs, the

area where perhaps the law is the clearest as you have

acknowledged and I appreciate your candor.  I think it's good

lawyering.

So is there something there for the parties to

discuss for a few minutes to see if there's a way to proceed

consensually as to current signs?

MR. KLEINMAN:  Your Honor, I think the remaining

issue of the debtor is that the debtor has the choice to

choose the administrative forum, and as to that the answer is

no by statute.  It's the Building Commissioner who has that

authority and --

1        THE COURT:  Do you mean with respect to existing

2  signs or do you mean --

3        MR. KLEINMAN:  No.  Just --

4        THE COURT:  -- with respect to past ones?

5        MR. KLEINMAN:  I'm doing my foremost right now, and

6  with respect to -- I think the only other issue that the

7  debtor has, but Mr. Kushner can speak to that, is the argument

8  in his opposition papers saying he would prefer a different

9  administrative pathway, and as to that, as I explain in the

10  reply papers, that is an issue which is committed to the sole

11  discretion of the Building Commissioner and it's not to be

12  second guessed by me or Mr. Kushner or the Court.

13        THE COURT:  Your papers are both excellent and

14  comprehensive, so I don't know precisely which point in your

15  papers when you say the debtor -- I'm going to ask the same

16  question again.  I apologize for this.  Is it with respect to

17  existing or with respect to historical signs and violations?

18        MR. KLEINMAN:  So your Honor, again today I would be

19  very happy to leave the courtroom today with the full

20  authority for the city to move forward with its statutory

21  scheme for enforcement of the existing signs and to leave for

22  another day the city's position, which is also the city's

23  position that we would have the authority to move forward with

24  respect to the down signs, but I'm happy pragmatically to just

hit the first issue today.

THE COURT:  And my thought in that direction is that it permits the city to do what it needs most to do and should have as its highest priority it seems to me, and also permits the debtor to set aside that issue, know where it stands, but reserve its prerogatives with respect to other arguments. Each of you of course would reserve those and focus aspirationally together with its -- one of its major creditors, the city, to see if there's a way to make some progress on what's happened in the past whether in the context of your plan or some other way.  That just seems to make an awful lot of sense to me.

Mr. Kushner, do you -- we don't need a break.

MR. KUSHNER:  The debtor --

THE COURT:  Maybe we're agreed on the record.

MR. KUSHNER:  -- doesn't disagree.  It's probably the one statement that Mr. Kleinman has made that I stand here agreeing with, that that's the practical approach, but there is an inherent problem with that approach, which I don't think Mr. Kleinman articulated clearly.  The -- not intentionally, but because he's certainly capable of articulating clearly.

There are two proceedings by which the city can adjudicate these alleged violations of signs.

THE COURT:  With respect to former signs?

1          MR. KUSHNER:  With respect to existing signs.  All
2    signs, but we're talking now in the universe of existing
3    signs, which is what Mr. Kleinman is prepared to go forward
4    with and so is the debtor, by the way, to go forward on
5    existing signs.  Under, and I tried to have this outlined in -
6    - let's see if I can help you, in the Holzer affirmation
7    beginning at paragraph 11, and it's quite a bit to read now,
8    but what that -- those sections say is that there are the ECB
9    avenues and what happens and there's the oath avenue.
10          Under ECB there is an adjudication by an
11   administrative judge, which almost --
12          THE COURT:  Yes.
13          MR. KUSHNER:  -- always the OAC, outdoor advertising
14   company, loses and built into the process -- we accept that.
15   Built into the process, however, is that in order to appeal
16   that decision any further the final penalty that's imposed by
17   that administrative law judge, the home team, you know,
18   referee, if you will, has to be either paid or bonded in order
19   to exercise an appellate.  There is a procedure in place that
20   would grant the OAC a hardship waiver of the right to or the
21   obligation to post a bond or to pay the fine, and if the city
22   is willing to provide us with that hardship waiver, obviously
23   we're in a Bankruptcy Court and every precious nickel is
24   precious.

1    THE COURT:  A Bankruptcy Court that is sometimes

2  characterized as being more friendly to one side than another,

3  a characterization that I reject categorically.

4    MR. KUSHNER:  I've never made that, your Honor.

5    THE COURT:  And I'm grateful to know that.  I've

6  never -- I do not think it's an appropriate characterization

7  of any court of which I'm familiar.

8    MR. KUSHNER:  But I'm saying our funds are truly

9  limited.  They're even further limited by the big brother bank

10  who has absolute say-so in use of cash collateral, and if the

11  city's true purpose is remediation and to abate signs, then

12  the monetary aspect that's associated with the privilege to

13  appeal shouldn't be all that important to the city, and we

14  would ask the Court to fashion relief from stay so that there

15  is a hardship waiver as to those ECB hearings that go forward

16  on existing signs.  We've consented to it.

17    If not, then we're prepared to go forward in a more

18  we think streamlined process through the oath process, which

19  also involves a preliminary oath hearing before, you know, a

20  lower level type of tribunal, but the immediate right to

21  appeal is just that.  It's immediate and there are no

22  conditions, and it allows us to go through the Article 78

23  process a lot quicker.

24    We think that either case where we can get a

1  hardship waiver or the city is directed to go forward with

2  oath, we're not asking -- we're not asking to pick.  We're

3  just asking to be fair in the process that is picked so that

4  we have a chance to fully adjudicate these issues at a level

5  where our arguments fall upon ears that listen.  At the lower

6  levels at the ECB nobody listens to the outdoor sign company.

7   That's --

8           THE COURT:  Mr. Kushner, though I have no knowledge

9  and don't have an evidentiary record before me, I think we

10 will make more progress in this hearing if we all assume, as I

11 always assume, that parties, their counsel, witnesses,

12 experts, judicial officers, judicial staff are proceeding in

13 all good faith trying to do their best job every day.  So that

14 being said, I am concerned about the issue of needing to bond

15 the appeal.  I'm not stating it precisely, but you've

16 described the point in your papers and you've just described

17 it now.

18          I don't think it's, short of consent, I don't see a

19 basis really to direct one path or another in the context of

20 stay relief, including consensual stay relief, but I often see

21 the situation, and you may well be familiar with this, I

22 expect that experienced bankruptcy counsel certainly would be,

23 where relief from the automatic stay or a finding that the

24 stay does not apply and to the extent it does apply that

relief is appropriate up to the point -- up to a certain

point, but not beyond or up to a point with the ability to

come back to Court with -- when enforcement or bonding or

something like that is triggered, something that could

authentically interfere with what is a closely Court

supervised reorganization process.

That's the kind of approach that it seems to me is

warranted by the law, meets the needs identified by courts

going back to the 1800's in some of the early cases, the

earliest cases you cited about the trucks on Park Avenue with

the signage.  These are -- these are new issues and very old

issues too.  I think that kind of an approach makes sense.  It

seems to me quite important that the city have the ability to

do its job, but also that the debtor consistent with that,

which I think does have to come first, that the debtor have an

opportunity to reorganize in a general way in Chapter 11.  The

debtor's prospect of reorganization is not only in the

debtor's interest, in the debtor's principal's interest, but

also in the creditor's interest.  So it may be that the city's

best opportunity to collect to proceed in its activities is in

the context of a reorganized or reorganizing debtor, again in

a closely supervised Court process whenever it's necessary to

have a further hearing with respect to something like the bond

with respect to an appeal.  Now I'm looking at paragraph 24 of

1  the submission of Mr. Horan.  Is that right?

2       So those are the lines along which I'm thinking.

3       Mr. Kleinman, can I hear from you about how

4  something like this might meet the city's needs?  I'm fully

5  prepared to find in the record and ask the parties to submit

6  an order and consent that consents to relief from the

7  automatic stay to the extent that it applies to ECB or oath

8  hearings with respect to current signs, and the language

9  should be better than that, but -- because it's really more

10 broadly the enforcement power that you've described in your

11 papers and here on the record, but let me hear from you with

12 respect to I think the fine tuning of this contemplated

13 consensual relief that Mr. Kushner has described and Mr.

14 Horan's papers describe and that you can probably tell I'm

15 aiming toward.

16       MR. KLEINMAN:  Well, your Honor, the -- in some ways

17 the reason why OTR is here now is because there was a

18 legislative judgment by the City Council that the penalties

19 with respect specifically to signs were insufficient and the

20 amount of penalty -- so the amount of penalties were increased

21 for all sign companies operating signs that were not lawful as

22 a matter of legislative decision, and it was specifically

23 because the legislature did not want companies viewing small

24 penalties as the cost of doing business, and so that's the

1  system that was set up, and similarly there were decisions

2  made with respect to the procedure in front of the

3  Environmental Control Board and appeals from the

4  administrative law judge to the Board itself, and there are

5  rules with respect to that, and those are decisions that are

6  made and some of them apply very specifically in the context

7  of signs, and I guess the issue of the other penalties that

8  have been imposed here I think shed some light and some

9  confirmation with respect to that legislative judgment that

10 there are sign companies which have run businesses profitably

11 until the higher penalties were invoked, and they see it as

12 the cost of doing business.

13          So it's not for me here to change the legislative

14 scheme or the regulatory scheme with respect to how appeals

15 get made.  The standard is, and it's set forth in my reply

16 papers, is fairly generous with respect to allowing hardship.

17  I am told by the ECB that their practice is to do that

18 generously, but I'm not here -- I don't have the authority to

19 stand here and say we are going to automatically agree that

20 they qualify for hardship.

21          THE COURT:  I understand.

22          MR. KLEINMAN:  As Mr. Kushner himself said, at this

23 point without the prospect of having to pay any of the

24 penalties owed to the City of New York the debtor is operating

quite -- at quite a profit, and I found it hard to read the
operating report, but it seems to me if I read it correctly
the nature of this business is the -- and I don't have the
exact numbers in my head, but the amount of money that the
debtor pays to the landlords for leasing the sites was
something like $130,000, whereas their revenue out of this was
$400,000.  So their profit margin was approximately 300
percent.  I might be off 20 percent plus or minus.

THE COURT:  That would be assuming there were
absolutely no other costs associated.

MR. KLEINMAN:  I understand that.  I understand that
but just in terms of the economics with respect to the cost of
leasing the space and the revenue they get.

THE COURT:  300 percent would be another 390, which
would actually take us somewhere to the realm of 520.  I think
you may be off by about 100 percent, but it's a good profit.
It appears to be that the cost of goods of sold, if you will,
assuming that the sign costs nothing, at least their rent is a
proportion of the revenue that suggests there may be a
prospect for this business successfully to reorganize.  I have
to say that here that's a good thing.

MR. KLEINMAN:  Right.  So I guess all I can say is
that with respect to the issue as to whether this debtor at
the point of an appeal that it chooses to take from a decision

of an administrative law judge which comports with due process, whether or not they meet the hardship requirement in the regulations is not to be prejudged or pre-guessed or pre-decided here.

THE COURT:  Mr. Kushner, I think the suggestion is that if the -- if it makes sense for the waiver that is described in section 3-73 of Title 48 of the Rules of the City of New York, emphasis added, for the waiver to be -- for a waiver to be applied, that in the discretion of the executive director as again the rules provide, that may happen.  That seems to me that there should be a way to proceed.

All of this is, of course, assuming there is a violation, there's a fine, and there's a desire to appeal in an ECB as opposed to an oath process.  It seems to me that may well be a question for another day.  I -- again, I find it hard to see how it doesn't make sense, focusing only on the existing signs, to come up with a way to proceed so the city can focus on its highest priority and the debtor can focus on its.

I don't think you can get comfort with respect to the granting of a waiver application in response to losing a proceeding with respect to an unspecified sign, which proceeding has not been brought.  I think that's just a little too far down the road.

1    So I mean if you'd like to confer with your co-
2 counsel --

3    MR. KUSHNER:  I would.

4    THE COURT:  -- for a moment who is raising his hand.

5    MR. KUSHNER:  May I?

6    THE COURT:  Yes.  Of course you may.

7    MR. KLEINMAN:  Your Honor, let me just make one
8 other suggestion.  I mean I don't know the answer to this
9 question, but to the extent the debtor's position is that the
10 bankruptcy itself is evidence of hardship, they can brief that
11 as part of their hardship application, and then it will be
12 decided by the correct officer with respect to that decision.
13  So I don't think we need to make a decision about that right
14 now, but --

15    THE COURT:  It may well be in the papers, and
16 perhaps counsel can inform me, but I'll ask the question
17 anyway because I don't recall the answer.  What is the time
18 from the rendering of a decision?

19    MR. KLEINMAN:  20 days.

20    THE COURT:  20 days.

21    MR. KLEINMAN:  And --

22    THE COURT:  Do the -- so that could time sensitive.
23  We could --

24    MR. KLEINMAN:  And your Honor, there --

THE COURT: Does the time -- does the running of the time toll upon the making of an application for a waiver?

MR. KLEINMAN: Yes, it does, your Honor.

THE COURT: Okay. So 20 days of the mailing of the hearing officer's recommended decision is the time period for making the application for a waiver, and then you find out if you get the waiver.

MR. KUSHNER: Well, your Honor --

THE COURT: But your time to appeal doesn't expire. I take it it's tolled by the making of the waiver application.

MR. KUSHNER: Mr. Kleinman is respectfully telling you words that the City of New York generally -- generously grants waivers. There has not been one waiver granted to OTR, not one, in any of the cases that went through the ECB process. I can show you a handful of applications that were considered -- what? Or its landlords, and I'm afraid that by going through this process we're just going to wind up with a judgment that we cannot get to the proper court on an appeal that is going to undermine the reorganization.

Mr. Kleinman is the lawyer for the ECB.

MR. KLEINMAN: I'm not the lawyer for the ECB.

THE COURT: Lawyer for the City of -- he's one of the lawyers for the City of New York.

1    MR. KLEINMAN:  And the Environmental Control Board,

2 your Honor --

3         THE COURT:  Not in a position to bind.

4         MR. KLEINMAN:  -- is an agency --

5         THE COURT:  He has a complex client.

6         MR. KLEINMAN:  Sorry.  Is an agency which has its

7 own statutory existence.  It has its own counsel, and it makes

8 decisions, and I don't tell them, and nor can I tell them how

9 to decide things.

10         THE COURT:  And the decision maker, according to the

11 rule that you have pointed me to, is --

12         MR. KLEINMAN:  The executive director of the --

13         THE COURT:  Is the executive director.  All right.

14         MR. KUSHNER:  We're talking -- we're talking now,

15 Judge, of -- may I?

16         THE COURT:  You should be near a microphone so we

17 make a good record.

18         MR. KUSHNER:  Yes.  About seven or eight signs, is

19 that about right, that it's before ECB?  I'm looking at your

20 chart.  Seven or eight signs.  May I --

21         THE COURT:  Mr. Kushner, I'm not going to grant a

22 waiver.

23         MR. KUSHNER:  No, no, no.  I'm not --

24         THE COURT:  I can't waive.

1        MR. KUSHNER:  -- asking you to grant a --

2        THE COURT:  It's not my power.

3        MR. KUSHNER:  I'm not asking you to grant a waiver.

4  I was hoping that you suggest what you usually suggest, and

5  that is to adjourn this for a few days, let Mr. Kleinman go

6  back to his agency or to the ECB.  We can stipulate this on a

7  one-time basis as to an entity that's in bankruptcy.  We can

8  do it under seal so that it doesn't create a precedent, and we

9  can move forward perhaps in that way.

10        He has never said to this Court that he's asked the

11  ECB for a hardship waiver.

12        THE COURT:  But a hardship waiver of what?

13        MR. KUSHNER:  The --

14        THE COURT:  There needs to be something to waive.  I

15  doubt it can -- I would not ask it to be determined in the

16  abstract.  If the parties wish to work something like that

17  out, if you wish to have some agreement as to best efforts on

18  expedited consideration, that's one thing, but I don't -- I

19  don't -- I hear your argument and I hear your reasoning and I

20  see the practical side of it.  It seems to me that the debtor

21  is wisely not disputing the exclusion from the stay of the

22  police power and regulatory exception with respect to existing

23  signs.  Is that right, Mr. Kushner?

24        MR. KUSHNER:  We are not disputing that.

1          THE COURT:  So to that extent the motion's granted

2     without opposition, and I can simply ask the city to submit an

3     appropriate proposed order as a small portion -- that is a

4     portion, maybe not a small portion, it doesn't matter.  It's

5     the most important portion of the relief the city's seeking.

6          Are there any presently pending proceedings with

7     respect to current signs?

8          MR. KUSHNER:  There are.

9          THE COURT:  And so --

10         MR. KUSHNER:  About seven or eight.

11         THE COURT:  There is the prospect that there could

12    be a decision rendered that would lead to an application for a

13    waiver which might or might not be granted, and at that point

14    it seems to me it's appropriate first to try to resolve and

15    then to come to Court on whatever basis you need to to

16    conference those issues and see what can be done.  At that

17    point you are negotiation or arguing with respect to a

18    specific appeal of a specific determination with respect to a

19    particular sign and a known number.

20         MR. KUSHNER:  Your Honor --

21         THE COURT:  So that's -- that strikes me as a more

22    logical path and a path that's more consistent with not giving

23    advisory opinions or even suggesting, and I would defer to any

24    party as to what they are able or not able to negotiate in the

concrete or in the abstract, trying to pursue something today. I can see why you want it.  That's a different question.

MR. KUSHNER:  Well, your Honor, in the past you have fashioned stay relief with a number of conditions.  You touched upon it earlier today where, for example, you allowed a proceeding to continue in another forum and had to report back.  I'm afraid about the timing elements of this.  If you have a decision that's made at the administrative level of the ECB and there is a determination made that there is a violation, then there's a hardship application made within the 20-day period, okay, and if it's not granted, okay, you have ten days.

MR. HOLZER:  Usually the letter says ten days to bond from -- the rejection letter usually says ten days to bond.

MR. KUSHNER:  Would your Honor consider in the course of fashioning the procedure, not to interfere with the statute, but to enlarge the time so that at least we can bring the issue before you if the city doesn't consent?  Otherwise we're going to be running here periodically on orders to show cause, and don't forget, this is a money judgment we're talking about.  We're not talking about a removal or an abatement.  We're talking about a money judgment, and to be required to pay what would be a pre-petition money judgment is

1 certainly not protected by the 362(d)(4) exception. What

2 they're requiring us to do is to essentially pay a pre-

3 petition claim as a condition for appealing. You understand

4 my point?

5       THE COURT: I think I do. I have -- all right. Of

6 course, the statutory scheme is what it is, and that was one

7 of the points made earlier by counsel. I would like to take a

8 -- I'd like to hear from anyone else who would like to add

9 anything to the mix here, and then take a few moments to go

10 over my notes, look at what we've previously seen in the

11 parties' papers with respect to this particular statutory

12 scheme, and perhaps give the parties an opportunity to try to

13 work out something that may work even on an interim basis

14 until out next status conference.

15       As to the other matters on the Court's calendar --

16 go ahead.

17       MR. HOLZER: I'm sorry.

18       THE COURT: That's all right.

19       MR. HOLZER: I just want to -- I think it just bears

20 repeating again that despite what assurances Mr. Kleinman may

21 have been given by the ECB in terms of their procedure for

22 allowing hardships, I have personal experience in terms of the

23 filing of hardships and the rejections as previously stated.

24 So far zero acceptances for OTR or any of its landlords in any

1  of the proceedings ongoing.

2      Additionally, when hardships were originally sent
3  out the practice of the ECB originally until we protested
4  strenuously, was just to ignore that they've ever even been
5  made, and to send us final judgments and bills.  It's only
6  recently when we protested and said "We filed hardships," we
7  started getting in rejections.  There has never been an
8  acceptance.  I think that has to be kept in mind just because
9  there is a factual dispute here.

10      THE COURT:  All right.  Well, I'm going to give you
11  a few moments to confer with your co-counsel, confer with each
12  other.  I need a few moments to look back at some of the
13  arguments that have been made and the rules and the procedures
14  that you cite me to.

15      I think the over-arching matter that is clear is
16  that with respect to current signs the city needs to be able
17  to proceed with respect to stay relief.  It seems to me
18  appropriate that it should at least on an interim basis be
19  constructed in such a way that it interferes as little as
20  possible with the debtor's prospect of reorganization,
21  understanding that conducting the business in a lawful way is
22  to my mind an aspect of the debtor's reorganization.

23      So I'll give you a few minutes to think about that,
24  confer on that.  I'm going to do the same.  We'll be back out

1   in just a few minutes.  All right.

2            THE CLERK:  All rise.

3            THE COURT:  Thank you very much.

4                 (Off the record/On the record)

5            THE CLERK:  All rise.

6            THE COURT:  Please be seated.

7            I spent some time looking at the rule that you've

8   directed me to in your papers, and of course, Section 362 and

9   the relevant subsection.

10           Let me hear from the parties.  Mr. Kleinman, it's

11  your motion.  Is there anything you'd like to add to the

12  record?  Have the parties been able to reach an agreement on

13  any path forward?

14           MR. KLEINMAN:  No, your Honor.

15           THE COURT:  All right.

16           MR. KLEINMAN:  So I guess would request a ruling.

17           THE COURT:  Mr. Kushner, anything to add?

18           MR. KUSHNER:  No, your Honor.

19           THE COURT:  All right.  It seems to me that the

20  record warrants, considering the issues raised by the motion

21  and perhaps in stages, and that the issue that is appropriate

22  for determination today on the basis of the papers and the

23  record made before the Court is whether the -- whether

24  pursuant to Section 362(d)(4) the automatic stay does not

apply to the city's exercise of its police and regulatory

powers with respect to current signs operated or maintained by

the debtor, including the process that's been referred to the

notice of violation process, the Environmental Control Board

or ECB process, and the OATH, Office of Administrative Trials

and Hearings administrative process, and I'm satisfied and

note that it appears the debtor does not contest that up to

the point of enforcement and the police and regulatory powers

in the direction of public safety and welfare the -- by

operation of Section 362(d)(4) the automatic stay does not

apply to the city's efforts in that regard.

I note that the exception to the application of the

automatic stay that is created by Section 362(d)(4) is on its

face and is interpreted by the cases and some leading

commentators including Collier's 362(d)(4) exception to the

application of the stay excludes actions to advance a

pecuniary interest or to enforce a money judgment, and I'm

prepared to find as for today that the relief most appropriate

to be entered and that I will enter is with respect to that

public safety and welfare component so clearly within the

ambit of Section 362(d)(4), but not the economic pecuniary or

money judgment enforcement component.

That is to say that it seems to me based on the

record the city has not established or I am not yet persuaded

1 that the 362(d)(4) exception to the automatic stay excepts or

2 carves out from the stay not only those proceedings, but also

3 that which we have been focusing on most recently in this

4 hearing, the requirement to bond or pay any fine in order to

5 pursue an appeal.

6      So my intention is to grant the motion in part and

7 to enter an order finding that Section 362(d)(4) does carve

8 out or except from the automatic stay those police and

9 regulatory enterprises that I have described generally and

10 will describe more precisely in the order, and I may ask the

11 city to submit a proposed order to do as well as we can in

12 describing in a useful way those activities.

13      I think the question is a -- and I think that

14 question is a close, and I note the debtor doesn't contest

15 that conclusion in the law.  I do think the question is far

16 closer, and the balance may well tip in favor of the argument

17 being advanced by the debtor as to whether the exclusion from

18 the automatic stay stops short of permitting the city to

19 expect or require if a waiver were not to be granted the

20 posting of the bond or payment of the fine required by the

21 rule in the absence of the waiver.

22      I don't think I have the record before me today to

23 direct a waiver in the abstract.  I do think I have a record

24 before me that warrants relief up to the point of the public

safety and welfare exception, but stopping short of the
pecuniary interest and money judgment enforcement components
of the city's activity, and for purposes of today in a
conclusion that I may revisit it seems to me that the
requirement to post a bond may well be in that category.  That
is to say that the stay exception doesn't go that far.

Now, because of the dynamics and the procedural
posture in the hypothetical proceeding that has gone against
the debtor from which the debtors wishes to pursue an appeal,
how exactly that question, in effect the city's motion for
relief from stay in order to collect the bond.  Is that
motion?  I'm saying I think it may be.

I have to say I have not found precedent that
informs that question with precision.  I think the parties
understand each other's positions.  The parties have
differing views of the likelihood of a waiver and the
appropriateness of a waiver.  The numbers we're -- and the
debtor has every interest in its business being so successful
that a hardship waiver would not be appropriate, but we don't
know that yet.  We aren't there yet.  The debtor hasn't lost
yet.  We don't know what the amount is.

So I'm inclined, if I may, to go that far, to
consider whether I should try to write this order myself or
ask the parties to submit an appropriate proposed order which

1  I will then of course make my own with how ever many changes
2  are appropriate, and to as always be available to the parties
3  if there's something that needs to be addressed on a prompt
4  basis because hypothetically speaking a determination is
5  rendered, the waiver application is denied, and the debtor's
6  time to appeal is coming up promptly because of the process
7  that was chosen and the result that was obtained and the like,
8  but I don't think I help either the city's efforts or the
9  debtor's reorganization enterprise by trying to predict the
10 future.

11          To that extent I am aware of and reading with care
12 the decisions and the treatises that talk about the exceptions
13 to the exceptions where the activity sought to be accepted
14 from the stay or stayed would so interfere with the debtor's
15 reorganization that it would be inappropriate to let it
16 proceed.  Those cases are out there and the treatises reach
17 those conclusions in some strong and sweeping language.

18          So that is where I think we come out as for today.
19 I'll schedule an adjourn date on the time frame that you think
20 makes sense to revisit any issues we need to revisit.  I think
21 we have a good track record in this case of determining the
22 matters that need to be determined, and while you still
23 disagree on what your positions would be, nevertheless moving
24 forward so the city can do the work that is its charge, and

1 the debtor can get to work on the business of reorganizing --

2 continue the hard work of reorganizing in Chapter 11.

3          Are there any other matters on the Court's calendar

4 today that require prompt attention?

5          MR. KUSHNER:  Cash collateral, your Honor.

6          THE COURT:  Well, there we are.  All right.  As for

7 cash collateral.

8          MR. KUSHNER:  Counsel and I have exchanged a form of

9 what is going to be called the second interim cash collateral

10 order.  I have some minor comments to the document.  The issue

11 is agreeing on the budget, and as I represented to the Court

12 before, the debtor banks at Metropolitan National Bank, has

13 established its DIP account, so in effect has been operating

14 under a de facto cash collateral situation where basically

15 every check is screened and what have you, and there's a

16 dialogue going between the business people.

17          Both my client and Mr. Davis and I wish to formalize

18 the agreement, and we will endeavor to do so in the next day

19 or two when we both have a chance to dot the I's and cross the

20 T's on the second interim stipulation and order.

21          MR. DAVIS:  Your Honor, Wayne Davis.  I generally

22 confirm what Mr. Kushner has just said with a bit more

23 specificity.  Some of the discussions that we have had I think

24 are going to be assisted by the bank's ability as of today to

1  review the operating reports that were filed --

2  THE COURT:  I'm sure that will be helpful.

3  MR. DAVIS:  -- as to that detail, but I do want to

4  note that there is an issue that is touched on in the

5  operating reports I've already seen, and we'll look further as

6  to certain compensation amounts that are being paid to certain

7  individuals associated with the debtor.

8  THE COURT:  Okay.

9  MR. DAVIS:  It is of significant concern to the

10  bank, and it is going to be an issue that I will be discussing

11  with Mr. Kushner, the bank will be discussing with the debtor

12  perhaps, and hopefully we can reach a consensual resolution

13  without needing to come back to your Honor to make a

14  particular point.

15  THE COURT:  As for today we do continue to carry the

16  motion to use cash collateral.  It sounds like I should be

17  looking for some kind of a writing in the form of a

18  stipulation to be submitted by the parties?

19  MR. KUSHNER:  Yes.  We submitted an initial order

20  which your Honor approved.

21  THE COURT:  Yes.

22  MR. KUSHNER:  There are some, you know, updated

23  changes to it, but I did review it, what Mr. Davis prepared,

24  and it's in a form that's reasonably acceptable to me, so that

1 should hit you -- hit your chambers before the end of the

2 week.

3           THE COURT:  All right.  So I'll note the appearances

4 indicate that you'll be submitting a stipulation as reflected

5 in the record and we'll have an adjourn date.

6           MR. CURTIN:  Excuse me, your Honor.  I'd like to see

7 a copy of the --

8           THE COURT:  Of course.  Mr. Kushner, it goes without

9 saying, but I'm glad Mr. Curtin said it, that you'll be

10 running that by his office as well.

11           MR. KUSHNER:  Yes.

12           THE COURT:  All right.

13           MR. KUSHNER:  For housekeeping purposes, your Honor

14 --

15           THE COURT:  Yes.

16           MR. KUSHNER:  -- number 54, the motion to pay, I

17 think that that was resolved.

18           THE COURT:  I was going to ask you the same.  Can I

19 mark that off the calendar?

20           MR. KUSHNER:  Yes.

21           THE COURT:  That will be so ordered.

22           MR. KUSHNER:  It's supposed to be marked off without

23 prejudice to Mr. Noe's right to renew his request for

24 compensation pre-petition I believe, which was not approved in

1 the course of these proceedings, but it's without prejudice to

2 his right.

3　　　　THE COURT:  Indicated marked off without prejudice,

4 which is the broadest statement we can make.

5　　　　MR. KUSHNER:  And there was a snafu, your Honor, on

6 number 56.

7　　　　THE COURT:  Yes.

8　　　　MR. KUSHNER:  Sos I'd like to clear that up now.

9 Previously you entertained the debtor's application to retain

10 Goetz Fitzpatrick as Chapter 11 counsel.  There were a number

11 of objections that were raised primarily on the basis of

12 either a perceived or actual conflict due to our

13 representation of various landlords.

14　　　　A record was made on October 25th granting the

15 application subject to our firm withdrawing as counsel for

16 each of the landlord indemnitee parties in the 1983 action

17 I'll call that in the district court, and also in the

18 adversary proceeding that was filed before you, which

19 technically it was the vehicle by which the automatic stay

20 motion was just heard.

21　　　　So you granted that motion.  I settled an order.

22 Both the city and the bank had comments to it.  I made changes

23 to the bank's version.  I could not agree with the city's

24 comments.  So I served by notice of presentment the copy of

1  the order that I thought I had agreed to with the city, but we

2  picked the wrong form.  There were so many machinations of the

3  stipulation and order, and the city pointed that out to me.

4  So we resubmitted it, but not through the docket.  We

5  resubmitted it through Ms. Jackson at her request.  It is in

6  the form and content that the bank has agreed to.  I'll let

7  the city speak for itself as to what its objection, although

8  none was filed in time to the order, but I'm sure the Court's

9  going to hear the city on this.

10         THE COURT:  We'll do something sensible.  I'm

11  looking at number 56 on the docket, which is described in part

12  as hearing re: application to employ filed by debtor, notice

13  of submission of proposed order, objection filed by creditor,

14  City of New York.  So I take it this is --

15         MR. KUSHNER:  The form of order that was attached to

16  the notice of presentment was a stale order.  The city -- the

17  bank pointed that out.  So the Court -- I wouldn't have let

18  the Court sign that order.  It was not agreed to between the

19  bank and myself, and since we could not reach an agreement

20  with the city, although the debtor did reach one with the

21  bank, we served -- we re-served and we didn't refile because

22  we were told not to refile it.  I believe Ms. Jackson has the

23  form of the order that was sent to her by e-mail the other

24  day.  I can hand up a copy.  I'll let Mr. Davis look at it.

1          MR. DAVIS:  Let me take a quick look, your Honor,

2     but if I may just note  we speak prior to taking a quick look.

3          THE COURT:  Please.

4          MR. DAVIS:  What happened is we did object for

5     exactly the reasons that Mr. Kushner has said.  The order that

6     had been submitted was not the form of order we had agreed to.

7      As Mr. Kushner has further said, and subject to my reviewing

8     this and confirming, I am sure it will be the case or I assume

9     it will be the case that the order that was submitted to Ms.

10    Jackson is the order that we had agreed to.

11         The form of agreed order has not yet, and I checked

12    this morning, hit the docket.  So there's some confusion

13    because the parties I think to my left and right have yet to

14    see the order in the form that's now been submitted for your

15    signature.

16         THE COURT:  And this is the retention of counsel

17    order?

18         MR. KUSHNER:  Yes.

19         THE COURT:  I'd like it to be seen by all relevant

20    parties and submitting showing the submitted, showing the sign

21    off of the parties.  Doesn't that make sense?

22         MR. KUSHNER:  Yes. I have only copy though.  I can

23    do it another day.

24         THE COURT:  We need it submitted electronically.

1       MR. KUSHNER:  Yes.  We didn't submit it -- resubmit

2 it electronically because we were told not to, and --

3       THE COURT:  I think what you should do is submit to

4 the e-order box.  I take it to the objections to the retention

5 have been --

6       MR. KUSHNER:  Resolved.

7       THE COURT:  -- resolved.

8       MR. KUSHNER:  Yes.

9       THE COURT:  So the application is granted without

10 opposition.  Please submit a proposed order showing the

11 consent as -- showing the consent of all parties.

12       MR. KUSHNER:  We already --

13       MR. KLEINMAN:  Your Honor, I'm not sure -- I'm now

14 completely confused as to --

15       THE COURT:  That's why I'm asking for the order to

16 be resubmitted showing -- to the e-order box, not the ECF

17 docket, showing the consent of all parties.

18       MR. KLEINMAN:  Okay, but the city has two issues

19 here, and maybe the first is technical, but at least I -- so

20 the -- I think the conversation the last time here was that

21 with respect to representation of the landlords in both the

22 adversary and the 1983 that I guess the Court was looking for

23 counsel for the landlords to come forward and be substituted

24 in those actions.

1    I don't know what's happened in the adversary with

2 respect to that.  My understanding with respect to the 1983 is

3 that there has been no substitution, and until that happens

4 Goetz Fitzpatrick is counsel of record in the 1893.

5    THE COURT:  And that's at the district court?

6    MR. KLEINMAN:  And that's in the district court, and

7 as to that the conflict remains until such time as the

8 district court either substitutes counsel or approves their

9 withdrawal.  So that's an event not within this Court's

10 control, and has yet to happen.

11    THE COURT:  Nor in counsel's control.

12    Mr. Kushner, I think everyone wants this done, but

13 if your firm is still in a conflicting representation in the

14 district court, then maybe it's not as simple as it seemed.

15    MR. KUSHNER:  The 1983 action in district court has

16 been held in abeyance.  The court is just waiting on a status

17 report.  That I found out from my partner, who's handling --

18 who was formerly handling it.

19    The landlords, as best as I know, are attempting to

20 locate a single counsel.  It may be possible that Mr. Dal

21 Lago, who's here today, may be that attorney who represents

22 all of the landlords.  He does represent one now, you know, in

23 other general matters.

24    So we are not doing any work on the 1983 action.  I

1  understand Mr. Kleinman's point, but I think that the court --

2  the district court is awaiting our order of retention here to

3  be shown to them that we cannot do -- simultaneously proceed

4  with the representation of the debtor and with any of the

5  indemnitees.

6          THE COURT:  So what if there's a docket entry

7  substantially as follows:  That this motion to retain counsel

8  is granted as reflected in the record, and that the debtor

9  will submit an order on consent confirming that debtor's

10 counsel does not represent any landlords, any parties -- well,

11 landlords I guess in the context of this case is sufficiently

12 specific, in this or any other proceeding, including -- what

13 is the name of the case in the district court?

14         MR. KUSHNER:  It's the same landlords that are in

15 the adversary  proceeding, your Honor.

16         MR. KLEINMAN:  Your Honor, it's 203 17th Realty, LLC

17 versus City of New York.  The docket number --

18         THE COURT:  Just one second.

19         MR. KLEINMAN:  I'm sorry.

20         THE COURT:  203 --

21         MR. KLEINMAN:  17th --

22         THE COURT:  -- 17th --

23         MR. KLEINMAN:  -- Realty, LLC.

24         THE COURT:  Versus?

1          MR. KLEINMAN:  Versus the city.

2          THE COURT:  City of New York.

3          MR. KLEINMAN:  Right, with the docket number of 11-

4    CV-1392, and as --

5          THE COURT:  11-CV-1392.  What are the initials?

6          MR. KLEINMAN:  CBA ALC.

7          THE COURT:  CBA ALC.  All right.  The debtor to

8    submit order on consent confirming the debtor's counsel does

9    not represent any landlords in this or any other proceeding,

10   including in 203 dash 17th or 203 space 17th?

11         MR. KLEINMAN:  I think it's space.

12         THE COURT:  Space 17th Realty, LLC versus City of

13   New York, 11-CV-1392 (CBA)(ALC).  I think that will give Chief

14   Judge Amon a sense of what's happening, what needs to happen.

15    Once I see that order with that representation in it, as well

16   as everything else that should be in the retention order, I'll

17   be in a good position to proceed, but hopefully that will

18   break the logjam.  We're waiting for something there.  They're

19   waiting for something here.  We will never cross this bridge

20   definitively without some kind of clarification.

21         MR. KLEINMAN:  And then the other issue with respect

22   -- and again, I have no idea what the current order is, but

23   the issue of the debtor agreeing, which was discussed at the

24   courtroom last time here, the debtor agreeing not to fund that

litigation, which raises similar kinds of conflict issues, and

I understood that was agreed to by the debtor's counsel in

open Court, and the last version of the order I saw did not

have -- Mr. Davis put it in and it was taken out.

THE COURT:  Is that a retention issue or a cash

collateral issue?  I don't see that as a -- I'm not -- it's

not clear to me that that's a retention issue.

MR. KLEINMAN:  Well, it was discussed in the context

of the retention motion.  It was agreed to by --

MR. KUSHNER:  No, it was not.

THE COURT:  For better or worse, we broadly

conference all the issues in a Chapter 11 case when we have

these kinds of omnibus hearings.  To me I have to say I don't

see it as necessarily -- I see it as a significant potential

issue in cash collateral.  i see it as an issue in the good

administration of this case.  If I see in an operating report

that a debtor is using its scarce funds to pay for litigation

for other parties, I think that would raise quite a concern,

at least quite a potential concern.

MR. KUSHNER:  Your Honor's memory --

THE COURT:  I'm not sure that it --

MR. KUSHNER:  -- is not faulty.  That's exactly what

the bank had objected to, that it was not prepared to fund

that litigation, so that in the context of the order that the

bank and the debtor have consented to, the words that the

debtor will not use Metropolitan National Bank's cash

collateral, was placed in the order.

      The city would not agree to that, and I presume

based upon what Mr. Kleinman just said, they're not going to

agree to it.  So that was the language that was agreed to by

the bank that was the way that we resolved the bank's

objection to the retention issue.

      That was before the Court.  That was argued on a

record, and that was the way it was resolved, and that's what

the order said.

      THE COURT:  An order?

      MR. KUSHNER:  The proposed order that we sent to Ms.

Jackson.

      THE COURT:  I understand.  All right.  Well, the

other issue I think is very much a retention issue, and I

think this may be a way to resolve it.  I'll say I anticipate

that this is a way to resolve it.

      I'd like to go back to the beginning of the number

of matters.  We have a pretrial in OTR versus City of New

York, and I suspect that at some point down the road the

issues that we are attending to in the context of stay relief

will overlap substantially with the issues that are presented

in the adversary proceeding.  I think as for today we should

1  carry this pretrial conference to our adjourn, whatever that

2  proves to be.

3         MR. KUSHNER:  Plus those folks don't have an

4  attorney at this point.

5         THE COURT:  Plus those folks don't have an attorney

6  at this point.  Well, there is that, except OTR Media Group is

7  the lead plaintiff.

8         MR. KUSHNER:  I understand, and I agree with what

9  your Honor stated as to us, but the stipulation in effect

10 doesn't include the debtor.  It only includes the landlord

11 indemnitees.  The debtor was specifically left out of that.

12        THE COURT:  All right.  With respect to number 50 on

13 the calendar, the adjourned hearing and the proposed -- the

14 entry of the proposed order, can you mark this off the

15 calendar?  It seems to me perhaps --

16        MR. KUSHNER:  Number 50?

17        THE COURT:  Yes.  A hearing on the entry of the

18 proposed order.

19        MR. KUSHNER:  That was resolved by the stipulation.

20        THE COURT:  I think so.  Marked off and so ordered.

21        MR. KLEINMAN:  No.  Your Honor, I disagree with

22 respect to that.  We also have a motion to vacate the

23 stipulation and order, and we have briefed with respect to the

24 preliminary injunction.  All we entered into, and I regret it

1  now a great deal, all we entered into was in lieu of TRO

2  relief was the stipulation and order.

3          THE COURT:  And your motion will be carried, not

4  marked off.  Your motion is number 52 on the calendar, and I

5  intend to carry that.

6          MR. KLEINMAN:  But we're talking about motion 50.

7          THE COURT:  It's not a motion.  It's a hearing on

8  the entry of a proposed order with respect to a motion made by

9  OTR.  This is a very technical and exceptionally precise

10 point, but when I look at a calendar with a number of items on

11 it, I can tell you that the substantive issues that I see and

12 that you're raising comes up in the context of your motion.

13 You are correct, which is number 52 on the calendar, number 16

14 on the docket, the adjourned motion to vacate the stipulation

15 and order.

16         So those issues are preserved.  They are there.  I

17 appreciate the context and I recall the background from late -

18 - even going back to late August.

19         MR. KLEINMAN:  Well, I --

20         THE COURT:  But with respect to a hearing on the

21 entry of a proposed order, the entry of which is no longer

22 being pursued, I -- that hearing which was calendared for

23 administrative reasons, but is not the product of a party's

24 motion.  Ms. Jackson, am I right?  It can be marked off the

1 calendar.

2       Absolutely no right whatsoever of the city is

3 compromised in that regard because your motion is at number 52

4 on the calendar.

5       MR. KLEINMAN:  Okay.

6       THE COURT:  Keep looking down, you'll see.  It's

7 simply a question of simplifying our dockets so we can focus

8 on everything we need to, and on the merits issues such as

9 your motion, for example.

10       Okay.  With respect to number 51 I'll note your

11 appearances.  This motion is granted in part as reflected in

12 the record.  You'll submit a proposed order on consent and

13 we'll have an adjourn date.

14       With respect to the adjourned motion to vacate the

15 stipulation, of which we just spoke, this is that September

16 2nd stipulation, we'll have an adjourn date.

17       MR. KLEINMAN:  I'm sorry.  Your Honor, with respect

18 to motion 51, so would you like the city to submit a proposed

19 order or --

20       THE COURT:  I'm carrying it to our next date.  This

21 is the motion to vacate the stipulation and order.

22       MR. KLEINMAN:  I'm sorry, but with respect to the

23 thing that we spent most of the time today with respect to the

24 applicability of the automatic stay --

1          THE COURT:  Yes.

2          MR. KLEINMAN:  -- or the exception --

3          THE COURT:  Would you submit a proposed order on

4   consent?  Are you able to do that?

5          MR. KLEINMAN:  Yes.

6          THE COURT:  Thank you.

7          MR. KUSHNER:  On consent and --

8          THE COURT:  And then granted in part and then

9   adjourned in part.  We'll have an adjourn date for all the

10  rest.

11         MR. KUSHNER:  Okay, but the consent would be the

12  debtor, anybody -- any other party in interest or just the

13  debtor?

14         THE COURT:  I think this is a matter -- it seems to

15  me this is a matter between the debtor and the city.  If

16  another party would like to have an opportunity in the

17  interest of a good process, I'll encourage you to circulate

18  this to the bank if they'd like to be aware of what's being

19  done.

20         MR. KUSHNER:  Your Honor --

21         THE COURT:  I want to see the consent of the two

22  parties.

23         MR. KLEINMAN:  Thank you, your Honor.  We will.

24         MR. KUSHNER:  Your Honor, just as a housekeeping

1    measure on 51, I'm not sure that that was ever -- was that

2    ever filed in the main case or was it only filed in the

3    adversary?

4            THE COURT:  Only filed in the adversary as far as

5    I'm aware.

6            MR. KUSHNER:  So I think that it would be a

7    suggestion that perhaps the city should refile it in the main

8    case because there are other parties in interest that are

9    effected by --

10           THE COURT:  The notice point is a fair one, and I

11   thought about where we should be entering the order.  Motion

12   for relief from the automatic stay for the world to see it in

13   this case should be on the Chapter 11 case docket.

14           MR. KLEINMAN:  Okay.  So we have just paid the fee

15   for the vacate stay motion, so I don't know how it would work

16   administratively.  Can we simply --

17           THE COURT:  You could follow up with the clerk's

18   office or my courtroom deputy.  This is beyond my --

19           MR. KLEINMAN:  Okay.  And beyond mine too.

20           THE COURT:  -- specific knowledge, perhaps yours as

21   well, but we'll get it sorted out --

22           MR. KLEINMAN:  Okay.  We'll do that.

23           THE COURT:  -- one way or another, and tomorrow will

24   be soon enough.

1        All right.  But I do think the point is well taken.

2  That order should be entered not only in the adversary, but

3 somehow also on the -- we'll figure it out.  We'll figure out

4 an appropriate solution, and you'll be informed by my

5 courtroom deputy or perhaps you'll even suggest it to us.

6        All right.  Cash collateral, we're going to carry

7 that to our next hearing date, and you'll be submitting a

8 stipulation to be so ordered as reflected in the record.

9        With respect to the adjourned motion to pay, marked

10 off without prejudice as reflected in the record.

11        With respect to the status conference, Chapter 11

12 status conference, I have an adjourn date.

13        Application to employ, granted as reflected in the

14 record.  Debtor to submit order on consent confirming that

15 debtor's counsel does not represent any landlords in this or

16 any other proceeding including in 203 17th Realty, LLC versus

17 City of New York, 11-CV-1392, CBA ALC.

18        Application to enjoy -- enjoy -- to employ various

19 professionals as attorneys and accountants.

20        MR. KUSHNER:  Okay.  That was the matter that Mr.

21 Curtin had contacted me requesting an adjournment, which I of

22 course agreed to because he did not have the operating

23 reports.

24        THE COURT:  Okay.

1      MR. KUSHNER:  I do want to bring to the Court's

2 attention a conversation that I had with Mr. Curtin involving

3 an appeal that is before the First Department on that <u>Young</u>

4 case, which is 840 --

5      MR. HOLZER:  838 Sixth Avenue.

6      MR. KUSHNER:  838 Sixth Avenue.

7      MR. HOLZER:  To be precise, it's not -- it's before

8 the First Department.  It's not really an appeal by -- it's an

9 appeal of the ADJ decision.  It's not an appeal from the

10 Supreme Court decision.

11      MR. KUSHNER:  The point is one of the professionals

12 in the application, Howard Crystal, needs to perfect whatever

13 he needs to perfect by December 15th.  As indicated, he would

14 not perform any work or appear on behalf of the debtor because

15 he hasn't been authorized to represent the debtor.

16      THE COURT:  He's not retained?

17      MR. KUSHNER:  That's right, and you understand the

18 concerns as we all do, so if Mr. Curtin and I can't resolve

19 the issue in a couple of days I'm going to get an application

20 to retain Mr. Crystal in the more conventional way, and do

21 that hopefully on an expedited basis supported by the

22 appropriate affidavits and what have you.  I don't think there

23 will be a problem with him being retained as special counsel,

24 so that he has enough time to do whatever he needs to do by

1    the 15th.

2           THE COURT:  Interesting.

3           MR. KUSHNER:  I'm told that the City of New York

4    won't consent to another extension.  Maybe they'll reconsider

5    that request, and even if they do consent it's not a surety

6    by the First Department anyway, so --

7           THE COURT:  Mr. Curtin.

8           MR. CURTIN:  Your Honor, William Curtin for the

9    United States Trustee.  Here's what I agreed to.  First of

10   all, it's not something that Mr. Kushner and I can work out.

11   There have been other objections.  We may have an objection.

12   I don't know.  I have to look at the operating reports, but

13   what I am requesting, as I indicated in the letter and as the

14   debtor consented to, is an adjourn date on the motion.

15          With regard to the time sensitive nature of the

16   retention, what I indicated as a solution was that any

17   professional that felt they needed retention sooner could

18   apply under normal retention process, and then I would give

19   those applications a quick review.

20          THE COURT:  Understood.

21          MR. CURTIN:  Reserving all rights, obviously, to

22   object to those applications if there's anything objectionable

23   in them, but I will look at them quickly, understanding the

24   time sensitive nature, but as far as the ordinary course

professional motion per se, I am still requesting that that be

adjourned because again it's not --

THE COURT:  That makes sense.

MR. CURTIN:  -- just between us and the debtor.

MR. KUSHNER:  And the debtor's in agreement with

that.

THE COURT:  That's fine.  Anyone else like to be

heard on this?  It sounds like we're looking for an adjourn

date.  Do we have any other dates on the calendar in this case

presently?

MR. KUSHNER:  I have the December 15th at 2:30 for

the exclusivity motion and the time to extend.

THE COURT:  So we'll carry everything to that date

for case management and housekeeping purposes, see what we

need to do then.  December 15th at 2:30.

MR. KUSHNER:  Yes.

THE COURT:  All right.

MR. KUSHNER:  I also have a number of other matters

on that day.  I don't know if the Court's -- I have the Azuka

(ph.) matters and I think SK New York, so at 2:30 I believe.

So I think the Court should have enough time.

THE COURT:  Hope so.  That's what's on the calendar,

and that should work fine.  Okay.  All right.

Thank you very much.  Interesting issues, very well

1 briefed, very productively argued.  This was -- I suppose

2 every aspect of this job is a pleasure, but this was a

3 pleasure.  Thank you so much.  We'll be looking for your

4 orders.

5          THE CLERK:  All rise.

6

7                    *              *              *

8                    **CERTIFICATION**

9

10 I, Catherine Aldrich, certify that the foregoing is a correct

11 transcript from the electronic sound recordings of the

12 proceedings in the above-entitled matter.

13

14 _____          December 9, 2011

15       Catherine Aldrich