MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Defendant The City of New York*
Attn: Brian T. Horan
100 Church Street
New York, NY 10007
212.788.1267
bhoran@law.nyc.gov

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| OTR MEDIA GROUP INC., | : | Case No. 1-11-47385 (ESS) |
| | : | |
| Debtor. | : | |
| | : | |

------------------------------------------------------------------- x

| | | |
|---|---|---|
| OTR MEDIA GROUP, INC., *et al.*, | : | |
| | : | Adv. Pro. No. 1-11-01448 |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| THE CITY OF NEW YORK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

------------------------------------------------------------------- x

**SUPPLEMENTAL MEMORANDUM OF LAW OF THE CITY OF NEW YORK IN SUPPORT OF ITS PROPOSED ORDER DECLARING THAT SECTION 362(A) OF THE BANKRUPTCY CODE DOES NOT STAY THE CITY'S ADMINISTRATIVE ENFORCEMENT OF THE ZONING RESOLUTION AND THE BUILDING CODE**

The City of New York (the "City"), the defendant in the above-entitled adversary proceeding (the "Adversary Proceeding"), by its counsel, Michael A. Cardozo, Corporation Counsel of the City of New York, hereby submits this Supplemental Memorandum of Law in support of its proposed order seeking a declaration that Bankruptcy Code § 362(a) does not stay the City's efforts to enforce administratively its police powers with respect to advertising signs in the City.

## PRELIMINARY STATEMENT

The City is a substantial creditor of the Debtor in light of the penalties imposed against it pre-petition. As is its obligation, the City intends, in the long run, to collect to the extent possible on those penalties. But collection of those penalties is not the City's primary goal at this point. Rather, the City seeks first and foremost to establish that OTR's bankruptcy does not curtail the City's ability to enforce its sign regulations through administrative procedures set forth pursuant to State and local law. These procedures and only these procedures are the exclusive vehicle to ascertain the lawfulness of sign locations and particular signs. Contrary to what Debtor's counsel might think or want, these enforcement procedures are not subject to negotiation or compromise. Put more starkly, the City does not negotiate with sign owners as to whether their signs are lawful. This would summon up a bazaar where signs are bought for the right price, rather than an objective set of rules applied equally to all.

The determination of the lawfulness of the signs is important in two ways. First, for the City, resolution of the lawfulness of the signs will hopefully lead to finality and the surcease of displaying illegal signs. The determination of legality is especially important in light of the Debtor's announced intent to sell some of those signs. From the City's enforcement perspective, this can lead to wasteful results, where administrative processes must begin again against a new owner. The City's goal here is not to maximize penalty collection; it is, emphatically, to ensure compliance with the Building Code and Zoning Resolution.

Second, and relatedly, the determination of the lawfulness of the signs will make plain to all whether this Chapter 11 is viable. If many of the signs are illegal, the debtor is without substantial assets and a realistic chance of successful reorganization. The sooner the

legality of the signs can be ascertained, the sooner the nature of this bankruptcy will become evident.

An event that occurred just three days after the last hearing on this matter demonstrates the necessity for an Order that broadly construes the City's police powers regarding sign enforcement. The Debtor claims rights to a sign location at 424 West 33rd Street, a prime location visible to traffic on Ninth Avenue. The City's Department of Buildings ("DOB") wrote a Notice of Violation on May 14, 2011 for a larger than permissible sign. This was no technical violation. The allowable size for a sign at that location was 3,600 square feet, and the DOB inspector estimated the actual size of OTR's sign to be 10,000 square feet. *See* the accompanying Declaration of Edward J. Fortier, Jr., dated December 9, 2011. While it is impossible from the Debtor's Operating Statement to isolate revenue from this sign location, it may be presumed that a midtown sign of that size commands substantial revenue.

On the day of the scheduled hearing, OTR's lawyer advised DOB and ECB for the first time that the sign had been removed at some unspecified date. As reflected in the competing proposed Orders submitted by the City and the Debtor, the City believes the sign location must be subject to sign enforcement, and the Debtor takes a contrary position.

While the City's motion seeks a declaration that ECB may proceed to adjudicate violations and, where appropriate, enter orders in connection with both present and past OTR signs, the City's immediate focus, as explained at the hearing on November 29, 2011, is on those signs that OTR currently *has the right* to operate and proposes either to use or sell as part of its reorganization. Whether or not OTR currently *has a sign installed* at each location is of little moment to the City's enforcement of its regulatory scheme. The City seeks to prevent illegal

3

signs from being posted at any time, an enforcement effort that requires adjudicating past and ongoing violations alike.

As we argue herein, the City's position is fully supported by the Bankruptcy Code, its legislative history, and unanimous case law. Indeed, the primary purpose of the § 362(b)(4) exception to the automatic stay is to prevent a debtor from attempting to use the Bankruptcy Court as a "sanctuary for environmental wrongdoers" and to prevent "frustrat[ing] necessary governmental functions." *United States v. Nicolet, Inc.*, 857 F.2d 202, 207 (3d Cir. 1988).

We also show that the Debtor's view that the Bankruptcy Code bars the fixing of penalty amounts is unsupported. The vast majority of cases uphold fixing penalties and reducing them to judgment as valid elements of the exercise of police powers. The Bankruptcy Code bars only enforcement of judgments to preserve fairness among creditors. The Court should enter an Order that allows the City's comprehensive code enforcement provisions to operate.

**I.     AT A MINIMUM, THE STAY EXCEPTION APPLIES TO ECB PROCEEDINGS IN CONNECTION WITH SIGNS DEBTOR CLAIMS AS ASSETS, WHETHER OR NOT THE SIGNS ARE UP ON ANY GIVEN DAY**

The stay exception makes the sign locations on OTR's list, Ex. 2 to Declaration of Brian T. Horan (Nov. 10, 2011), fully amenable to enforcement via ECB proceedings, even if OTR has taken down a particular sign. The Second Circuit has expressly rejected the argument that enforcement in connection with past conduct that is not ongoing falls outside the ambit of the stay exception. *California v. Atlantic Richfield Co. (In re Methyl Tertiary Butyl Ether Products Liability Litigation)*, 488 F.3d 112, 133 (2d Cir. 2007). Thus, the exception covers government actions seeking damages, for instance, "for completed violations of environmental laws," *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991), for past fraud

giving rise to liability under the False Claims Act, *United States ex rel. Fullington v. Parkway Hospital, Inc.*, 351 B.R. 280, 288 (E.D.N.Y. 2006), and for past fraud violative of consumer protection laws, *FTC v. Consumer Health Benefits Association*, 2011 U.S. Dist. LEXIS 61305, at *13 (E.D.N.Y. June 8, 2011).

Indeed, it cannot be the case that taking down a sign triggers the loss of a municipality's right to continue or undertake enforcement proceedings that, while the sign was up, qualified for the stay exception. This would permit debtors to engage in cat and mouse maneuvers designed to frustrate government enforcement efforts, contrary to the policy behind the police powers exception: "to prevent the bankruptcy court from becoming a haven for wrongdoers." *SEC v. Towers Financial Corp.*, 205 B.R. 27, 30 (S.D.N.Y. 1997) (collecting cases). The fact is that after removing a particular sign, OTR could reinstall an identical sign at any time, in the hope of generating substantial revenue while delaying indefinitely the adjudication of any violations and the entry of any judgments. The Bankruptcy Code does not countenance such tactics, hence the stay exception, which here allows ECB to adjudicate violations whether or not the sign in question remains up.

Moreover, ECB's carrying out of its role within the regulatory scheme will serve the deterrence purpose that the State and local laws, including the sign penalties, are designed to achieve. As the Second Circuit explained in the *Exxon* case, the City's actions for damages under CERCLA

> provide an effective deterrent to violators, who will be forced to pay for the government's costs in responding to their violations. The need to continue such deterrent actions, despite the pendency of a bankruptcy action, furthers the purpose of the regulatory exemption to the automatic stay squarely: to avoid frustrating "necessary governmental functions by seeking refuge in bankruptcy court."

5

932 F.2d at 1024. The force of this reasoning applies equally to ECB proceedings, which not only deter outdoor advertising companies from installing unlawful signs, but also – like CERCLA actions – constitute an integral part of the regulatory scheme at issue. *See also Solis v. SCA Rest. Corp.*, 2011 U.S. Dist. LEXIS 138217 (E.D.N.Y. Dec. 1, 2011).

It also bears emphasizing that this case is not analogous to the handful of cases – recognizing a narrow exception to the exception – where a debtor is unable to resume the challenged conduct. *Consumer Health Benefits Ass'n*, 2011 U.S. Dist. LEXIS, at *12 (E.D.N.Y. June 8, 2011) (upon distinguishing those cases, finding that stay exception encompassed FTC's enforcement action). Here, the Debtor is in Chapter 11, is conducting business, and seeks to continue to do so. Nor does the potential sale of any sign locations alter the analysis, as such sales would in no way make dormant the very live enforcement issues that exist with respect to those OTR locations that have been, or will be, cited for violations.

## II. THE STAY EXCEPTION EXTENDS TO THE ENTIRE ECB PROCESS, THROUGH ENTRY OF JUDGMENT

"It is well established that the governmental unit exception of § 362(b)(4) permits the entry of a money judgment against a debtor so long as the proceeding in which such a judgment is entered is one to enforce the governmental unit's police or regulatory power." *SEC v. Brennan*, 230 F.3d 65 (2d Cir. 2000); *see also California v. Atlantic Richfield Co. (In re Methyl Tertiary Butyl Ether Products Liability Litigation)*, 488 F.3d 112, 133 (2d Cir. 2007) ("[T]he automatic stay provision of section 362 bars only a governmental unit's attempt to enforce a money judgment, not … a suit seeking entry of a money judgment."). This comports with the legislative history, underscored by the Second Circuit and likewise endorsed by the Supreme Court, deeming the stay exception to apply to a governmental unit's legal proceedings against a debtor to enforce its police or regulatory laws, including "*to fix damages for violation*

of such a law." *New York v. Exxon Corp.*, 932 F.2d 1020 (2d Cir. 1991), *quoting* H. R. Rep. No. 95-595, and S. Rep. No. 95-989 (emphasis in original); *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, at 503-04 (1986).

Accordingly, for any ECB proceeding that may go forward pursuant to the police powers exception, ECB may conduct hearings and appeals *and*, if appropriate, enter orders imposing penalties against OTR.

## **CONCLUSION**

For the foregoing reasons, this Court sign the Order proposed by the City.

Dated: New York, New York
December 9, 2011

                                                MICHAEL A. CARDOZO
                                              Corporation Counsel of the City of New York
                                              *Attorney for Defendant the City of New York*

By:    /s/ Brian T. Horan
            Brian T. Horan
            Assistant Corporation Counsel
            100 Church Street
            New York, New York 10007
            212.788.1267
            bhoran@law.nyc.gov

## CERTIFICATE OF SERVICE

Brian T. Horan, Assistant Corporation Counsel in the office of Michael A. Cardozo, Corporation Counsel of the City of New York, attorney for Defendant the City of New York, certifies as follows:

I am over 18 years of age and am not a party to this action. On December 9, I served (i) the City's Supplemental Memorandum of Law of the City of New York in Support of Its Proposed Order Declaring That Section 362(a) of the Bankruptcy Code Does Not Stay the City's Administrative Enforcement of the Zoning Resolution and the Building Code, and (ii) the Supplemental Declaration of Edward J. Fortier, Jr., by email as follows:

| Ronald Coleman, Esq. | Gary M. Kushner, Esq. | William E. Curtin, Esq. |
|---|---|---|
| rcoleman@goetzfitz.com | gkushner@goetzfitz.com | william.e.curtin@usdoj.gov |
| Wayne H. Davis, Esq. | Michael Dal Lago, Esq. | |
| Davis@thsh.com | mdallago@morrisoncohen.com | |

Dated: December 9, 2011
New York, New York

/s/ Brian T. Horan
Brian T. Horan