# EXHIBIT 3

[x]

# NET LEASE AGREEMENT

This Lease Agreement ("Lease") is made this 06th of October 2006 by and between Gotham Realty Holdings, having their principal address at 30 Broad Street, New York, NY 10004 ("Lessor") and OTR Media Group, Inc. having its principal address at 424 West 33rd Street, New York, N.Y. 10001 ("Lessee").

WITNESSETH:

WHEREAS, Lessor owns or controls a building/property at 30 Broad Street, New York, NY 1004, Block #    Lot #    , in the City/County of New York ("Property").

WHEREAS, Lessee desires to use a portion of the Property for the installation of outdoor advertising signage.

NOW, THEREFORE, in consideration of the premises herein set forth and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1) Lease and Premises- Lessor hereby grants to Lessee the exclusive right to the Property for signage and to use that portion of the Property consisting of the aforementioned Construction Bridge Wrap ("Premises") for advertising purposes; and maintaining thereon outdoor advertising displays, including necessary supporting structures, and other appurtenances, with free and unfettered access at all hours to and upon the same ("Signs") at Lessee's expense in accordance with the terms of this Lease. Lessor and Lessee agree to split the cost for upgrading the existing parapet to 12'-16' High and any other scaffold rental fees.

2) Term- the Term ("Term") of this Lease Agreement shall be for Two (02) months or for as long as construction bridge wrap is installed and available and shall commence on November 1st 2006 ("Commencement Date"). Notwithstanding the Commencement Date, immediately upon execution of this Lease, Lessee shall have the use of the Premises through the Commencement Date in order to prepare for occupancy. This Lease shall continue in full force and effect for its Term and thereafter for successive like Terms unless cancelled at the end of such Term or successive like Terms upon written notice to either party at least thirty (30) days prior to the end of such Term or successive like Terms.

3) Lessee Payments- Commencing on the Commencement Date through the Term of this Lease, Lessee shall pay Lessor at a monthly rate of twelve thousand five hundred dollars ($12,500.00) ("Rent") payable on or before the fifteenth (15th) day of each month during the Term of this Lease. If the Commencement Date hereof shall be a date other than the first day of a calendar month, the Rental for such month shall be pro rated appropriately.

4) Inquiries- Lessor shall promptly direct all sales inquiries or "leads" with respect to the Premises directly to Lessee.

5) Obstruction/Permits- If at any time (i) the view of the Premises and/or structure is entirely or partially obstructed, or (ii) if the Premises are entirely or partially destroyed, or (iii) if the Premises shall be or become unsafe for the maintenance of the Sign, or (iv) if the use or installation of outdoor advertising displays on the Property is prevented by law or by the Lessee's inability to obtain any desired and/or necessary permits, consents, licenses or easements, or (v) if there occurs a diversion of traffic from or a change in the direction of traffic on highways and/or roadways leading past the Premises from which presently exists as or at the execution of this Lease (each Section 5(i) through 5(v) being an "Obstruction Event"), then Lessee may, at its option and sole and absolute discretion, terminate this Lease by giving Lessor thirty (30) days' written notice of its intention(s). If Lessee elects to terminate this Lease, rent shall be payable only up to the date of such Obstruction Event. As an alternative to termination, Lessee shall have the right to renegotiate this Lease on terms which are fair and equitable considering the Obstruction Event and Lessor shall negotiate a change in terms and conditions in good faith. Lessor agrees and covenants to fully cooperate with Lessee in obtaining permits and approvals.

6) Lessee's Work- Lessee shall have a right to construct alterations/installations/additions to reinforce and modify the size of the Leased Premises to accommodate the Sign. Structural Alterations (excluding basic maintenance and/or temporary extensions) to the Premises will be designed, approved and certified by a structural engineer reasonably acceptable to the Lessor and shall be subject to and conditioned upon Lessor's prior written approval, not to be unreasonably withheld or delayed and shall be deemed granted if not approved within thirty (30) days of receipt of plans and specifications by Lessor. Lessee's work shall be diligently pursued and completed in a good and workmanlike manner by qualified licensed contractors or subcontractors. If Lessee elects to illuminate its Sign, Lessee shall install, at its own cost and expense, an electric submeter and riser to provide electricity to the Sign and shall remove any such electrical metering and wiring at the end of the Term or any renewal(s) thereof. Lessee shall be solely responsible for, and pay all costs of all electricity and other utilities, if any, used or consumed in connection with the Sign.

7) Violations- Lessor shall provide any new violation notices to Lessee for violations relating to the posting of advertising at the Sign Space, Lessee shall be solely responsible to defend against said violation, to clear said violation and to pay any related fines; if received no later than ten (10) days after the violation was received, time being of essence with

respect thereto. Lessor shall notify Lessee of any violation notices relating to the posting of advertisement on the Leased Space within ten (10) days from the date the violation was received via certified mail, overnight courier or via telecopy.

8) Ownership- Lessee shall remain the owner of all Signs, structures, improvements and modifications erected or made by Lessee. Lessee shall have the right to remove said Signs, structures, improvements and modifications at any time during the Term of this Lease or within a reasonable time after the expiration of this Lease.

9) Damage to Premises- If Lessee causes any damage to the Premises while constructing and/or erecting and/or preparing for Occupancy or after Occupancy occurs it shall cure those damages at its own expense within fifteen (15) days from the date Lessor notifies Lessee. If Lessee shall fail to cure such damages within said fifteen (15) day period, or if the said damage shall be of a nature that the same cannot be completely cured within said fifteen (15) day period, and if Lessee shall not have diligently commenced curing such damage within such fifteen (15) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to cure such damage, then Lessor may deem Lessee to be in Default and be liable to damages. Lessee additionally agrees that at the end of the term of this Lease or any renewal(s) thereof, it shall surrender the Premises in substantially the same condition as at the date of this Agreement except for ordinary wear and tear and damage by the elements.

10) Lessor's Representations- Lessor makes no representations, warranties or covenants either express or implied, with respect to the Premises or its physical suitability for its intended purpose. Lessee has inspected the Premises and is thoroughly acquainted with its condition, and agrees to take the same "as is" and acknowledges that the taking of possession of the Premises by Lessee shall be conclusive evidence that the Premises was in good and satisfactory condition at the time of signing of this Lease. Lessor represents that the undersigned is authorized, empowered and able to execute this Lease and that it does not violate any existing agreements.

11) Insurance- Lessee agrees to maintain during the term of this Lease, liability insurance covering the Premises in the amount of Two Million and no/100 Dollars ($2,000,000.00) combined single limit, naming Lessor and its successors and assigns as additional named insureds. Lessee agrees to provide to Lessor a Certificate evidencing the insurance coverage required by this paragraph.

12) Lessee's Indemnity- Lessee agrees to indemnify Lessor and its officers, directors, principals, employees, partners and, with respect to each of the foregoing parties, their respective successors and assigns (individually and collectively, the "Lessor's Indemnified Parties") and hold the Lessor's Indemnified Parties harmless from and against any and all losses, costs, expenses, and liabilities incurred by the Lessor's Indemnified Parties in connection with any claim, suit or action (collectively "Claims") made against the Lessor's Indemnified Parties in connection with Lessee's performance of its obligations hereunder, except to the extent such Claims result from the negligence or willful misconduct of Lessor's Indemnified Parties.

13) Lessor's Indemnity- Lessor shall indemnify Lessee and its officers, directors, principals, employees, partners and their respective successors and assigns (individually and collectively, the "Lessee's Indemnified Parties") and hold harmless Lessee's Indemnified Parties from and against any and all losses, costs, expenses and liabilities incurred by the Lessee's Indemnified Parties in connection with any claim, suit or action (collectively the "Claims") made against Lessee's Indemnified Parties in connection with Lessor's ownership and operation of the property on which the Leased Premises are located except to the extent such Claims result from the negligent or willful misconduct of Lessee's Indemnified Parties.

14) Assignment and Subletting- Lessee may assign or otherwise transfer all or any part of its interest in this Lease or in the Premises upon Lessee providing 30 days' written notice to Lessor of its intention. From and after the date of the assignment of this Lease, the Lessee shall have no further obligations under this Lease.

15) Waiver of Subrogation- Lessor and Lessee release each other and their respective principals, employees, representatives and agents, from any claims for damage to any person or to the Premises thereon caused by, or that result from, risks insured against under any insurance policies carried by the parties and in force at the time of any such damage. Lessor and Lessee shall cause each insurance policy obtained by them to provide that the insurance company waives all right of recovery by way of subrogation against the other in connection with any damage covered by any policy. Neither Lessor nor Lessee shall be liable to the other for any damage caused by fire or any of the risks insured against under any insurance policy required by Paragraph 11.

16) Default- (i) If Lessee defaults in fulfilling any of the covenants of this Lease, other than the covenants for the payments due under paragraph 3 herein, then in any such event, upon Lessor serving a written thirty (30) day notice upon Lessee specifying the nature of such default and upon the expiration of said thirty (30) days, if Lessee shall have failed to comply or remedy such default, or if the said default or omission complained of shall be of a nature that the same cannot be completely cured or remedied within said thirty (30) day period, and if Lessee shall not have diligently commenced curing such default within such thirty (30) day period, and shall not thereafter with reasonable diligence and in good faith, proceed to remedy or cure such default; or (ii) if Lessee shall default in the payments due under


424 West 33rd Street, New York, NY 10001 \ 212 239 8190 \ f: 212 239 8191

paragraph 3 herein, and such default continues to exist for more than fifteen (15) days after Lessor's written notice to Lessee of such default then and in any of such events Lessor may serve a written fifteen (15) day notice of the cancellation of this Lease upon Lessee, and upon the expiration of said fifteen (15) days unless such default shall have been cured, this Lease and the term thereunder shall end and expire as fully and completely as if the expiration of such fifteen (15) day period were the day herein definitely fixed for the end and expiration of this Lease and the Term thereof and Lessee shall then quit and surrender the Premises to Lessor.

17) <u>Dispute Resolution-</u> This Agreement shall be governed by the laws of the State of New York. Any controversy or claim, arising out of or related to this Agreement or the breach thereof shall be settled by arbitration in the City and State of New York in accordance with the then rules of the American Arbitration Association, and its decisions shall be binding and final and judgment upon the award rendered may be entered in any court having jurisdiction thereof. Notice of the demand for arbitration shall be filed in writing to the other party. The prevailing party shall be entitled to reasonable attorney(s)' fees and expenses and all arbitration costs.

18) <u>Notices-</u> Unless otherwise provided herein, any notice required to be given herein shall be given by reliable overnight delivery service, or certified or registered mail, return receipt requested, to the address of Lessor and Lessee as set forth below:

| Lessor: | Lessee: |
|---|---|
| Name: | OTR Media Group |
| Company Name: Gotham Realty Holdings | 424 West 33rd Street, Suite 520 |
| Address 30 Broad Street | New York, NY 10001 |
| City: New York   State: NY   Zip: 10004 | Att: President |

Lessee and Lessor may designate a change of notice address by giving written notice to the other party.

19) <u>Severability-</u> If any provision of this Lease is deemed or becomes invalid or non-enforceable by law, the remainder of this Lease shall remain in force to the fullest extent permitted by law.
20) <u>Entire Agreement-</u> This Lease constitutes the entire understanding between the parties concerning the subject matter hereof and supersedes all previous agreements, negotiations or representations, written or oral. This Lease may be modified only in writing and signed by all the parties hereto.
21) <u>Lessor's Assignment-</u> This Lease shall bind and inure to the benefit of all successors, executors, heirs, and assigns. Any sale of the Property will be conditioned on the assumption of this Lease. Lessor shall obtain the agreement of any mortgagee of the Property not to disturb the leasehold interest granted by this Lease to Lessee, and in any foreclosure proceeding, the leasehold interest under this Lease shall not be foreclosed, and this Lease shall continue in full force and effect, provided that Lessee agrees to recognize the ownership interest of any new owner of the Property.
22) <u>Additional Comments-</u>

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the day and year first written above.

| Lessor: **Gotham Realty Holdings** | Lessee: **OTR Media Group, Inc.** |
|---|---|
| By: _[signature]_ | By: _____ |
| Name: _David Ishag_ | Name: _____ |
| Title: _member_ | Title: _____ |



exhibit "A"

