LAW OFFICES OF DONALD WATNICK
Donald E. Watnick
51 East 42nd Street, 11th Floor
New York, New York 10017
Telephone: (212) 213-6886
Facsimile: (646) 588-1932

*Attorneys for non-party Edward Arrigoni*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

In re:

OTR MEDIA GROUP, INC.,

                Debtor,

Chapter 11

Case No. 1-11-47385 (ESS)

---

OTR MEDIA GROUP, INC., 203 17TH REALTY LLC, SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE REALTY, LLC, *all New York limited liability companies*, 848 FULTON REALTY CORP. *and* MING SHENG INC., *New York corporations*, GOTHAM BROAD, LLC, *a Delaware limited liability company*, FOTINI THEOHARIDU, and PHILLIPE JOCELINE, *natural persons*,

                Plaintiffs,

– vs. –

The CITY OF NEW YORK,

                Defendant.

Adv. Pro. No. 1-11-01448 (ESS)

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO QUASH SUBPOENA OF EDWARD F. ARRIGONI**

**INTRODUCTION**

This memorandum of law is in support of the motion of non-party Edward F. Arrigoni, pursuant to Fed. R. Bankr. Pro. 7026, E.D.N.Y. LBR 7007-1 and 9013-1 and Fed.R.Civ.P. Rule

1

45(c)(3)(A)(iv), to quash the subpoena issued to him to provide testimony in the above-entitled adversary proceeding on the grounds that Mr. Arrigoni has no relevant testimony to provide and his deposition would improperly impose an undue burden.

As set forth in the accompanying declarations of Edward F. Arrigoni (the "Arrigoni Dec.") and Donald E. Watnick, Esq. (the "Watnick Dec."), Mr. Arrigoni, who is 79-years-old, has no connection with Debtor or plaintiffs and apparently has been subpoenaed to provide testimony about an advertisement on a Bronx building in the early 1980s by his company, which ceased to operate more than eight years ago. Mr. Arrigoni sold this business, known as New York Bus Service, more than eight years ago and has little recollection about his former company's use of the advertisement from more than 30 years ago. Any testimony Mr. Arrigoni could provide would be duplicative and cumulative because it is either already in the record or should be obtainable without the need for his testimony, such as from the owners of the building in question or the N.Y. City agencies overseeing billboards and advertisements, and any limited knowledge possessed by Mr. Arrigoni could be conveyed through a very short sworn witness statement.

## FACTS

1. Based on discussions with counsel for Debtor and review of some of the extensive docket filings, it appears that this proceeding involves an attempt by Debtor to establish its right to use one or more billboards in New York City. (Watnick Dec., ¶2.) It is not clear from the record as to how this may necessitate testimony from Mr. Arrigoni.

2. Based on phone calls with counsel for Debtor, Debtor is seeking Mr. Arrigoni's testimony about use in the early1980s of an advertisement on a building located at 330 Bruckner Blvd., (the "Bronx Building"), and proximate to the Bruckner Expressway, by New York Bus

Service ("NY Bus"), a company in which Mr. Arrigoni was chairman and an owner. (Watnick Dec., ¶3; Arrigoni Dec., ¶ 4-5.)

3. At present, Mr. Arrigoni is 79-years-old. He resides in Connecticut. He has no affiliation with NY Bus. He does not maintain business records for NY Bus. (Arrigoni Dec., ¶ 6.)

4. NY Bus stopped operating in June 2005, at which time it sold its businesses, including an express bus business which was sold to the City of New York (the "City") or the Metropolitan Transit Authority. (Arrigoni Dec., ¶ 6.)

5. Mr. Arrigoni can attest to his affiliation with NY Bus, and that NY Bus advertised on the Bronx Building, but has no recollection as to any of the other details that Debtor's counsel has stated it wants to ask Mr. Arrigoni about. (Arrigoni Dec., ¶ 9.)

6. As set forth in the accompanying Watnick Dec., Debtor's counsel provided a proposed affidavit for Mr. Arrigoni to sign (Watnick Dec., Exh. A), which asked Mr. Arrigoni to provide the following information:

- Mr. Arrigoni's relationship to NY Bus from about 1970 to 2005;
- information relating to NY Bus's use of the Bronx Building for an advertisement in or about 1980, and the company they commissioned to paint the advertisement;
- information relating to the permit used by NY Bus relating to the advertisement on the Bronx Building;
- whether NY Bus operated a business facility in the Bronx Building; and.
- the practices for companies to obtain the ability to advertise on buildings proximate to arterial highways like the Bruckner Expressway.

7.  Mr. Arrigoni cannot provide testimony as to the facts set forth in the bullet points in Paragraph 6, other than his relationship to NY Bus and NY Bus' advertising at the Bronx Building, for the simple reason that, as set forth in Mr. Arrigoni's own declaration, he does not have any recollection as to these matters that occurred more than 30 years ago. (Arrigoni Dec., ¶ 7-10)

8.  In particular, Mr. Arrigoni has no recollection as to the following facts contained in the proposed affidavit:

- whether Mack Sign Co. was commissioned to paint a sign for NY Bus on the Bronx Building;

- information about any permit and the process of obtaining a permit from New York City for the advertisement at the Bronx Building used by NY Bus;

- whether NY Bus did or did not operate or maintain facilities at the Bronx Building and whether NY Bus' use of the building related to advertising on the building; and

- whether the "tactic" of leasing a building to advertise on it was one frequently employed by other companies seeking to advertise in proximity to arterial highways like the Bruckner Expressway.

(Arrigoni Dec., ¶ 7-10)

9.  Indeed, Mr. Arrigoni's counsel, upon receipt of the proposed affidavit, told Debtor's counsel (Scott Simon) that Mr. Arrigoni had no knowledge as to these facts, and that he could provide a short sworn statement as to the facts in the proposed affidavit about which he did have knowledge (e.g., that Mr. Arrigoni owned and was an officer of NY Bus, that he has not operated the business since its sale in 2005, and that he recalls that NY Bus advertised at the

Bronx Building in the 1980s.). (Watnick Dec., ¶ 5.) Debtor's counsel responded, however, that his client was insisting on proceeding with the proposed deposition. (Id., ¶ 5.)

10. Previously, by letter dated September 27, 2013, Mr. Arrigoni's co-counsel, Edward Saviano, Esq. wrote to Mr. Simon that attempted service of the subpoena was improper and that he believed that a deposition would be pointless because of Mr. Arrigoni's lack of knowledge. (Watnick Dec., ¶ 6 and Exh. B) Mr. Simon, nevertheless, insisted on proceeding. Importantly, Mr. Simon never provided any information as to how Mr. Arrigoni could possibly have any information relating to this case, and has not cited anything in the court record to support Debtor's position that Mr. Arrigoni's deposition will provide information relevant to this matter. Indeed, Mr. Simon's October 1, 2013 letter in response to Mr. Saviano's letter is completely silent on why Debtor believes that Mr. Arrigoni has relevant information to provide and, instead, contains nothing more than the conclusory statement that testimony will be elicited that relates to these proceedings. (Watnick Dec., ¶ 7 and Exh. C.)

11. In accordance with E.D.N.Y. LBR 7007-1, counsel for Mr. Arrigoni and counsel for Debtors (Mr. Simon) conferred in good faith, including during multiple telephone calls, to resolve this dispute but were unable to do so. (See Watnick Dec., ¶ 8 and copy of email from Mr. Simon confirming the foregoing, which is annexed as Exh. D to the Watnick Dec.)

## ARGUMENT

### SUPBOENA SHOULD BE QUASHED BASED ON LACK OF RELEVANCE, UNDUE BURDEN AND ANY TESTIMONY BEING CUMULATIVE OR DUPLICATIVE

Even considering the broad scope of permissible discovery under the federal rules, depositions of non-parties are subject to being quashed when the witness has no relevant testimony to provide, the deposition would impose undue burden and any information that could be provided by the subpoenaed witness is readily available elsewhere.

First and foremost, all discovery is subject to the requirement that it must be relevant, or calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. Rule 26(b)(1). Even if the threshold requirement of relevance is met, Fed.R.Civ.P. Rule 26(c) limits discovery by providing that, upon motion by a party or by the person from whom discovery is sought, the court may make any order which justice requires to avoid annoyance, embarrassment, oppression, or undue burden or expense.[1] In addition, Fed.R.Civ.P. Rule 45(c)(3)(A)(iv) provides that on timely motion, the issuing court must quash or modify a subpoena that subjects a person to undue burden.

The determination of whether a subpoena subjects a witness to "undue burden" depends upon such factors as relevance and the burden imposed. *Kirschner v. Klemons*, 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. 1996). A subpoena that pursues material with little apparent or likely relevance to the subject matter is likely to be quashed even where the burden of compliance would not be onerous. *Kirschner*, 2005 WL 1214330 at *2; *Concord Boat Corp.*, 169 F.R.D. at 50. Where there is no apparent relevance, it is much more likely that a court will find that a subpoena imposes an "undue burden" under Fed.R.Civ.P. Rule 45(c)(3)(A)(iv).

Fed.R.Civ.P. Rule 26 also provides that discovery shall be limited by the court if it determines that the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive. Fed.R.Civ.P. Rule 26(b)(2) In *In re Blackstone Partners, L.P.*, 2005 WL 1560505 at *2 (S.D.N.Y. 2005), the court granted motions to quash two non-party subpoenas because the

---

[1] Fed.R.Civ.P. Rule 26 is made applicable to this adversary proceeding by Fed.Rules.Bankr.Proc. Rule 7026 and by the "pending proceeding" rule. *In re Glitner Bank HF.*, 2011 WL 3652764 at *4 (S.D.N.Y. August 19, 2011); *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (N.D.N.Y. 1996).

deposition testimony was likely to be duplicative and cumulative since the appellant had already taken several depositions of witnesses and acquired sufficient relevant facts therefrom. Also, in *Kirschner*, two non-party subpoenas were quashed when the court determined that "[t]here [was] no indication that calling these individuals to testify at trial would add anything relevant beyond what [was] contained in the [record]." *Kirschner*, 2005 WL 1214330 at *2.

These standards should be applied even more rigorously where, as here, a court is considering whether to permit the deposition of a non-party witness. See *Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed.Cir. 1993) (nonparty status a significant factor in determining whether discovery is unduly burdensome) (citing *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988)).

Here, it is clear that the Mr. Arrigoni has no information that is relevant to this proceeding. He is not merely a non-party but a complete stranger to Debtor, the other plaintiffs and these proceedings, and has never had any affiliation or association with Debtor or the other plaintiffs. It cannot possibly be necessary for Debtor to subject Mr. Arrigoni to the time and expense, including attorneys' fees, of a deposition in which all he is likely to be able to testify to is information of which Debtor is well aware: that Mr. Arrigoni was an officer and owner of NY Bus and that NY Bus advertised at the Bronx Building more than 30 years ago. Mr. Arrigoni is unable to provide the other information that Debtor's counsel has stated it wants to ask about: whether NY Bus otherwise utilized the Bronx Building for its business and how it obtained a permit to advertise on the Bronx Building. Nor is there any basis for Debtor to seek to ask Mr. Arrigoni, as proposed in the draft affidavit prepared by Debtor's counsel, about what Debtor's counsel called "tactics" used by other companies – more than 30 years ago -- to obtain access to advertising that could be viewed from highways.

Importantly, all of this information – about permits for the advertising in question and practices in obtaining access to billboard advertising space – presumably is part of the record in this case or is available from other sources, such as the N.Y. City agency with permit records and those who own or owned the building in question. To ask a non-party to appear at a deposition, and to incur associated attorneys' fees for doing so, so that Debtor can ask questions that the non-party is likely to not know or recall, clearly imposes undue and unnecessary burden and expense. This is even more true where, as here, Mr. Arrigoni's counsel has already informed Debtor's counsel that Mr. Arrignoni is unable to testify to most of the facts contained in the proposed affidavit prepared by Debtor's counsel. If Mr. Arrigoni cannot provide the information in the proposed affidavit, then what can possibly be the point of Debtor's proceeding with this subpoena?

The facts in the present case are very similar to those in *Eisemann v. Greene*, 1998 WL 164821 at *2 (S.D.N.Y. April 8, 1998), wherein the Court granted a non-party Sharon Keenan's motion to quash a subpoena served by plaintiff, based on her showing that she did not have access to the information sought by plaintiff. Plaintiff was seeking the non-party witness' testimony to show that her employer had agreed to be plaintiff's medical expert and to provide a favorable medical opinion. But, there, as here, in response to the subpoena, the putative witness represented that she had no knowledge on these issues because she commenced employment with the proposed medical expert after he treated plaintiff and that she had no knowledge about whether her employer agreed to be plaintiff's expert. The court held that "in light of the doubtful and tangential relevance, at best, of anything that could reasonably be expected to emerge from the putative Keenan deposition, . . . enforcement of the subpoena would constitute an unreasonable or burdensome misuse of the discovery process." *Id.* (quotations omitted). Here,

too, due to Debtor wanting to ask Mr. Arrigoni about what occurred more than 30 years ago, and Mr. Arrigoni's no longer being involved in NY Bus or having its records from more than 30 years ago, and having little knowledge about the stated information that Debtor wants to ask about, any testimony by Mr. Arrigoni could not possibly be relevant and would constitute an unreasonable or burdensome misuse of the discovery process.

## CONCLUSION

The subpoena of Mr. Arrigoni should be quashed because it would place an undue burden and needless expense upon him, he has no relevant testimony to provide, any testimony Mr. Arrigoni could provide would be duplicative and cumulative because it is either already in the record or should be obtainable without the need for his testimony, and his limited knowledge can be conveyed through a very short sworn witness statement or from other readily available sources.

**WHEREFORE**, the movant Edward F. Arrigoni requests that this Court enter an order granting his motion to quash the subpoena served upon him by OTR MEDIA GROUP INC., and for such other relief as this Court deems just and proper.

Dated: New York, New York
October 30, 2013

LAW OFFICES OF DONALD WATNICK

By: /s/ Donald E. Watnick
Donald E. Watnick
51 East 42nd Street, 11th Floor
New York, NY 10017
(212) 213-6886
dwatnick@watnicklaw.com
*Attorneys for Movant Edward Arrigoni*

Of counsel: Elaine Yuen