MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
*Attorney for Creditor the City of New York*
Attn: Brian T. Horan, Esq.
100 Church Street
New York, NY 10007
212.356.2297
bhoran@law.nyc.gov

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
In re:                                            :  Chapter 11
                                                  :
OTR MEDIA GROUP INC.,                             :  Index No. 1-11-47385 (ESS)
                                                  :
               Debtor.              :
------------------------------------------------------------------- x

## RESPONSE OF THE CITY OF NEW YORK
## TO DEBTOR'S OBJECTION TO THE ARRIGONI MOTION TO QUASH

**TO:  HONORABLE ELIZABETH S. STONG
      UNITED STATES BANKRUPTCY JUDGE**

The City of New York (the "City"), by its attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, as for its response to the Debtor's objection to the motion of Edward Arrigoni to quash a subpoena (the "Arrigoni Subpoena" or "Subpoena") issued by the Debtor's attorneys, respectfully states as follows:

### PRELIMINARY STATEMENT

1. Ever willing to spend its very limited resources on litigation, no matter the merits of the claims or the propriety of the practice, the Debtor issued the Arrigoni Subpoena without authorization and in violation of applicable rules. Because, in the face of a motion to quash, the Debtor relies on a telling of the dispute between it and the City that is simply not true, the City submits this response to advise the Court of the inconsistencies. Furthermore, the City has an

interest, that will survive this case, that any administrative submissions made by the Debtor are true and not the result of unfair pressure by the Debtor to create testimony.

2. The Subpoena is procedurally defective for at least two reasons. First, the Debtor issued it without any notice to the City, in violation of Fed. R. Civ. P. 30 and basic notions of procedural due process. Second, the Subpoena, calling for a deposition to take place in the Southern District of New York, was improperly issued from the Bankruptcy Court for the Eastern District of New York. Both defects render the subpoena invalid and unenforceable, such that the motion to quash should be granted.

3. Moreover, the subpoenaed deposition testimony, regarding whether the Debtor's sign at 330 Bruckner Boulevard in the Bronx ("330 Bruckner") qualifies for non-conforming use status under the City's Administrative Code and Zoning Resolution, falls far outside the scope of permissible discovery. This is so because nothing about 330 Bruckner – much less the determination of its zoning status – is the subject of any dispute between the Debtor and the City in this Chapter 11 case or the related Adversary Proceeding. After enjoying the protection of the bankruptcy laws for over two years, the Debtor seeks, on the eve of dismissal, one last advantage in its futile campaign to operate a business through litigation. The Court should not permit this. The Subpoena, because legally defective, should be quashed.

## **FACTS**

**The Adversary Proceeding**

4. The Debtor and eight of its landlords (the "Non-Debtor Plaintiffs") filed the Adversary Proceeding against the City on September 1, 2011. *OTR Media Group, Inc. et al. v. City of New York*, Index No. 1-11-1448-ESS. None of the Non-Debtor Plaintiffs is the owner of

330 Bruckner. At no time did the plaintiffs in the Adversary Proceeding seek any relief in connection with the Debtor's location at 330 Bruckner.

5. The complaint in the Adversary Proceeding set forth four causes of action: (i) a declaration that the automatic stay applies to proceedings against the Non-Debtor Plaintiffs; (ii) damages for violation of the automatic stay; (iii) equitable subordination of any claims of the City; and (iv) a permanent injunction prohibiting the City from enforcing the Judgments against the Non-Debtor Plaintiffs. Compl. ¶¶ 53-82 [Adv. Pro. ECF No. 1].

6. Together with the complaint, the Debtor and Non-Debtor Plaintiffs filed a motion for a temporary restraining order and preliminary injunction [Adv. Pro. ECF No. 2]. On September 2, 2011, the parties entered into the standstill agreement, in the form of a Stipulation and Order, in lieu of a temporary restraining order [Adv. Pro. ECF No. 6].

7. On November 10, 2011, the City filed a motion seeking a declaration that the automatic stay did not apply to its enforcement of the laws regulating outdoor advertising. That motion was granted in part by the Court's Order of December 16, 2011, finding that the automatic stay did not apply to enforcement as against the Debtor's existing sign locations [Adv. Pro. ECF No. 39]. The Court fully granted the City's motion by Order of May 8, 2012, which found that the automatic stay likewise did not apply to enforcement – *e.g.*, pending ECB proceedings – as against sign locations previously but no longer operated by the Debtor [Adv. Pro. ECF No. 49].

8. On February 21, 2012, Goetz Fitzpatrick wrote to the Court requesting that the adversary proceeding be dismissed, explaining that "the remaining issues raised in the Adversary Proceeding have been fully resolved by the Court's December 16, 2011 order which granted, in part, the City's motion for declaratory [stay] relief." [Adv. Pro. ECF No. 41].

9. On December 10, 2012, the Debtor moved to "reinstitute" the automatic stay. The Court denied that motion by Order of January 8, 2013 [Adv. Pro. ECF No. 53].

10. By separate Order of January 8, 2013, the Court modified the September 2, 2011 Stipulation and Order – the standstill agreement in lieu of a T.R.O. – to expire on January 22, 2013 [Adv. Pro. ECF No. 52].

11. Following the denial 10 months ago of its motion to reinstitute the automatic stay, the Debtor has not sought any relief or otherwise prosecuted its claims in the Adversary Proceeding.

**The Consent Order and the City's Declaration of Non-Compliance**

12. Central to the Debtor's bankruptcy has been the Consent Order, entered July 19, 2012 [Main Case ECF No. 214], conditionally granting the first motion to convert or dismiss made by the U.S. Trustee. At its core, the Consent Order required the Debtor to remove signage at locations that could not be brought into compliance with applicable laws and, with respect to all other locations, to engage with the City's administrative process. Thus, Paragraph 12 of that order recognized that the Department of Buildings ("DOB") and the Environmental Control Board ("ECB"), among other agencies, retain full authority to enforce the sign laws, and paragraph 10 expressly envisaged ongoing administrative determinations by both as to the lawfulness of the Debtor's signs. The Consent Order also contemplated, where appropriate, challenges to administrative determinations in New York Supreme Court pursuant to Article 78 of the Civil Practice Law and Rules.

13. Paragraph 21 of the Consent Order provided that the City or the U.S. Trustee could file a declaration of non-compliance, triggering conversion of the case to one under Chapter 7. Pursuant to that paragraph, on April 8, 2013, the City filed a Declaration of Non-

Compliance [ECF No. 373]. The Declaration of Non-Compliance focused on the Debtor's sign location at 13 Carmine Street, and also set forth violations of the Consent Order at five other locations: 450 West 31st Street, 340 Flatbush Avenue, 860 Atlantic Avenue, 209 Dyckman Street, and 59 4th Avenue. The Declaration of Non-Compliance did not mention 330 Bruckner Boulevard.

14. Along with its Declaration of Non-Compliance, the City filed the Declaration of Edward J. Fortier, Jr. [ECF No. 373]. That declaration referenced 330 Bruckner only in the last paragraph, in Mr. Fortier's discussion of "Status of Permit and Registration Proceedings." In that paragraph, Mr. Fortier described the status of proceedings administered by DOB with respect to 330 Bruckner. Specifically, he said that DOB had (i) rejected the Debtor's application to register the sign as part of its "arterial" inventory, (ii) denied the Debtor's application for a new permit, (iii) revoked one of two existing permits, and (iv) undertaken a revocation proceeding with respect to the other existing permit.

15. Pursuant to the Court's Pre-Hearing Order [ECF No. 398], in connection with the City's Declaration of Non-Compliance, the parties filed a Joint Pre-Hearing Statement [ECF No. 435]. Paragraph 14 stated that "[t]he dispute as to the Debtor's non-compliance with the Consent Order is limited to three locations," namely, 13 Carmine Street, 450 West 31st Street, and 340 Flatbush Avenue Extension. The Joint Pre-Hearing Statement did not mention 330 Bruckner.

**The Arrigoni Subpoena**

16. On or about October 31, 2013, the City's Law Department received notification, from the Electronic Court Filing system, of the motion of Edward Arrigoni to quash the Subpoena, which is dated October 17, 2013.

17. The Debtor did not provide the City with of any notice of the Subpoena. The City did not learn of the Subpoena until receiving notification through ECF of the motion to quash.

## ARGUMENT

**I. THE SUBPOENA IS IMPROPER BECAUSE THE DEBTOR FAILED TO SERVE NOTICE OF THE DEPOSITION ON THE CITY, AS REQUIRED BY FED. R. CIV. P. 30(b)(1)**

18. Fed. R. Civ. P. 30(b)(1), incorporated by Fed. R. Civ. P. 7030 and 9014, provides that "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party." Where a Rule 45 subpoena calls for a witness to appear for a deposition, it is subject to the requirement of Rule 30(b). *Cole v. City of New York*, 2012 U.S. Dist. LEXIS 48542, at *10-11 (S.D.N.Y. Apr. 4, 2012). Failure to provide such notice warrants quashing the subpoena. *Id.* at *11-12; *see also Creative Source Group, Inc. v. Agriprocessors, Inc.*, 2008 U.S. Dist. LEXIS 99285, at *9-10 (N.D. Iowa Dec. 8, 2008) (declining to enforce third-party subpoenas, directed to individual officers and/or employees, where notice not provided to defendant employer).

19. "The purpose of the notice requirement in Rule 30(b)(1) is to give all other parties notice of the deposition so that they may attend and cross examine the person being deposed." *Boles v. Lewis*, 2009 U.S. Dist. LEXIS 86960, at *4 (W.D. Mich. Sept. 22, 2009) (citing 8A Charles Allen Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2106 (2d ed. 1994); *Spaeth v. Warner Bros. Pictures*, 1 F.R.D. 729, 731 (S.D.N.Y 1941)).

20. The Debtor did not provide the City with of any kind of notice of the Subpoena. This failure goes to the heart of the notice requirement's purpose because of the City's substantial interest in the veracity of the evidence submitted to its administrative agencies, and the potential prejudice to DOB that would result from its inability to cross-examine the witness.

21. Because the Debtor failed to provide notice as required by Rule 30(b)(1), the motion to quash should be granted.

## II. THE SUBPOENA IS FACIALLY INVALID BECAUSE IT FAILS TO COMPLY WITH F.R. 45(a)(2)(B)

22. The Subpoena is procedurally invalid for another reason: it fails to comply with Fed. R. Civ. P. 45(a)(2)(B), incorporated by Fed. R. Bankr. P. 9016, which provides that a subpoena for attendance at a deposition "must issue . . . from the court for the district where the deposition is to be taken." A subpoena that fails to comply with this requirement is "procedurally invalid and unenforceable." *U.S. Bancorp Equipment Finance, Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 139 (E.D.N.Y. 2010).

23. The subpoenaed deposition was to take place at the offices of Goetz Fitzpatrick in Manhattan, in the Southern District of New York. Therefore, Rule 45 required that the Subpoena be issued from the Southern District. In fact, the Subpoena was issued from the Bankruptcy Court for the Eastern District of New York.[1] This is the exact fact pattern of *U.S. Bancorp Equipment Finance*, where the court denied a motion to compel compliance with subpoenas that were issued from the District Court for the Eastern District but called for deposition appearances in the Southern District. *Id.* Accordingly, because the Subpoena failed to comply with Rule 45(a)(2)(B), it is facially invalid, such that the motion to quash should be granted.

---

[1] Remaining unlitigated is the question of whether this bankruptcy was ever properly venued in this District. The Debtor's asserted office in Brooklyn was fleeting at best.

## III. THE SUBPOENAED TESTIMONY HAS NO RELEVANCE TO ANY DISPUTED ISSUE BEFORE THIS COURT

24. Fed. R. Civ. P. 26(b)(1), incorporated by Fed. R. Bankr. P. 7026 and 9014, provides that

> [u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Rule 26 governs the scope of depositions pursuant to Rule 45 subpoenas. *See Jones v. Hirschfeld*, 219 F.R.D. 71, 76 (S.D.N.Y. 2003).

25. As the Supreme Court has explained, "discovery, like all matters of procedure, has ultimate and necessary boundaries. Discovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1). Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . ." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978) (citations and internal quotation marks omitted).

26. The Adversary Proceeding, in which the Subpoena was captioned, seeks relief for the Non-Debtor Plaintiffs – none of whom is or ever was the owner of 330 Bruckner – having nothing to do with 330 Bruckner. Moreover, as between the Debtor and the City, the Adversary Proceeding itself is not only long dormant but moot, as explained in the February 2012 letter of Debtor's counsel, stating that "the remaining issues . . . have been fully resolved" [Adv. Pro. ECF No. 41]. Indeed, the Debtor's request in that letter for the dismissal of the Adversary Proceeding reveals its new assertion, that the Adversary Proceeding is among the "numerous contested matters" between the City and the Debtor, Debtor Obj. ¶ 1, to be disingenuous.

27. For its part, the City's Declaration of Non-Compliance made no mention of 330 Bruckner and was, as stipulated by the City and the Debtor, ultimately "limited to three locations," 330 Bruckner not among them. Joint Pre-Hearing Statement, ¶ 14 [ECF No. 435]. Therefore, the lone filing the Debtor cites as a basis for the Subpoena – the Fortier Declaration submitted in connection with the Declaration of Non-Compliance, *see* Debtor Obj. ¶ 7 – is no basis at all, because in fact, 330 Bruckner is not the subject of any dispute as to whether the Debtor violated the Consent Order.

28. Particularly disingenuous – not to mention nonsensical – is the Debtor's argument that

> the Adversary Proceeding can continue, standing alone, even if the Debtor's chapter 11 case is closed. *See, e.g.*, *In re McClelland*, 377 B.R.446, 453 (Bankr. S.D.N.Y. 2007). Accordingly, the Bankruptcy Court can retain jurisdiction over the contested matter, where Bankruptcy Rule 9014 makes Part VII Bankruptcy Rules applicable.

Debtor Obj. ¶ 18. This assertion contradicts the representation by Debtor's counsel, on the record, that the case would be dismissed, with the assent of all parties in interest to the Chapter 11 case. At no time was there any suggestion, on or off the record, that the Adversary Proceeding would survive.

29. In any case, the Debtor's argument is wrong as a matter of law. It is true that a Bankruptcy Court may retain jurisdiction over an adversary proceeding after the related main case is closed, but not without finding the exercise of jurisdiction appropriate in light of four factors: judicial economy, convenience to the parties, fairness, and comity. *Porges v. Gruntal & Co. (In re Porges)*, 44 F.3d 159, 163 (2d Cir. 1995). There, the Court of Appeals upheld the exercise of such jurisdiction because

> [t]he [bankruptcy] court had conducted a trial on all contested issues and had issued a decision, and the matter awaited only the filing of findings

9

> of fact and conclusions of law and the entry of a judgment. To have declined jurisdiction at that stage would have served no useful purpose, and would have wasted the resources already invested by the parties and the court. Further, it would be unfair to compel [creditor] Gruntal to relitigate the matter, particularly where, as here, a debtor voluntarily submitted himself to the jurisdiction of the bankruptcy court and thereby forced a creditor to litigate its claims in that forum.

*Id.* at 163. The OTR Adversary Proceeding could not be more different. Because the Debtor has not pursued any claims in the Adversary Proceeding since January 2013, there is no pending litigation, let alone a completed trial; the issues disputed between the Debtor and the City in the Adversary Proceeding, which the Debtor has characterized as "fully resolved," are not subject to re-litigation in any other forum; and the City faces no prejudice from dismissal of the Adversary Proceeding.

30. Moreover, even if it were appropriate for this Court to retain jurisdiction of the Adversary Proceeding following dismissal, the Arrigoni deposition would not be warranted, because the information the Debtor seeks is not relevant to any disputed issue in the Adversary Proceeding. The Debtor does not claim otherwise in its Objection, and the Debtor's earlier letter to Mr. Arrigoni's attorney made no mention at all of the Adversary Proceeding. *See* Declaration of Donald E. Watnick, Oct. 30, 2013, Exh. C [Adv. Pro. ECF No. 68]. Instead, what the Debtor bizarrely contemplates is dismissal of the main case, retention of jurisdiction in the Adversary Proceeding, and then discovery that the Debtor argues – incorrectly, as described above – is relevant to the City's Declaration of Non-Compliance, which is pending in the main case. The Debtor cannot eat its cake and have it, too.

31. The jurisdictional effects of the expected dismissal aside, the topic of the subpoenaed deposition is outside the scope of this case, together with the Adversary Proceeding. A central premise of the Debtor's bankruptcy case has been that the lawfulness of the Debtor's

signs, a matter of State law, would be determined by the administrative and judicial apparatuses of the City and the State of New York. Thus, the Consent Order provides for ongoing administrative determinations with judicial review, if any, taking place in State court. Accordingly, the specific issue to which the Debtor claims the deposition testimony it seeks is relevant – whether 330 Bruckner qualifies for non-conforming use status under the City's Administrative Code and Zoning Resolution – is decidedly not, and should not be, before this Court.

32. The Subpoena marks a transparent attempt by the Debtor to obtain testimony, not relevant to any disputed issue before this Court, that it hopes will help it in State administrative and judicial proceedings. This Court should not permit its process to be exploited for this improper purpose.

## CONCLUSION

For the foregoing reasons, the Arrigoni motion to quash should be granted.

Dated:  New York, New York
       November 15, 2013

                MICHAEL A. CARDOZO
                Corporation Counsel of the City of New York
                *Attorney for Creditor the City of New York*

                By:    /s/ Brian T. Horan
                         Brian T. Horan
                         Assistant Corporation Counsel
                         100 Church Street
                         New York, New York 10007
                         212.356.2297
                         bhoran@law.nyc.gov

On the Response:
      Alan H. Kleinman