# EXHIBIT A

```
 1                  UNITED STATES BANKRUPTCY COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3

 4                                .   Brooklyn, New York
In re:                            .   November 19, 2013
 5                                .   11-01448
OTR MEDIA GROUP, INC.             .   11-47385
                                  .   Calendar Time:
 6        Debtor.                 .   9:00 A.M.
. . . . . . . . . . . . . . . .
 7
          11-01448 OTR MEDIA GROUP, INC. ET AL V. THE CITY
 8                             OF NEW YORK

 9    [1] ADJOURNED PRE-TRIAL CONFERENCE RE: COMPLAINT

10       ADJOURNED FROM:  9/28/11, 10/25/11, 11/22/11,
      11/29/11, 12/15/11, 2/14/12, 2/23/12, 4/3/12,
11      4/20/12, 5/10/12, 7/17/12, 8/9/12, 9/27/12,
      11/1/12, 12/10/12, 12/20/12, 1/24/13, 2/14/13,
12       4/23/13, 5/9/13, 5/14/13, 6/4/13, 6/27/13,
                7/17/13, 8/2/13, 9/20/13
13
         ADJOURNED HEARING (RE: RELATED DOCUMENT(S) 54
14        MOTION TO PROHIBIT/ENJOIN/RESTRAIN FILED BY
           PLAINTIFF, GOTHAM BROAD, LLC, 57 ORDER TO
15    SCHEDULE HEARING (GENERIC), 62 SCHEDULING ORDER)

16       ADJOURNED FROM:  5/14/13, 6/4/13, 6/27/13,
                7/17/13, 8/2/13, 9/20/13
17
             11-47385  OTR MEDIA GROUP, INC.
18
      [154] ADJOURNED MOTION TO CONVERT CHAPTER 11 CASE
19    TO CHAPTER 7 OR, IN THE ALTERNATIVE, DISMISS CASE

20    ADJOURNED FROM 6/29/12, 7/12/12, 8/9/12, 9/27/12,
       11/1/12, 12/10/12, 12/20/12, 1/24/13, 4/23/13,
21          6/27/13, 7/17/13, 8/2/13, 9/20/13

22            [9] ADJOURNED STATUS CONFERENCE

23      ADJOURNED FROM:  10/25/11, 11/22/11, 11/29/11,
        12/15/11, 2/14/12, 2/23/12, 4/3/12, 5/10/12,
24      7/17/12, 8/9/12, 11/1/12, 12/10/12, 12/20/12,
        1/24/13, 2/14/13, 4/23/13, 6/19/13, 6/27/13,
25             7/17/13, 8/2/13, 9/20/13
```

```
 1                                                                  2

 2

 3            ADJOURNED [4] MOTION TO USE CASH COLLATERAL

 4    ADJOURNED FROM:  9/1/11, 9/28/11, 10/25/11, 11/22/11,
               11/29/11, 12/15/11, 2/14/12, 2/23/12, 4/3/12
 5    5/10/12, 7/17/12, 8/9/12, 11/1/12, 12/10/12, 12/20/12,
               1/24/13, 2/14/13, 4/23/13, 6/19/13, 6/27/13,
 6                       7/17/13, 8/2/13, 9/20/13

 7      [375] ADJOURNED HEARING ON THE ISSUES RAISED IN THE
         DECLARATIONS [373] AFFIRMATION OF NON-COMPLIANCE:
 8    DECLARATION OF DEBTOR'S NON-COMPLIANCE WITH CONSENT
            ORDER CONDITIONALLY GRANTING MOTION OF UNITED
 9           STATES TRUSTEE TO CONVERT CHAPTER 11 CASE

10    ADJOURNED FROM:  4/23/13, 6/19/13, 6/27/13, 7/17/13
                        8/2/13, 9/20/13
11
        [538] MOTION FOR RELIEF FROM STAY FEE AND MOTION
12    TO DISMISS CASE FILED BY JOSEPH A. ALTMAN ON BEHALF
                     OF JANJAN REALTY CORP.
13
                 ADJOURNED CONFIRMATION HEARING
14
           ADJOURNED FROM:  7/17/13, 8/2/13, 9/20/13
15
            [507] ADJOURNED SECOND APPLICATION FOR
16      COMPENSATION FOR NOVACK, BURNBAUM & CRYSTAL, LLP
        AS SPECIAL COUNSEL; FEES: $55,314.93, EXPENSES: 0.00.
17    OBJECTIONS TO BE FILED ON SEPTEMBER 13, 2013.  FILED
        BY GARY M. KUSHNER ON BEHALF OF NOVACK, BURNBAUM &
18    CRYSTAL, LLP (RE:  RELATED DOCUMENT(S) 51 APPLICATION
         TO EMPLOY FILED BY DEBTOR, OTR MEDIA GROUP, INC.)
19
                    ADJOURNED FROM 9/20/13
20
        [508] ADJOURNED FOURTH APPLICATION FOR COMPENSATION
21    FOR GOETZ FITZPATRICK, LLP AS ATTORNEY; FEES: $190,072.50,
          EXPENSES: $4,851.11.  OBJECTIONS TO BE FILED ON
22       SEPTEMBER 13, 2013.  FILED BY GARY M. KUSHNER ON
                    BEHALF OF OTR MEDIA GROUP, INC.
23
                    ADJOURNED FROM:  9/20/13
24

25
```

1

2

3     [388] ADJOURNED MOTION TO ALLOW ADMINISTRATIVE
      EXPENSE CLAIM AND OBJECTION TO REDUCED TREATMENT
4   OF ADMINISTRATIVE CLAIM UNDER DEBTOR'S FIRST AMENDED
     PLAN OF REORGANIZATION FILED BY FREDERICK J. LEVY ON
5              BEHALF OF CARE REALTY CORPORATION

6         ADJOURNED FROM:  7/17/13, 8/2/13, 9/20/13

7    [501] ADJOURNED MOTION TO COMPEL DEBTOR TO PRODUCE
        WITNESSES FOR DEPOSITIONS AND FOR OTHER RELIEF.
8   OBJECTIONS TO BE FILED ON 8/28/2013.  FILED BY BRIAN
     T. HORAN ON BEHALF OF CITY OF NEW YORK (RE: RELATED
9   DOCUMENT(S) 154 MOTION TO DISMISS CASE FILED BY U.S.
           TRUSTEE, UNITED STATES TRUSTEE).

10
                ADJOURNED FROM 9/20/13
11
    [107] ADJOURNED OMNIBUS MOTION TO OBJECT/RECLASSIFY/
12   REDUCE/EXPUNGE CLAIMS:  CLAIM NUMBER(S):  3,4, 7/8,
                 13, 14, 18, 19, 25
13
     ADJOURNED FROM 5/10/12, 7/17/12, 8/14/12, 10/16/12,
14     11/13/12, 12/10/12, 12/20/12, 1/24/13, 2/14/13,
                 7/17/13, 8/2/13, 9/20/13
15
    [470] ADJOURNED MOTION FOR ADEQUATE PROTECTION LIFT
16  STAY FILED BY JASON S. GARBER ON BEHALF OF 176 CANAL CORP.

17          ADJOURNED FROM:  8/2/13, 9/20/13

18   11-101448  OTR MEDIA GROUP, INC. ET AL V. THE CITY OF
                      NEW YORK
19
       [68] MOTION TO QUASH.  OBJECTIONS TO BE FILED ON
20    11/12/13.  FILED BY DONALD E. WATNICK ON BEHALF OF
                  EDWARD F. ARRIGONI.
21
               11-47386 OTR MEDIA GROUP, INC.
22
      [547] MOTION TO DISMISS CASE WITH PREJUDICE, AND
23   BARRING REFILING FOR NINE MONTHS.  OBJECTIONS TO BE
      FILED ON NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING ON
24    OBJECTIONS, IF ANY, WILL BE HELD ON: NOVEMBER 19,
     2013 AT 9:00 A.M.  FILED BY SCOTT D. SIMON ON BEHALF
25                 OF OTR MEDIA GROUP, INC.

1

2

3     [548] FINAL MOTION FOR COSTS/ATTY FEES OF NOVACK
BURNBAUM CRYSTAL, LLP.  OBJECTIONS TO BE FILED ON
4  NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING ON OBJECTIONS,
IF ANY, WILL BE HELD ON:  NOVEMBER 19, 2013 AT 9:00
5    A.M.  FILED BY SCOTT D. SIMON ON BEHALF OF OTR
MEDIA GROUP, INC.
6
     [549] FINAL MOTION FOR COSTS/ATTY FEES OF DEBTOR'S
7  ORDINARY COURSE PROFESSIONALS.  OBJECTIONS TO BE FILED
ON NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING ON OBJECTIONS,
8  IF ANY, WILL BE HELD ON:  NOVEMBER 19, 2013 AT 9:00
    A.M.  FILED BY SCOTT D. SIMON ON BEHALF OF OTR
9

     [550] FINAL MOTION FOR COSTS/ATTY FEES OF BRYAN
10  CAVE, LLP, AS DEBTOR'S SPECIAL COUNSEL.  OBJECTIONS
TO BE FILED ON NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING
11 ON OBJECTIONS, IF ANY, WILL BE HELD ON:  NOVEMBER 19,
  2013 AT 9:00 A.M.  FILED BY SCOTT D. SIMON ON BEHALF
12         OF OTR MEDIA GROUP, INC.

13    [551] FINAL MOTION FOR COSTS/ATTY FEES OF GOETZ
FITZPATRICK, LLP, AS DEBTOR'S COUNSEL.  OBJECTIONS
14 TO BE FILED ON NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING
ON OBJECTIONS, IF ANY, WILL BE HELD ON:  NOVEMBER 19,
15 2013 AT 9:00 A.M.  FILED BY SCOTT D. SIMON ON BEHALF
        OF OTR MEDIA GROUP, INC.
16

    [552] FINAL MOTION FOR COSTS/ATTY FEES OF ROTH AND
17  COMPANY CPA, AS DEBTOR'S ACCOUNTANTS.  OBJECTIONS
TO BE FILED ON NOVEMBER 12, 2013 AT 4:00 P.M.  HEARING
18 ON OBJECTIONS, IF ANY, WILL BE HELD ON:  NOVEMBER 19,
  2013 AT 9:00 A.M.  FILED BY SCOTT D. SIMON ON BEHALF
19       OF OTR MEDIA GROUP, INC.

20

     BEFORE HONORABLE ELIZABETH S. STONG

21

22 Attorney for Debtor:      GOETZ, FITZPATRICK
                 One Penn Plaza
23               New York, New York  10119
                BY:  GARY M. KUSHNER, ESQ.
24                  SCOTT D. SIMON, ESQ.

25

```
 1

 2

 3  Attorney for United States
    Trustee:                    U.S. DEPARTMENT OF JUSTICE
 4                              OFFICE OF UNITED STATES TRUSTEE
                                271 Cadman Plaza
 5                              Suite 4529
                                Brooklyn, New York  11201
 6                              BY:  WILLIAM CURTIN, ESQ.

 7  Attorney for IRS:           OFFICE OF CHIEF COUNSEL
                                33 Maiden Lane
 8                              14th Floor
                                New York, New York  10038
 9                              BY:  HANNA KLAPPER, ESQ.

10  Attorney for Janjan Corp.:  JOSEPH A. ALTMAN, P.C.
                                951 Bruckner Boulevard
11                              1st Floor
                                Bronx, New York  10459
12                              BY:  JOSEPH A. ALTMAN, ESQ.

13  Attorney for City of
    New York:                   NEW YORK CITY LAW DEPARTMENT
                                OFFICE OF THE CORPORATION
14                      COUNSEL
                                100 Church Street
15                              New York, New York  10007
                                BY:  ALAN H. KLEINMAN, ESQ.
16                                   BRIAN T. HORAN, ESQ.

17  Attorney for 176 Canal:     SILVERSMITH & ASSOCIATES
                                30 Broad Street
18                              20th Floor
                                New York, New York  10004
19                              BY:  JASON GARBER, ESQ.

20  Attorney for Edward Arrigoni: LAW OFFICES OF DONALD WATNICK
                                51 East 42nd Street
21                              11th Floor
                                New York, New York  10017
22                              BY:  DONALD E. WATNICK, ESQ.

23

24

25
```

```
 1                                                      6

 2

 3  Attorney for Metropolitan
    National Bank:              TANNENBAUM HELPERN SYRACUSE &
 4                             HIRSCHTRITT, LLP
                               900 Third Avenue
 5                             New York, New York  10022
                               BY:  RICHARD W. TROTTER, ESQ.
 6

 7  Court Recorder Operator:    D. CAPERS

 8
    Court Transcriber:          CATHERINE ALDRICH
 9                             COMPU-SCRIBE, INC.
                               2376 Cleveland Street
10                             Bellmore, New York  11710

11

12

13

14

15

16

17

18

19

20

21

22

23  Proceedings recorded by electronic sound recording,
    transcript produced by transcription service
24

25
```

1          THE CLERK:  Numbers 1 through 21 on the calendar,

2   all matters regarding OTR Media Group, Incorporated.

3          THE COURT:  Good morning.

4          MR. KUSHNER:  Good morning, your Honor.

5          THE COURT:  Let's start by getting your appearances

6   on the record.

7          MR. KUSHNER:  Good morning.  Gary Kushner, Goetz

8   Fitzpatrick, for the debtor, OTR Media Group.

9          MR. SIMON:  Scott Simon, Goetz Fitzpatrick, counsel

10  for the debtor.  Good morning.

11         THE COURT:  Thank you.

12         MR. CURTIN:  William Curtin for the United States

13  Trustee.  Good morning, your Honor.

14         THE COURT:  Good  morning, and thank you.

15         MS. KLAPPER:  Good morning, your Honor.  Hanna

16  Klapper for the IRS.

17         MR. ALTMAN:  Good morning, your Honor.  Appearing

18  for the landlord, Janjan Corp., Joseph A. Altman.

19         THE COURT:  Thank you.

20         MR. KLEINMAN:  Good morning, your Honor.  Alan

21  Kleinman, New York City Law Department for the City of New

22  York.

23         MR. GARBER:  Good morning, your Honor.  My name is

24  Jason Garber with Silversmith & Associates.  We represent a

landlord, 176 Canal.

MR. WATNICK:  Good morning, your Honor.  Donald Watnick from the Law Offices of Donald Watnick, and we represent a non-party, Edward Arrigoni.

MR. HORAN:  Good morning, your Honor.  Brian Horan, also for the City of New York.

THE COURT:  Good morning.  Any other appearances?

MR. KUSHNER:  One more, Judge.

MR. TROTTER:  Richard Trotter from Tannenbaum Syracuse & Hirschtritt on behalf of Metropolitan National Bank.

THE COURT:  All right.  Good.  Thank you.

MR. KUSHNER:  And your Honor, just for the record, Mr. Noe, the principal of the debtor, is also here sitting behind Mr. Simon.

THE COURT:  All right.  Good to see you.  You can all be seated.

Mr. Kushner, let's start with status.

MR. KUSHNER:  Okay, your Honor.  On September 20th we were before you for a hearing, and at that hearing there was a record made regarding the final disposition of this case in the form of a consensual dismissal, and when I say consensual, it was between the major parties in the case, the debtor, the Office of the United States Trustee, Metropolitan

National Bank, and the City of New York, and because other
parties were not involved in those discussions in a material
way we spent these last few months preparing the application
and noticing them.

So since that point, your Honor, really what we've
been involved with as debtor's counsel is dealing with a
number of administrative matters, and the debtor's continued
on to honor its administrative duties.  It's entered into cash
collateral stipulations.  It's continuing on in state court
battling the battle that exists with respect to the
legalization of signs.

I'm happy to report that during the last two months
or so I was able to settle a number of claims, one of which is
before you today, your Honor, in the form of the IRS.  That is
essentially the status.  The debtor has met with Metropolitan
National Bank, and I understand that it has reached an
agreement, actually signed documents last evening converting
what would be an otherwise matured loan into a term loan so
that going forward we have an understanding as to what our
obligations are to Metropolitan National Bank, but these are
the types of things that have happened over the last two
months since we were last before you, your Honor.

THE COURT:  All right.  Well, it sounds like the
time has been productive.  Is it fair to assume that the path

1 contemplated by the parties' statements on the records back in

2 September remains the same path of the case?

3          MR. KUSHNER:  Yes.

4          THE COURT:  That is to say the consensual --

5          MR. KUSHNER:  We are proceeding with the motion to

6 dismiss, your Honor.

7          THE COURT:  Okay.  All right.  Well, who else would

8 like to be heard on status?

9          MR. CURTIN:  Your Honor, did you want comments on

10 the motion to dismiss now or just status?  I don't have

11 anything on status.

12          THE COURT:  Okay.

13          MR. CURTIN:  But I do have comments on the motion.

14          THE COURT:  Does it make sense to move then to the

15 motion to dismiss?  Because my sense is that that really is

16 the most significant matter on the calendar today and that it

17 will likely --

18          MR. KUSHNER:  Respectfully, your Honor, I would have

19 thought that that would have been the last thing because there

20 are a number of matters that still need the Court's

21 assistance.

22          THE COURT:  What would you -- what do you propose

23 that we address next?

24          MR. KUSHNER:  I'd like to address the agreement that

the debtor reached on the objections to claims motion, which

is number 13 on your Honor's calendar this morning.  That is

an omnibus motion that was made with respect to a number of

creditors, and just to refresh your Honor's memory, there were

two prior orders entered before, disposing with certain

claims, but --

THE COURT:  I recall.

MR. KUSHNER:  -- the majority of that motion

remained, so --

THE COURT:  I could not have told you how many of

the claims had been previously resolved, but I know that we

have been resolving in part and adjourning the debtor's claims

motion as part of overall case management.

MR. KUSHNER:  Well, the big one, your Honor, was a

contested motion.  The IRS had put in opposition, and I'm

happy to report that with the hard work of Ms. Klapper and I

and Mr. Clemente -- Scottodiclemente, we've come to an

agreement in principal, even to the extent of perhaps

prematurely submitting an order to your Honor's order desk I

believe it was yesterday.

I'll go over the agreement in principle, but I'd ask

your Honor to hold off on signing that order because it came

to our attention last night that we need to go over the math

on credits for adequate protection payments.

1        THE COURT:  Okay.

2        MR. KUSHNER:  And that's still a moving target, but

3   in principle we've come to an understanding, and essentially

4   what the understanding is is that the debtor has agreed with

5   the Internal Revenue to an allowed secured claim which totals

6   $116,856.54.  It represents a large reduction because

7   originally as filed the secured component of the IRS claim

8   included penalties of approximately $84,000, and that under

9   the agreement has been recast to a general unsecured claim.

10        The secured claim will be paid by the debtor in 60

11   consecutive monthly installments commencing on February 1st,

12   2014 with statutory interest at the rate of $2,099.76 per

13   month.  The IRS has essentially agreed to take a one-time

14   distribution on the unsecured portion in an amount which

15   worked out to be about 24 cents on the dollar, which was what

16   was contemplated under the debtor's plan, and that's a payment

17   of $9,523.35.  The math may change slightly again because of

18   some issue as to whether or not full credits were given to

19   adequate protection payments that had been made all along, and

20   I suspect that Ms. Klapper and I can work out that issue

21   within the next few days and give your Honor some direction as

22   to whether you should go ahead and sign that order or look at

23   it anyway, but what --

24        THE COURT:  We did review it, and I think it was in

1  the form of stipulation and order.  Isn't that right?

2       MR. KUSHNER:  It was.  Yes, it was, and that's

3  essentially what the agreement is with the Internal Revenue

4  Service.

5       THE COURT:  Okay.  So in view of the anticipated

6  dismissal of the case, how does the agreement with respect to

7  the claim in the bankruptcy case --

8       MR. KUSHNER:  The order would survive.

9       THE COURT:  Okay.

10      MR. KUSHNER:  And --

11      THE COURT:  And the agreement would survive?

12      MR. KUSHNER:  That's correct.

13      THE COURT:  Okay.

14      MR. KUSHNER:  And it represents what we feel is a

15 fair compromise, and certainly addresses the IRS's concern for

16 getting payment on its tax claim in a manner that the debtor

17 can reasonably afford.

18      THE COURT:  That makes sense.  I anticipated that

19 was the answer, but I wanted to be sure I wasn't missing

20 something.

21      What other claims are left, and will any be the

22 subject of similar efforts by the debtor?  My notes seem to

23 suggest that 3, 7, 14, 18, 19, 29, and 33 --

24      MR. KUSHNER:  Yes.  All of those --

1    THE COURT:  -- one of which must be IRS.  Number 3

2  is the IRS.

3    MR. KUSHNER:  3 is the IRS.  Two of those, and I'm

4  remiss that I don't know which ones were resolved, but for the

5  record, to the extent that they haven't been resolved, the

6  motion will, if your Honor wants to handle this way, will be

7  withdrawn by the debtor without prejudice to either party's

8  rights to challenge the validity of a claim in a court of

9  proper jurisdiction, and I think that that is the best way to

10  handle that, and I'd be happy to submit an order to that

11  effect if your Honor agrees with the way that I suggested we

12  treat it.

13    THE COURT:  All right.  Who else would like to be

14  heard with respect to the claims motion?  In substance, based

15  on the record before me, I would mark the claims motion to the

16  extent it's directed to claim number 3 of the Internal Revenue

17  Service, as settled as reflected in the record, the parties to

18  submit a proposed stipulation and order or confirm that which

19  has been submitted is that which the Court should take up and

20  enter, and that it is withdrawn in part as reflected in the

21  record as to the remaining claims, and you'll be submitting an

22  order with respect to that as well.  Would anyone else like to

23  be heard on the claims motion?

24    All right.  No response.  So we've -- I think we've

1 addressed number 13 on the calendar, and I think this is the

2 right way to go.

3        Mr. Kushner, where should we go next?

4        MR. KUSHNER:  So if we walk back to matters 1 and 2,

5 that involves an adversary proceeding which is being primarily

6 addressed by Gotham Broad.  The debtor doesn't really have a

7 stake in that, and Gotham Broad is not even here today I don't

8 think.  I think he filed something on the docket yesterday

9 asking for a continuation.

10        So I don't want to speak for him.  The debtor's

11 really not involved in that proceeding at this point.  It's

12 something that is between the City and Gotham Broad.  Perhaps

13 the City has some thoughts about that.

14        THE COURT:  I'd like to hear from the City.  It

15 certainly seems to the Court that if this Chapter 11 case is

16 dismissed, those matters should be marked off the Court's

17 calendar, those adversary proceedings.

18        MR. KLEINMAN:  Yes.  That's correct, your Honor.

19        THE COURT:  All right.  Mr. Kushner.

20        MR. KUSHNER:  Yes.  Number 3, your Honor, is the

21 motion to convert the case.  I think that that would in effect

22 be superseded by the debtor's own motion to dismiss the case

23 on consent.  So I guess your Honor should perhaps rule on that

24 in conjunction with the voluntary motion to dismiss the case.

1   This is the motion by the United States Trustee --

2              THE COURT:  Yes, number --

3              MR. KUSHNER:  -- which was joined by the City.

4              THE COURT:  Right.  Number 506 on the docket from

5   late of August of this year.

6              MR. KUSHNER:  And that's been carried by virtue of

7   the consent order and various related issues.  I would imagine

8   that that would be rendered moot, and also should be marked

9   off.

10             MR. CURTIN:  Your Honor, William Curtin for the

11  United States Trustee, and Mr. Kushner and I did not discuss

12  that -- this beforehand, but as I sit here the way I would

13  prefer to handle it, because when we get to the motion to

14  dismiss you're going to hear that the bank is going to have

15  some additional language comments on the order, so that if

16  your Honor were to dismiss the case today we won't be

17  submitting the order for a couple of days.

18             So if it's okay with your Honor and the debtor, what

19  I'd like to do is keep that on the calendar, and then I will

20  file a letter once we get the order finalized withdrawing that

21  motion.

22             MR. KUSHNER:  The debtor has no objection to that,

23  your Honor.

24             THE COURT:  All right.  So it's a question of

awaiting the disposition by decision today and entry of an
order of that matter.  We'll come up with a holding date I
think perhaps for that motion.  To the extent that the motion
to dismiss is granted and we don't have a holding date for the
status conference, that's a bit of a loose end, but I don't
think it's an unacceptable extent.

All right.  Status is of course the next thing on
the calendar, and you've addressed that already.

MR. KUSHNER:  So I can move on to 5, your Honor?

THE COURT:  I think that's cash collateral.

MR. KUSHNER:  Okay.  Cash collateral, there are
orders that are entered through October, and I believe that
your Honor should have the -- is it the nineteenth interim
order, which goes through the end of the case.  It's already
been submitted, your Honor.  The bank and the UST have signed
off on it, so I think for procedural purposes it probably
makes sense to enter that order before the case is dismissed.

THE COURT:  All right.  I'd like to hear from others
with respect to cash collateral.  The suggestion is that there
has been or will soon be a submitted order, Mr. Kushner, and
I'm sure you were clear and I'm sorry I didn't catch
precisely.  We have the nineteenth interim order from November
-- excuse me, October 11th, and you'll be submitting another
interim order?

1       MR. KUSHNER:  Does that have -- is it through

2 October 31st?  I should have been prepared, your Honor.  I'm

3 sorry.

4       THE COURT:  I should know the answer to that

5 question, having signed and entered the order.

6       MR. KUSHNER:  Mr. Simon says that I am incorrect.

7 It would be the twentieth interim order, and it would cover

8 the period from November 1st through --

9       THE COURT:  I have quite a complete set, except I

10 don't have before me the twentieth.  We'll pull that up from

11 the docket.

12       MR. KUSHNER:  It would have gone to your order desk,

13 not to the docket first.

14       THE COURT:  So it's not yet entered.  All right.

15 We'll pull that order up just to be sure we have all the

16 pieces in place.

17       MR. KUSHNER:  Sorry, your Honor, on that.

18       THE COURT:  No problem.  We'll --

19       MR. KUSHNER:  Okay.  The next one is number 6.  That

20 is the adjourned hearing on the compliance or non-compliance

21 with the consent order.  Again, that I think should be marked

22 off as moot.  That was actually adjourned in favor of moving

23 forward with the dismissal motion --

24       THE COURT:  All right.

1      MR. KUSHNER:  -- from the last time, so I don't know

2 how the City wants to handle that, but --

3      THE COURT:  Subject to the dismissal of the case

4 proceeding as anticipated.

5      MR. KLEINMAN:  Yes.  I think the same arrangement

6 that the U.S. Trustee suggested should apply with this.

7      MR. KUSHNER:  And the debtor's okay with that.

8      MR. CURTIN:  That's fine with me also, your Honor.

9 It makes sense.

10      THE COURT:  All right.  We'll have an adjourn date

11 as a holding date.  Okay.  Good.  Thank you.

12      MR. KUSHNER:  Number 7, your Honor.

13      THE COURT:  Stay relief.

14      MR. KUSHNER:  Okay.  This is a landlord's motion.

15 It's Janjan's motion for stay relief.  We think certainly Mr.

16 Altman can make his presentation if the Court wishes, but

17 again, we think that this is also rendered moot by the

18 dismissal, but if Mr. Altman and the Court have a different

19 view, then we don't have any visceral objection to it, so I

20 think it doesn't really mean anything.

21      THE COURT:  Yes.

22      MR. ALTMAN:  Yes, your Honor.  With reference to the

23 application, I would like to have an order granting it, your

24 Honor, if possible.  In case something delays the entry of the

dismissal we need to have an order that says the stay is

lifted and we can go forward in state court to address the

issues.  My client does have a lot at stake here.  There are a

lot of penalties that have been incurred as a result of the

finds from the City, so I would ask that the Court does enter

such an order.

THE COURT:  All right.  If Mr. Kushner and anyone

else who would like to be heard, the matter before the Court

is Janjan Realty Corp.'s motion for relief from the automatic

stay.  It arises in the context of all of the other issues in

this case, and the underlying issues are well-traveled ground

and familiar to the Court.  In a general way the standard here

is the standard articulated in the Sonnax case, whether there

is cause for relief from the automatic stay to permit the

parties to pursue their rights under the applicable law in a

different forum, and I can see that the record certainly

suggests that a number of those factors would weigh in favor

of that path.

I appreciate that the case seems to be headed for a

dismissal, and I appreciate all the reasons for that, and I

think it makes sense.  That being said, there's a motion on

today and the movant, the landlord, has indicated an interest

in proceeding.

Mr. Kushner, do you contest the relief being sought

1 on that?

2          MR. KUSHNER:  We didn't contest it.

3          THE COURT:  I see there's no opposition.

4          MR. KUSHNER:  Because of what we believe will be the

5 case, and that is the dismissal, but if I may just suggest

6 that if the Court's going grant it unopposed, then at least we

7 settle an order or make the order conditional on again

8 dismissal.  It has the same effect as granting the same type

9 of relief that the movant is getting.

10          THE COURT:  Well, it seems to me that the question

11 before the Court is whether there's grounds for relief from

12 the automatic stay or precisely whether there's cause, and I

13 don't hear -- I don't see in the record nor hear from the

14 debtor nor yet any party in interest, though I haven't asked

15 and I will, whether there is -- whether anyone else would like

16 to be heard.  I see at least a prima facie case for cause for

17 relief.  I'll note that notice was a few days short, but I'm -

18 - this is our second hearing, so that took care of that issue

19 I think.  Maybe there's still a couple days, but I'm prepared

20 to deem it substantially adequate under the circumstances.

21          Would anyone else like to be heard with respect to

22 the motion for relief from the automatic stay?

23          MR. KLEINMAN:  Well, your Honor, the City be in

24 favor of your Honor approving the motion.  This is one of many

1  landlords who will end up being caught holding the bag for

2  liabilities incurred based on the signage of OTR, and to the

3  extent that the landlord seeks to remedy that situation and

4  come into compliance, the City is in favor of that, and would

5  recommend that the Court sign that order now rather than at

6  any time later on.

7          THE COURT:  All right.  Would anyone else like to be

8  heard with respect to the motion?

9          For all the reasons reflected in the record, I'm

10  satisfied that there is a good basis for the relief that's

11  sought, which is relief from the automatic stay, and that

12  there is cause.  The factors articulated by the Second Circuit

13  in the In Re:  Sonnax Industries case weigh in favor

14  permitting the parties to pursue litigation in another forum,

15  in the state court specifically, and the debtor has indicated

16  that there is no opposition, but first and foremost the movant

17  has established cause for relief.  So for all the reasons

18  reflected in the record, the motion is granted.

19          May I ask you to submit an appropriate proposed

20  order?  We don't seem to have a proposed order.

21          MR. KUSHNER:  Can I get that sent to me first before

22  it's submitted to the Court, your Honor?

23          THE COURT:  Would you be able to provide a copy to

24  Mr. Kushner?

1          MR. ALTMAN:  Sure, your Honor.  That would be fine.

2          THE COURT:  Are you looking for relief beyond -- the

3   relief that I see warranted in the record would be an order

4   that in substance states that the stay is granted to the

5   extent necessary for your client to pursue its rights under

6   applicable law with respect to the debtor.  I would not be

7   inclined to waive the 14-day stay under the Bankruptcy Rules

8   or grant any other relief.

9          MR. ALTMAN:  I understand.

10         THE COURT:  Okay.  All right.  If it's possible as a

11  courtesy I would encourage you to extend that courtesy to Mr.

12  Kushner.  Please submit an appropriate proposed order.

13         MR. ALTMAN:  Will do.

14         THE COURT:  All right.  Thank you.

15         MR. ALTMAN:  Okay.  Can I be excused now, your

16  Honor?

17         THE COURT:  Yes.  You can be excused.  You're

18  welcome to stay, but you're free to go.

19         MR. ALTMAN:  Okay.  Thank you.

20         THE COURT:  All right.

21         MR. KUSHNER:  Number 8, your Honor, is the hearing

22  on the adjourned confirmation of the debtor's amended plan,

23  which I believe would be rendered moot, so I think your Honor

24  should mark that off.

1          THE COURT:  It will be marked off and so ordered.

2          MR. KUSHNER:  Now we have a series of fee

3  applications.

4          THE COURT:  We do.

5          MR. KUSHNER:  Can we go through those?

6          THE COURT:  Yes.

7          MR. KUSHNER:  9 is Novack, Burnbaum.

8          THE COURT:  One second.  Let me catch up with my

9  paperwork.  Oh, we've looked.  We do not find the twentieth

10 interim cash collateral order in the ESS order box.

11         MR. KUSHNER:  By the time I get back to my office

12 and your Honor's still on the bench you will have it.  It was

13 supposed to be sent yesterday.

14         THE COURT:  And it may well have been and we're just

15 overlooking it, but if you could help us with that, that would

16 be useful.  And the nineteenth interim cash collateral order

17 goes through October 31st?

18         MR. KUSHNER:  That's right.

19         THE COURT:  All right.  Number --

20         MR. KLEINMAN:  Your Honor, if I may?  The City has

21 an objection to the various fee requests, and I simply suggest

22 as a matter of efficiency that that be considered first

23 because if the City's objection be considered favorably by

24 this Court, there'd be no reason to go through all of them,

1   so --

2           THE COURT:  Well, let's take -- let's hear the first

3   one, and I'll hear your objection, but it's always helpful to

4   hear first from the proponent, and then of course you'll have

5   all the time you need to respond, but I appreciate that it

6   should be necessary to hear everything absolutely as many

7   times as possible -- as necessary, but only as many times as

8   necessary.  It's a good point.

9           All right.  Numbers 9 and 17 on the calendar today

10  concern fee applications of Novack, Burnbaum & Crystal as

11  special counsel.

12          MR. KUSHNER:  With respect to Novack, the matter

13  that's been marked as number 9 on the Court's calendar is

14  actually merged into the final fee application.  If you

15  recall --

16          THE COURT:  I see.  Okay.  I should have caught

17  that.  So number 9 has been superseded.  May I mark it

18  withdrawn?  And that will be so ordered.  Let's move to number

19  17.

20          MR. KUSHNER:  Okay.  Novack, Burnbaum was the firm

21  that was retained as special counsel.  There are a number of

22  special counsel, but in particular what Novack, Burnbaum did

23  was handle several ECB matters before the ECB and various

24  appeals, special types of appeals that found their way from

ECB rulings to the Board of Standards and Appeal.

The final fee application of Novack, Burnbaum requests a payment of the holdback in connection with the first interim application covering the period August 25th, 2011 through July 20th, 2012 in the amount of $22,000 -- 22,549.61, payment in the amount of $30,115.97 in connection with the second interim application which had been filed and which your Honor just I guess marked off, and a payment of all prior holdbacks from the monthly payments authorized under the OCP order.

Novack, Burnbaum was kind of a hybrid type of retention. Initially they were contemplated as being hired as an OCP. We instead filed the first fee application for them, but from that point after for a period of a number of months they received up to $6,000 as a cap as set forth in the application. So what Novack, Burnbaum is seeking for this final fee application is $92,318.14 covering all of the work that they did and prior holdbacks.

I have, as in all of my cases, your Honor, given the Court what I felt was a lengthy description of the types of services that Novack, Burnbaum -- I know your Honor has a full calendar, so if I may defer having to repeat what's already in the application?

THE COURT: I think the thing to do would be to

focus on the objections that have been raised because there are some concerns raised and some concerns about the compensation and the aggregate amount of the compensation, how it compares to the carve-out which was significantly smaller. The numbers in the Metropolitan National Bank response indicate $827,000 in carve-out and $1,860,765.16 in total requested fee application sums, and of course, some of those concerns are directed to the prospect of the case not being dismissed.

Again, it does seem from the record that there is a -- assuming the prospect of dismissal we're really thinking about different issues than the carve-out and the disproportion between the amount sought, but it's a -- and they're not carved out. I think we also had some concerns addressed by the Office of -- or expressed by the Office of the United States Trustee. Is that right, Mr. Curtin?

MR. CURTIN: Well, I think we've resolved the issue as far as the carve-out. There's going to be some language I understand in each of the orders that provides that none of the fees are going to be paid from cash collateral absent consent of the bank, and that obviously applies anything under the carve-out.

So again, assuming that the case is dismissed, that resolves that issue.

1      MR. KUSHNER:  That is correct, and I did pass by a

2  template of an order for all of the professionals for Mr.

3  Davis's approval, and he's come back with his comments to that

4  template.  We've agreed on -- the U.S. Trustee has agreed on

5  the language, and that is a fact that we will not make any

6  payments during the pendency of this case with the bank's cash

7  collateral.  In fact, we've actually tried to make

8  arrangements with the debtor and the other professionals and

9  the bank as to going forward what the debtor can afford to all

10 of its professionals and to insure that the bank's deal is met

11 with the debtor, but as far as the objection that was filed by

12 Metropolitan National Bank, that was in fact resolved, and

13 counsel is here.

14      THE COURT:  It would be helpful to have that

15 confirmed on that record.

16      MR. TROTTER:  Yes, your Honor.  Richard Trotter from

17 Metropolitan National Bank.  As counsel just alluded to we

18 didn't file a response to the final fee applications.

19 Metropolitan National Bank takes no position on whether or not

20 the applications should be granted or in what amount, but as

21 the U.S. Trustee mentioned, we'd just like to insure that none

22 of those new amounts requested in the final applications are

23 paid out of cash collateral because the amount provided for,

24 the aggregate amount provided for in the interim cash

1 collateral orders to date for legal and professional services

2 has already been exhausted, and the new amounts requested when

3 combined with those amounts already granted would be far in

4 excess of what the bank has consented to up to this point.

5 So with that understanding, Metropolitan National

6 Bank has no -- takes no position on whether or not the

7 applications should be granted.

8 THE COURT: All right.

9 MR. CURTIN: I just want to clarify one thing, your

10 Honor. The amount approved has exceeded the cash collateral,

11 or the amount paid has not so there hasn't been any --

12 THE COURT: That's a useful clarification on the

13 record. It's reflected in the submissions, but it's good to

14 have those words heard in the courtroom as well.

15 Would anyone else like to speak in favor of the

16 application?

17 All right. I'd like to hear from the City of New

18 York. I have your response and your opposition, your

19 objection seeking a pro rata share of any payment to the

20 professionals based on the City's post-petition administrative

21 expense claim. Come on up to the podium. Mr. Kleinman,

22 please proceed.

23 MR. KLEINMAN: Good morning, your Honor. Alan

24 Kleinman for the City of New York. So we have I think stated

fully our position with respect to this in the papers.  The
City has an administrative claim here which if these things
are in a bankruptcy the administrative claims should all be
treated pro rata.  If this matter is being dismissed and no
longer subject to the jurisdiction of this Court, and if any
payments will be made after this debtor is no longer subject
to the jurisdiction of this Court, I guess I don't understand
exactly what it would mean for this Court to give approval to
items which will not be paid until after this Court no longer
has jurisdiction.

So both on the equity ground with respect to the
City's claim at this point with the matter in bankruptcy being
equal on a pro rata basis with the other thing -- with the
other claims of the professionals, or this case is being
dismissed, then I don't understand the purpose of going
through and issuing orders with respect to these amounts.

THE COURT:  I think there was some response filed by
the debtor on especially that second issue, the sort of "Why
are we doing this?" question I'll state it colloquially.  I
would invite Mr. Kushner to reply, and of course I'm sure
you've had a chance to review as well document number 568, but
Mr. Kushner, it's a good question that's been raised here on
what may well be the last day or the last few days of this
case if we go down the path that the parties have indicated

1  and the Court has indicated seems to be the appropriate path.

2   Could you respond to Mr. Kleinman's concerns?

3          MR. KUSHNER:  Sure.  As to why final fee

4  applications are before the Court, the debtor and its

5  professionals believe that there are two motivating factors.

6  Number one, the retention orders that your Honor signed

7  required us in order to be allowed the fees that we were

8  awarded on an interim basis and then certainly for final

9  approval, require that such an application be made.  It is

10  conceivable, and this is a hypothetical, your Honor, and

11  certainly not addressed specifically in the Bankruptcy Code,

12  that if the case is dismissed and the debtor and any one of

13  its bankruptcy professionals are faced in a situation where we

14  have to commence a litigation to collect our fees, it would

15  conceivably be a defense available to the debtor that we

16  weren't awarded anything by the Bankruptcy Court by virtue --

17  and we did not comply with your Honor's order, so that

18  theoretically that defense could be available.  That's number

19  one.

20          Number two, the Bankruptcy Code itself under 330 and

21  331, which I suspect is the major reason why your Honor, bless

22  you, puts in the standard retention order that we have to

23  comply with these sections.  I believe that as to the multiple

24  layers of administrative claimants that these provisions of

1   the Bankruptcy Code and the retention orders carve out a
2   special circumstance for the debtor's professionals that
3   require us to submit for your Honor's approval and
4   consideration, the Office of the United States Trustee's
5   consideration, and all other creditors the need to have that
6   matter fixed, that claim fixed, and that's the reason why we
7   did it, your Honor.

8           THE COURT:  All right.  Would anyone else like to be
9   heard on this matter?  Mr. Kleinman, I'll let you raise any
10  further questions you'd like to raise because I think the
11  process points you raise are important ones.  It seems to me
12  that were the case not on a track toward dismissal it would be
13  in a very different place, but I think Mr. Kushner makes some
14  good points about the requirements both of the prior orders
15  entered in the case and of the Bankruptcy Code, and I think
16  Mr. Curtin noted that it's a question of approving the
17  application with respect to approval of fees as opposed to
18  directing that they paid, and certainly I take it, and Mr.
19  Kushner, you can confirm this, that payment while the case
20  remains in this Court is not contemplated by the debtor.  Is
21  that right?

22          MR. KUSHNER:  All this is is an -- the answer is
23  yes, and the endeavor is to fix our claim.  That's what --

24          THE COURT:  Put a number on it.  Right.  Does that

1  help?

2       MR. KLEINMAN:  Well, I don't know if "fix the claim"

3  helps.  To the extent that there --

4       THE COURT:  Fix in the sense of putting a number on.

5       MR. KLEINMAN:  Well, then I would think that if it's

6  a question of this Court assigning a number, then the City as

7  an administrative claimant, has that same right.  If it is

8  something --

9       THE COURT:  I have before me your motion for

10  approval of administrative claim.  I might be considering

11  that.  What I have is an argument saying in effect that "We

12  deserve payment just as much as they do, even more perhaps,

13  and so don't pay them without giving us a pro rata share of

14  that money."

15       MR. KLEINMAN:  Well, I --

16       THE COURT:  But there's no payments being made by

17  the debtor that's been confirmed on the record not only by the

18  debtor, but also by the Office of the United States Trustee.

19       MR. KLEINMAN:  Well, then maybe, your Honor, there's

20  some way to parse this a little more finely.  The reality of

21  this is that if in fact nothing's going to be paid, then the

22  question of who gets paid from the debtor or the priority of

23  claims of creditors against the debtor will then become a

24  state law issue, and so that should then get litigated in

1   state court, this Court no longer having jurisdiction over

2   that issue, and whatever the state law result will be, will be

3   the result here, and so I'm having a hard time understanding

4   what it would mean for this Court to fix a particular number.

5           If this Court I guess wants to say that it

6   understood that the fees were okay with respect to the

7   Bankruptcy Code in an amount to be determined under state law,

8   that would -- maybe that would be an acceptable resolution,

9   but it seems to me to have this Court --

10          THE COURT:  That would be an unusual form of order

11  in response to a fee application.

12          MR. KLEINMAN:  Well, I think this is an unusual

13  situation.

14          THE COURT:  But I appreciate the situation that

15  concerns you.  Anything further?

16          MR. KLEINMAN:  Okay.  And let me just say one other

17  thing.

18          THE COURT:  Please.

19          MR. KLEINMAN:  So Mr. Kushner raises this concern

20  about the status of their claims.  In any case, the various

21  professionals would have, irrespective of the bankruptcy

22  retaining order, a quantum meruit claim and they would be

23  entitled to pursue that claim in state court under state law,

24  and so whatever happens here is not the resolution of payment

of these attorneys fees. All I'm suggesting is there really is no mechanism in the Bankruptcy Code for this kind of situation where the case is being dismissed as opposed to being converted or a plan being confirmed.

There really is no provisions which govern this, and so it seems to me that either you have parity with respect to administrative claimants or that you recognize that the matter is now going to be subject to state law, and it would be improper I suggest for this Court to fix a number there because that will become a matter of state law, and not a matter of a bankruptcy law in a case that has been dismissed, and over which the Bankruptcy Court no longer has jurisdiction.

THE COURT: All right. Thank you.

Mr. Curtin, I would like to hear your position on the motion. I'm always interested in the position of the Office of the United States Trustee with respect to fees, and also specifically with respect to the form of order that might be entered if the relief is granted.

MR. CURTIN: Thank you, your Honor. William Curtin for the United States Trustee.

Your Honor, we don't have an objection to the fee applications in light of the pending dismissal. Let me just focus my comments a little bit. First of all, there is no

application under 503 for an administrative claim of the City.
 If there were I don't think it would be a proper application
at this point anyway.

THE COURT:  As far as filing a final fee application in a case
that's about to be dismissed, my understanding is that is
actually the proper way to handle the dismissal of a case.  I
will --

THE COURT:  That's consistent with my understanding
as well.

MR. CURTIN:  I will admit that it doesn't happen in
many cases.  It --

THE COURT:  That is also consistent with my
experience.

MR. CURTIN:  It does happen.  There are many cases
that get dismissed without a final application.  In my opinion
that is, while it happens, not the proper way and not under
the Code the way things are supposed to happen.  The way that
things are supposed to happen is that the fee applications are
supposed to be filed.  Parties have an opportunity to weigh in
if they wish, and your Honor enters final fee orders.

Again, going back to what I said before, and your
Honor said it several times, that these fees are not going to
be paid during the bankruptcy case.  The -- as far as the
effect or the force that your Honor's order will have in any

hypothetical state court proceeding that occurs in the future,
I don't know.  I don't know what it would be, but it is what
it is, and to state the obvious, you're a bankruptcy judge.
This is the Bankruptcy Code.  The Bankruptcy Code requires fee
applications.  They've been filed, and our position, we don't
have an objection.

THE COURT:  All right.  Would anyone else like to be
heard?  I think it's been helpful to address these issues
fully in the context of the Novack, Burnbaum application.
They are substantially similar in the other matters that will
come up.  Mr. Curtin -- Mr. Kushner, you rose when I posed the
question, but do you have anything to add to the record?
Otherwise I'm prepared to rule.

MR. KUSHNER:  I think Mr. Curtin and I think the
Court gets it.  There is no 503(b) application.  So to the
extent that the City is seeking a claim, our opposition
pointed out that having it file it within three or four days
of the case being dismissed doesn't give us a chance to deal
with it at this point.  There's no request for those payments,
but the 503(b) status that they're seeking, by the way, is --
those ECB penalties are mired in state court appellate
matters.  So I want the record to be clear that we're not
agreeing to the City's claim, and that yes, we will, you know,
deal with those assertions at the appropriate state court

1  level.

2        Getting back to what is before the Court, which is

3  the fee application, I think that your Honor has our reply.  I

4  believe that your colleague, Judge Craig -- Chief Judge Craig

5  dealt with something similar to this, if not exactly on all

6  fours in the Acme case case -- Acme Baking case rather, which

7  we've cited in our papers, and i think it does reflect what

8  Mr. Curtin says in that that is the protocol of what you're

9  supposed to do under the Bankruptcy Code with respect to

10  debtor's professionals' fees before the dismissal of the case.

11   So procedurally I think we've done the right thing.

12        THE COURT:  All right.  Thank you.  I appreciate

13  your submissions and your arguments.  I think the colloquy on

14  these issues has been helpful for the record, helpful to the

15  Court, hopefully also of assistance to the parties.

16        For all the reasons reflected in the record, I'm

17  going to approve the motion for costs and attorneys fees of

18  Novack, Burnbaum, Crystal, LLP as reflected in the record, and

19  ask that Mr. Kushner submit a proposed order on consent as to

20  form of the Office of the United States Trustee.  Let's --

21        MR. KUSHNER:  And Metropolitan National Bank too,

22  since they did in fact require special language.

23        THE COURT:  Certain language.  All right.  Thank

24  you.

1        Let's turn to the next fee motion, which is number

2   18 on the calendar, the final motion with respect to --

3        MR. KUSHNER:  I think 10 is -- oh, okay

4        THE COURT:  I think 10 and 18 go together.

5        MR. KUSHNER:  Yes, your Honor.  I'm sorry.

6        THE COURT:  As to 10, this is Goetz Fitzpatrick and

7   18 Goetz Fitzpatrick.  Mr. Kushner, your firm.

8        MR. KUSHNER:  Yes, your Honor.  This is --

9        THE COURT:  Well, let's go instead to 10 and 20.

10  That would be the -- as to 10 I will mark it withdrawn and

11  superseded by 20.  Let's proceed to 20.

12       MR. KUSHNER:  Okay.  Goetz Fitzpatrick, as you know,

13  was retained as debtor's Chapter 11 counsel.  The application

14  as filed, your Honor, includes a fifth interim request

15  covering the last period.  I have to get my application.  I'm

16  sorry.

17       THE COURT:  All right.

18       MR. KUSHNER:  Between -- that covers the period

19  August 1st, 2013 through today, your Honor, November 19th,

20  2013.  That sought $69,390 for fees, $1,444.80 for

21  reimbursement of expenses.  As your Honor knows, as I put in

22  the application, some of that time was estimated.  I have

23  today shown to Mr. Davis and Mr. Curtin a rough unbilled time

24  for the period of October 27th, which was the day after we

filed the fee application or October 28, through today.  So

it's a little bit of a moving target.  That amount is subject

to increase, your Honor, but to an amount that has to be fixed

after the U.S. Trustee reviews it, if that's okay.  I know

it's not a perfect process when you do fee applications.

THE COURT:  Difficult in the end game for sure.

MR. KUSHNER:  That's right.  That's right.  The

application also seeks a fourth interim request for

$194,923.61, the first holdback from our first fee application

in the amount of $23,038.80, the second holdback from the

second interim application of $40,628.50, and a third holdback

of $49,485 even, for a total request for new payment of

$378,910.71.

Again, as I pointed out in the actual application

itself, I believe we gave the Court a detailed explanation as

to the large amount of work that we did in this case, some

successful, some not so successful, but service of this

application was made on all -- of notice of the application

was made on all creditors and parties in interest, and the

application itself was sent to the interested parties.

THE COURT:  For the sake of clarity, because the

same objections in substance I believe have been asserted, do

we have an objection of the City, and because some questions

have been raised by the Office of the United States Trustee,

1  could you respond to those concerns and --

2          MR. KUSHNER:  There's been substantive objection by

3  the City to any fee application as to amount of fees sought or

4  reimbursement of expenses sought.  The City's objection was as

5  stated, as Mr. Kleinman had stated is if we get it, the City

6  gets it, and --

7          THE COURT:  My understanding of the issues is that

8  they are no different in this application than they are in

9  others, both the arguments and the responses, and therefore,

10  unsurprisingly the Court's conclusion, but I'd like to just

11  confirm that on the record with respect to the position of the

12  Office of the United States Trustee.

13          MR. CURTIN:  That's correct, your Honor.  The only

14  difference here is that there is additional time that I

15  haven't seen yet, so I'd just ask for a few days to take a

16  look at that, and before I agree to the final number, which I

17  don't think will be any more than $25,000 more than -- I think

18  that's what -- I looked at it very quickly, but I think that's

19  what it says.

20          MR. KUSHNER:  And I also -- that's correct, and I

21  also have to give that Mr. Noe to approve as well, so that

22  being said, that is a correct statement.

23          THE COURT:  Would anyone else like to be heard?  Mr.

24  Kleinman.

1    MR. KLEINMAN:  The City repeats objection which I
2 stated before, and again, the City is not making any specific
3 objection with respect to any item of any of the professional
4 applications.

5    THE COURT:  I appreciate the points, and I think we
6 had a full consideration of them on the prior matter.

7    For all the reasons reflected in the record, Mr.
8 Kushner --

9    MR. KUSHNER:  And just for the sake of completeness,
10 Metropolitan National Bank's objection was the same as it was
11 to Novack, Burnbaum.  It was a generic objection objecting to
12 the payment of fees during the case.  The orders that will be
13 submitted for -- the order submitted for Goetz Fitzpatrick
14 will be the exact same template to the satisfaction of the
15 U.S. Trustee and Metropolitan National Bank.  So again, that's
16 been resolved.

17    THE COURT:  For all the reasons reflected in the
18 record, the application for costs and fees of Goetz
19 Fitzpatrick as set forth in the record will be granted as
20 reflected in the record, and you'll submit a proposed order on
21 consent as to form of the Office of the United States Trustee
22 and Metropolitan National Bank.

23    MR. KUSHNER:  Thank you, Judge.

24    THE COURT:  All right.  Let's move to number 18.

1 Excuse me.  Number 10 we marked withdrawn as superseded by

2 number 20, and that will be so ordered.

3          MR. KUSHNER:  I think actually 11 is a non-fee

4 application matter that we haven't yet addressed if I'm

5 correct.

6          THE COURT:  It seems so, yes.

7          MR. KUSHNER:  That should be marked off.  This is

8 again their request -- I haven't heard from Mr. Levy.  He is a

9 colleague and he's not here.  I suspect that whatever issues

10 are raised there will be raised outside in state court.

11          THE COURT:  That will be marked off and so ordered.

12          MR. KUSHNER:  The next one is the City's motion to

13 compel witnesses for deposition.  We've already resolved that.

14  If the Court may recall, we had a deposition scheduled that

15 was then abated as a result of the consensual dismissal.

16          THE COURT:  May I mark this withdrawn without

17 prejudice?

18          MR. KLEINMAN:  Yes, your Honor.

19          THE COURT:  Thank you.  Withdrawn.  So ordered.

20          MR. KUSHNER:  13's already been dealt with.  That's

21 omnibus motion and the IRS agreement.

22          14 is Mr. Garber's motion.

23          THE COURT:  Yes.  176 Canal Corp.

24          MR. GARBER:  That's correct, Judge.  Mr. Kushner, I

1  --

2           MR. KUSHNER:  We'd be happy to treat it the same way

3  that we did for Mr. Altman's client, to have your Honor grant

4  it if so appropriate, if your Honor feels it's appropriate,

5  and then settle an order or submit an order on my consent.

6           THE COURT:  There may be some shortcomings in terms

7  of service, but based on the entire record I would be prepared

8  to conclude that the relevant parties in interest are present

9  and had sufficient notice.

10          Mr. Garber, let me hear from you.  Would you like to

11 proceed with your motion?

12          MR. GARBER:  I'm sorry, your Honor?

13          THE COURT:  Would you like to proceed with your

14 motion?

15          MR. GARBER:  Of course, your Honor.

16          THE COURT:  Please proceed.

17          MR. GARBER:  Well, your Honor, we're seeking an

18 order lifting the stay.  We'd like to -- we intend immediately

19 if your Honor grants the motion to go to the civil court and

20 to start a holdover summary proceeding to recover possession

21 of the west wall from the OTR.  They entered into a lease with

22 us some years ago, and they've acted rather inappropriately,

23 which has cost our client some money, and in fact we're still

24 facing some outstanding violations at the Environmental

Control Board, which I'll have to try in a couple of months,

and I'm sure that we'll never be able to recover those funds

from OTR, although we have an indemnification provision in our

lease.

So clearly we're looking to proceed immediately,

your Honor, and we will do so so long as your Honor signs the

order that we will be submitting today.  My only question,

your Honor, to Mr. Kushner is why does he need a copy of our

order at the same time that your Honor does?  What does he

intend to do with it, if anything?

THE COURT:  Well, that's a question for you to put

to Mr. Kushner in a conversation perhaps between yourselves.

I will note just because I think you have used the word,

"immediately" several times that the Bankruptcy Code provides

that any order granting relief from the automatic stay is

stayed itself for a period of 14 days, and in the context of

real property it is not my practice to waive that 14-day stay.

So immediately would be under the condition of those 14 days.

MR. GARBER:  Then in that case, your Honor, as soon

as possible.  If that's two weeks, then so be it.

THE COURT:  Understood.  So let's turn just for a

moment to the substance of the motion.  You seek relief from

the automatic stay in order to pursue your rights in the state

court forum.  This invokes the standard of the Sonnax

1 <u>Industries</u> case in the Second Circuit, and I'm satisfied, and

2 I'll say this in a summary way because of the length of the

3 morning calendar, that many of those factors weigh in favor of

4 the relief you seek, and yet also that the relief is

5 unopposed.

6          Would anyone else like to be heard with respect to

7 this motion?  No response.  Mr. Kleinman, of course.

8          MR. KLEINMAN:  The City has the same position with

9 respect to the other lift stay motion.  So we support their

10 motion, your Honor.

11          THE COURT:  All right.  No other parties wishing to

12 be heard, for all the reasons reflected in the record, the

13 motion will be granted.  Please submit an appropriate proposed

14 order.

15          MR. GARBER:  Will do.  Thank you very much, your

16 Honor.

17          THE COURT:  All right.  Thank you.  And you as well

18 are welcome to stay, but free to go.

19          MR. GARBER:  Thank you, Judge.

20          THE COURT:  Let's move to motion to quash, number 15

21 on the calendar.

22          MR. WATNICK:  Good morning, your Honor.  Donald

23 Watnick.  I represent non-party, Edward Arrigoni, who has made

24 this motion to quash a subpoena that was issued by the debtor.

1  Mr. Arrigoni is, of course, a non-party to this case.  He has

2  no involvement in this proceeding, so he has -- he really has

3  no horse in this race.

4         He's a 78-year old man.  He resides in the state of

5  Connecticut, and he knew nothing about this proceeding until

6  debtor's counsel started contacting him and ultimately issued

7  a subpoena to ask him about his business from 33 years ago.

8  The business was known as New York Bus Service.  Mr. Arrigoni

9  sold it approximately eight years ago.  From what we

10  understand, debtor's counsel wanted to ask Mr. Arrigoni about

11  a sign that New York Bus had 33 years ago on a building in the

12  Bronx known as 330 Bruckner Avenue, and this motion has been

13  necessitated because debtor's counsel went forward with a

14  subpoena.

15         They refused to withdraw the subpoena, and what's

16  interesting and what makes this subpoena completely in our

17  view without any basis, frivolous, is that the City -- the

18  debtor initially issued its subpoena on September 27th.  We

19  understand from the proceedings before this Court today that

20  on September 20th they -- debtor's counsel represented they

21  were going to dismiss this bankruptcy.

22         After we told them that it was -- the subpoena was

23  improperly served, they reissued the subpoena on October 17th.

24   Again, this was long after they had said they were going to

dismiss the bankruptcy.  The motion should be granted to quash

the subpoena.  We've set forth -- the City has set forth in

its papers why it should be granted, for the simple that Mr.

Arrigoni's subpoena never should have been served because this

is a case that's about to be dismissed.  Why they are serving

a subpoena for discovery of a non-party when they're about to

dismiss this case makes absolutely no sense.  It makes even

less sense when you consider the fact that they wanted to ask

him, or so they say, about the legality of a sign when they've

acknowledged in this case, they've acknowledged in various

proceedings that the legality of the signs are not an issue in

this case.  They're an issue in state court.  They're an issue

for the City tribunals, but they're not an issue in this case.

      In their opposition papers they try to suggest that

they need the deposition because it's relevant to what they

call, quote, "contested proceedings," but what's very telling

is that they don't identify those contested proceedings.

What's even more telling is in their papers they say they need

the deposition for a BSA proceeding.  Well, a BSA proceeding

is not a proceeding before this Court, so essentially what

they've acknowledged is that they're seeking his deposition

for the purposes of use in another case, and we submit that

that is completely improper under the rules of this Court,

under the rules of most courts in fact.  You don't seek

1 discovery in one case for the sole purpose of using it in

2 another case.

3 We submit, your Honor, that there was absolutely no

4 basis for the subpoena. Mr. Kushner actually has acknowledged

5 to me that the subpoena never should have gone forward, and

6 for that reason we would ask that the subpoena be quashed. We

7 also ask that our client, Mr. Arrigoni, be awarded his

8 attorneys fees for having to make this motion in view of the

9 fact that the subpoena never should have been issued, and once

10 it was issued and once we objected to it, OTR should not have

11 forced us to have to incur -- our client to have to incur the

12 time and expense of having to make this motion.

13 THE COURT: Mr. Kushner, let me hear from you. I

14 don't quite understand how to reconcile the debtor's position

15 as reflected in the November 12th filing with the debtor's

16 position in every other matter before the Court in this case.

17 MR. KUSHNER: You wouldn't because -- on the set of

18 facts that Mr. Watnick gave us, so hopefully --

19 THE COURT: Well, I have some general familiarity

20 with the case, Mr. Kushner.

21 MR. KUSHNER: Absolutely. The request for Mr.

22 Arrigoni's testimony stemmed long before September 27th.

23 THE COURT: Let's stay with your position as you

24 stated on November 12th.

1        MR. KUSHNER:  Okay, but I want --

2        THE COURT:  One thing I'm sure is that you would not

3 somehow be trying to get a last scoop of discovery using

4 federal process as you voluntarily seek to dismiss the case.

5        MR. KUSHNER:  Agreed, but again the process of

6 trying to get Mr. Arrigoni to testify and then to issue the

7 subpoena occurred well before the dismissal concept, your

8 Honor.  In fact, Mr. Watnick -- that's why Mr. Simon is here.

9  Mr. Simon was told by Mr. Watnick to issue the subpoena on

10 the 27th as opposed to our request to voluntarily go forward

11 with friendly discovery.  Again, Mr. Arrigoni's testimony

12 relates to a sign at 330 Bruckner where the debtor's

13 application or permit was pulled after numerous years of being

14 valid for the singular purpose of getting him to testify to

15 one thing, that is whether New York Bus, his company, was ever

16 a tenant at that property, the significance being that if they

17 weren't then it was an advertising sign as opposed to an

18 accessory sign.

19        I agree with Mr. Watnick.  This thing went too far.

20  I did try to call him last night, okay, and the debtor is

21 prepared to withdraw that subpoena, okay, at this point

22 without prejudice to going into state court, but from the time

23 that we sought the discovery to the time that we are here

24 today many things evolved, including the idea of having this

1 case dismissed.

2 THE COURT: The thing I'm trying to understand is
3 why you filed these papers on November 12th.

4 MR. KUSHNER: Because I hadn't looked at those
5 papers. Mr. Simon did. I don't think that they should have
6 been filed, and I told Mr. Watnick that last night. That's
7 why, and I tried to rectify it. I don't think that the debtor
8 should have gone forward with it. As the head of the
9 department of my firm, I don't think that -- I think it should
10 have been resolved before that, your Honor, but there was no
11 malice intended as it seems that Mr. Watnick's presentation
12 was, and certainly the debtor would be opposed to sanctions or
13 costs. That's not what's before the Court.

14 THE COURT: You just indicated it was an
15 unauthorized act of your firm --

16 MR. KUSHNER: It was a --

17 THE COURT: -- on the record, which is a pretty
18 strong statement for a lawyer to make.

19 MR. KUSHNER: Yeah, but having second thoughts, your
20 Honor, I don't practice with a carpetbag. I tell the Court
21 straight out what probably should be done and shouldn't be
22 done, and I'm not trying to push the envelope here. We think
23 that Mr. Watnick's position at this juncture of the case,
24 having had the dismissal motion filed, probably should have

1 ended before that pleading was filed, your Honor.

2     THE COURT:  The subpoena has been withdrawn.

3     MR. WATNICK:  Your Honor, could I respond?

4     THE COURT:  Of course you may.

5     MR. WATNICK:  Mr. Kushner said a couple of things

6 that merit response.  First he said that I requested the

7 subpoena.  That's simply not correct.  Second, I think the

8 record will bear -- will show that this subpoena was issued on

9 October 17th.  That was after the -- Mr. Kushner stood before

10 this Court and said he wanted to dismiss this case.

11     THE COURT:  Which was a September event.

12     MR. WATNICK:  Correct.  Third, what's very relevant

13 here is that Mr. Kushner is the person who signed the papers

14 which he now just said were unauthorized by his firm.  His

15 signature is contained on the opposition to our motion, and

16 fourth and most important on the issue of fees, this is a

17 motion that never should have had to have been made.  The

18 subpoena never should have been served.  Once we objected to

19 it they should have withdrawn it.

20     There's no relevance to this proceeding at all.

21 It's clear that not only was it an unauthorized act of his

22 firm, but he was seeking unauthorized discovery because the

23 sole purpose of it was to get discovery in another -- was to

24 use it in another proceeding.  His papers, the papers that Mr.

Kushner signed, which he now says were unauthorized by his

firm, acknowledge that. They say they want the discovery to

use in the BSA, which is not this Court, and again it's

fundamental. You can't ask for discovery in one case for the

sole purpose of using it in another case.

For that reason we ask that the subpoena be quashed,

but we also ask that Mr. Arrigoni be awarded the attorneys

fees that he has incurred unnecessarily in order to respond to

this subpoena that never should have been issued by Mr.

Kushner in order to respond to the objection to our motion

signed by Mr. Kushner that never should have been filed in

this Court, and to now have to appear in order to argue this

motion.

Now, last night Mr. Kushner suggested to me that he

would withdraw the subpoena, however, he wanted something in

return. He wanted my client to give him an affidavit.

MR. KUSHNER: That's not --

THE COURT: Negotiations between the parties are

best left there I think. I have your statements. I have your

arguments. I have your motion. I have now re-read quickly

the notice of motion and the brief that you filed.

Interesting and difficult issues here. In some context

perhaps not so difficult, though still interesting in other

contexts. Here's the point. If this case were in a different

posture, if it were six months ago, I think the considerations as to whether this discovery were somehow within the relatively broad ambit of permissible discovery would be different.

That's not where we are. We're in a very different situation. I don't see your request for costs or sanctions in your motion. I appreciate that broadly speaking it is the view of many courts, including the Second Circuit, that this Court might have the authority sua sponte to do something like that. I decline to exercise that sua sponte authority. Your motion seeks the quashing of a subpoena which in a fairly professional -- in a highly professional assessment of the record counsel has indicated should not have been -- as of the last position taken last week, is withdrawn on the record, rendering I believe the relief sought by the motion moot.

I would have on the record granted the motion to quash and left for another day or perhaps for conversations between the parties, which you shall have an opportunity to undertake fairly shortly the question of whether in view of the mistake that was made, and they do happen, and there's not a person in this courtroom or on this bench who hasn't made one at some point in the flurry of effort to move forward that sometimes happen that you need clarification in response.

I will note also that I take very seriously the

1 signature of an attorney on a document.  That means a lot to

2 me.  I check it.  I want to know who is on the hook for the

3 statements in papers, and so the fact that, Mr. Kushner, you

4 did sign those papers, that's something that's a piece of the

5 picture.

6          As for today the subpoena has been withdrawn, and I

7 think that means that the motion can be marked off because the

8 relief has -- you've accomplished your purpose by the

9 proactive statement of counsel to withdraw the subpoena.

10 Whether there's a question of cost shifting that needs to be

11 addressed by the Court and some appropriate resolution that

12 needs to be made between the parties, that I leave to your own

13 consultations and whatever you file, but I'm not going to act

14 sua sponte today.

15          I'd like to move through the rest of the matters on

16 the calendar if we can quickly, and if not, to take a break

17 fairly soon in part to recover my voice, to review some of

18 these matters, and to permit whatever productive conversations

19 can happen among the parties.

20          I think this takes us to the motion to dismiss.  Is

21 that right?

22          MR. KUSHNER:  No.  There's two more fee

23 applications, your Honor.

24          THE COURT:  Number 16 is a motion to --

1          MR. KUSHNER:  I'm sorry.  There's three more fee

2     applications.

3          THE COURT:  We'll go -- we'll pass over 16 for the

4     moment then and move to number 18.

5          MR. WATNICK:  Your Honor, may I be excused?

6          THE COURT:  You might actually stick around for a

7     couple minutes if you don't mind.

8          MR. WATNICK:  Sure.  Í'm glad to stick around, your

9     Honor.

10         THE COURT:  I'm sorry.  I should say that more

11    professionally.  You're free to go, but I also encourage you

12    to stay.

13         MR. WATNICK:  I'm inclined to stay.  Thank you, your

14    Honor.

15         THE COURT:  Thank you.

16         MR. KUSHNER:  All right.  18 is Bryan Cave's --

17         THE COURT:  I'm sorry.  I took the wrong folder.  My

18    mistake.  Please proceed.  This is a final fee application of

19    the debtor's ordinary course professionals.

20         MR. KUSHNER:  Yes.  I'm sorry.

21         THE COURT:  Please proceed.

22         MR. KUSHNER:  Yes, your Honor.  The debtor's

23    ordinary course professionals are the team of lawyers that

24    were hired to perform routine day to day services for the

debtor in connection with the business.  They included the

general counseling of Ariel Holzer, who was responsible for

preparing leases and various contracts, Bartfield & Knopfler,

which did a lot of collection work for the debtor, Goldman,

Harris which did specialized appellate work before the BSA,

and Cohen, Hochman & Allen, which did a majority of their work

before -- violation hearings before the ECB.

As to these four professionals, I'll address Holzer.

Holzer is seeking approval of his October request, which is

for $5,894.39, prior holdbacks from prior interim payments

that were made pursuant to the ordinary course professional

order, which I assume the Court is familiar with.

THE COURT:  Yes.

MR. KUSHNER:  Of 25,646.50, for a total payment --

new payment of $31,540.79, and for final approval of the

monthly prior awards which took place from the time that they

were retained through September of $128,232.25.  Again, the

specific services that were rendered by Holzer are addressed

in the OCP final application.  I don't want to belabor the

record, especially with a full courtroom.

Do you want me to go through each professional or do

you want to do it seriatim?

THE COURT:  I think it's set out in an appropriate

way in the papers, and again, many or most or perhaps even all

1  of these professionals have provided services that have been

2  reflected on the record of these proceedings from time to

3  time.  We have similar concerns that I think will be addressed

4  in a similar way, addressed -- raised by Metropolitan National

5  Bank and the City of New York.

6          Is there anything that you would like to add to the

7  positions that have been taken previously?  Subject to the

8  same limitations and constraints, I'm inclined to proceed as

9  we've proceeded with the other orders, but Mr. Kleinman,

10 anything to add to the record?

11         MR. KLEINMAN:  I would just request that whatever

12 orders get submitted as a result of today's proceedings be

13 circulated to the City as well so that we can look

14 specifically at the language to think about what effect, if

15 any, it might have with respect to subsequent state court

16 proceedings.

17         THE COURT:  Mr. Kushner, can you work with that?

18         MR. KUSHNER:  No problem.

19         THE COURT:  Excellent.  All right.  Anything to add

20 to the record?  Seems like no.

21         For all the reasons reflected in the record, I'm

22 satisfied that you've established a basis for the relief that

23 you seek, so the request to approve the -- very sorry about my

24 voice, the final fee application of the ordinary course

professionals will be granted as reflected in the record, and
you will submit a proposed order on consent as to form at the
Office of the United States Trustee, Metropolitan National
Bank, and the City of New York, and I will add that to the
other --

MR. KUSHNER:  And that's as to each professional,
your Honor, correct?

THE COURT:  Yes.

MR. KUSHNER:  Thank you, your Honor.

THE COURT:  All right.

MR. KUSHNER:  The next matter going quickly, I
believe is --

THE COURT:  Bryan Cave.

MR. KUSHNER:  -- 19.  It is Bryan Cave.  Bryan Cave
was retained as the debtor's special counsel.  The work that
was done was primarily done through Phyllis Arnold, who I'd
like to state for the record is a consummate professional.
She worked extremely hard and probably had the most difficult
job dealing with all the attendant needs to address the
debtor's signs and the legality of those signs.

Their fee application -- this is their -- this is a
final one, but they are also seeking their second interim fee
request of $250,216.25 for fees, expenses for the second
interim period of $38,778.81.  Bryan Cave is seeking a

holdback from their first fee application of $62,568.90, for a
total new request of $351,563.96, and if the Court grants that
then that would approve a final total award for the entire
case of $446 -- I'm sorry, $446,607.42.

THE COURT:  All right.

MR. KUSHNER:  Again, the work that was done Bryan
Cave is set out specifically in the application.

THE COURT:  I want to indicate my agreement with the
work done by the firm and Ms. Arnold and by the other
professionals in the case who were part of the process that
led to that step in moving this case forward.  It was I think
a turning point in the case, and in my view there's plenty of
credit to go around to all of you for taking that kind of an
approach, going along with that kind of an approach,
contributing to implementing it in this case, and then we were
also fortunate to have, as you say, such a consummate
professional to fill that role.

Noting the positions that have been taken and with
the limitations as to the relief that would be granted as also
previously indicated, would anyone else like to be heard
further on this matter?

No response.  For all the reasons reflected in the
record the motion is granted as reflected in the record.
Please submit a proposed order on consent as to form of the

United States Trustee, the City of New York, and Metropolitan

National Bank.

MR. KUSHNER: Yes, your Honor. Thank you. And the

last fee application is number 21 on the calendar.

THE COURT: Yes.

MR. KUSHNER: That is the application of Roth and

Company. They are the debtor's accountants. They seek in

their final application an award for the second interim

period, which is for $21,033.75, no expenses, and a first

holdback award of $4,825.95, for a total new request of

$25,859.70. With the prior interim award of $19,303.80 from

the first application, they're seeking approval of $45,163.50.

Roth and Company was extremely helpful to my firm.

They worked with us very closely in generating documents that

were needed in the context of the amended plan and disclosure

statement. They did some nice work with the taxing

authorities, the state, and the Court's familiar with all of

the tax claims that were made in this case.

All of their work is set out in the application

itself, and debtor would request that these fees be granted.

THE COURT: All right. With the same limitations as

to the anticipated relief and in the same context, would

anyone else like to be heard on this?

No response. For all the reasons reflected in the

record, I'm satisfied that the final motion for costs and fees

of Roth and Company as CPA's and accountants for the debtor

should be approved as reflected in the record.  Please submit

a proposed order on consent as to form with the Office of the

United States Trustee, New York City, and Metropolitan Bank,

as reflected on the record.

All right.  Mr. Kushner --

MR. KUSHNER:  The last --

THE COURT:  -- I think it's time to move --

MR. KUSHNER:  The motion to dismiss, your Honor.

THE COURT:  Yes.

MR. KUSHNER:  Which I guess is number 16 on the

calendar.

THE COURT:  Yes, it is.

MR. KUSHNER:  As the Court's already heard today,

this is a byproduct of a negotiation between the debtor's

largest creditors and the Office of the United States Trustee.

It is a motion that was served on all creditors, parties in

interest, notice of that.  There were no objections to the

dismissal of the case.

The reasons very briefly articulated for the

dismissal as opposed to conversion is that while the debtor

believes that it has some sort of viable business, the process

of going forward in state court is intensive and time

1 consuming, and takes -- it's not a process that can occur

2 overnight.  As a result of that, that left various

3 uncertainties as to the debtor's ability to confirm a plan

4 because its ability to confirm a plan was dependent of course

5 on its revenue-generating sources, which of course are the

6 signs.

7        The Court has already ruled that various limitations

8 that exist under the Bankruptcy Code vis a vis, for example,

9 the automatic stay did not apply to the City, so this case has

10 really shifted from one being concentrated here to one in

11 state court.  Apparently all of the major players here agreed

12 with that, and for that reason there was a consensual

13 resolution of how to deal with the disposal of the case.

14        So for those reasons, I suggest -- I'd ask that the

15 Court grant the motion to dismiss, and do so here.  We were

16 told by the bank that because of the documents being signed by

17 the debtor and the debtor's principal dealing with the long-

18 term relationship with the bank, that the bank wanted to add

19 some additional language to the dismissal order, so we would

20 ask the Court to grant the application with an order to

21 follow.

22        THE COURT:  All right.  The matter before the Court

23 is this debtor's motion to dismiss its Chapter 11 case with

24 prejudice and a bar to refiling a case in this Chapter for

1  nine months.  Service was good.  The Court is certainly

2  familiar with both the substance of the issues that underlie

3  the motion and the process that led to this uncontested motion

4  to dismiss.  I'm satisfied that the grounds that the debtor

5  has advanced for the relief meet the applicable standard.

6          I note that the determination of such a motion is

7  committed to the sound discretion -- the wide and sound

8  discretion of the Bankruptcy Court under the applicable case

9  law.

10         Would anyone else like to be heard on this matter?

11         MR. TROTTER:  Your Honor, Richard Trotter on behalf

12  of Metropolitan National Bank.

13         THE COURT:  Yes.

14         MR. TROTTER:  I was believe this was alluded to

15  earlier by Mr. Kushner, but just to echo the statements we

16  made in our response to the debtor's motion, as Mr. Kushner

17  alluded to, the documents between the debtor and Metropolitan

18  National Bank are in the process being finalized.  Provided

19  that the final dismissal order incorporates by reference in

20  some fashion the debtor's obligations under those yet to be

21  finalized documents, then Metropolitan National Bank would

22  have no opposition to the granting of that order subject to

23  that one contingency.  We anticipate that the documents will

24  be finalized and executed some time in the next 24 to 48

1  hours.

2          THE COURT:  All right.

3          MR. KLEINMAN:  Your Honor, just for the record, I

4  just want to note that the context of the motion to dismiss

5  was also part of a larger picture where there was motions to

6  convert and various claims that --

7          THE COURT:  There is no doubt.

8          MR. KLEINMAN:  Okay.  Just to make that clear.

9          THE COURT:  But it's worth noting.

10          MR. KLEINMAN:  And specifically with the details of

11  this motion, the negotiated resolution was that the motion to

12  dismiss order should recite that there will be no filing by

13  the debtor in Bankruptcy Court again for a period of nine

14  months.

15          THE COURT:  Yes.

16          MR. KLEINMAN:  And that was part of --

17          THE COURT:  In Chapter 11.  That's the indication

18  that's before me is that limitation?

19          MR. CURTIN:  Well, your Honor, let me jump in here

20  because --

21          THE COURT:  Or is it under any Chapter?

22          MR. CURTIN:  No.  Mr. Kleinman is referring to

23  something, but he's not actually saying what he means.  What

24  he's referring to is, your Honor, as your Honor well knows

because it's your Honor's orders, and every order I've ever

seen you enter, and I think of every judge that's in this

Court, when there's an order dismissing a case with prejudice

there's language saying the case is dismissed with a bar to

refiling absent prior written consent -- prior consent of --

prior authorization from the Court --

THE COURT:  Obtained on notice.

MR. CURTIN:  -- obtained on notice, blah, blah,

blah.

THE COURT:  Right.

MR. CURTIN:  So what Mr. Kleinman is saying without

saying is that he has a problem -- I think has a problem with

that language that your Honor has in every order.  He wants

just "You can't file."

THE COURT:  I'm grateful for the clarification.  Mr.

Kleinman, it would be improvident for me to bind this Court in

the future should an application be made on changed

circumstances with notice and an opportunity to be heard.  I

suspect that even without that language in an order that would

still be the case because any order is subject to any further

order of a court.

Now, you can agree to what you wish, but at the end

of the day the judge, whether it's me or someone else, is the

one that determines what goes into the order that the judge

1 signs.

2         MR. KLEINMAN:  Then I would just --

3         THE COURT:  It takes nothing away from the

4 consequence of the proceedings that have been described, in my

5 view.

6         MR. KLEINMAN:  Okay.  Then I would request that that

7 order provide that any application to you prior to that nine-

8 month period be on notice to the City in addition to the other

9 parties.

10         THE COURT:  I think that's appropriate.

11         MR. CURTIN:  I think that's entirely appropriate.

12         THE COURT:  I think that's appropriate.

13         MR. KUSHNER:  We circulated an order last night, and

14 certainly Mr. --

15         MR. CURTIN:  But I don't think the order that Mr.

16 Kushner circulated had the City as a party.

17         THE COURT:  You can take a look at that --

18         MR. CURTIN:  I think it absolutely should be --

19         THE COURT:  -- when I give you your very short

20 break.

21         MR. CURTIN:  They should be included.

22         THE COURT:  But it's sensible and appropriate in

23 view of the enormous role the City of New York, not only in

24 this case, but in the enterprise of this debtor.

1        Would anyone else -- under the order, I'm focusing

2   on the relief.  Would anyone else like to address the merits

3   of the motion?

4        All right.  For all the reasons reflected in the

5   record, noting that it has been a long path to this point and

6   a path that has hopefully caused the debtor and the various

7   parties in interest to make significant progress in how the

8   business conducted and to improve its prospects significantly,

9   I am going to grant the motion to dismiss this case and to bar

10  refiling as described in the terms as put forth on the record

11  for a period of nine months from the entry of the order, and

12  will ask the parties to submit an appropriate proposed order

13  on consent as to form with the Office of United States

14  Trustee, the City of New York, and Metropolitan National Bank.

15       MR. KUSHNER:  Yes, your Honor.

16       THE COURT:  All right.

17       MR. KUSHNER:  Thank you, Judge.

18       THE COURT:  Let's come back to the matters that

19  remain on the calendar because I think we do need it seems for

20  the sake of good order, so to speak, a continuation date.  I

21  also note that should somehow this case not be dismissed, we

22  can restore matters to the calendar, and so perhaps at least

23  in the Court's view, that might be a more appropriate way to

24  address those matters.

1    MR. CURTIN:  That's fine with me, your Honor.  We

2 can do it that way too.

3    THE COURT:  All right.  As to the motion to convert

4 then, the case having been dismissed with an order to be

5 submitted, that will be marked off and so ordered, number 3 on

6 the calendar.

7    As to the motion to use cash collateral, that will

8 be marked off, Mr. Kushner?

9    MR. KUSHNER:  Well, it should be granted through

10 dismissal.

11    THE COURT:  You want to -- the record reflects that

12 it would be appropriate to grant in part as reflected in the

13 record, and you'll be submitting a proposed order extending

14 use of cash collateral through dismissal of the case --

15 through dismissal, and I'll be looking for that.  Those

16 perhaps could come in together.

17    With respect to the hearing on the issues raised

18 with respect to compliance and non-compliance, that will be

19 marked off, so ordered.  Of course if things take a dramatic

20 and unanticipated turn things could be restored if necessary.

21  I do believe that takes us through the entire calendar.  Is

22 that correct?

23    MR. KUSHNER:  Yes, your Honor.

24    THE COURT:  All right.  I'm going to take a very,

very short break, and perhaps Ms. Jackson can give the parties
a sense of what we'll be calling next, and I'll just say this.
 I've learned an enormous amount about an enormous range of
things from this case, and I've had the opportunity to see
some tremendously tenacious and zealous and also just some
plain tremendous lawyering in this case, and I thank each and
all of you for your hard work in the case.  It's been an
interesting and hopefully productive matter for all of us.
Ultimately I think we have ended up though with a dismissal,
hopefully a dismissal that leaves the parties in a posture
that is better than that in which you came before this Court
in August of 2012, Mr. Kushner?

            MR. KUSHNER:  '11.

            THE COURT:  '11.  August 2011.  I recall our first
hearings, the temporary order of remarkable longevity.  Thank
you for giving me the opportunity to consider that issue some
time ago.  A business that in our high-tech world still relies
on low-tech communication tools here in the City of New York
to get the word out about various goods and services, a
business that I gather still continues, and hopefully through
the productive engagement that I have urged, encouraged, and
cheerleaded for over the years of this case between OTR and
the City, that that will continue, and I'll just say this.  I
wish you all.  Thank you for a very interesting case.

1          MR. KUSHNER:  Thank you, Judge.

2          THE CLERK:  All rise.

3

4                    *          *          *

5                    **CERTIFICATION**

6

7   I, Catherine Aldrich, certify that the foregoing is a correct

8   transcript from the electronic sound recordings of the

9   proceedings in the above-entitled matter.

10

11  _____          December 18, 2013

12          Catherine Aldrich