**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————————————

In re:

OTR MEDIA GROUP, INC.,

                        Debtor,

Chapter 11

Case No. 1-11-47385 (ESS)

———————————————————————————————

OTR MEDIA GROUP, INC., 203 17TH REALTY LLC,
SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE
REALTY, LLC, *all New York limited liability companies*,
848 FULTON REALTY CORP. *and* MING SHENG INC.,
*New York corporations*, GOTHAM BROAD, LLC, *a
Delaware limited liability company*, FOTINI
THEOHARIDU, and PHILLIPE JOCELINE, *natural
persons*,

                        Plaintiffs,

         - *vs.* —

The CITY OF NEW YORK,

                        Defendant.

Adv. Pro. No. 1-11-01448 (ESS)

———————————————————————————————

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR SANCTIONS BY NON-PARTY EDWARD F. ARRIGONI

LAW OFFICES OF DONALD WATNICK
Donald E. Watnick
51 East 42nd Street, 11th Floor
New York, New York 10017
Telephone: (212) 213-6886
Facsimile: (646) 588-1932
dwatnick@watnicklaw.com
*Attorneys for non-party Edward Arrigoni*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 2

ARGUMENT ..................................................................................................................... 8

   I.   MOTION FOR SANCTIONS IS PROPERLY BEFORE THIS COURT.......................... 8

     A.  Continuing Jurisdiction Over Sanctions ................................................................. 8

     B.  Adversary Proceeding Should Be Re-opened ......................................................... 9

   II.  SANCTIONS SHOULD BE IMPOSED BASED ON FED. R. CIV. P. 45, 28 U.S.C. §
       1927 AND COURT'S "INHERENT POWER" ........................................................... 11

     A.  Subpoenas Imposed Undue Burden and OTR Took No Steps to Mitigate Burden ................. 12

     B.  Sanctions Should Be Imposed Based on Court's Inherent Power and 28 U.S.C. §1927 ......... 17

  III.  Mr. Arrigoni Should be Awarded His Attorneys' Fees ...................................................... 18

     A.  All Attorneys' Fees Resulting from Improper Subpoena Are Recoverable.................. 18

     B.  Legal Fees to Mr. Arrigoni Are Reasonable and Appropriate ....................................... 21

       1.  Attorneys' Fees to Mr. Arrigoni Billed At Reasonable Rates .................................. 21

       2.  Attorneys Time Was Reasonably Expended ............................................................ 23

CONCLUSION................................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

## Cases

Alberts v. HCA Inc., 405 B.R. 498, 503 (D.C. Bankr. 2009) ..................................................... 12

American. Intern. Life Assur. Co. of New York v. Vasquez, 2003 WL 548736, * 1 (S.D.N.Y. 2003) 12, 18

Builders Ass'n of Greater Chicago, 2002 WL 1008455, *4 (N.D. Ill. 2002) ............................... 19

Ceroni v. 4Front Engineered Solutions, Inc., 793 F.Supp.2d 1268, 1274 (D. Colo. 2011) ......................... 20

Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123 (1991) ..................................................... 11

Chemiakin v. Yefimov, 932 F.2d 124, 129 (2d Cir. 1991) .............................................................................. 9

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) ........................................... 13

E.F. ex rel. N.R. v. New York City Dep't of Educ., 2012 WL 398643, *4 (S.D.N.Y. 2012) ......... 11, 12, 13

In re AmFin Fin. Corp., 503 B.R.1, 5 (D.C. Bankr.2014) ............................................................................. 9

In re Aquatic Dev'p Group, Inc., 352 F.3d 671, 677 (2d Cir. 2003) ............................................................. 9

In re Arana, 456 B.R. 161, 171 (E.D.N.Y. Bankr. 2011) .......................................................................... 9, 10

In re Circle K Corp., 199 B.R. 92, 102 (S.D.N.Y. Bankr. 1996) ................................................... 13, 17, 19

In re Ecam Publications, Inc., 131 B.R. 556, 558, fn. 1 (S.D.N.Y. Bankr. 1991) ...................................... 20

In re Khan, 488 B.R. 515 (E.D.N.Y. Bankr. 2013) ....................................................................... 10, 12, 17

In re Millenium Seacarriers, Inc., 458 F.3d 92, 96-7 (2d Cir. 2006). .......................................................... 9

In re Rule 45 Subpoena Issued to Cablevision Systems Corp., 2010 WL 2219343, *11 (E.D.N.Y. 2010) .................................................................................................................................... 11, 12, 13, 20

In re Stein, 394 B.R. 13, 14 (E.D.N.Y. Bankr. 2008) .................................................................................. 10

Jimenex v. Amgen Mfg Ltd., 692 F.Supp.2d 219, 222 (D.P.R. 2010) ......................................................... 20

Kenney, Becker LLP v. Kenney, 2008 WL 681452, *2 (S.D.N.Y. 2008) .................... 11, 12, 13, 15, 19, 20

Kreisler v. Second Ave. Diner Corp., 2013 WL 3965247, *1 (S.D.N.Y. 2013) ................................. 21, 23

Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC, 2009 WL 466136, *1 (S.D.N.Y. 2009) . 23

Molefi v. Oppenheimer Trust, 2007 WL 538547, *2 (E.D. N.Y. 2007) ................................. 11, 12, 19, 21

Morris v. Sheldon J. Rosen, P.C., 2012 WL 2564405, *5 (E.D.N.Y.) ......................................................... 9

Night Hawk Ltd v. Briarpatch Ltd., L.P., 2003 WL 23018833 (S.D.N.Y. 2003) ......... 12, 13, 14, 15, 18, 20

Phoenix Four, Inc. v. Strategic Resources Corp., 2006 WL 2135798 ........................................................... 9

Rates Technology, Inc. v. Mediatrix Telecom, Inc., 2011 WL 1322520 (E.D.N.Y. 2011) ................. 21, 23

Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999) ............................ 8, 12

Tutor-Saliba Corp. v. United States, 30 Fed. Cl. 155 (Ct. Claims 1993) ................................................... 20

## Statutes

28 U.S.C. § 1927 ............................................................................................ 1, 2, 11, 12, 17, 25

Bankruptcy Code § 350 ................................................................................................................. 9

E.D.N.Y. LBR 7007-1 ..................................................................................................... 1, 5, 7, 24

E.D.N.Y. LBR 7033-1 ................................................................................................................. 17

E.D.N.Y. LBR 9013-1 .................................................................................................................... 1

Fed. Bankr. R. 5010 ....................................................................................................................... 9

Fed. R. Bankr. Pro. 7026....................................................................................................................... 1

Fed. R. Civ. P. Rule 45 ............................................................1, 2, 11, 12, 15, 16, 18, 19, 20, 25

**Other Authorities**

Siegel Practice Commentary to Fed. R. Civ. P. 45, C45:26 ................................................................. 19, 20

## INTRODUCTION

This memorandum of law is submitted in support of the motion of non-party Edward F. Arrigoni, pursuant to Fed. R. Bankr. Pro. 7026, Fed. R. Civ. P. Rule 45(d), 28 U.S.C. § 1927 and E.D.N.Y. LBR 7007-1 and 9013-1, for sanctions against Debtor OTR Media Group, Inc. ("Debtor" or "OTR") and its counsel, Goetz Fitzpatrick LLC ("GF") for (i) serving and attempting to serve subpoenas on Mr. Arrigoni that were improper and in bad faith, and (ii) forcing Mr. Arrigoni's counsel to engage in protracted motion practice to quash a subpoena despite recognizing that OTR's position lacked any valid basis. Mr. Arrigoni seeks his attorneys' fees in objecting to the subpoenas, moving to quash and for this motion for sanctions. Mr. Arrigoni also moves to re-open the above-captioned adversary proceeding (the "Adversary Proceeding"), to the extent necessary for the Court to grant such relief, though, this Court can order the relief requested herein without re-opening the Adversary Proceeding based on its continuing jurisdiction over motions for sanctions.

OTR's issuance of repeated subpoenas to Mr. Arrigoni – to ask him about an advertisement on a Bronx building near the Bruckner Expressway more than 30 years ago -- and its opposition to Mr. Arrigoni's motion to quash were legally frivolous. Clearly, OTR pursued Mr. Arrigoni's deposition in this case solely for the improper purpose of litigation before other tribunals. Tellingly, when the motion to quash was argued before this Court, OTR's counsel, Gary Kushner of GF, admitted that OTR's position in this matter was not proper, stating: "This thing went too far." Asked by the Court why OTR filed papers to oppose the motion to quash, Mr. Kushner said: "I don't think that they should have been filed" (notwithstanding that he signed the papers himself). In further addressing this matter in Court, Mr. Kushner said: "I don't think the debtor should have gone forward with it."

In fact, OTR issued two subpoenas to Mr. Arrigoni and opposed his motion to quash the subpoenas after OTR announced in open court that it would be dismissing this proceeding on consent. Moreover, it issued subpoenas to Mr. Arrigoni to ask him about signs from more than 30 years ago, even though issues relating to the legality of these signs were being litigated in City and State tribunals, not this Court. OTR issued these subpoenas when discovery in this case was effectually closed, as Mr. Kushner acknowledged in open court. In short, the only purpose of subpoenaing Mr. Arrigoni was a wrongful purpose: to use his testimony in proceedings involving OTR in other courts.

Fed. R. Civ. P. Rule 45 provides for sanctions when a party issues a subpoena and fails to prevent it from imposing undue burden and expense. The Court's "inherent power" and 28 U.S.C. § 1927 authorizes sanctions where a party, such as OTR, has issued a subpoena in bad faith and misused the subpoena process. Here, the subpoenas to Mr. Arrigoni never should have been issued in the first place. Further, OTR engaged in more frivolous acts by not withdrawing the subpoena, forcing Mr. Arrigoni to move to quash it, and opposing Mr. Arrigoni's motion. Each of these actions, as OTR's counsel acknowledged, expressly if not tacitly, in open court, was not warranted under the law.

## FACTS

The facts set forth herein are based on prior submissions relating to Mr. Arrigoni's motion to quash the subpoena (the "Motion to Quash"), the transcript of a hearing before Court on November 19, 2013 ("Nov. 19th Hearing" and "Transcript" or "Tr."), the Court record, and the accompanying Declarations of Donald E. Watnick, Esq. (the "Watnick Dec.") and Edward Saviano, Esq. (the "Saviano Dec.") and exhibits thereto.

1.       On September 20, 2013, counsel for the "major parties" in this proceeding, including Debtor's counsel, appeared in Court and stated that they had agreed to a "consensual dismissal" of this bankruptcy case.  (Watnick Dec., Exh. A, Tr., p. 8, lines 19-23.)

2.       Despite having informed the Court of the agreed upon dismissal of this case, three days later, on September 23, 2013, Mr. Kushner, of GF, signed a subpoena for a deposition of Mr. Arrigoni (the "First Subpoena"), and GF sent that subpoena to Mr. Arrigoni's Connecticut residence via FEDEX.  (Watnick Dec., Exh. B.)

3.       Mr. Arrigoni is a 79-year-old Connecticut resident; he has never had any involvement with OTR (or, to his knowledge, any other party involved in this case). (See Dec. of Edward Arrigoni (the "Arrigoni Dec.") submitted in support of Motion to Quash, ¶¶ 2, 6; a copy of the Arrigoni Dec. was filed with the Court (Adv. ECF No. 68-2) and is annexed to the Watnick Dec. as Exh. C.)  Mr. Arrigoni was Chairman and an owner of NY Bus Service ("NY Bus") until 2005, at which time NY Bus sold its businesses.  (Id., ¶¶ 5-6.)

4.       Not knowing that this case was slated for dismissal, Mr. Arrigoni's counsel, Edward Saviano, Esq., objected to the First Subpoena by letter dated September 27, 2013 to Mr. Kushner, on the ground that service via FEDEX was not proper and also stated that "we know of no reason why anyone would seek to depose" Mr. Arrigoni in connection with this case, and that "to save unnecessary legal costs and expense, and avoid motion practice, we suggest you call us if you believe there is any proper grounds for attempting to subpoena our client."  (Watnick Dec., Exh. D.)

5.       Despite Mr. Kushner's statements in Court on September 20, 2013 that the OTR bankruptcy was to be dismissed, by letter dated October 1, 2013, GF responded by stating that "there are numerous contested matters between OTR and the City of New York, the primary one

being the City's motion to convert the Debtor's case to one under chapter 7." (Watnick Dec., Exh. E.) Without any specificity, the letter continued that Mr. Arrigoni's testimony is sought in connection with a "contested matter, the nature of which will be elicited at the deposition," and insisted that Mr. Arrigoni appear for a deposition on October 9, 2013.[1] (Id.)

6.    During one or more telephone calls in early October 2013, Mr. Simon insisted that Mr. Arrigoni appear for a deposition, unless he signed an affidavit in lieu of the deposition. During these calls, Mr. Simon stated that Mr. Arrigoni's testimony was needed on the issue of the legality of a sign on a building at 330 Bruckner Blvd., Bronx, N.Y. ( "330 Bruckner") – which sign now apparently is controlled by OTR – and to show how NY Bus, which advertised on that sign in the 1980s, obtained a permit to do so. (See Dec. of Donald E. Watnick, Esq. submitted in support of Motion to Quash (the "First Watnick Dec."),¶¶ 3, 7, Adv. ECF No. 68-3, annexed as Exh. F to the Watnick Dec.)

7.    Upon review of the proposed affidavit, Mr. Watnick informed OTR's counsel, by emails dated October 8, 2013 and phone call, that Mr. Arrigoni would not sign the proposed declaration, including because it largely contained facts he could not attest to, and he would not be appearing for the improperly noticed deposition. (Watnick Dec., Exh. G; see also First Watnick Dec., ¶5, annexed as Exh. F to the Watnick Dec.)

8.    Mr. Watnick told Mr. Simon, during one or more these calls, that Mr. Arrigoni could not recall how NY Bus obtained a permit for a sign from 30 years ago. Mr. Watnick told Mr. Simon that Mr. Arrigoni could provide an affidavit stating he was an owner of NY Bus and

---

[1] Interestingly, in papers filed in opposition to the motion to quash, the City of New York pointed out that neither the First Subpoena – nor the subsequent one that was served on Mr. Arrigoni – was served upon the other parties to this case, as required under the Federal Rules of Civil Procedure. (Response of City of New York (the "City Resp."), ¶ 20, Adv. ECF No. 73.)

NY Bus advertised on the 330 Bruckner in the 1980s.[2]  Mr. Simon provided no information that would refresh Mr. Arrigoni's recollection.  (First Watnick Dec. ¶¶ 5, 7, Watnick Dec., Exh. F.)

9.      OTR's pursuit of Mr. Arrigoni's deposition continued.  On or about October 17, 2013, OTR's counsel attempted service of a new subpoena (the "Second Subpoena" and collectively with the First Subpoena, the "Subpoenas") on Mr. Arrigoni.[3] (Watnick Dec., Exh. H.)  This prompted Mr. Watnick to telephone Mr. Simon and offer to accept service on behalf of Mr. Arrigoni and inform Mr. Simon that Mr. Arrigoni would be making a motion to quash the subpoena.  (Watnick Dec., ¶ 9.)  Mr. Simon's October 17, 2013 email acknowledges that the parties have met and conferred as to the motion to quash, as required by EDNY LBR 7007-1. (Watnick Dec., Exh. I.)

10.     By Notice of Motion dated October 30, 2013, Mr. Arrigoni moved to quash the subpoena.  (Adv. ECF No. 68.)

11.     On November 11, 2013 – the day before Debtor's opposition to the motion to quash was due – Mr. Simon sent an email proposing that in lieu of the deposition that Mr. Arrigoni could answer written interrogatories consisting of 22 separate questions.  (Debtor's Opposition to Motion to Quash, Exh. B, Adv. ECF No. 71-2; see also Watnick Dec., Exh. J.)

12.     Mr. Watnick told Mr. Simon that Mr. Arrigoni would not consent to answering interrogatories.  (Watnick Dec., ¶ 11.)

13.     On November 12, 2013, OTR filed opposition papers to the Motion to Quash. (Adv. ECF No. 71.)  These papers stated that Mr. Arrigoni's deposition was needed so that OTR

---

[2] Ultimately, in support of the Motion to Quash, Mr. Arrigoni submitted a declaration stating that he did not have recollection as to many of the points in OTR's proposed declaration and that he did recall that N.Y. Bus advertised on 330 Bruckner in the 1980s.  (Arrigoni Dec., ¶¶ 7-8, Watnick Dec. Exh. C.)

[3] It should be noted that OTR previously claimed that it did nothing to pursue the subpoena of Mr. Arrigoni between October 10 and 31, 2013.  (Debtor's Objection to Edward Arrigoni's Request for Sanctions ("Debtor's Objection") ¶ 35, Adv. ECF No. 85.)  This is false because during that period OTR attempted to serve a second subpoena on Mr. Arrigoni, as evidenced by the Second Subpoena and  Mr. Simon's email of October 17, 2013.  (Watnick Dec., Exh. I.)

could use it before the "BSA" (NYC Board of Standards and Appeals) and that the adversary proceeding could continue even though OTR was seeking to dismiss the bankruptcy. (Id., OTR Opp., ¶¶17-18.)

14.     On November15, 2013, the City of New York filed a response to OTR's opposition papers. (Adv. ECF No. 73.) The City Resp. made a number of salient points about how the Subpoenas could not possibly relate to this case, including:

- The Adversary Proceeding in which the Subpoenas had been issued had been dormant since February 2012 when GF wrote to the Court requesting that the Adversary Proceeding be dismissed. (City Resp., ¶ 8.)

- There were no proceedings before this Court that related to the sign at 330 Bruckner. (Id., ¶¶ 13-15.)

- OTR's attempt to argue that the Adversary Proceeding would continue after dismissal of the bankruptcy is "disingenuous," if not "nonsensical" because it contradicts prior statements by counsel for OTR and there are no live issues relating to the sign on 330 Bruckner in the Adversary Proceeding. (Id., ¶ 30.)

15.     On November 15, 2013, Mr. Arrigoni filed reply papers, in further support of the Motion to Quash. (Adv. ECF. No. 75)

16.     On November 18, 2013, Mr. Kushner telephoned Mr. Watnick to discuss the Motion to Quash, but did not withdraw the Second Subpoena or OTR's opposition to the Motion to Quash. (Watnick Dec., ¶ 12.)

17.     On November 19, 2013, the Motion to Quash was argued to this Court. As set forth in the Transcript, Mr. Kushner stated "I agree with Mr. Watnick. This thing went too far." (Watnick Dec., Exh. A, Tr. 50.) Mr. Kushner also acknowledged that OTR should not have opposed the motion (notwithstanding that he signed OTR's opposition papers), and withdrew the Second Subpoena on the record. (Id., Tr. 50-51.) During that hearing, Mr. Kushner also reminded the Court that on September 20, 2013 he and other counsel had made a record in Court

about the intention to move to dismiss the OTR bankruptcy on consent of the major parties and that, since then, OTR had been focusing on "administrative" matters. (Id., Tr. 8-9.) No reference was made to any discovery that was being pursued during that intervening period.

18.     The Court accepted the withdrawal of the subpoena and noted that it would have granted the Motion to Quash in any event. (Id., Tr. 54, line 16.)

19.     Thereafter, the Court directed OTR and Mr. Arrigoni's respective counsel to meet and confer on the issue of Mr. Arrigoni's right to attorneys' fees and ordered a conference to address that matter if it was not resolved. (Adv. ECF No. 83) Counsel for OTR and Mr. Arrigoni met and conferred and did not resolve this matter.[4]  (Watnick Dec., ¶ 13.)

20.     On December 16, 2013, the evening before a court-ordered conference as to this matter, OTR filed papers (Debtor's Objection) objecting to any sanctions or award of attorneys' fees to Mr. Arrigoni (even though no formal motion had been made at that time).

21.     On January 7, 2014, this Adversary Proceeding was marked as closed; on January 27, 2014, this bankruptcy was marked as closed.

22.     It also is important to note the litany of misstatements that OTR's counsel has made to this Court in connection with the Subpoenas, including:

- During the Nov. 19th hearing, Mr. Kushner stated that the process of getting Mr. Arrigoni to testify "occurred well before the dismissal concept" and that "Mr. Simon was told by Mr. Watnick to issue the subpoena on the 27th. (Watnick Dec., Exh. A, Tr. 50, lines 5-15.) In fact, no subpoena was issued before the dismissal was presented to this Court on September 20th, Mr. Watnick never invited any subpoena but repeatedly objected to any subpoena to Mr. Arrigoni, and the First Subpoena was issued on Sept. 23rd (Watnick Dec., Exh. B).

- Mr. Kushner told the Court that OTR's papers in opposition to the motion to quash should not have been filed and stated that they were filed "[b]ecause I hadn't looked at those papers." (Id., Tr., 51, lines 4-7.) In fact, Mr. Kushner signed those papers. (Adv. ECF No. 71.)

---

[4] This conference satisfied any meet and confer requirement under LBR 7007-1.

- OTR's response to the Motion to Quash states that "OTR agreed" to re-serve Mr. Arrigoni, after he objected to FEDEX service of the First Subpoena. (OTR Resp., ¶¶ 14-15, Adv. ECF No. 71.) The implication that Mr. Arrigoni requested or agreed be re-served is false.

- OTR's papers alternatively characterize Mr. Arrigoni as "recalcitrant" or trying to avoid perjury. (Debtor's Opp., ¶ 19; Debtor's Objection, fn 2.) OTR provides no basis for such irresponsible *ad hominem* attacks and blithely ignores that Mr. Arrigoni was entitled to object to improperly issued subpoenas.

- Debtor's Objection (¶¶ 42-43) states that Mr.Watnick had *ex parte* contact with the Court after the November 19th Hearing. This is false. During the hearing, the Court asked Mr. Watnick to remain until after other OTR matters were addressed. (Watnick Dec., Exh. A, Tr. 56, lines 5-15.) At that point, Mr. Watnick approached the Judge's Clerk, Ms. Jackson, to follow up and was told that the Court wanted Mr. Watnick and OTR counsel to confer about Mr. Arrigoni's attorneys' fees and contact the Court for a conference if the matter was not resolved. (Watnick Dec., ¶ 13.)

## ARGUMENT

I.   MOTION FOR SANCTIONS IS PROPERLY BEFORE THIS COURT

As an initial matter, while this Adversary Proceeding has been marked as closed, this motion for sanctions is properly before this Court for two reasons: (i) a court has continuing jurisdiction over sanctions motions (including after the case has ended); and (ii) this Adversary Proceeding should be re-opened to consider this motion for sanctions.

A. Continuing Jurisdiction Over Sanctions

It is well established that a Court has continuing jurisdiction to consider and assess sanctions even after a case has been dismissed.

Directly on point is Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir. 1999), in which the Second Circuit held that a motion for sanctions could be considered after the Second Circuit had affirmed the district court's decision and issued a mandate, thereby effectively closing the case. The Second Circuit explained that the "imposition of sanctions is an issue collateral to and independent from the underlying case," which means that "even when a

district court lacks subject matter jurisdiction over an underlying action, it still possesses jurisdiction to impose sanctions arising from the underlying case." Id.; see also Chemiakin v. Yefimov, 932 F.2d 124, 129 (2d Cir. 1991); Morris v. Sheldon J. Rosen, P.C., 2012 WL 2564405, *5 (E.D.N.Y.) ("Federal courts have the power to impose sanctions even if they lack subject-matter jurisdiction over the merits of an underlying dispute."); In re AmFin Fin. Corp., 503 B.R.1, 5 (D.C. Bankr. 2014) (relying on Schlaifer Nance & Co. for same holding); Phoenix Four, Inc. v. Strategic Resources Corp., 2006 WL 2135798, *2 (S.D.N.Y.) (court has continuing power to order sanctions even after dismissal for lack of subject matter jurisdiction).

Accordingly, based on the foregoing authorities, this Court has continuing power to impose sanctions, despite the closure of the adversary proceeding and the bankruptcy.

B. Adversary Proceeding Should Be Re-opened

This Court has discretion to re-open this adversary proceeding for the purpose of considering Mr. Arrigoni's motion for sanctions and maintaining the integrity of proceedings before this Court.[5]

Bankruptcy Code § 350 provides that after a case has been closed it may be reopened to accord relief to the debtor or "for other cause." See also In re Arana, 456 B.R. 161, 171 (E.D.N.Y. Bankr. 2011). Additionally, Fed. Bankr. R. 5010 provides that a case "may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code." See also In re Arana, 456 B.R. at 172.

---

[5] The re-opening of this Adversary Proceeding does not require re-opening the bankruptcy because this bankruptcy court can retain jurisdiction over an adversary proceeding after it has dismissed the bankruptcy case. In re Aquatic Dev'p Group, Inc., 352 F.3d 671, 677 (2d Cir. 2003). Because this motion relates to a proceeding before this Court and this Court has a strong interest in ensuring the sound administration of justice before it, there are ample grounds to continue jurisdiction over this Adversary Proceeding to decide this motion. See In re Millenium Seacarriers, Inc., 458 F.3d 92, 96-7 (2d Cir. 2006).

As the Code does not define "other cause," the decision to reopen is discretionary, is based on the court's equitable powers and should be based on substance over technical considerations. Id., at 172; see also In re Stein, 394 B.R. 13, 14 (E.D.N.Y. Bankr. 2008) (motion to reopen may be based on equitable considers and should emphasize substance over technical considerations). The decision of whether to re-open a case is "generally a straightforward one, and in most instances, the decision to reopen a case is 'ministerial and presents a limited range of issues, including whether further administration of the estate appears to be warranted.'" Id. (citation omitted). The specific facts to be considered are the benefit to the debtor, the prejudice to the affected party, other equitable factors, and whether there is another forum available for relief.

Here, equitable factors, including the integrity of the proceedings before this Court, weigh heavily in favor of re-opening this adversary proceeding for consideration of this motion. This motion goes to whether Debtor misused the subpoena power that it utilized in the name of this Court. Thus, the Court should reopen this matter to consider this sanctions motion to determine whether Debtor did, in fact, misuse the subpoena power. Cf. In re Khan, 488 B.R. 515 (E.D.N.Y. Bankr. 2013) (recognizing bankruptcy court's inherent power to sanction and that it is essential to the administration of justice). This Court is best situated to consider this motion because it involves a case that was before it for some time and with which it has familiarity. Cf. In re Arana, 456 B.R. at 173 (bankruptcy should be reopened whenever there is proof it has not been fully administered). This case has been closed for a very short period of time. The facts surrounding this motion – Debtor's issuance of Subpoenas at the same time it was moving to dismiss the case – contributed to this motion not being made before this case was closed.

In view of the foregoing, equitable considerations justify re-opening the Adversary

Proceeding to consider Mr. Arrigoni's motion for sanctions.

II.     SANCTIONS SHOULD BE IMPOSED BASED ON FED. R. CIV. P. 45,
        28 U.S.C. § 1927 AND  COURT'S  "INHERENT POWER"

The authority to sanction OTR and its counsel for improperly issuing the Subpoenas is

based on Fed. R. Civ. P. Rule 45, 28 U.S.C. § 1927 and the Court's "inherent power."

Under Fed. R. Civ. P. Rule 45, subpoenas should not be issued to impose "undue burden"

on non-parties, and the Court has power to sanction the issuance of subpoenas that cause undue

burden with an award of reasonable attorneys' fees.  Fed. R. Civ. P. 45(d)(1) states:

> A party or an attorney responsible for issuing and serving a subpoena must take
> reasonable steps to avoid imposing undue burden or expense on a person subject to the
> subpoena.  The court for the district where compliance is required must enforce this duty
> and impose an appropriate sanction—which may include lost earnings and reasonable
> attorney's fee -- on a party or attorney who fails to comply.

Fed. R. Civ. P. 45.  The purpose of the sanction power that is expressly contained in Rule 45 is

"to protect non-parties from abusive subpoenas," as well as to ensure that attorneys, who can

issue subpoenas without leave of court, do not misuse the power to do so.  In re Rule 45

Subpoena Issued to Cablevision Systems Corp., 2010 WL 2219343, *11 (E.D.N.Y. 2010);

Molefi v. Oppenheimer Trust, 2007 WL 538547, *2 (E.D. N.Y. 2007).

Additionally, a court can order sanctions and impose attorneys' fees based on  its inherent

power or 28 U.S.C. § 1927, including  "'when a party has acted in bad faith, vexatiously,

wantonly, or for oppressive purposes . . . [or] if a court finds that a fraud has been practiced upon

it.'"  Kenney, Becker LLP v. Kenney, 2008 WL 681452, *2 (S.D.N.Y. 2008) (citing Chambers v.

NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123 (1991).)  See also E.F. ex rel. N.R. v. New

York City Dep't of Educ., 2012 WL 398643, *4 (S.D.N.Y. 2012) (recognizing court's inherent

power to sanction).

Cases recognize that, under Fed. R. Civ. P. 45, sanctions in the form of attorneys' fees, should be imposed when an attorney issues a subpoena that imposes undue burden, and does not take reasonable steps to avoid imposing such burden. In re Rule 45 Subpoena Issued to Cablevision, 2010 WL 2219343, *11; Molefi, 2007 WL 538547, * 2-3; American. Intern. Life Assur. Co. of New York v. Vasquez, 2003 WL 548736, * 1 (S.D.N.Y. 2003); see also E.F. ex rel. N.R., 20012 WL 398643, *4. Similarly, sanctions should be imposed under 18 U.S.C. §1927 and the court's inherent power when "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co., Inc., 194 F.3d at 336; accord Kenney, Becker LLP, 2008 WL681452, *2; In re Khan, 458 B.R. at 531. Accordingly, applying either a court's inherent power, 28 U.S.C. § 1927 or Rule 45, sanctions should be imposed when the subpoena was served for an improper purpose and was unduly burdensome. Night Hawk Ltd v. Briarpatch Ltd., L.P., 2003 WL 23018833 (S.D.N.Y. 2003) (ordering sanctions under Fed. R. Civ. P. 45 where subpoena issued for improper purpose); see also Alberts v. HCA Inc., 405 B.R. 498, 503 (D.C. Bankr. 2009) (recognizing that sanctions should be awarded based on a "blatant abuse of the subpoena power").

Here, as set forth below, the Subpoenas imposed undue burden and had no legitimate purpose, and OTR did nothing to mitigate the burden, but increased the burden by re-serving the Subpoenas and forcing extensive motion practice, including the instant motion.

A. Subpoenas Imposed Undue Burden and OTR Took No Steps to Mitigate Burden

For the purpose of Fed. R. Civ. P. 45, a subpoena imposes "undue burden" where it seeks information that is not relevant or material to the allegations and claims at issue, where the party issuing the subpoena does not have a need for it, or where it is overbroad. Night Hawk., 2003

WL 23018833 * 8.  See also Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (citing same factors in determining whether a subpoena imposed "undue burden").  In determining undue burden, the status of a witness as a non-party, entitles the witness "'to consideration regarding expense and inconvenience.'"  Concord Boat, 169 F.R.D. at 49 (citation omitted).

In awarding sanctions, courts also consider whether the issuing party failed to avoid imposing undue burden and expense on the recipient. In re Circle K Corp., 199 B.R. 92, 102 (S.D.N.Y. Bankr. 1996); E.F. ex rel. N.R., 2012 WL 398463, *4.  For example, in Night Hawk Ltd., 2003 WL 23018833 * 8, the court imposed sanctions under circumstances closely resembling those here: against a party that (i) issued a subpoena "while simultaneously seeking the dismissal" of the action, (ii) tried to use it to obtain discovery in a related state court action, and (iii) refused to withdraw it thereby forcing the recipient to move to quash it.  Similarly, in Kenney, Becker LLP, 2008 WL 681452, *2, the court imposed sanctions where a subpoena was issued in a federal court case that had been stayed pending arbitration, and the subpoena sought discovery to be used in the arbitration.  Even after the subpoena was withdrawn, the court imposed sanctions because the issuing party should not have issued a subpoena from a stayed federal court action to obtain discovery in the arbitration, and notice of the subpoena was not given to the other party.  Id., *3.  Also relevant is In re Rule 45 Issued to Cablevision Systems Corp., 2010 WL 221943, *12, in which the court imposed sanctions where a subpoena sought the identity of a John Doe in violation of his First Amendment right to anonymity and the party issuing the subpoena then refused to accept an affidavit from the John Doe that he had not been involved in the ultimate communications about which the proponent of the subpoena was

seeking discovery. The court held that the subpoena and refusal to accept the proffered affidavit imposed undue burden, time and expense. Id.

Here, there can be no question that the Subpoenas imposed undue burden and that OTR not only failed to avoid imposing such burden but actively imposed more burden. For starters, both OTR's counsel and the Court recognized that the Subpoenas imposed undue burden when the Motion to Quash was argued in Court on November 19, 2013, with the Court stating that it would have granted the Motion to Quash had OTR not withdrawn it on the return date, and OTR's counsel stating that this matter – the Subpoenas – "went too far." (Watnick Dec., Exh. A, Tr., 50, lines 19; 54, lines 16-17.)

The Subpoenas, by themselves, unreasonably imposed undue burden because they never should have been issued in the first place. Both Subpoenas sought testimony that had no relevance to any matter in this proceeding for multiple clear reasons.

First, the Subpoenas were issued and re-issued after OTR and the other major parties agreed to dismiss this case. (Watnick Dec., Exh. A Tr. 8, lines 19-23.) Cf. Night Hawk, Ltd., 2003 WL 23018833, * 8 (ordering sanctions against party that issued subpoena at same time as that party moved to dismiss).

Second, no discovery was ongoing in this case when the Subpoenas were issued. OTR counsel stated at the November 19th Hearing that since informing the Court of the intent to dismiss the bankruptcy two months earlier, Debtor's counsel had been addressing "administrative matters," and made no mention of ongoing discovery. (Watnick Dec., Exh. A, Tr. 9, lines 5-9.) Notably, none of the papers filed by OTR relating to the Subpoenas makes reference to a single ongoing discovery proceeding in this action. In fact, OTR's motion to dismiss the bankruptcy, which was before the Court the same day as the Motion to Quash,

14

expressly stated that the legality of the signs is not an issue in this case, but is a matter for the State and City administrative courts to consider.  (See Motion to Dismiss, ECF No. 547, ¶¶ 59-60.)  OTR never even provided notice of the Subpoenas to the other parties in this bankruptcy – a factor that at least one court relied upon in imposing sanctions under Rule 45, Kenney, Becker LLP, 2008 WL 681452, *3, and which further shows that no discovery was ongoing.

Third, OTR's repeated submissions and letters do not even present a consistent, let alone valid, reason as to why the Subpoenas were needed.  An initial letter from OTR's counsel to Mr. Arrigoni's counsel (Watnick Dec., Exh. E) stated Mr. Arrigoni's deposition was needed due to a motion to convert the bankruptcy to a chapter 7; however, the veracity of that letter is dubious, if not disingenuous, in view the major parties, prior to the date of that letter, having consented to dismiss the bankruptcy, thereby obviating any such motion.  OTR's counsel also stated that the deposition was needed to determine the legality of the 330 Bruckner sign (First Watnick Dec., ¶ 3, annexed as Exh. F to the Watnick Dec.); however, that, too, cannot be true because OTR's counsel acknowledged those issues were not even being litigated in this case but, instead, in proceedings in City and State courts.  (Watnick Dec., Exh. A Tr., 9, lines 8-12; see also City Resp., ¶ 3 ("nothing about 330 Bruckner – much less the determination of its zoning status – is the subject of any dispute between the Debtor and the City in this Chapter 11 case or the related Adversary Proceeding.").)  Lastly, OTR's papers opposing the Motion to Quash state the deposition is needed for unspecified "contested" matters in the bankruptcy – the vagueness of which speaks loudly to the lack of any such actual matters.[6]  (OTR Resp., ¶ 8, Adv. ECF No. 71.)

---

[6] OTR's failure to come forward with any rationale for the Subpoenas evidences that it did not and cannot meet its burden of showing that the Subpoenas were material and relevant to this proceeding.  Night Hawk Ltd., 2003 WL 23018833 * 8.

Fourth, the inescapable conclusion based on the foregoing – and OTR's own papers -- is that OTR issued the Subpoenas for a wrongful purpose:  to obtain discovery in the City and State proceedings.  Indeed, OTR's papers in opposition to the motion to quash plainly state Mr. Arrigoni's testimony was going to be used before the "BSA" and make no reference to how it might have been used in this case.  (Adv. ECF No. 71, OTR Opp., ¶ 17.)  Similarly, OTR's latest filing (the Objection) attempts to explain the Subpoenas by making reference to a BSA hearing that prompted OTR to seek evidence about the legality of the 330 Bruckner  sign for that proceeding.  (Debtor's Objection, ¶¶ 25-29, Adv. ECF No. 85).  In addition, OTR's motion to dismiss this bankruptcy states that the legality of the Debtors' signs is best determined by state court, where those matters are pending.  (ECF 542, ¶ 60.)  As the above-cited cases make very clear, seeking a subpoena in one action for sole use in another action is wrongful and justifies sanctions under Rule 45.

Moreover, OTR took steps that substantially increased the undue burden and expense on Mr. Arrigoni.  OTR refused to discuss this matter in response to Mr. Saviano's initial September 27, 2013 letter asking for an explanation for the First Subpoena from an entity that Mr. Arrigoni had never heard of.  OTR refused to resolve this matter with a declaration from Mr. Arrigoni stating that he lacked knowledge about the details surrounding a permit for a sign that was issued more than 30 years ago, particularly because he sold his business eight years ago (putting aside that OTR had no right for such a declaration in the first place).  OTR refused to withdraw the subpoena, even after being told that Mr. Arrigoni would be moving to quash it.[7]  OTR acknowledges that it should not have opposed Mr. Arrigoni's Motion to Quash, but it refused to withdraw the subpoena in response to the motion.  Instead, not satisfied with Mr. Arrigoni's

---

[7] OTR's assertion that no motion to quash (Debtor's Objection, pp. 12-13, Adv. ECF No. 85) was required is simply wrong – indeed, its own cited cases do not support its position.  See Point, II, A.

affidavit in support of the Motion to Quash as to his lack of knowledge, OTR (as its own opposition papers state) said it would withdraw the subpoena if Mr. Arrigoni responded to 22 written interrogatories.[8] (Adv. ECF No. 71.) When Mr. Arrigoni's counsel stated no such interrogatories would be answered (Watnick Dec., ¶ 11), OTR served opposition papers. Even the night before the November 19th hearing, Mr. Kushner phoned Mr. Arrigoni's counsel but did not withdraw the subpoena. (Id., ¶ 12.) In short, the subpoena was not "withdrawn" until oral argument on the Motion to Quash, at which point withdrawing it was superfluous because the Motion to Quash was going to be granted.

Thus, Mr. Arrigoni's counsel was further burdened with (i) reviewing proposed interrogatories, (ii) reviewing and analyzing OTR's opposition to the motion (iii) preparing for argument of the Motion to Quash, and (iv) appearing in court to argue the motion to quash.

B. Sanctions Should Be Imposed Based on Court's Inherent Power and 28 U.S. C. §1927

This Court has recognized that the tests for sanctions under 28 U.S.C. §1927 and the court's inherent power are complementary and similar. In re Khan, 488 B.R. at 531. Sanctions are appropriate under both 28 U.S.C. §1927 and the court's inherent power when a party "has multiplied proceedings unreasonably and vexatiously, and increased the costs of the proceedings, with bad faith or intentional misconduct." Id., at 529. The test is whether the claim at issue is not colorable or is in bad faith. A claim is colorable where it has some legal and factual support; bad faith is present when a party acted for improper purposes and takes a position that is "'completely without merit.'" Id., 529-30. See also In re Circle K Corp. 199 B.R. at 102

---

[8] Of course, this represented still another gambit by OTR to get discovery improperly for at least three reasons: (1) no subpoena had been issued for the interrogatories, (2) the interrogatories were impermissible under E.D.N.Y. LBR 7033-1, which limits interrogatories to identification of documents and witnesses., and (3) these interrogatories – issued days before the November 19th hearing to dismiss this case – could not possibly have had any bearing on this action, which shows that OTR, once again, improperly was trying to use this Court's process for discovery that would be used solely in other actions.

(awarding sanctions for improper subpoena and recognizing that "[a]n attorney who issues an improper subpoena directly implicates the court and undermines it.").

Here, there can be no question that OTR's positions as to the Subpoenas were not colorable and in bad faith. To begin with, OTR's own counsel admitted in open Court that OTR should have not opposed the Motion to Quash and that its positions lacked merit. There is no showing that the Subpoenas were for the purpose of litigating this case and the evidence – including Debtor's own papers – show that the discovery sought in this case from Mr. Arrigoni was for the improper purpose of using it in other proceedings. Rather than act to avoid litigation when Mr. Arrigoni objected to the Subpoenas, Debtor exacerbated this matter by asking for affidavits and interrogatory answers – in short, trying to leverage its improper subpoenas to obtain other discovery that it was not entitled to in the first place.

In sum, there is no question that the Subpoenas lacked any colorable basis and were issued for improper purposes. Thus, sanctions should be imposed.

III. <u>MR. ARRIGONI SHOULD BE AWARDED HIS ATTORNEYS' FEES</u>

    A.     <u>All Attorneys' Fees Resulting from Improper Subpoena Are Recoverable</u>

Under Rule 45, a party is entitled to recover all of its attorneys' fees that follow the improperly issued subpoena because, if not for the subpoena, no such actions would have been required to have been taken. <u>Night Hawk Ltd. v. Briarpatch, Ltd., L.P.</u>, 2004 WL 1375558, *3 (S.D.N.Y. 2004) ("Courts imposing a sanction of attorneys' fees under Rule 45(c)(1) have often granted sanctions equaling most if not all of the attorneys' fees sought."); <u>Vasquez</u>, 2003 WL 548736, *3 (awarding "much of" the attorneys' requested for responding to an improper subpoena).

Indeed, in awarding sanctions for improper issuance of a subpoena, Eastern and Southern District courts have recognized the following: "'when a subpoena should not have been issued, literally everything done in response to it constitutes 'undue burden or expense' within the meaning of Civil Rule 45[d][1]". Kenney, Becker LLP, 2008 WL 681452, fn. 5; Molefi, 2007 WL 538547, *3 (both quoting Builders Ass'n of Greater Chicago v. City of Chicago, 2002 WL 1008455, *4 (N.D. Ill. 2002)). For this reason, courts include in the award of attorneys' fees the amounts incurred for making the motion for attorneys' fees. Kenney, Becker LLP, 2008 WL 681452, * 3 (awarding the attorneys' fees incurred in preparing, filing and arguing motion for sanctions that was made after subpoena was withdrawn); In re Circle K Corp., 199 B.R. at 102 (holding that for an improper subpoena, courts have "wide discretion to impose sanctions which penalize the wrongdoer, deter future abuse and compensate the injured."). See also Siegel Practice Commentary to Fed. R. Civ. P. 45, C45:20 ("The attorneys' fees that may be collected under subdivision (c)(1) include not only attorneys' fees incurred in resisting the subpoena, but also attorneys' fees incurred in seeking to collect attorneys' fees, loss of earnings, and whatever else may reasonably accompany the sanctions application. That appears to be the import of the Advisory Committee note, to the effect that 'liability may include the cost of fees to collect attorneys' fees' incurred for breach of subdivision (c)(1).")

OTR previously has argued that sanctions should be minimized because a Motion to Quash was not required and – incredibly – asserted that Mr. Arrigoni escalated this matter and that OTR did not attempt to enforce compliance with the Subpoenas. (Adv. ECF No. 85, OTR Objection, pp 12-14.)

The last statement is directly contradicted by the record before the Court, which makes clear that OTR actively pursued the Subpoenas and did so without any *bona fide* basis for doing

so.  OTR's counsel sent letters and emails insisting on compliance with the subpoenas, refused the offer of an affidavit and attempted to leverage its improper Subpoenas for the purpose of obtaining answers to interrogatories that were impermissible under the Court rules.  OTR opposed Mr. Arrigoni's Motion to Quash.

The statement that no Motion to Quash was required simply misstates the law and the cases that OTR relied upon in making this statement.[9]  Notably, Fed. R.Civ. P. 45 expressly contemplates a motion to quash in response to a subpoena.  Nowhere does it provide that a letter of objection is sufficient in response to a testimonial subpoena.  Rule 45 permits a letter objection in response to a subpoena for documents (Fed. R. Civ. P. 45(d (2)(B)), but there is no parallel provision for a subpoena for testimony.  Ceroni v. 4Front Engineered Solutions, Inc., 793 F.Supp.2d 1268, 1274 (D. Colo. 2011); see also Siegel Practice Commentary to Fed. R. Civ. P. 45, C45:26 (noting that a subpoena for testimony cannot be objected to by letter).  Similarly, the Local Rules of this Court contemplate a motion after a meet and confer, which process was completed before filing the Motion to Quash. [10] If OTR did not believe a motion to quash was needed, or truly wanted to avoid litigating the propriety of the Subpoenas, it could have withdrawn the Subpoenas at various stages – including after OTR's counsel provided confirmation that the meet and confer perquisite for the motion had been completed and it would

---

[9] Each of the cases that OTR cites (Objection, pp. 12-13) hold that a motion to quash is the appropriate response to a non-party subpoena.  In In re Ecam Publications, Inc., 131 B.R. 556, 558, fn. 1 (S.D.N.Y. Bankr. 1991), the Court held that a motion to quash is the appropriate response to a non-party subpoena and, contrary to OTR's papers, that a letter objection is called for only in response to a document subpoena.  See also Tutor-Saliba Corp. v. United States, 30 Fed. Cl. 155 (Ct. Claims 1993) (recognizing that Rule 45 allows provides for a written objection to a document subpoena, but holding that motion to quash that subpoena was untimely because not made within 14 days); Jimenex v. Amgen Mfg Ltd., 692 F.Supp.2d 219, 222 (D.P.R. 2010) (holding that a motion to quash must be made in 14 days, and not stating that an objection to a testimonial subpoena can be done be mere letter).

[10] Indeed, if a mere letter was sufficient, then there would be no cases in which those who received a subpoena moved to quash.  See, e.g., Night Hawk, Ltd., 2003 WL 23018833; Kenney, Becker LLP, 2008 WL 68452; In re Rule 45 Subpoena Issued to Cablevision Systems Corp., 2010 WL 2219343 (all of which involved motions to quash in response to subpoenas).

proceed with the motion. OTR did not, however, do so and its attempt now to point fingers makes a mockery of what occurred.

B.     Legal Fees to Mr. Arrigoni Are Reasonable and Appropriate

Courts in this Circuit determine a reasonable attorney fee based on methodology of setting a reasonable rate for the attorneys providing services, keeping in mind case specific variables, and multiplying that rate by the number of hours reasonably expended. See, e.g., Kreisler v. Second Ave. Diner Corp., 2013 WL 3965247, *1 (S.D.N.Y. 2013); Molefi, 2007 WL 538547, *5.

1.     Attorneys' Fees to Mr. Arrigoni Billed At Reasonable Rates

The reasonable rates for the attorneys are based on the prevailing market rates. Kreisler, 2013 WL 3965247, *3. A good indication of prevailing market rates are those charged by other attorneys in this case, as reflected in their respective fee applications to the Court. See GF Fee Application (ECF No. 555) (hourly rates vary from $500 for a partner to $325 for an associate); Novack Burnbaum Crystal LLP Fee Application (ECF 557) (hourly rates are $500 for multiple attorneys working on matter). Courts recognize that the rate to be used for calculating recoverable attorneys' fees should be based on what a reasonable client would be willing to pay. Rates Technology, Inc. v. Mediatrix Telecom, Inc., 2011 WL 1322520 (E.D.N.Y. 2011) (finding that hourly rate of $475 is reasonable for a partner, $350 for a senior associate and $225 for mid-level associates in an intellectual property case); Kreisler, 2013 WL 3965247, *2 (finding that hourly rate of $400 reasonable in an ADA case).

Three attorneys were involved in providing legal services to Mr. Arrigoni as a result of the subpoenas: Edward Saviano of Saviano, P.C., a regular counsel to Mr. Arrignoni and NY Bus, Donald Watnick, and Elaine Yuen, an associate of Saviano, P.C.

As set forth in the Watnick Dec., Mr. Watnick has been practicing commercial litigation in New York state and federal courts since he graduated from Cornell Law School in 1988. At present, he practices through a two-lawyer law firm, the Law Offices of Donald Watnick, which he started in 2004.[11] Throughout his 25-year career, he has litigated complex commercial cases for companies and individuals in federal and state courts, including bankruptcy court. Mr. Watnick's hourly billing rate for this matter is $465; his standard hourly rate for new matters in 2013 was $475. (Watnick Dec., ¶ 14.)

As set forth in the accompanying Saviano Dec., Mr. Saviano has provided legal services to Mr. Arrigoni for more than 25 years and provided regular legal services to NY Bus for more than 20 years before it was sold by Mr. Arrigoni and the other owners. (Saviano Dec., ¶ 2.) As such, Mr. Saviano has a long-standing working relationship with Mr. Arrigoni and familiarity with the NY Bus business. Mr. Saviano is the principal attorney in his two-lawyer law firm, Saviano, P.C., and he has been practicing law for about 35 years. He graduated from Villanova Law School in 1979 and received a LLM from NYU Law School in 1980. Mr. Saviano's billing rate for this matter is $420, which is consistent with what he charges long-term existing clients; his hourly rate for new matters is $475. (Id., ¶¶ 3-5.)

Elaine Yuen, an associate of Saviano, P.C., graduated Columbia Law School in 2010 and has been associated with Saviano, P.C. since 2012. Ms. Yuen's billing rate for this matter is $150, which is consistent with her rate for other matters; effective Jan. 1, 2014, Ms. Yuen's hourly rate is $175. (Id., ¶ 6.)

---

[11] Prior to then, he was a litigation associate at Rogers & Wells and Townely & Updike from 1988 to 1995 and a litigation associate and Of Counsel at Dorsey & Whitney from 1995 to 2000; from 2000 to 2004, Mr. Watnick was Vice President in charge of Litigation for Computer Associates International, Inc. (Watnick Dec., ¶ 14.)

As set forth in the Watnick Dec. and the Saviano Declaration, the rates charged here are consistent with rates that each of them charge to clients for legal services. As such, they should be considered legally reasonable for the purposes of awarding attorneys' fees in this case.

2.    Attorneys' Time Was Reasonably Expended

The reasonableness of the time expended should be based on the court's familiarity with the case and the parties' submissions and arguments. Kreisler, 2003 WL, *3; Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC, 2009 WL 466136, *1 (S.D.N.Y. 2009). Typically, this determination is based on a review of daily time records, which provide detail as to the services performed (though the level of detail need not be overly exhaustive). Rates Technology, Inc., 2011 WL 1322520, *4.

There can be no question that the legal services performed here all directly resulted from the improper issuance of the Subpoenas and the resulting actions taken by OTR in connection with the Subpoenas. These services are reflected in the billing statements for the law offices of Donald E. Watnick and Edward Saviano, which provided representation to Mr. Arrigoni in this matter. (Watnick Dec., Exh K; Saviano Dec., Exh. A.) The services related to the following tasks for which time devoted by Donald Watnick (DW), Edward Saviano (ES) and Elaine Yuen (EY) is summarized based on the billing statements:

- Analysis of First Subpoena and requirements for service of same; drafting letter to OTR counsel about improper service; fact-finding related to this action. (DW – 1.25 hours; ES – 2.6 hours; EY – 3.5 hours.)

- Communications, in writing and telephonically, with OTR counsel about improper service of First Subpoena and whether deposition would occur; communications about OTR proposal that Mr. Arrigoni sign an affidavit in lieu of being deposed, including review of the affidavit; communications among counsel for Mr. Arrigoni. (DW – 3.8 hours; ES – 5 hours.)

- Communications, in writing and telephonically, with OTR counsel about the Second Subpoena, including as to acceptance of service and confirmation that

the meet-and-confer required by LBR 7007-1- occurred so that Mr. Arrigoni's counsel could proceed with the motion to quash.  (DW – 1.5 hours; ES – 0.4 hours)

- Legal research, review of court docket and drafting motion to quash, consisting of two moving declaration (by Edward Arrigoni and Donald E. Watnick, Esq.) and a memorandum of law; preparation of service and filing of motion papers.  This included becoming familiar with some of the prior proceedings in this extensive and involved bankruptcy proceeding.  (DW – 15.5 hours; ES – 2.6 hours; EY – 25.5 hours)

- Communications, in writing and orally, with counsel for OTR about whether Mr. Arrigoni would answer interrogatory questions in lieu of the deposition requested by the subpoena.  (DW – 0.5 hours; ES – 1 hour)

- Review of OTR papers in opposition, and NYC papers in response, to Motion to Quash and related calls.  (DW -- 1.0 hours; ES -- 0.5 hours)

- Drafting reply papers in further support of Motion to Quash.  (DW – 3.0 hours; EY – 10.5 hours; ES – 0.8 hours)

- Preparation for court hearing for Motion to Quash and appearing in court for Motion to Quash on Nov. 19, 2013 and related conferences.  (DW – 6 hours; ES – 1.3 hours)

- Communications, oral and in writing, with OTR counsel about request for attorneys' fees; preparation for and appearance at court conference on attorneys' fees; review of papers filed by OTR in advance of court conference.  (DW – 2.6 hours; ES -- -0.6 hours)

- Preparation of the instant motion for attorneys' fees.  (To be determined.)

The time records accompanying this motion for the Saviano and Watnick law offices detail the time entries relating to this matter on a daily basis and describe, for each day, the specific tasks performed.

Based on the foregoing, an attorneys' fee award in the amount of $28,788.21 is reasonable and appropriate and should be entered as a sanction against Debtor and its counsel, GF.  Counsel for Mr. Arrigoni also should be given leave to supplement this request for legal fees for the attorneys' fees incurred in making this motion.

## CONCLUSION

OTR and its counsel issued and pursued subpoenas against Mr. Arrigoni in this case without any good faith basis for doing so. The Subpoenas were pursued to obtain discovery solely to be used in other proceedings. The process of this Court was misused. Accordingly, sanctions should be imposed here against OTR and its counsel under Fed. R. Civ. P. 45, 28 U.S.C. § 1927 and the inherent power of this Court, by ordering that they pay Mr. Arrigoni's attorneys' fees resulting from the improper Subpoenas and the proceedings that followed in the amount of $28, 788.21, plus the attorneys' fees for this motion. Additionally, this Court should re-open this adversary proceeding to the extent necessary to grant the foregoing relief.

**WHEREFORE**, the movant Edward F. Arrigoni requests that this Court enter an order (i) to re-open the adversary proceeding and (ii) to grant it sanctions, under Fed. R. Civ. P. 45 (d), 28 U.S.C. § 1927 and the "inherent power" of the Court, and award Mr. Arrigoni attorneys' fees in the amount of $28, 788.21, plus the attorneys' fees for this motion, from OTR and its counsel, and for such other relief as this Court deems just and proper.

Dated: New York, New York
February 6, 2014

LAW OFFICES OF DONALD WATNICK

By: /s/ Donald E. Watnick
        Donald E. Watnick
51 East 42nd Street, 11th Floor
New York, NY  10017
(212) 213-6886
dwatnick@watnicklaw.com
*Attorneys for Movant Edward F. Arrigoni*