| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------------- X | |
| In re:<br><br>OTR MEDIA GROUP INC.,<br><br>               Debtor.<br>---------------------------------------------------------------- X | Chapter 11<br><br>Case No. 1-11-47385 (ESS) |
| OTR MEDIA GROUP, INC., 203 17TH REALTY LLC, SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE REALTY, LLC, *all New York limited liability companies*, 848 FULTON REALTY CORP. *and* MING SHENG INC., *New York corporations*, GOTHAM BROAD, LLC, *a Delaware limited liability company*, FOTINI THEOHARIDU, and PHILLIPE JOCELINE, *natural persons*,<br><br>               Plaintiffs,<br><br>               - *vs.* -<br><br>The CITY OF NEW YORK,<br><br>               Defendant.<br>---------------------------------------------------------------- X | Adv. Pro. No. 1-11-01448(ess)<br><br>**DECLARATION OF<br><u>PHYLLIS ARNOLD</u>** |

       PHYLLIS ARNOLD declares, pursuant to 28 U.S.C. §1746 and subject to the penalty of perjury, that the following statements are true and correct:

       1.    I am counsel to the law firm of Bryan Cave LLP ("Bryan Cave"), special counsel to OTR Media Group ("OTR" or "Debtor"). Prior to my affiliation with Bryan Cave, I was a Deputy Commissioner and Chief Legal Counsel of the New York City Department of Buildings.

       2.    I am familiar with the facts here set forth based on my personal knowledge, on review of materials provided by the Debtor, and on conversations with the Debtor

-1-

and with certain officers and agents of the City of New York.

3. I submit this Declaration in support of the Debtor's motion to re-institute the automatic stay to the extent of staying enforcement proceedings that the City of New York is currently pursuing against OTR. The proceedings in question include permit revocations and the adjudication of new violations returnable before the Environmental Control Board ("ECB") relating to signs currently controlled by the Consent Order, entered on or about July 19, 2012, and as to which OTR has diligently pursued evidence to support grandfathering claims. Both the revocations and new violations are **wholly duplicative** of the filings OTR has made at the Department of Buildings ("DOB") because the proof that the Debtor is assembling pursuant to the Consent Order to establish the lawfulness of its signs through the filings is identical to the proof required to contest the permit revocations and new violations. The City's actions do little more than create the risk of inconsistent administrative determinations and deplete the Debtor's assets of the funds required to support responses on multiple fronts.

4. Pursuant to the Consent Order, OTR has filed two sets of applications with DOB. The purpose of these filings is to legalize the signs with evidence establishing their lawful non-conforming use status under zoning, in other words, that they are "grandfathered." Typically, this involves assembling evidence that each sign was lawful when installed and that it has been in virtually continuous use since installation.

5. Specifically, in addition to establishing the lawful installation of each sign, proving grandfathered status requires identifying the date when the sign became unlawful, known as the date of non-conformance, and proving continuous use from that date to the present. Generally, the date of non-conformance traces to a change in zoning and varies depending on the zoning history of the location and its proximity to arterial highways and public parks. It may be

as recent as 2005 or as distant as the 1940's.

6. OTR has spent the better part of the last four months identifying and acquiring evidence, both in the public domain and controlled by third parties, to support its claims to lawful non-conforming use status. OTR staff members have scoured websites and public repositories for historical photographs. Pursuant to Rule 2004 requests, we have reviewed evidence of the historical use of several signs from Lamar Advertising, Vista Media, Fuel Outdoor, and Clear Channel (as the signs' prior owners), and we continue to pursue such historical records that we believe these and other entities possess. Tracking down evidence of non-conforming use status has been a grueling process requiring painstaking follow-up in every case.

7. OTR's first set of filings at DOB was made on or about September 5, 2012, and revised September 14, 2012. OTR filed 9 signs at the DOB Signs Enforcement Unit in Manhattan as part of its registration of its arterial sign inventory:

| Manhattan | Bronx | Brooklyn |
|---|---|---|
| 445 W. 35th Street | 111 E. 161st Street | 84 Withers Street |
| | 330 Bruckner Blvd. | 25 Skillman Ave (one face) |
| | 261 Walton Ave. | 25 Skillman Ave. (second face) |
| | 945 Zerega Ave. | |

|  |  |  |
|---|---|---|
|  | 2437 Grand Concourse |  |

8. The second set of filings was made between October 3 and October 4, 2012, when OTR filed at the respective DOB borough offices applications for permits for 5 signs:

| Manhattan | Bronx | Brooklyn |
|---|---|---|
| 538 10th Avenue | 111 E. 161st Street | 340 Flatbush Avenue Ext. |
| 838 6th Avenue | 330 Bruckner Blvd. |  |

9. DOB has issued objections for all of the permit applications and OTR has appointments scheduled as follows: 111 E. 161st Street and 330 Bruckner Blvd., objections dated October 19, 2012, appointment attended November 28, 2012[a]; 340 Flatbush Avenue Extension, objections dated October 9, 2012, appointment scheduled for December 10, 2012.[b]; 538 10th Avenue and 838 6th Avenue, objections dated November 26, 2012, appointment attended November 30, 2012. In each case, these objections ultimately raise the issue whether the advertising sign is lawful under zoning regulations. Pursuant to the Administrative Code and DOB practice, OTR's appearance at these appointments affords it the opportunity to respond to

---

[a] OTR was compelled to ask for an adjournment of the originally scheduled November 14, 2012 appointment on 111 E. 161st Street and 330 Bruckner Blvd. when it was unable to access its offices at 40 Fulton Street in Manhattan following Sandy. OTR returned to its offices November 12th.

[b] After having been given an appointment for 340 Flatbush Avenue Extension for December 4, 2012, DOB canceled due to the anticipated unavailability of the plan examiner and re-scheduled it for December 10, 2012, the earliest date possible. Relevant correspondence is attached.

these objections by submitting evidence to the plan examiner that the sign is grandfathered and is otherwise lawful.

10. With respect to the arterial signs, on or about October 3, 2012 DOB issued a Notice of Sign Registration Deficiency for each of the 9 locations, citing in each case OTR's failure to have demonstrated that the sign was lawfully established. The issue presented in the OAC registration process is also whether the sign is grandfathered. Pursuant to the Administrative Code and DOB rule, OTR has 45 days to respond; that period has been extended two weeks at OTR's request to December 3, 2012. The 9 Notices are attached.

11. Notwithstanding OTR's good-faith efforts to apply for registration and permitting of its signs pursuant to the Consent Order, DOB has begun proceedings to revoke 5 permits at 3 locations: 84 Withers Street (begun by notices dated July 30 and August 13, 2012); 174 Canal Street (by notice dated September 12, 2012); and 945 Zerega Avenue (by notice dated September 21, 2012). These proceedings are directed to the applicant who filed the permit in question and to the property owner, although OTR obviously has the primary interest in defending them. Accordingly, pursuant to DOB direction, OTR has obtained authorizations from each of the property owners in question to represent their interests and to appear before DOB in these revocation proceedings. These proceedings take place at the borough level and also raise the question whether a particular sign is grandfathered. OTR, either alone or with the applicant, has appeared at DOB on two of these matters and recently attended additional appointments November 28, 2012. A further submission is due December 12, 2012.

12. Upon receiving the October 3, 2012 Notices of Sign Registration Deficiency for the arterial signs, I wrote to Edward Fortier, the Director of DOB's Sign Enforcement Unit, to renew my earlier request that the Department refrain from pursing permit

revocation proceedings while OTR works out the grandfathering issues in the affirmative filings it has made pursuant to the Consent Order. (I made the earlier request orally in August after DOB issued the first of the permit revocation notices.) As indicated in the attached October 5, 2012 letter from me to Mr. Fortier, the issues and the evidence are virtually identical and it is a waste of time and money to duplicate efforts by reviewing the same evidence in two contexts.

13. By letter dated October 16, 2012, a copy of which is attached, Mr. Fortier denied my request, stating that DOB intended to pursue the permit revocation proceedings in the hope of getting a clear picture of the status of the permits and their ability to serve as legitimate evidence of a sign's lawful status. By e-mail dated October 23, 2012, I asked Mr. Fortier whether we might at least consolidate the permit revocation proceedings and the OAC inventory review in the central Manhattan Signs Enforcement Unit. By response dated October 24, 2012, Mr. Fortier refused the request. Copies of those e-mails are attached.

14. Finally, DOB has recently issued to both OTR and to the respective property owners more than 75 ECB violations citing infractions of both zoning and code. The violations were apparently observed in June of this year and were served on OTR via the Secretary of State on or about October 15, 2012. In some cases, violations cite conditions that have since been corrected through the sign's removal pursuant to the Consent Order, as in the removal ordered for the sign at 209 Dyckman Street in Manhattan, which came down pursuant to the Consent Order. When I learned of the violations, I called Mr. Fortier and asked again about the possibility of DOB refraining from enforcement while we work out the grandfathering issues in the OTR filings. Again, Mr. Fortier indicated that DOB intended to pursue these independent enforcement proceedings.

15. DOB of course has the right to engage in aggressive enforcement, even to

the extent of pursuing duplicative and wasteful processes. Contrary to the suggestion in the November 20, 2012 letter from Alan H. Kleinman to Gary M. Kushner ("Kleinman Letter") at 1, OTR does not contend otherwise. And there is no question but that OTR appreciates the access and time that DOB has given it, courtesies we understand DOB has extended to all of the OACs attempting to register.

16. But the notion that OTR is dallying or otherwise playing games is just not true. At least since my involvement in this case, OTR has shown a more than good-faith effort to provide DOB with supporting documentation and information to legalize its signs. As that process unfolds, it becomes clearer where other supporting information may exist, and OTR has assiduously followed up on that. As noted, this has and continues to require negotiations and discovery from outdoor advertising companies formerly in control of the signs. Photos that initially seemed to support claims are in some cases too out of focus to do so and that has required additional effort to locate better quality ones. We have sent staff to the Department of City Planning to research the zoning in effect before 1961. And we continue to pursue discovery of evidence from other outdoor advertising companies. There is far more evidence to establish grandfathering now than there was a few months ago.

17. However, DOB's actions short circuit the process and divert the Debtor's limited time and resources from the main task: to legalize, to the extent possible, OTR's remaining sign inventory so that it may viably emerge from bankruptcy. <u>The essential issue and supporting evidence in the OTR permit and arterial inventory filings, on the one hand, and the enforcement proceedings, on the other, **is the same**: Is the advertising sign grandfathered under zoning? If OTR succeeds in so demonstrating, the remaining proceedings are largely moot</u>. Addressing the same issue in three different venues - the OTR affirmative filings, the permit

revocation proceedings, and the ECB adjudications – does no one any good. Rather, it creates the risk of inconsistent administrative determinations and depletes the Debtor's assets of the funds required to support responses on multiple fronts, funds that would be better spent solidifying the Debtor's income-producing assets. DOB suffers absolutely no prejudice by re-imposition of the stay to the limited extent requested. If OTR is ultimately unsuccessful on the non-conforming use issue, DOB will be able to prosecute these proceedings fully and will have lost nothing by the delay.

18.  By contrast, the failure to grant relief irreparably harms OTR by threatening its very ability to emerge from bankruptcy. The status quo compels the Debtor to pay its retained professionals to appear and make the same case with the same evidence multiple times. The fact is that on November 27, 2012 an hour and a half was spent by OTR attorneys at DOB meeting with three DOB attorneys to review the legality of the Zerega and Withers locations. The very next day an OTR attorney had to spend another hour and half with one of the same DOB attorneys, but this time with a DOB plan examiner present, going over the same two locations. This is lunacy. It is also extremely wasteful, accomplishing nothing more than forcing OTR to spend time and money doing the same thing over and over again. It should stop.

19.  Mr. Kleinman's claim that the permit audits that OTR seeks to stay were brought about by OTR's own reliance on the permits is belied by the facts. Kleinman Letter at 2. In two of the three locations being audited, 945 Zerega Avenue in the Bronx and 84 Withers Street in Brooklyn, OTR did rely on permits, but not the ones DOB is auditing. In Zerega, OTR pointed to permit number 200034159 as authorizing operation of a 1,200 square foot illuminated advertising roof sign. The audits at this location are instead directed to permit numbers 201143253 and 210039224. At 84 Withers, OTR relied on permit No. 1610 from June 30, 1980

as a basis for its operation of a 672 square foot advertising wall panel bulletin sign. The audit instead concerns permit numbers 310105588 and 302349732.

20. While it is true that a DOB plan examiner is required to conduct permit reviews and audits (see Kleinman letter at 2), nothing except sheer caprice prevents DOB from centralizing these reviews in one place. DOB's very actions demonstrate as much: after meeting with a Bronx borough plan examiner regarding objections issued for the permit application on 330 Bruckner Blvd., OTR was told that the Sign Enforcement Unit at 280 Broadway was going to audit that application. See attached e-mail dated November 28, 2012 from Jessica Zhang to Ari Noe. And on November 30, 2012, the Manhattan borough plan examiner with whom OTR's representatives met ultimately determined that the non-conforming use issue on 538 10th Avenue and 838 6th Avenue needed to be referred to technical staff in the central office. Apparently, DOB can centralize these proceedings when it wants to do so.

21. The notion that a permit audit will somehow make the administrative record clear for subsequent proceedings in a way that cannot be accomplished by review of the grandfathering issue in the OAC registration is untenable. Kleinman Letter at 2. In response to the lack of specifics in the October 3, 2012 Notices of Sign Registration Deficiency, OTR has tendered all of its evidence for each of the submitted locations to the OAC registration unit. This is exactly the same evidence that has been or will be provided in response to the permit revocation notices and the ECB violations. A clear administrative record is a worthy goal, but we need only one.

22. Finally, the rationale tendered for pursuing the ECB proceedings in the face of obvious duplication of resources and effort is equally befuddling. Mr. Kleinman justifies the proceedings with the tautology that "[t]hey will provide a forum for the adjudication of the

violations issued by DOB for many of OTR's signs." Kleinman Letter at 2. OTR does not dispute this unremarkable claim. It simply asks that it be allowed to prove its case once.

23. Most importantly, the City's aggressive enforcement in the face of OTR's submission of applications is wholly inconsistent with the spirit of the Consent Order, which was designed to give OTR one last fair shot at legalizing its inventory.

WHEREFORE, I respectfully request that this Court grant the Debtor's motion to re-institute the automatic stay to the extent of staying DOB from prosecuting zoning and related violations through permit revocation proceedings or proceedings before ECB.

Dated: December 7, 2012

/s/Phyllis Arnold_____
PHYLLIS ARNOLD