**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

―――――――――――――――――――――――――――――

| | |
|---|---|
| In re: | Chapter 11 |
| OTR MEDIA GROUP, INC., | Case No. 1-11-47385 (ESS) |
| Debtor, | |

―――――――――――――――――――――――――――――

| | |
|---|---|
| OTR MEDIA GROUP, INC., 203 17TH REALTY LLC, SAKELE BROTHERS, LLC *and* ONE MAIDEN LANE REALTY, LLC, *all New York limited liability companies*, 848 FULTON REALTY CORP. *and* MING SHENG INC., *New York corporations*, GOTHAM BROAD, LLC, *a Delaware limited liability company*, FOTINI THEOHARIDU, and PHILLIPE JOCELINE, *natural persons,* | Adv. Pro. No. 1-11-01448 (ESS) |
| Plaintiffs, | |
| - *vs*. – | |
| The CITY OF NEW YORK, | |
| Defendant. | |

―――――――――――――――――――――――――――――

**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SANCTIONS AND TO RE-OPEN BY NON-PARTY EDWARD F. ARRIGONI**

LAW OFFICES OF DONALD WATNICK
Donald E. Watnick
51 East 42nd Street, 11th Floor
New York, New York 10017
Telephone: (212) 213-6886
Facsimile: (646) 588-1932
dwatnick@watnicklaw.com
*Attorneys for non-party Edward Arrigoni*

# Table of Contents

PRELIMINARY STATEMENT ....................................................................................................... 1
ARGUMENT .................................................................................................................................... 3
   I.   DEBTOR'S PURSUIT OF DISCOVERY FROM MR. ARRIGONI FOR OTHER ACTIONS AND UNPLEADED CLAIMS SUPPORTS SANCTIONS UNDER FED. R. CIV. P. 45, 28 U.S.C. §1927 AND COURT'S INHERENT POWER ................................................................................. 3
      A.   Kushner Dec. Presents No Basis to Avoid Sanctions Under Prevailing Law .............. 3
      B.   Discovery for Unpleaded Claims to be Asserted in Other Actions is Not Colorable ... 5
      C.   Discovery Is Not Colorable When Its Purpose Is for Another Proceeding .................. 7
      D.   Debtor and GF Admit Pursuing Discovery from Mr. Arrigoni for Improper Purposes ............... 7
          1.   Kushner Dec. Provides No Legitimate Basis for Seeking Discovery ..................... 7
          2.   Debtor's Prior Explanations for Arrignoi Subpoenas Contradict Kushner Dec. .... 10
      E.   Arrigoni Subpoenas Improper Due to Planned Dismissal of Bankruptcy Proceeding ............... 11
   II.   DEBTOR'S ACTIONS INCREASED THE BURDEN ON MR. ARRIGONI ............................... 13
   III. AMOUNT OF ATTORNEYS' FEES REQUESTED IS LEGALLY APPROPRIATE ................. 15
CONCLUSION ............................................................................................................................... 18

**PRELIMINARY STATEMENT**

In an attempt to avoid sanctions of Debtor OTR Media Group, Inc. ("OTR") and its counsel Goetz Fitzpatrick LLP ("GF") for serving subpoenas on Movant Edward Arrignoi for improper purposes, GF's Gary Kushner, Esq. submits a lengthy declaration that, if true, confirms that Debtor and its counsel were seeking discovery that had nothing to do with this case – either for a not pleaded claim that Debtor supposedly was considering litigating in another court or for other actions. Debtor's subpoenas to Mr. Arrigoni for either of these purposes completely lacked legal or factual basis and thus supports sanctions: Debtor was entitled to discovery <u>only</u> for claims actually asserted in this action but <u>not</u> for claims it was thinking about or for use in other proceedings, and not at the same time it was dismissing this case.

Significantly, Mr. Kushner's latest declaration (the "Kushner Dec.") offers a completely different rationale than those contained in his prior statements to this Court, which admitted that the subpoenas to Mr. Arrigoni (the "Subpoenas") were in aid of state and city proceedings, that Debtor's pursuit of Mr. Arrigoni "went too far" and that Debtor should not have opposed the motion to quash the Subpoenas with papers that Mr. Kushner signed but admitted he failed to read. Now, Mr. Kushner states – without any documentary or other support -- that the Subpoenas, issued at the same time that Debtor sought dismissal of this bankruptcy case, were in aid of a possible claim under 42 U.S.C. §1983 in a new federal court action – a claim that was not pleaded in this case and never even made it off the drawing board.

Putting aside that Mr. Kushner's latest explanation is bereft of support and differs from Debtor's prior statements, Debtor had no legitimate basis to seek discovery in aid of claim not yet filed, even if, <u>arguendo</u>, Debtor and its counsel were thinking about it. The voluminous opposition papers provide not a shred of authority that such discovery was permissible. The simple fact is: it lacked any legal or factual basis. A party cannot take discovery in aid of claims

1

not at issue, or for use in other cases. What makes this even more outrageous is that the Subpoenas were issued and pursued at the same time that Debtor was working to dismiss this bankruptcy – and there is no evidence beyond Mr. Kushner's self-serving say so that Debtor did not plan to simultaneously conclude the long-dormant adversary proceeding.

Perhaps recognizing that offering contradictory justifications for the Subpoenas is itself indicative of bad faith, much of the Kushner Dec. seeks to create distractions, with blanket assertions of Debtor and GF's good faith, and statements that distort the facts, the legal services provided as a result of the improper Subpoenas and settlement discussions that Mr. Kushner says are confidential but still sees fit to reveal.

The Kushner Dec.'s challenge to the amount of the attorneys' fees to be awarded here is groundless and ignores that OTR and its counsel made their own bed in forcing Mr. Arrigoni to incur fees. The Kushner Dec. does not dispute the validity of cited cases by Mr. Arrigoni that sanctions should be awarded based on the actual amount of resulting attorneys' fees, including those incurred for this motion. The amount of attorneys' fees – based on all the attorneys involved in providing services – directly resulted from OTR and GF's wrongfully pursuing Mr. Arrigoni's testimony. Mr. Arrigoni's moving papers detail how the attorneys' fees resulted from repeated subpoenas, drafting of motion papers, communications with Debtor's counsel and multiple court appearances. The Kushner Dec. provides no bona fide challenge to the amount of fees requested here.

Similarly, Mr. Kushner's self-serving claims that he and his firm attempted to resolve the Subpoenas in good faith ignore that they forced Mr. Arrigoni to engage in motion practice and that the only resolutions they proposed would have required Mr. Arrigoni to provide discovery that Debtor was not entitled to in the first place.

Equally irrelevant is Mr. Kushner's suggestion that this motion for sanctions could have been avoided if Mr. Arrignoi's counsel provided GF with its counsel's time records. There was no requirement to do so, and, while Mr. Kushner has opened the door to disclosing settlement discussions (which he does repeatedly), the simple response to his self-serving mischaracterizations of such is that Debtor and GF expressed no interest in resolving this matter and documentary evidence shows that Mr. Kushner ignored the spirit, if not the letter, of Court orders for the parties to meet and confer.

Accordingly, the motion for sanctions against Debtor and GF should be granted because the Subpoenas had no relevance to this action and were pursued without color of law, the lack of any basis for them demonstrates bad faith, and Debtor and its counsel imposed undue burden on Mr. Arrigoni. Mr. Arrigoni should be awarded the full amount of the requested attorneys' fees, including the costs of this motion, all of which resulted from Debtor and GF's active and improper pursuit of the Subpoenas.

## **ARGUMENT**

I. **DEBTOR'S PURSUIT OF DISCOVERY FROM MR. ARRIGONI FOR OTHER ACTIONS AND UNPLEADED CLAIMS SUPPORTS SANCTIONS UNDER FED. R. CIV. P. 45, 28 U.S.C. §1927 AND COURT'S INHERENT POWER**

A. <u>Kushner Dec. Presents No Basis to Avoid Sanctions Under Prevailing Law</u>

In his moving memorandum of law (the "Moving Memo"), Movant sets forth authorities that sanctions should be imposed, under Fed. R. Civ. P. 45, where, as here, a subpoena imposes undue burden and reasonable steps are not taken to avoid imposing such burden. As set forth in the Moving Memo, undue burden is imposed when a party seeks information that is not relevant or material to the claims at issue, when the party issuing the subpoena has no legitimate need for

it, such as when it is not for use in the action in which it is issued, and where the issuing party forces a motion to quash. (Moving Memo at 11-14.)

As set forth in the Moving Memo, sanctions also can be imposed under 28 U.S.C. §1927 (which applies to attorneys only) and the Court's inherent power, when a party has taken a position without colorable basis and for an improper purpose, such as in bad faith. (Id.) See also United States v. Seltzer, 227 F.2d 36, 41 (2d Cir. 2000). A party's position lacks any colorable basis when a reasonable attorney could not have had legal and factual support for the position. In re Khan, 488 B.R. 515, 529-30 (E.D.N.Y. Bankr. 2013). A party's position is in bad faith where it is taken for an improper purpose, and bad faith can be inferred from the conduct completely lacking merit. Id.

The Kushner Dec. does not dispute that sanctions should be awarded based on these standards. Nor does the Kushner Dec. question the cases cited in the Moving Memo (pp. 11-14) that sanctions should be awarded when a party seeks discovery at the same time it seeks dismissal or when it seeks discovery in one case for use in another case. Rather, the Kushner Dec. makes implausible claims that the Subpoenas were relevant and were for this action (as well as others).

In fact, the Kushner Dec. and GF's prior submissions show that Debtor and GF pursued discovery that was not colorable, or relevant, and that its pursuit of Mr. Arrigoni was so groundless as to demonstrate bad faith. No reasonable attorney could have believed that the discovery sought from Mr. Arrigoni – the Subpoenas, declaration and interrogatory answers – had any proper legal or factual connection to a claim that was not even pleaded in this action, and, as Debtor's filings admit, were requested for and to be used in other proceedings. Bad faith is even clearer because when Movant challenged Debtor, Debtor and GF doubled-down and

continued to improperly pursue discovery from Mr. Arrigoni based on insupportable explanations while simultaneously pushing this case toward dismissal.

Indeed, as set forth below (Point D, 2) GF provided no less than four completely baseless rationales for the Subpoenas, each of which demonstrate that no reasonable attorney could have believed that they had anything to do with this case. None of the prior submissions or statements by Debtor and GF makes any mention of a Section 1983 claim, but all focus on the BSA – Building Standards Appeal – proceedings or this bankruptcy generally. Putting aside the contradictory rationales and absence of any explanation for these changes, each of these purported justifications validates that Debtor and GF frivolously pursued these Subpoenas without any legal or factual basis and should be sanctioned.[1]

B. <u>Discovery for Unpleaded Claims to be Asserted in Other Actions is Not Colorable</u>

It is a fundamental rule of discovery that a party may not seek discovery in aid of claims that are not at issue the case. Discovery is permitted only when it is relevant to a claim that actually has been pleaded. <u>See</u> Fed. R. Civ. P. 26(b).

The case law is very clear that discovery in aid of a claim is not permitted. For example, in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the U.S. Supreme Court held that a claim had to be sufficiently pleaded before discovery could proceed. This holding in <u>Twombly</u> – that discovery cannot proceed until a plausible claim is alleged – has been universally adopted to prevent a party from using discovery as a fishing expedition for claims not pleaded. <u>See</u> <u>TechReserves, Inc. v. Delta Controls, Inc.</u>, 2014 WL 1325914, *11 (S.D.N.Y.) (holding that

---

[1] The Kushner Dec.'s objection (fn. 3) to service on Debtor is unavailing. It cites no authority that any special service was required other than through the ECF system, and ignores this Court's continuing jurisdiction over a sanctions motion. In any event, copies of these motion papers were served on Debtor at both its address listed with the N.Y. Secretary of State and on its web-site. (<u>See</u> Aff. of Service, Adv. ECF. No. 100.) Such service complies with Fed. Bankr. R.7004 and was done well advance of the Local Rule 9006-1 requirement that service be made 14 days (plus 3 days for mailing) before the return date of a motion.

plaintiff who has not pleaded sufficient facts to render its conclusory allegations plausible "is not entitled to engage in discovery in order to determine whether it can state a plausible claim."); In re Alper Holdings USA, Inc., 398 B.R. 736, 754 (S.D.N.Y. Bankr. 2008) (discovery request properly denied when "[d]iscovery would serve no purpose, other than as a fishing expedition for evidence in search of a theory that has yet to be asserted."). Similarly, "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim." Podany v. Robertson Step hens, Inc., 350 F.Supp.2d 375, 378 (S.D.N.Y. 2004); see also Texas Capital Corp. v. Fleet Capital Corp., 2004 WL 1472778 (E.D. Pa.) (holding that plaintiff, whose Complaint only pleaded a claim involving a single line of credit was not entitled to discovery involving other lines of credit for which there existed potential claims); Koger v. Texaco, 2007 WL 951752,*7 (N.D. Ga. 2007) (It "would be a waste of time and resources" to allow discovery on "all conceivable issues raised "but not alleged in the complaint.").

The Kushner Dec. does not cite any authority that permits discovery where, as here, a party merely is thinking about pursuing a claim and even more so when that claim is to be pursued, as the Kushner Dec. states (e.g., ¶ 140), not before this Court but after removal to the district court.

Additionally, as a matter of law, pursuing discovery under these circumstances also disregards that no discovery, including as to a non-party such as Movant, is permitted in district court until after a Fed. R. Civ. P 26(f) conference. See Desilva v. N. Shore-Long Island Jewish Health Sys. Inc., 2010 WL 3119629 (E.D.N.Y.) (Rule 26 "expressly provides that [a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . the issuance of the non-party subpoenas prior to the Rule 26(f) conference violates Rule

6

26(d)(1)." (internal citations and quotations omitted)). Nor was discovery permitted in this adversary proceeding without such a conference, which never occurred. Fed. Bankr. Rule 7026 (applying Fed. R. Civ. P. 26 to adversary proceedings).

    C.   <u>Discovery Is Not Colorable When Its Purpose Is for Another Proceeding</u>

Just as discovery is not permitted in aid of an unpleaded claim, as a matter of law it is axiomatic that a party may not seek discovery in one proceeding for the sole purpose of using it in another proceeding before another tribunal. <u>In re Enron Corp., et al.</u>, 281 B.R. 836, 842 (Bankr. S.D.N.Y. 2002); <u>Davis v. Atlantic Capital Corp.</u>, 963 F.2d 15, 19 (2d Cir. 1992). Debtor and GF have not disputed the foregoing legal point, which was first made by Mr. Arrigoni in replying to Debtor's opposition to his motion to quash. (Adv. ECF No.75, ¶ 4.) The Kushner Dec.'s citation to cases that generally permit discovery where it is relevant to both the proceeding in which it is requested and another proceeding ignores that the discovery being requested here had nothing to do with any claims actually at issue in this proceeding.

    D.   <u>Debtor and GF Admit Pursuing Discovery from Mr. Arrigoni for Improper Purposes</u>

All four of GF's explanations for pursuing discovery from Mr. Arrignoi, including the latest Kushner Dec., confirm that Debtor was seeking discovery from Mr. Arrigoni without any proper legal or factual basis in aid of proceedings in other courts and claims that were not asserted. In doing so, Debtor and GF are subject to sanctions under Rule 45 and the Court's inherent power, and GF is also subject to sanctions under 28 U.S.C. §1927.

    1.   <u>Kushner Dec. Provides No Legitimate Basis for Seeking Discovery</u>

In his latest declaration, Mr. Kushner tries to link the Subpoenas to his client's considering a Section 1983 claim by removing the dormant adversary proceeding to federal court

after the bankruptcy was dismissed. (Kushner Dec., ¶¶ 99, 140.) This explanation establishes that the Subpoenas were not colorable – without legal or factual basis -- for a number of reasons.

First, there was no live Section 1983 claim in this bankruptcy or the adversary proceeding. The Kushner Dec. concedes this point, which is demonstrated by the adversary proceeding Complaint and record, and tries to avoid this basic fact by saying that Debtor was thinking about such a claim and previously thought about such a claim.[2] However, as set forth above, discovery is not permitted for claims that a party is thinking about, but only for claims that are actually at issue. The Kushner Dec. offers no legal support for the novel position that Debtor was entitled to discovery for claims that were on its drawing board, or that any reasonable attorney would have believed that to be the case. The Kushner Dec. also ignores that a Section 1983 claim could not simply be added to the adversary proceeding because Debtor could not amend as a matter of right.

Second, Mr. Kushner states that the Section 1983 claim that his client allegedly was thinking about was going to be pursued not before this court but after removal to federal court. (Kushner Dec., ¶¶ 99, 140.) This admission establishes that the discovery from Mr. Arrigoni was to be used in another action that was not even filed. Even Debtor's counsel does not dispute that discovery is not permitted when its sole purpose is for use in another proceeding. Therefore, even crediting Mr. Kushner's latest explanation (despite the lack of support for it), Debtor was not entitled to discovery for a not pleaded claim that it was going to file and litigate elsewhere.

---

[2] The Kushner Dec.'s attempt to link relevance to prior court proceedings (¶¶ 41-44) fails to do so because the first proceeding referred to (¶ 43) occurred in the bankruptcy in the context of a Rule 2004 application – not the adversary proceeding to which the Kushner Dec. now says the subpoena pertained – and the application was not granted, and the second proceeding (¶ 44) referred to on March 12, 2013 makes no mention at all of any Section 1983 claim but instead contains Mr. Kushner's statement in open court that Debtor is utilizing various attorneys for administrative purposes and not to litigate against the City.

Third, there is no support for Mr. Kushner's self-serving claims that Debtor was considering a Section 1983 claim. Debtor repeatedly stated that the sign law litigations were proceeding in state and city forums, and not before this Court. (See, e.g., Adv. ECF No. 89, Watnick Dec., Exh. A, Nov. 19, 2013 Tr., 63.) No support is provided in the form of statements by the other persons allegedly involved in thinking about such a claim. The billing records filed with this Court appear (save for 0.8 hours of time) devoid of any reference to a proposed Section 1983. GF's time records contain all of 0.8 of an hour of entries about a possible Section 1983 claim, all of which occurred months before the Subpoenas were issued. (See ECF No. 508, GF Fee Application, containing the following entries that refer to Section 1983: 6/7/13 (0.5), 6/17/13 (0.2) and 7/31/13 (0.1)). Moreover, while the Kushner Dec. refers to discussions about this claim with attorney Ariel Holzer, in submitting Mr. Holzer's final fee application, Mr. Kushner made no mention of his work on a §1983 claim and stated that Mr. Holzer was an ordinary course professional providing services on leasing and contracts. (Adv. ECF No. 89, Watnick Dec., Exh. A, Nov. 19, 2013 Tr., 57.)

Further, actions speak stronger than words because the Kushner Dec. cites no other actions to pursue any Section 1983 claims, even though the Kushner Dec. paints a picture that doing so was critical to holding the City at bay after dismissal of the bankruptcy. To state a Section 1983 claim requires proof that "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." Annis v. Cnty. of Westchester, 136 F.3d 239, 245 (2d Cir. 1998). The Kushner Dec. provides no basis that a single deposition about one sign would have been sufficient to present such a claim.

2. <u>Debtor's Prior Explanations for Arrignoi Subpoenas Contradict Kushner Dec.</u>

The Kushner Dec.'s attempt to establish that the Subpoenas were colorable and not improper further collapses under the weight of Debtor's prior statements, which contradict the Kushner Dec. and make no mention of any possible Section 1983 claim.

In Debtor's December 16, 2013 preemptive filing to avoid sanctions (the "December Objection"), Debtor made no mention of any possible Section 1983 claim and attributed the Subpoenas to Debtor's ongoing BSA proceedings and unspecified bankruptcy proceedings. (Adv. ECF No. 85, ¶¶ 29-32.) Indeed, Paragraphs 23 to 30 of this submission (signed by Mr. Kushner) describes in detail how the Subpoenas were prompted by ongoing BSA proceedings and Ms. Arnold's request for evidence for use in those proceedings about a sign that was displayed by NY Bus, Mr. Arrigoni's company, more than 30 years ago.

Debtor's opposition to the motion to quash – also signed by Mr. Kushner -- similarly is silent as to any Section 1983 claim and instead asserts the Subpoenas were needed for BSA proceedings and unspecified matters before this Court, stating the Subpoenas were so "ORT [sic] can then use Mr. Arrigoni's testimony before BSA." (Adv. ECF No. 71, ¶ 17).

In response to the initial objection to the first subpoena by Mr. Arrignoni's co-counsel Edward Saviano, GF stated in an October 1, 2013 letter that "there are numerous contested matters between OTR and the City of New York, the primary one being the City's motion to convert the Debtor's case to one under chapter 7" (Adv. ECF No. 89, Watnick Dec., Exh. E)[3], but made no mention of any connection to the adversary proceeding. Of course, the veracity of

---

[3] Citations to the Watnick Dec. refer to the Declaration of Donald E. Watnick submitted in support of this motion.

10

GF's foregoing letter is belied by GF having stated, in open court, on September 23, 2013, that it had agreed to dismissal of this bankruptcy.[4]

Further contradicting the Kusnher Dec.'s Section 1983 revisionism is that on November 19, 2013, during argument on the motion to quash, Mr. Kushner stated in open Court as follows: "I agree with Mr. Watnick. This thing went too far." Additionally, as set forth in the Moving Memo, OTR's motion to dismiss the bankruptcy makes no mention of asserting any new claims in the adversary proceeding, states the legality of signs is not an issue in this case, and during the November 19, 2013 court appearance, Mr. Kushner stated that since the September 23, 2013 court appearance, OTR had been focusing on "administrative" matters. (Moving Memo 14-15.)

These prior statements by Debtor and its counsel show that the Subpoenas did not have a colorable basis because they were for discovery to be used before the BSA, or in this bankruptcy proceeding that was to be dismissed. Importantly, no reasonable attorney could have believed that discovery in this Court could be requested under such circumstances. These prior statements also render the Kushner Dec.'s latest explanation about Section 1983, to say the least, curious due to its complete inconsistency with no less than three prior explanations. In sum, based upon prior filings by Debtor and its counsel, the Subpoenas were intended for use in other proceedings, which means they were devoid of any proper basis in law or fact and thereby not colorable and in bad faith.

    E.  <u>Arrigoni Subpoenas Improper Due to Planned Dismissal of Bankruptcy Proceeding</u>

Likewise, Mr. Kushner's attempt to avoid sanctions by saying that Debtor did not plan to dismiss the adversary proceeding misses the point that, even if true, Debtor still pursued discovery that had nothing to do with the claims presented in this case and is contradicted by

---

[4] The Kushner Dec.'s suggestion that the Arrigoni Declaration in support of the motion to quash concedes that his deposition was to be used in this case obscures that his declaration repeats what Debtor's counsel represented at a time when the lack of basis for such statements by Debtor's counsel had not yet been revealed.

11

clear evidence the Subpoenas were issued and pursued when Debtor planned to dismiss this entire proceeding.

First, even crediting, arguendo, that Debtor did not intend to dismiss the adversary proceeding, the Subpoenas had nothing to do with any of the existing claims in the adversary proceeding complaint. By itself, this meant that the Subpoenas lacked any proper basis.

Second, the supposed plans to continue the adversary proceeding are premised entirely on Mr. Kushner's self-serving claims that statements to the Court about dismissing the bankruptcy did not mean that the adversary proceeding would be dismissed, too. There is no evidentiary support anywhere for this newly stated position, and plenty of contrary support. The City's response to the motion to quash stated that it understood the adversary proceeding would be dismissed as part of the settlement of this bankruptcy. (Adv. ECF No. 73, ¶ 28.) Moreover, the September 23, 2013 Court appearance at which the agreed upon dismissal was announced, was a court appearance for both the bankruptcy and the adversary proceeding. (Adv. ECF. 89,Watnick Aff., Exh. A.) Thus, if Debtor did not intend for the dismissal to apply to the dormant adversary proceeding, surely Mr. Kushner would have said so.

Third, the adversary proceeding had been dormant for months, and Debtor previously had filed repeated submissions to this Court stating it would be dismissed. The Kushner Dec.'s assertion that that Debtor would, in fact, litigate the adversary proceeding if the Stipulation and Order dated September 2, 2011 was vacated is undercut because that stipulation was vacated in January 2013 and Debtor took no action to litigate the adversary proceeding.

Fourth, Debtor did not actually keep the adversary proceeding alive and both the City's response to the motion to quash and Mr. Arrigoni's reply papers provided authority – not disputed by Debtor – that the adversary proceeding could not continue for the sole purpose of

12

taking discovery from Mr. Arrigoni, after dismissal of the bankruptcy. (Adv. ECF No. 73, ¶ 29; Adv. ECF No. 75, fn. 1.)

Fifth, even assuming, <u>arguendo</u>, that there was a time that Debtor planned to continue the adversary proceeding, at some point (and the Kushner Dec. is silent as to when) on or before the shared return date for the motion to dismiss and Mr. Arrigoni's motion to quash, Debtor decided it was, in fact, going to dismiss the adversary proceeding. Yet, Debtor and GF continued to inexplicably pursue discovery from Mr. Arrigoni after that point in time, and such actions undeniably had no colorable basis. Even the night before that return date Debtor refused to withdraw the Subpoenas.

In sum, the Kushner Dec.'s attempt to avoid the clear record that it requested discovery from Mr. Arrigoni after it sought dismissal of this case is not credible, and, in any event, the Kushner Dec.'s newly stated position still demonstrates that Subpoenas were improper because they did not relate to any live claims in this action.

II. <u>DEBTOR'S ACTIONS INCREASED THE BURDEN ON MR. ARRIGONI</u>

On top of issuing Subpoenas with no proper purpose, Debtor and GF's related actions served to increase the burden on Mr. Arrigoni. The Kushner Dec.'s assertions that Debtor and GF sought to reduce the burden imposed, by first asking for a declaration and then interrogatory answers from Mr. Arrigoni, is utter nonsense.

To ask that Mr. Arrigoni provide a declaration or interrogatory answers as the price of withdrawal of the Subpoenas disregards that Debtor was not entitled to any such discovery in the first place. In short, these actions that the Kushner Dec. states were in mitigation actually were a blatant and improper attempt to leverage improperly issued subpoenas.

Further imposing burden was Debtor's objection to the motion to quash. Mr. Kushner already has conceded that this objection – an objection that he signed but says he did not read – should not have been filed. This objection prompted Mr. Arrigoni's counsel to prepare and file reply papers and to prepare to address Debtor's objections on the return date of the motion. The Kushner Dec. now also concedes (¶ 127) that this objection was improper because Debtor should have dropped this matter once GF was told that Mr. Arrigoni did not recall the facts about a sign from more than 30 years ago. Instead, Debtor and GF continued its relentless pursuit of Mr. Arrigoni.[5]

Equally hallow is Mr. Kushner's self-serving rendition of a "settlement" discussion the evening before the motion to quash was argued in this Court. To begin with, that phone call occurred when the work on the motion to quash already had been done, and a motion to dismiss this entire case was to be submitted to the Court the next day. Despite this, as the Kushner Dec. acknowledges (¶ 131), no unconditional withdrawal of the Subpoenas was offered. In fact, Mr. Kushner's proposal during that call reiterated prior requests for Mr. Arrigoni to provide discovery in exchange for withdrawal of the subpoena, which had been rejected by Mr. Arrigoni (as stated in Debtor's Objection to the Motion to Quash signed by but allegedly not read by Mr. Kushner). Accordingly, this last-minute call by Mr. Kushner had all the earmarks of a last-ditch effort to obtain discovery to which OTR was not entitled.

Even after the motion to quash was resolved, Debtor and GF continued to impose unnecessary burden on Mr. Arrigoni on the issue of sanctions, including with a slew of gratuitous statements in the December Objection (Moving Memo at 8.). Mr. Kushner also failed

---

[5] The Kushner Dec. (¶126) latest explanation for filing Debtor's objection to the motion to quash (Adv. ECF No. 71) is that Debtor was prompted by the City's Response to that motion (Adv. ECF No. 73) and Mr. Arrigoni's reply (Adv. ECF No. 75). This explanation is perplexing because Debtor's objection to the motion to quash was filed <u>before</u> the City's response and Mr. Arrigoni's reply.

14

to comply with the spirit, if not letter, of a subsequent meet and confer order. On December 4, 2013, after the Court issued a meet and confer order at 3:37 p.m. (Adv. ECF No. 83), Mr. Kushner sent an email at 4:34 p.m. stating he was available for a meet and confer -- on that day only. When he did not return calls or emails to hold that meet and confer that day and was asked why, Mr. Kushner responded that he left his office at 5 p.m. for his holiday party, about 25 minutes after sending the email, and that he considered that sufficient time for the court ordered meet-and-confer. (Copies of these emails are annexed as Exh. A to the Watnick Reply Dec.) Mr. Kushner's foregoing emails speaks loudly as to Debtor and GF's disinterest in resolving this matter without motion practice and conducting the Court ordered meet and confer.

III.     AMOUNT OF ATTORNEYS' FEES REQUESTED IS LEGALLY APPROPRIATE

Mr. Arrigoni's moving papers set forth authorities providing that the amount of legal fees to be awarded should be those that result from the improper actions and include the amount of legal fees incurred in moving for sanctions. In re Khan, 488 B.R. at 536. To avoid the clear record that the fees here resulted from the actions of Debtor and its counsel, the Kushner Dec. engages in a mix of generalized objections and distortion, which will be addressed below.

The Kushner Dec.'s attempt to avoid <u>all</u> of the attorneys' fees for Edward Saviano's law firm – because Mr. Saviano was not a litigator -- simply ignores that a substantial part of the fees for Mr. Saviano's law firm were for services provided by Elaine Yuen, a junior associate who devoted time to legal research, drafting and serving and filing motion papers. (Adv. ECF No. 91, Saviano Dec., Exh. A and Moving Memo at 23-24.) Ms. Yuen's hourly rate for this matter is $175, a very reasonable rate for a lawyer who graduated from Columbia Law School in 2010. Nor does the fact that Mr. Saviano's primary areas of practice are not litigation support the Kushner Dec.'s attempt to avoid them. Mr. Saviano, an experienced attorney, was actively

involved in litigating this matter, including corresponding and discussing this matter with GF and Mr. Arrigoni (to whom he has provided legal services for many years), and his services did not duplicate those provided by Mr. Watnick or Ms. Yuen. Mr. Saviano's fees directly resulted from the sanctionable conduct of Debtor and its counsel and the Kushner Dec. does not establish the contrary.

Likewise, the Kushner Dec. presents no legitimate grounds to discount the time devoted by Mr. Watnick, aside from the generalized and unsupported statement that Mr. Kushner seems to believe that less time was needed and again leveling wasteful attacks.[6]

The Kushner Dec.'s statement that Mr. Watnick should have not incurred $16,500 in fees for a motion to quash and a court appearance either ignores or distorts that the services involved included a contested motion in a complex bankruptcy proceeding and other services as detailed in the moving papers: (i) responding to and objecting to the subpoenas, including on the issue of improper service of the first subpoena; (ii) attempting to convince GF not to pursue a subpoena of Mr. Arrigoni and objecting when the subpoena was re-issued; (iii) drafting a motion to quash when GF refused to withdraw the subpoena; (iv) reviewing the City's response to the motion; (v) reviewing GF's objection to the motion to quash and drafting reply papers; (vi) responding to GF's requests that this matter be resolved with first a declaration and then lengthy interrogatories; and (vii) multiple court appearances and communications with GF and the Court about the sanctions issue. Time necessarily was devoted to becoming familiar with the extensive Court record of this proceeding, particularly as Debtor and its counsel offered new and contradictory explanations as to why they were pursuing Mr. Arrigoni.

---

[6] The Kushner Dec.'s assertion (¶ 10) that this motion seeks a "windfall" is silly and more of the same type of wasteful gratuitous statements that Mr. Kushner previously made, which are addressed in the Moving Memo (p. 8), and have made this proceeding more costly than it otherwise would have been.

16

The Kushner Dec.'s assertion that fees resulted from Mr. Arrigoni not being willing to resolve this matter is inaccurate. It ignores that Mr. Kushner said in open court – and again in this affidavit – that discovery from Mr. Arrigoni should not have been pursued, and that, despite that statement, the only resolutions proposed by Debtor involved Mr. Arrigoni providing discovery that Debtor was not entitled to in the first place.

Similarly, the Kushner Dec.'s assertion that the motion to quash was worked on prematurely is simply not true. While the Arrigoni Dec. is dated Oct. 13, 2013 (Watnick Dec., Exh. C), even Mr. Kushner must be aware that the declaration is misdated because the subpoena that was the subject of the motion to quash was dated October 17, 2013. Our office records contain a copy of the signature page faxed by Mr. Arrigoni on October 29, 2013 (Watnick Reply Dec., Exh. B.) Mr. Kushner's attempt to make hay out of the inadvertent misdating of the Arrigoni Declaration is a red herring. Further, any claims that work on a motion to quash preceded October 17, 2013 are contradicted by the time records submitted in support of this motion. (Watnick Dec., Exh. K; Saviano Dec., Exh. A.)

Equally unavailing is the Kushner Dec.'s objection to sanctions because Movant's counsel would not provide copies of time records as part of settlement discussions. To reiterate, there was no obligation to provide such time records as part of a settlement discussion, particularly when Debtor showed no interest in resolution.

Finally, the Kushner Dec.'s objection to attorneys' fees relating to that part of the Moving Memo that requested reopening this matter or due to the timing of this motion are not sustainable for several reasons:

- a. First, the amount of time devoted to the motion to reopen was a small fraction of the time and is not even part of the amount of fees that have been submitted with this motion. As set forth in the motion, Mr. Arrigoni will separately submit the costs for this motion.

17

b. Second, a motion to reopen was required due to Debtor and its counsel waiting to the eve of dismissal to issue the Subpoenas. In other words, Debtor and GF should not be permitted to complain about timing that is of their own making.

c. Third, the motion to quash did not include a motion for sanctions because, at the time, Movant's counsel was not aware that Debtor was seeking dismissal of this case. This did not become clear until after Movant filed the motion and learned of the planned dismissal from counsel representing parties other than OTR.

d. Fourth, the hiatus between the November 19, 2013 court appearance and the making of this motion, aside from obscuring the real issues presented here, resulted from (i) a court conference scheduled for December 17, 2013 (on a date that was adjourned to accommodate Mr. Kushner), (ii) a year-end vacation for Movant's counsel, and (iii) the time involved in preparing this motion. (It also is surprising for the Kushner Dec. to complain about timing when Mr. Kushner insisted on having two months to respond to this motion.)

In sum, Mr. Arrigoni's papers support the request for attorneys' fee and, if anything, based on applicable cases, that lodestar amount should be increased due to egregious acts, the ability of Debtor and GF to pay legal fees and to deter future misconduct. In re Khan, 488 B.R. at 536.

## **CONCLUSION**

For the reasons set forth herein and in the moving papers, Movant Edward Arrigoni's motion to reopen and for sanctions against Debtor OTR Media Group, Inc. and its counsel Goetz Fitzpatrick LLP should be granted in its entirety and Movant should be awarded such other relief as this Court deems just and proper.

Dated: May 1, 2014

                                                                                 By: /s/ Donald E. Watnick
                                                                                      Donald E. Watnick
                                                                     LAW OFFICES OF DONALD WATNICK
                                                                     51 East 42nd Street, 11th Floor
                                                                     New York, New York 10017
                                                                     (212) 213-6886
                                                                     dwatnick@watnickaw.com
                                                                     *Attorneys for Movant Edward F. Arrigoni*